## IN THE UNITED STATES DISTRICT COURT
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION,<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20580 | )<br>)<br>)<br>) | Civ. No. |
| Plaintiff, | )<br>) | COMPLAINT FOR TEMPORARY<br>RESTRAINING ORDER AND |
| v. | )<br>)<br>)<br>) | PRELIMINARY INJUNCTION<br>PURSUANT TO SECTION 13(b)<br>OF THE FEDERAL TRADE |
| WHOLE FOODS MARKET, INC.<br>550 Bowie Street<br>Austin, Texas  78703 | )<br>)<br>)<br>) | COMMISSION ACT |
| and | )<br>) | |
| WILD OATS MARKETS, INC.<br>1821 30th Street<br>Boulder, Colorado  80301 | )<br>)<br>)<br>) | FILED UNDER SEAL |
| Defendants. | )<br>)<br>) | |

## I.
## INTRODUCTION

Whole Foods Market, Inc.'s ("Whole Foods") proposed acquisition of Wild Oats

Markets, Inc. ("Wild Oats"), will substantially lessen competition and thereby cause significant

harm to consumers.  This merger, involving the two leading operators of premium natural and

organic supermarkets, will increase prices and reduce quality and services in a number of

geographic markets throughout the United States.  Whole Foods' Chief Executive Officer John

Mackey bluntly advised his Board of Directors of the purpose of this acquisition:  "By buying

[Wild Oats] we will . . . avoid nasty price wars in Portland (both Oregon and Maine), Boulder,

Nashville, and several other cities which will harm [Whole Foods'] gross margins and

profitability.  By buying [Wild Oats] . . . we eliminate forever the possibility of Kroger, Super

Value, or Safeway using their brand equity to launch a competing national natural/organic food

chain to rival us. . . . [Wild Oats] may not be able to defeat us but they can still hurt us . . . .

[Wild Oats] is the only existing company that has the brand and number of stores to be a

meaningful springboard for another player to get into this space.  Eliminating them means

eliminating this threat forever, or almost forever."  To prevent this consumer harm, the Federal

Trade Commission ("Commission") petitions the Court to maintain the status quo and enjoin

defendants from allowing Whole Foods to acquire any stock, assets, or other interests in Wild

Oats, during the pendency of an administrative proceeding, which will be commenced by the

Commission pursuant to Sections 7 and 11 of the Clayton Act, 15 U.S.C. §§ 18 and 21, and

Section 5(b) of the FTC Act, 15 U.S.C. § 45(b).

## II.
## THE PARTIES

1.      Plaintiff Commission is an administrative agency of the United States

Government established, organized, and existing pursuant to the Federal Trade Commission Act,

15 U.S.C. § 41 *et seq.*, with its principal offices at 600 Pennsylvania Avenue, N.W.,

Washington, D.C. 20580.  The Commission is vested with authority and responsibility for

enforcing, among other things, Section 7 of the Clayton Act and Section 5 of the FTC Act.

2.      Defendant Whole Foods is a corporation organized, existing, and doing business

under and by virtue of the laws of Texas, with its office and principal place of business at 550

Bowie Street, Austin, Texas 78703.  Established in 1980, Whole Foods operates approximately

190 premium natural and organic supermarkets in more than 30 states and the District of Columbia. It is the largest operator of premium natural and organic supermarkets in the United States.

3.    According to Mr. Mackey, Whole Foods is "a company that is authentically committed to its mission of natural/organic/healthy foods. Its core customers recognize this authenticity and it creates a customer loyalty that will not be stolen away by conventional markets who sell the same products. Whole Foods has created a 'brand' that has real value for millions of people."

4.    Defendant Wild Oats is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 1821 30th Street, Boulder, Colorado 80301. Wild Oats is the second largest operator of premium natural and organic supermarkets in the United States, currently operating numerous premium natural and organic supermarkets throughout the United States.

5.    Founded in 1987, Wild Oats provides a broad selection of natural, organic, and gourmet foods, environmentally friendly products, and natural vitamins, remedies, and body care products. The firm was built "on the vision of enhancing the lives of our customers and our people with products and education that support health and wellbeing." As Wild Oats' Vice President of Marketing Laura Coblentz has described: "Wild Oats is more than a retail chain—it's about a lifestyle, and that's how we market ourselves."

6.    Consumers spent a combined total of $6.5 billion in fiscal 2006 at Whole Foods and Wild Oats. Approximately 70% of that total was spent on perishable products, such as produce, meat, seafood, baked goods, and prepared foods.

### III.
### JURISDICTION AND VENUE

7.      Jurisdiction is based on Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and 28

U.S.C. §§ 1337 and 1345.  Venue is proper under Section 13(b) of the FTC Act, 15 U.S.C. §

53(b); 28 U.S.C. § 1391(b) and (c); and Section 12 of the Clayton Act, 15 U.S.C. § 22.

8.      Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), provides in pertinent part:

   (b)      Whenever the Commission has reason to believe --

        (1) that any person, partnership or corporation is violating,
   or is about to violate, any provision of law enforced by the
   Federal Trade Commission, and

        (2) that the enjoining thereof pending the issuance of a
   complaint by the Commission and until such complaint is
   dismissed by the Commission or set aside by the court on review,
   or until the order of the Commission made thereon has become
   final, would be in the interest of the public –

the Commission by any of its attorneys designated by it for such purpose may
bring suit in a district court of the United States to enjoin any such act or
practice.  Upon a proper showing that, weighing the equities and considering the
Commission's likelihood of ultimate success, such action would be in the public
interest, and after notice to the defendant, a temporary restraining order or a
preliminary injunction may be granted without bond . . . .

9.      Whole Foods and Wild Oats are engaged in commerce, as "commerce" is

defined in Section 1 of the Clayton Act, 15 U.S.C. § 12(a).  The businesses of Whole Foods and

Wild Oats have been and are now in or affecting commerce, as "commerce" is defined in

Section 4 of the FTC Act, 15 U.S.C. § 44.

10.     Whole Foods transacts business within the District of Columbia.

11.     Wild Oats transacts business within the District of Columbia.

## IV.
## The Proposed Acquisition and the Commission's Response

12.    On February 21, 2007, Whole Foods and Wild Oats executed an agreement whereby Whole Foods proposes to acquire all of the voting securities of Wild Oats through WFMI Merger Co., a wholly-owned subsidiary of Whole Foods.  The purchase will be effected through tender offer for all shares of Wild Oats common stock.  The total cost of the acquisition is expected to be approximately $671 million in cash and assumed debt.

13.    The closing of the transaction is subject to clearance under the Hart-Scott-Rodino Antitrust Improvements Act, 15 U.S.C. § 18a.  The defendants have advised the Commission that, in the absence of a court order to the contrary, Defendant Whole Foods will be free to acquire all shares of Wild Oats common stock after 11:59 pm June 6, 2007.

14.    Defendant Whole Foods intends to then merge Wild Oats into Whole Foods; to close numerous Wild Oats stores; to sell several Wild Oats stores; and to operate the remainder as Whole Foods stores.

15.    On June 5, 2007, following a three-month investigation, the Commission determined that it has reason to believe that the Acquisition would violate Section 7 of the Clayton Act and Section 5 of the Federal Trade Commission Act because the Acquisition may substantially lessen competition and/or tend to create a monopoly in the operation of premium natural and organic supermarkets across the United States.

16.    On that same day, the Commission determined that the injunctive relief requested herein would be in the public interest and authorized its staff to seek a temporary restraining order ("TRO") and preliminary injunction ("PI") in federal district court under Section 13(b) of

the FTC Act. The purpose of the TRO and PI is to prevent the Acquisition during the pendency

of an administrative proceeding to be initiated by the Commission under Section 5(b) of the

FTC Act, 15 U.S.C. § 45(b), challenging the legality of the proposed Acquisition under Section

7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the Federal Trade Commission Act, 15

U.S.C. § 45. The legality of the proposed Acquisition, and the appropriate remedy in the event

it is found illegal, will be determined by the Commission through those administrative

proceedings, subject to judicial review.

## V.
## PREMIUM NATURAL AND ORGANIC FOODS INDUSTRY

17.    "Natural foods" are foods that are minimally processed and largely or completely

free of artificial ingredients, preservatives, and other non-naturally occurring substances.

18.    "Organic foods" are foods that are produced using: agricultural practices that

promote healthy ecosystems; no genetically engineered seeds or crops, sewage sludge, long-

lasting pesticides or fungicides; healthy and humane livestock management practices including

use of organically grown feed, ample access to fresh air and the outdoors, and no antibiotics or

growth hormones; and food processing that protects the healthfulness of the organic product,

including the avoidance of irradiation, genetically modified organisms, and synthetic

preservatives.

19.    Pursuant to the United States Department of Agriculture's ("USDA's") Organic

Foods Production Act of 1990 (the "Organic Rule"), all products labeled "organic" must be

certified by a federally accredited certifying agency as satisfying USDA standards for organic

foods. The Organic Rule further requires that retailers of products labeled "organic" use

handling, storage, and other practices to protect the integrity of organically-labeled products,

including: preventing commingling of organic and non-organic ("conventional") products;

protecting organic products from contact with prohibited substances; and maintaining records

that document adherence to the USDA requirements.

20.    Premium natural and organic supermarkets offer a distinct set of products and

services to a distinct group of customers in a distinctive way, all of which significantly

distinguish premium natural and organic supermarkets from conventional supermarkets and

other retailers of food and grocery items ("Retailers").

21.    Premium natural and organic supermarkets are not simply outlets for natural and

organic foods.  Whole Foods' Chief Executive Officer John Mackey acknowledged  that

"Whole Foods isn't primarily about organic foods.  It never has been. Organic food is only one

part of its highly successful business model."  In announcing its fourth quarter results for 2006,

Whole Foods stated that  "Whole Foods Market is about much more than just selling

'commodity' natural and organic products.  We are a lifestyle retailer and have created a unique

shopping environment built around satisfying and delighting our customers."  Specifically, Mr.

Mackey has said that "superior quality, superior service, superior perishable product, superior

prepared foods, superior marketing, superior branding, and superior store experience working

together are what makes Whole Foods so successful . . . people who think organic foods are the

key don't understand the business model."

22.    To begin with, premium natural and organic supermarkets focus on perishable

products, offering a vast selection of very high quality fresh fruits and vegetables–including

exotic and hard-to-find items–and other perishables.  As Whole Foods stated in its 2006 annual

report, "We believe our heavy emphasis on perishable products differentiates us from conventional supermarkets and helps us attract a broader customer base." Whole Foods' Mr. Mackey has also emphasized the importance of high quality perishable foods to Whole Foods' business model: "This [produce, meat, seafood, bakery, prepared foods] is over 70% of Whole Foods total sales. Wal-Mart doesn't sell high quality perishables and neither does Trader Joe's while we are on the subject. That is why Whole Foods coexists so well with [Trader Joe's] and it is also why Wal-Mart isn't going to hurt Whole Foods."

23.     Relative to conventional supermarkets and most other Retailers, premium natural and organic supermarkets target shoppers who are, in the words of one of the defendants, "affluent, well educated, health oriented, quality food oriented people." The core shoppers of premium natural and organic supermarkets have a preference for natural and organic products, and premium natural and organic supermarkets offer an extensive selection of natural and organic products to enable those shoppers to purchase substantially all of their food and grocery requirements during a single shopping trip.

24.     Premium natural and organic supermarkets are differentiated from other Retailers in that premium natural and organic supermarkets offer more amenities and service venues; higher levels of service and more knowledgeable service personnel; and special features such as in-store community centers.

25.     Premium natural and organic supermarkets promote a lifestyle of health and ecological sustainability, to which a significant portion of their customers are committed. Through the blending together of these elements and others, premium natural and organic supermarkets strive to create a varied and dynamic experience for shoppers, inviting them to

make the premium natural and organic supermarket a destination to which shoppers come not merely to shop, but to gather together, interact, and learn, often while enjoying shared eating and other experiences. Premium natural and organic supermarkets expend substantial resources on developing a brand identity that connotes this blend of elements, and especially the qualities of trustworthiness (*viz.*, that all products are natural and, when so-labeled, organic, that the store's suppliers practice humane animal husbandry and provide humane working environments for employees, and that the store's actions are ecologically sound) and qualitative superiority to other Retailers.

26.    Relative to most other Retailers, premium natural and organic supermarkets' products often are priced at a premium reflecting not only product quality and service, but the marketing of a lifestyle to which their customers aspire.

27.    As Whole Foods' Mr. Mackey has acknowledged, "Safeway and other conventional retailers will keep doing their thing – trying to be all things to all people . . . . They can't really effectively focus on Whole Foods Core Customers without abandoning 90% of their own customers . . . . Whole Foods core customers will not abandon them because Safeway has made their stores a bit nicer and is selling some organic foods. Whole Foods knows their core customers well and serves them far better than any of their potential competitors do."

28.    Mr. Mackey has also said that "all those [conventional supermarkets and club stores] you named have been selling organic foods for many years now. The only thing 'new' is that they are now beginning to sell private label organic foods for the first time. However, they've been selling organic produce and organic milk for many years now. Doing so has never hurt Whole Foods."

29.    Wild Oats' most recent 10K filed with the Securities and Exchange Commission noted: "Despite the increase in natural foods sales within conventional supermarkets, [Wild Oats] believe[s] that conventional supermarkets still lack the concentration on a wide variety of natural and organic products, and emphasis on service and consumer education that our stores offer."

30.    Premium natural and organic supermarkets are also very different from mass-merchandisers, such as Wal-Mart and Target.  According to Mr. Mackey, "Wal-Mart does a particularly poor job selling perishable foods.  Whole Foods quality is better, its customer service is far superior, and the store ambience and experience it provides its customers is fun, entertaining and educational."

31.    With respect to Trader Joe's, Mr. Mackey stated: "TJ's is a completely different concept than WFMI.  WFMI's business is all about perishables - fresh produce, fresh seafood, fresh meat, in store delis, juice bars, and bakeries.  WFMI has stated that more than 50% of their sales are in these categories of products - categories which TJ's doesn't even have.  TJ's is primarily a discount private label company with a large wine selection."

32.    Unlike other natural and organic product retailers, premium natural and organic supermarkets offer an extensive selection of natural and organic products to enable shoppers to purchase substantially all of their food and grocery requirements during a single shopping trip.  As a result, premium natural and organic supermarkets are appreciably larger than other natural and organic retailers in square footage, number of products offered, inventory for each product offered, and annual dollar sales.

33.    Premium natural and organic supermarkets' primary competitors are other

-10-

premium natural and organic supermarkets. Shoppers with preferences for premium natural and organic supermarkets are not likely to switch to other retailers in response to a small but significant non-transitory increase in premium natural and organic supermarket prices.

## VI.
## RELEVANT MARKETS

34.     The operation of premium natural and organic supermarkets is a distinct "line of commerce" within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

35.     Unlike conventional supermarkets, which tend to draw their customers from within a radius of three or four miles, premium natural and organic supermarkets tend to draw their customers from within a radius of five or six miles. As a result, areas as small as approximately five or six miles in radius from premium natural and organic supermarkets or as large as a metropolitan area are distinct "sections of the country" within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## VII.
## COMPETITION BETWEEN WHOLE FOODS AND WILD OATS

36.     Whole Foods and Wild Oats, respectively, are the largest and second largest operators of premium natural and organic supermarkets in the United States.

37.     Whole Foods and Wild Oats are the only two nationwide operators of premium natural and organic supermarkets in the United States.

38.     Whole Foods and Wild Oats are one another's closest competitor in twenty-one geographic markets. Consumers in those markets have reaped price and non-price benefits of

-11-

competition between Whole Foods and Wild Oats. The markets where the two compete head to

head are: Albuquerque, NM; Medford, MA (suburban Boston); Saugus, MA (suburban Boston);

Boulder, CO; Hinsdale, IL (suburban Chicago); Evanston, IL (suburban Chicago); Cleveland,

OH; Denver, CO; Lakewood, CO; Ft. Collins, CO; West Hartford, CT; Henderson, NV;

Indianapolis, IN; Kansas City-Overland Park, KS; Las Vegas, NV; Los Angeles-Santa

Monica-Brentwood, CA; Louisville, KY; Omaha, NE; Pasadena, CA; Phoenix, AZ; Portland,

ME; Portland, OR; Princeton, NJ; St. Louis, MO; and Tualatin, OR.

39.    Over the last five years, Whole Foods has targeted markets for entry where, in

Whole Foods' words, Wild Oats enjoyed a "monopoly." Consumers in those markets

benefitted from the new competition in those markets.

40.    There are other geographic markets in which only one or the other is present. In

many of these markets, Wild Oats or Whole Foods plans, but for the proposed Acquisition, to

enter to offer direct and unique competition to the other. Each has developed expansion plans

that target each other's "monopoly" markets, as Whole Foods describes it. These markets

include: Palo Alto, CA; Fairfield County, CT; Miami Beach, FL; Naples, FL; Nashville, TN;

Reno, NV; and Salt Lake City, UT.

41.    Whole Foods' Mr. Mackey has said that "Whole Foods has taken significant

market share from OATS wherever they have opened competing stores--Boulder, Santa Fe,

Denver, Boca Raton, Ft. Lauderdale, and St. Louis." Each of the parties, in anticipation of entry

by the other, engages in aggressive price and non-price competition that conveys to shoppers

benefits that go well beyond the benefits resulting from the presence or threatened entry in those

geographic markets of other retailers. In addition, when Whole Foods or Wild Oats expects the

-12-

other to enter one of its markets, each plans substantial improvements in quality, including

renovations, expansions, and competitive pricing. As Mr. Mackey explained upon Whole

Foods' entry into Nashville: "At least Wild Oats will likely improve their store there in

anticipation of Whole Foods eventually opening and [customers will] benefit from that."

Neither company responds in the same way to competition from conventional supermarkets or

other retailers.

42.    Consumers have benefitted directly from the price and quality competition

between Whole Foods and Wild Oats. If the acquisition occurs, those benefits will be lost if the

acquisition occurs in the markets where the two currently compete and they will not occur in

those markets where each is planning to expand.

## VIII.
## LIKELIHOOD OF SUCCESS ON THE MERITS AND NEED FOR RELIEF

43.    The Commission is likely ultimately to succeed in demonstrating, in

administrative proceedings to adjudicate the legality of the proposed merger, that the proposed

Acquisition would violate Section 7 of the Clayton Act and Section 5 of the Federal Trade

Commission Act. In particular, the Commission is likely ultimately to succeed in

demonstrating, among other things, that:

 a. the proposed Acquisition will eliminate one of only two or three premium natural

   and organic supermarkets and substantially increase concentration in the

   operation of premium natural and organic supermarkets in each of the geographic

   areas identified in paragraphs 38 and 40 hereof, each of which already is highly

concentrated;

b.     the proposed Acquisition will eliminate substantial and effective price and non-price competition between Defendant Whole Foods and Defendant Wild Oats in the operation of premium natural and organic supermarkets in each of the geographic areas identified in paragraphs 38 and 40 hereof, substantially reducing or eliminating competition in the operation of premium natural and organic supermarkets in each of those geographic areas;

c.     the proposed Acquisition will eliminate one of only two or three premium natural and organic supermarkets in each of the geographic areas identified in paragraphs 38 and 40 hereof, tending to create a monopoly in the operation of premium natural and organic supermarkets in each of those geographic areas;

d.     the proposed Acquisition will eliminate the only existing company that can serve as a meaningful springboard for a conventional supermarket operator to enter the premium natural and organic supermarket market in each of the geographic areas identified in paragraphs 38 and 40 hereof, tending to create a monopoly in the operation of premium natural and organic supermarkets in each of those geographic areas;

e.     the proposed Acquisition will eliminate defendant Whole Foods' closest competitor in geographic and product space in each of the geographic areas identified in paragraphs 38 and 40 hereof, resulting in the loss of direct and unique price and non-price competition that conveys to shoppers benefits that go well beyond the benefits resulting from the presence or threatened entry of other

-14-

retailers;

f.  the proposed Acquisition will result in the closing of numerous Wild Oats stores, reducing or eliminating consumer choice in premium natural and organic supermarkets; and

g.  the proposed Acquisition will enable the combined Whole Foods/Wild Oats to exercise market power unilaterally.

h.  the proposed acquisition will eliminate potential competition in numerous parts of the country.

44.  Entry or repositioning into the operation of premium natural and organic supermarkets is time-consuming, costly, and difficult.  As a result, entry or repositioning into the operation of premium natural and organic supermarkets in the geographic localities identified in paragraphs 38 and 40 hereof is unlikely to occur or to be timely or sufficient to prevent or defeat the anticompetitive effects described in paragraph 43 hereof.

45.  If the proposed Acquisition were to occur, it likely would be difficult or impossible to reconstitute Wild Oats as it presently exists and to restore the competitive *status quo ante*.  Further, it is likely that substantial harm to competition would occur in the interim even if it proved possible to reconstitute Wild Oats as it presently exists and to restore the competitive *status quo ante*.

46.  For the reasons stated above, the granting of the injunctive relief sought is in the public interest.

WHEREFORE, the Commission requests that the Court:

1.  Temporarily and preliminarily enjoin Defendant Whole Foods from taking any

further steps to acquire the stock, assets, or any other interest in Wild Oats, directly or indirectly;

2.    Retain jurisdiction and maintain the status quo pending the issuance of an administrative complaint by the Commission challenging the proposed Acquisition, and until such complaint is dismissed by the Commission, set aside by a court on review, or becomes final; and

3.    Award such other and further relief as the Court may determine to be proper and just, including costs.

Respectfully submitted,

Dated: June 6, 2007

WILLIAM BLUMENTHAL
General Counsel

JEFFREY SCHMIDT
Director

KENNETH L. GLAZER
Deputy Director
Bureau of Competition
Federal Trade Commission
600 Pennsylvania Ave, N.W.
Washington, DC 20580

MICHAEL J. BLOOM
CATHARINE M. MOSCATELLI (D.C. Bar No. 418510)
JOAN L. HEIM
THOMAS H. BROCK (D.C. Bar No. 939207)
MICHAEL A. FRANCHAK
ABIGAIL SLATER
JEANNE H. LIU
Federal Trade Commission
601 New Jersey Ave., N.W.
Washington, DC 20001
(202) 326-2475 (direct dial)
(202) 326-2284 (facsimile)
mjbloom@ftc.gov

-16-

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Federal Trade Commission | Whole Foods Market, Inc. and Wild Oats Markets, Inc. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ____ U.S.A. (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Michael J. Bloom Bureau of Competition, Federal Trade Commission 601 New Jersey Avenue, N.W. Washington, D.C. 20001 | Alden L. Atkins Clifford H. Aronson |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⦿ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ⦿ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☒ 410 Antitrust | ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Medical Malpractice ☐ 365 Product Liability ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act **Social Security:** ☐ 861 HIA ((1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g) **Other Statutes** ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. *(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil | |
|---|---|---|---|
| **Real Property** ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent, Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property **Personal Property** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | **Bankruptcy** ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157 **Prisoner Petitions** ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition **Property Rights** ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark **Federal Tax Suits** ☐ 870 Taxes (US plaintiff or defendant ☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty** ☐ 610 Agriculture ☐ 620 Other Food &Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 RR & Truck ☐ 650 Airline Regs ☐ 660 Occupational Safety/Health ☐ 690 Other **Other Statutes** ☐ 400 State Reapportionment ☐ 430 Banks & Banking ☐ 450 Commerce/ICC Rates/etc. ☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations ☐ 480 Consumer Credit ☐ 490 Cable/Satellite TV ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 900 Appeal of fee determination under equal access to Justice ☐ 950 Constitutionality of State Statutes ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

15 U.S.C. section 53(b), to enjoin the consummation of any acquisition by defendant, as a violation of section 7 of the Clayton Act, 15 U.S.C. section 18.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** [............] Check YES only if demanded in complaint<br>**JURY DEMAND:** YES ☐ NO ☐ |
|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE *June 6, 2007*    SIGNATURE OF ATTORNEY OF RECORD  *Thomas H. Brock*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.