**IN THE UNITED STATES DISTRICT COURT**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20580<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>WHOLE FOODS MARKET, INC.<br>550 Bowie Street<br>Austin, Texas 78703<br><br>and<br><br>WILD OATS MARKETS, INC.<br>1821 30th Street<br>Boulder, Colorado 80301<br><br>　　　　　　　　　　　Defendants. | Civ. No. 07-cv-01021 - PLF<br><br>COMPLAINT FOR TEMPORARY<br>RESTRAINING ORDER AND<br>PRELIMINARY INJUNCTION<br>PURSUANT TO SECTION 13(b)<br>OF THE FEDERAL TRADE<br>COMMISSION ACT<br><br><br><br><br>PUBLIC VERSION |

**I.**
**INTRODUCTION**

　　Whole Foods Market, Inc.'s ("Whole Foods") proposed acquisition of Wild Oats Markets, Inc. ("Wild Oats"), will substantially lessen competition and thereby cause significant harm to consumers. This merger, involving the two leading operators of premium natural and organic supermarkets, will increase prices and reduce quality and services in a number of geographic markets throughout the United States. Whole Foods' Chief Executive Officer John Mackey bluntly advised his Board of Directors of the purpose of this acquisition:

 To prevent this consumer harm, the Federal Trade Commission ("Commission") petitions the Court to maintain the status quo and enjoin defendants from allowing Whole Foods to acquire any stock, assets, or other interests in Wild Oats, during the pendency of an administrative proceeding, which will be commenced by the Commission pursuant to Sections 7 and 11 of the Clayton Act, 15 U.S.C. §§ 18 and 21, and Section 5(b) of the FTC Act, 15 U.S.C. § 45(b).

## II.
## THE PARTIES

1.  Plaintiff Commission is an administrative agency of the United States Government established, organized, and existing pursuant to the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*, with its principal offices at 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580. The Commission is vested with authority and responsibility for enforcing, among other things, Section 7 of the Clayton Act and Section 5 of the FTC Act.

2.  Defendant Whole Foods is a corporation organized, existing, and doing business under and by virtue of the laws of Texas, with its office and principal place of business at 550

Bowie Street, Austin, Texas 78703.  Established in 1980, Whole Foods operates approximately 190 premium natural and organic supermarkets in more than 30 states and the District of Columbia.  It is the largest operator of premium natural and organic supermarkets in the United States.

3. According to Mr. Mackey, Whole Foods is ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

4. Defendant Wild Oats is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 1821 30th Street, Boulder, Colorado 80301.  Wild Oats is the second largest operator of premium natural and organic supermarkets in the United States, currently operating numerous premium natural and organic supermarkets throughout the United States.

5. Founded in 1987, Wild Oats provides a broad selection of natural, organic, and gourmet foods, environmentally friendly products, and natural vitamins, remedies, and body care products.  The firm was built "on the vision of enhancing the lives of our customers and our people with products and education that support health and wellbeing."  As Wild Oats' Vice President of Marketing Laura Coblentz has described: "Wild Oats is more than a retail chain   it's about a lifestyle, and that's how we market ourselves."

6. Consumers spent a combined total of $6.5 billion in fiscal 2006 at Whole Foods and Wild Oats.  Approximately ███ of that total was spent on perishable products, such as

-3-

produce, meat, seafood, baked goods, and prepared foods.

## III.
## JURISDICTION AND VENUE

7.     Jurisdiction is based on Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and 28 U.S.C. §§ 1337 and 1345.  Venue is proper under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); 28 U.S.C. § 1391(b) and (c); and Section 12 of the Clayton Act, 15 U.S.C. § 22.

8.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), provides in pertinent part:

> (b)     Whenever the Commission has reason to believe --
>
> (1) that any person, partnership or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
>
> (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice.  Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond . . . .

9.     Whole Foods and Wild Oats are engaged in commerce, as "commerce" is defined in Section 1 of the Clayton Act, 15 U.S.C. § 12(a).  The businesses of Whole Foods and Wild Oats have been and are now in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

10.     Whole Foods transacts business within the District of Columbia.

11. Wild Oats transacts business within the District of Columbia.

## IV.
## The Proposed Acquisition and the Commission's Response

12. On February 21, 2007, Whole Foods and Wild Oats executed an agreement whereby Whole Foods proposes to acquire all of the voting securities of Wild Oats through WFMI Merger Co., a wholly-owned subsidiary of Whole Foods. The purchase will be effected through tender offer for all shares of Wild Oats common stock. The total cost of the acquisition is expected to be approximately $671 million in cash and assumed debt.

13. The closing of the transaction is subject to clearance under the Hart-Scott-Rodino Antitrust Improvements Act, 15 U.S.C. § 18a. The defendants have advised the Commission that, in the absence of a court order to the contrary, Defendant Whole Foods will be free to acquire all shares of Wild Oats common stock after 11:59 pm June 6, 2007.

14. Defendant Whole Foods intends to then merge Wild Oats into Whole Foods; to close ▆▆▆▆ Wild Oats stores; ▆▆▆▆▆▆▆▆▆▆▆▆ and to operate the remainder as Whole Foods stores.

15. On June 5, 2007, following a three-month investigation, the Commission determined that it has reason to believe that the Acquisition would violate Section 7 of the Clayton Act and Section 5 of the Federal Trade Commission Act because the Acquisition may substantially lessen competition and/or tend to create a monopoly in the operation of premium natural and organic supermarkets across the United States.

16. On that same day, the Commission determined that the injunctive relief requested herein would be in the public interest and authorized its staff to seek a temporary

restraining order ("TRO") and preliminary injunction ("PI") in federal district court under Section 13(b) of the FTC Act. The purpose of the TRO and PI is to prevent the Acquisition during the pendency of an administrative proceeding to be initiated by the Commission under Section 5(b) of the FTC Act, 15 U.S.C. § 45(b), challenging the legality of the proposed Acquisition under Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. The legality of the proposed Acquisition, and the appropriate remedy in the event it is found illegal, will be determined by the Commission through those administrative proceedings, subject to judicial review.

## V.
## PREMIUM NATURAL AND ORGANIC FOODS INDUSTRY

17.   "Natural foods" are foods that are minimally processed and largely or completely free of artificial ingredients, preservatives, and other non-naturally occurring substances.

18.   "Organic foods" are foods that are produced using: agricultural practices that promote healthy ecosystems; no genetically engineered seeds or crops, sewage sludge, long-lasting pesticides or fungicides; healthy and humane livestock management practices including use of organically grown feed, ample access to fresh air and the outdoors, and no antibiotics or growth hormones; and food processing that protects the healthfulness of the organic product, including the avoidance of irradiation, genetically modified organisms, and synthetic preservatives.

19.   Pursuant to the United States Department of Agriculture's ("USDA's")

Organic Foods Production Act of 1990 (the " Organic Rule"), all products labeled " organic" must be certified by a federally accredited certifying agency as satisfying USDA standards for organic foods.  The Organic Rule further requires that retailers of products labeled " organic" use handling, storage, and other practices to protect the integrity of organically-labeled products, including: preventing commingling of organic and non-organic (" conventional") products; protecting organic products from contact with prohibited substances; and maintaining records that document adherence to the USDA requirements.

20.     Premium natural and organic supermarkets offer a distinct set of products and services to a distinct group of customers in a distinctive way, all of which significantly distinguish premium natural and organic supermarkets from conventional supermarkets and other retailers of food and grocery items (" Retailers").

21.     Premium natural and organic supermarkets are not simply outlets for natural and organic foods.  Whole Foods' Chief Executive Officer John Mackey acknowledged  that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In announcing its fourth quarter results for 2006, Whole Foods stated that  "Whole Foods Market is about much more than just selling 'commodity' natural and organic products.  We are a lifestyle retailer and have created a unique shopping environment built around satisfying and delighting our customers."  Specifically, Mr. Mackey has said that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

-7-

22.     To begin with, premium natural and organic supermarkets focus on perishable products, offering a vast selection of very high quality fresh fruits and vegetables including exotic and hard-to-find items and other perishables. As Whole Foods stated in its 2006 annual report, "We believe our heavy emphasis on perishable products differentiates us from conventional supermarkets and helps us attract a broader customer base." Whole Foods' Mr. Mackey has also emphasized the importance of high quality perishable foods to Whole Foods' business model: ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

23.     Relative to conventional supermarkets and most other Retailers, premium natural and organic supermarkets target shoppers who are, in the words of one of the defendants, ███████████████████████████████████████ The core shoppers of premium natural and organic supermarkets have a preference for natural and organic products, and premium natural and organic supermarkets offer an extensive selection of natural and organic products to enable those shoppers to purchase substantially all of their food and grocery requirements during a single shopping trip.

24.     Premium natural and organic supermarkets are differentiated from other Retailers in that premium natural and organic supermarkets offer more amenities and service venues; higher levels of service and more knowledgeable service personnel; and special features such as in-store community centers.

25.     Premium natural and organic supermarkets promote a lifestyle of health and

ecological sustainability, to which a significant portion of their customers are committed. Through the blending together of these elements and others, premium natural and organic supermarkets strive to create a varied and dynamic experience for shoppers, inviting them to make the premium natural and organic supermarket a destination to which shoppers come not merely to shop, but to gather together, interact, and learn, often while enjoying shared eating and other experiences.  Premium natural and organic supermarkets expend substantial resources on developing a brand identity that connotes this blend of elements, and especially the qualities of trustworthiness (*viz.*, that all products are natural and, when so-labeled, organic, that the store's suppliers practice humane animal husbandry and provide humane working environments for employees, and that the store's actions are ecologically sound) and qualitative superiority to other Retailers.

26.   Relative to most other Retailers, premium natural and organic supermarkets' products often are priced at a premium reflecting not only product quality and service, but the marketing of a lifestyle to which their customers aspire.

27.   As Whole Foods' Mr. Mackey has acknowledged, 

28.   Mr. Mackey has also said that

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████

29. Wild Oats' most recent 10K filed with the Securities and Exchange Commission noted: " Despite the increase in natural foods sales within conventional supermarkets, [Wild Oats] believe[s] that conventional supermarkets still lack the concentration on a wide variety of natural and organic products, and emphasis on service and consumer education that our stores offer."

30. Premium natural and organic supermarkets are also very different from mass-merchandisers, such as Wal-Mart and Target. According to Mr. Mackey, ███████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████

31. With respect to Trader Joe's, Mr. Mackey stated: ███████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████

32. Unlike other natural and organic product retailers, premium natural and organic supermarkets offer an extensive selection of natural and organic products to enable shoppers to purchase substantially all of their food and grocery requirements during a single

-10-

shopping trip. As a result, premium natural and organic supermarkets are appreciably larger than other natural and organic retailers in square footage, number of products offered, inventory for each product offered, and annual dollar sales.

33. Premium natural and organic supermarkets' primary competitors are other premium natural and organic supermarkets. Shoppers with preferences for premium natural and organic supermarkets are not likely to switch to other retailers in response to a small but significant non-transitory increase in premium natural and organic supermarket prices.

## VI.
## RELEVANT MARKETS

34. The operation of premium natural and organic supermarkets is a distinct " line of commerce" within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

35. Unlike conventional supermarkets, which tend to draw their customers from within a radius of three or four miles, premium natural and organic supermarkets tend to draw their customers from within a radius of five or six miles. As a result, areas as small as approximately five or six miles in radius from premium natural and organic supermarkets or as large as a metropolitan area are distinct " sections of the country" within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## VII.
## COMPETITION BETWEEN WHOLE FOODS AND WILD OATS

36. Whole Foods and Wild Oats, respectively, are the largest and second largest operators of premium natural and organic supermarkets in the United States.

37.     Whole Foods and Wild Oats are the only two nationwide operators of premium natural and organic supermarkets in the United States.

38.     Whole Foods and Wild Oats are one another's closest competitor in twenty-one geographic markets.  Consumers in those markets have reaped price and non-price benefits of competition between Whole Foods and Wild Oats.  The markets where the two compete head to head are: Albuquerque, NM; Medford, MA (suburban Boston); Saugus, MA (suburban Boston); Boulder, CO; Hinsdale, IL (suburban Chicago); Evanston, IL (suburban Chicago); Cleveland, OH; Denver, CO; Lakewood, CO; Ft. Collins, CO; West Hartford, CT; Henderson, NV; Indianapolis, IN; Kansas City-Overland Park, KS; Las Vegas, NV; Los Angeles-Santa Monica-Brentwood, CA; Louisville, KY; Omaha, NE; Pasadena, CA; Phoenix, AZ; Portland, ME; Portland, OR; Princeton, NJ; St. Louis, MO; and Tualatin, OR.

39.     ███████████████████████████████████████████████████████
███████████████████████████████████ Consumers in those markets benefitted from the new competition in those markets.

40.     There are other geographic markets in which only one or the other is present.  In many of these markets, Wild Oats or Whole Foods plans, but for the proposed Acquisition, to enter to offer direct and unique competition to the other. ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████

41.     Whole Foods' Mr. Mackey has said that ████████████████████
████████████████████████████████████████████████████████

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Each of the parties, in anticipation of entry by the other, engages in aggressive price and non-price competition that conveys to shoppers benefits that go well beyond the benefits resulting from the presence or threatened entry in those geographic markets of other retailers. In addition, when Whole Foods or Wild Oats expects the other to enter one of its markets, each plans substantial improvements in quality, including renovations, expansions, and competitive pricing. As Mr. Mackey explained upon Whole Foods' entry into Nashville: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Neither company responds in the same way to competition from conventional supermarkets or other retailers.

42. Consumers have benefitted directly from the price and quality competition between Whole Foods and Wild Oats. If the acquisition occurs, those benefits will be lost if the acquisition occurs in the markets where the two currently compete and they will not occur in those markets where each is planning to expand.

## VIII.
## LIKELIHOOD OF SUCCESS ON THE MERITS AND NEED FOR RELIEF

43. The Commission is likely ultimately to succeed in demonstrating, in administrative proceedings to adjudicate the legality of the proposed merger, that the proposed Acquisition would violate Section 7 of the Clayton Act and Section 5 of the Federal Trade Commission Act. In particular, the Commission is likely ultimately to succeed in demonstrating, among other things, that:

a. the proposed Acquisition will eliminate one of only two or three premium natural and organic supermarkets and substantially increase concentration in the operation of premium natural and organic supermarkets in each of the geographic areas identified in paragraphs 38 and 40 hereof, each of which already is highly concentrated;

b. the proposed Acquisition will eliminate substantial and effective price and non-price competition between Defendant Whole Foods and Defendant Wild Oats in the operation of premium natural and organic supermarkets in each of the geographic areas identified in paragraphs 38 and 40 hereof, substantially reducing or eliminating competition in the operation of premium natural and organic supermarkets in each of those geographic areas;

c. the proposed Acquisition will eliminate one of only two or three premium natural and organic supermarkets in each of the geographic areas identified in paragraphs 38 and 40 hereof, tending to create a monopoly in the operation of premium natural and organic supermarkets in each of those geographic areas;

d. the proposed Acquisition will eliminate the only existing company that can serve as a meaningful springboard for a conventional supermarket operator to enter the premium natural and organic supermarket market in each of the geographic areas identified in paragraphs 38 and 40 hereof, tending to create a monopoly in the operation of premium natural and organic supermarkets in each of those geographic areas;

e. the proposed Acquisition will eliminate defendant Whole Foods' closest

competitor in geographic and product space in each of the geographic areas identified in paragraphs 38 and 40 hereof, resulting in the loss of direct and unique price and non-price competition that conveys to shoppers benefits that go well beyond the benefits resulting from the presence or threatened entry of other retailers;

    f.    the proposed Acquisition will result in the closing of numerous Wild Oats stores, reducing or eliminating consumer choice in premium natural and organic supermarkets; and

    g.    the proposed Acquisition will enable the combined Whole Foods/Wild Oats to exercise market power unilaterally.

    h.    the proposed acquisition will eliminate potential competition in numerous parts of the country.

    44.    Entry or repositioning into the operation of premium natural and organic supermarkets is time-consuming, costly, and difficult. As a result, entry or repositioning into the operation of premium natural and organic supermarkets in the geographic localities identified in paragraphs 38 and 40 hereof is unlikely to occur or to be timely or sufficient to prevent or defeat the anticompetitive effects described in paragraph 43 hereof.

    45.    If the proposed Acquisition were to occur, it likely would be difficult or impossible to reconstitute Wild Oats as it presently exists and to restore the competitive *status quo ante*. Further, it is likely that substantial harm to competition would occur in the interim even if it proved possible to reconstitute Wild Oats as it presently exists and to restore the competitive *status quo ante*.

46. For the reasons stated above, the granting of the injunctive relief sought is in the public interest.

WHEREFORE, the Commission requests that the Court:

1. Temporarily and preliminarily enjoin Defendant Whole Foods from taking any further steps to acquire the stock, assets, or any other interest in Wild Oats, directly or indirectly;

2. Retain jurisdiction and maintain the status quo pending the issuance of an administrative complaint by the Commission challenging the proposed Acquisition, and until such complaint is dismissed by the Commission, set aside by a court on review, or becomes final; and

3. Award such other and further relief as the Court may determine to be proper and just, including costs.

                            Respectfully submitted,


Dated: June 6, 2007　　　　　　　　　__/s/_____

| | |
|---|---|
| WILLIAM BLUMENTHAL<br>General Counsel | MICHAEL J. BLOOM<br>CATHARINE M. MOSCATELLI (D.C. Bar No. 418510)<br>JOAN L. HEIM |
| JEFFREY SCHMIDT<br>Director | THOMAS H. BROCK (D.C. Bar No. 939207)<br>MICHAEL A. FRANCHAK<br>ABIGAIL SLATER |
| KENNETH L. GLAZER<br>Deputy Director<br>Bureau of Competition<br>Federal Trade Commission<br>600 Pennsylvania Ave, N.W.<br>Washington, DC 20580 | JEANNE H. LIU<br>Federal Trade Commission<br>601 New Jersey Ave., N.W.<br>Washington, DC 20001<br>(202) 326-2475 (direct dial)<br>(202) 326-2284 (facsimile)<br>mjbloom@ftc.gov |

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing papers were served by emailing a copy to:

>Alden L. Atkins, Esq.
>Vinson & Elkins
>The Willard Office Building
>1455 Pennsylvania Ave., N.W.
>Suite 600
>Washington, D.C.  20004-1008
>(202) 639-6613
>Aatkins@VELaw.com
>
>Clifford H. Aronson, Esq.
>c/o Skadden, Arps, Slate, Meagher & Flom
>1440 New York Avenue, N.W.
>Washington, D.C. 20005
>(212) 735-2614
>Caronson@Skadden.com

Dated: June 7, 2007                        _____/s/_____
                                                          Thomas H. Brock, Esq.