IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

WHOLE FOODS MARKET, INC.,

and

WILD OATS MARKETS, INC.

    Defendants.

Civil Action No.: 07-CV-1021-PLF

---

**OPPOSITION TO MOTION OF DEFENDANT WHOLE FOODS MARKET, INC.
FOR ENTRY OF A FINAL PROTECTIVE ORDER.**

Apollo Management Holding, L.P., ("Apollo"), by and through its attorneys, Morgan, Lewis & Bockius LLP, respectfully submits this Opposition to Motion of Defendant Whole Foods Market, Inc. for Entry of a Final Protective Order.

**FACTUAL AND PROCEDURAL BACKGROUND**

Pursuant to a *subpoena duces tecum* issued to Apollo by the Federal Trade Commission ("FTC") on April 9, 2007, Apollo produced documents to the FTC on April 16 and 18, 2007. Declaration of Laurie Medley ¶ 1. Apollo designated these documents as "**highly confidential**" and requested that these documents be accorded confidential treatment pursuant to the confidentiality provisions of the Federal Trade Commission Act, 15 U.S.C. sec. 57b-2(c), the Commission's Rules of Practice, 4.10-4.11, 16 C.F.R. secs. 4.10-4.11, and other applicable statutes and regulations. Id. ¶¶ 2-3. Apollo further requested these documents not be disclosed in response to any requests under the Freedom of Information Act. Id. ¶ 2. These documents

included, among other things, highly confidential and proprietary information regarding Apollo's business plans, acquisition strategies, pricing analyses, and financial projections.  Id. ¶ 4.  Specifically, these documents included Apollo's diligence and valuation materials relating to (i) potential acquisitions in the supermarket industry; (ii) the potential purchase of Wild Oats Market, Inc. ("Wild Oats") as a whole, and (iii) the purchase of certain Wild Oats stores from Whole Foods Market, Inc. ("Whole Foods") after the Whole Foods acquisition of Wild Oats is completed.  Id. ¶ 5.  Accordingly, if Whole Foods' motion is granted, its General Counsel, Roberta L. Lang ("Lang"), would have access to confidential and proprietary information related to (i) Apollo's potential acquisition of other companies in the supermarket industry, and (ii) Apollo's acquisition of assets from Whole Foods.  These disclosures, which have no relevance to the competitive effects analysis in this case, could undermine Apollo's investment strategy and therefore result in serious injury to Apollo.  Id. ¶ 6.

       The parties to this action submitted a carefully-negotiated and jointly stipulated Interim Protective Order (the "IPO") which the Court entered on June 8, 2007.  Federal Trade Commission's Notice of Third Party Interest in Defendants' Motion for Entry of a Final Protective Order, filed June 15, 2007 ("Notice of Third Party Interest") at 1.  The IPO provided, among other things, that discovery materials could be designated as "Restricted Confidential Discovery Material" or "Confidential Discovery Material."  IPO, "Definitions," ¶¶ 4, 16.  Documents in the former category could be shared with a very limited group, and defendants' inside counsel were not authorized to receive documents so designated.  Id., "Terms and Conditions of Protective Order," ¶ 8.  Documents in the latter category could be shared with an as-yet unnamed representative of Whole Foods.  Id., "Terms and Conditions of Protective Order," ¶ 9.

Three days after the Court entered the IPO, Whole Foods unilaterally moved for entry of a new protective order which would give Lang unrestricted access to *all* of the materials the FTC obtained from third parties, including the documents received from Apollo relating to its diligence and valuation efforts related to potential acquisitions, including the acquisitions related to Wild Oats.  Notice of Third Party Interest at 1; see also Motion of Defendant Whole Foods Market, Inc. for Entry of a Final Protective Order.  Whole Foods seeks such relief regardless of how, or even if, such documents are used by the parties in this case or whether such documents are relevant to any claims or defenses in this action.  In the case of the diligence and valuation materials produced by Apollo, it is clear that such documents have no bearing on the competitive effects analysis in this case.

## ARGUMENT

In support of its motion, Whole Foods claims that unless Lang is given "full access" to all of the discovery materials in this case, it will be "hobbled" in preparing its defense. Memorandum of Points and Authorities in Support of the Motion of Defendant Whole Foods Market, Inc. for Entry of a Final Protective Order ("Whole Foods Brief"), at 2-3; see also Declaration of Roberta L. Lang ("Lang Decl.") ¶ 2 ("it is essential that I be given access to all confidential information") (emphasis added).  To that end, Whole Foods proposes that the two-tiered structure of the IPO, which distinguishes between Restricted Confidential Discovery Material and Confidential Discovery Material, and allows differing levels of access thereto, be abandoned in favor of a "one size fits all" approach which allows Lang access to all documents regardless of content, relevance, or importance to this action.  Such an approach flies in the face of the IPO, which was jointly agreed upon by the parties and approved by this Court, and wholly ignores the fact that Whole Foods will be minimally prejudiced, if at all, if its motion is denied.

Whole Foods essentially argues that if, as it claims, Lang is not involved in competitive decisionmaking at Whole Foods, she is, without more, entitled to obtain and review all confidential materials produced in this action. However, even taking Whole Foods' claims regarding Lang's role at the Company at face value, such an extreme outcome need not, and should not, follow.

### A.  LANG IS NOT "WALLED OFF" FROM COMPETITIVE DECISIONMAKING

Without calling into doubt the accuracy of Whole Foods' assertions regarding the role Lang plays, or may play, in competitive decisionmaking, it is clear that Lang is involved with Whole Foods' employees who are engaged in making competitive decisions. For example:

- Lang provides legal advice to the "Executive Team" or "Eteam," which makes competitive decisions at the national level. Lang Decl. ¶ 6.

- Lang is a voting member of "Whole Foods Leadership Network" which "may discuss the competitive landscape generally." Id. ¶ 7.

- Lang is the inside attorney "most familiar with the company and [she] know[s] where [competitive information] can be found." Id. ¶ 9.

Accordingly, while Lang may not directly make decisions regarding competitive activities, it is clear that she is not absolutely "walled off" from such activities.

Courts have long noted the fact that inside counsel stand in a unique relationship to their employers and have repeatedly held that certain inside counsel should be restricted from having full access to confidential materials obtained from other parties. See FTC v. Exxon Corp., 636 F.2d 1336, 1350 (D.C. Cir. 1980) ("It has been noted that in-house counsel stand in a unique relationship to the corporation in which they are employed. Although in-house counsel serve as legal advocates and advisors for their client, their continuing employment often intimately

involves them in the management and operation of the corporation of which they are a part."); Carpenter Tech. Corp. v. Armco, Inc., 132 F.R.D. 24, 27 (E.D. Pa. 1990) ("Courts have recognized the legitimacy of [] concerns [that inside counsel are involved in day-to-day commercial affairs].").

Here, given the fact that Lang plays some, even if limited, role in the competitive decisionmaking process at the company, Whole Foods' motion to grant Lang unfettered access to all confidential discovery material in this action should be denied.  See, e.g., Akzo N.V. v. U.S. International Trade Comm., 808 F.2d 1471, 1483-84 (Fed. Cir. 1986) (noting that "taking a conservative position on the side of optimum shielding of business information" in resolving the "difficult and controversial question of the role of in-house counsel and the parties' need for participation by its in-house personnel" was an "appropriate balancing" of needs); see also Exxon, 636 F.3d at 1350-51 ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.  Long after [the transaction] in this case, it is possible that these prominent members of Exxon's legal staff will help manage and advise Exxon's [business] effort[s].").

In addition, Whole Foods has made insufficient showing that its outside counsel are not capable of adequately representing its interests in this litigation.  Whole Foods claims, without more, that its "arms would be tied behind its back" if the Court denies Whole Foods' requested relief, but makes no further statements regarding how or why giving its outside counsel full and unfettered access to all discovery materials produced in this litigation, as provided by the IPO, is inadequate.  Whole Foods' Brief at 2.  Instead, it makes boilerplate claims that Lang advises the company on litigation strategy, id. at 3, is "deeply involved in the legal affairs at Whole Foods," id. at 5, is "uniquely positioned" to advise management on "important legal issues," id., and is

"uniquely positioned to understand the evidence in this case, to appreciate its legal significance, and to identify sources of information within the company," id. Such generic claims are true of virtually every General Counsel at virtually every company, and do not militate for amending the IPO. While Apollo does not dispute that Lang could make a contribution to her company's defense, that fact alone does not outweigh the significant harm that could accrue to Apollo if the confidentiality of its trade secrets were breached through preventable, and unnecessary, disclosure.

**B.   WHOLE FOODS' REQUESTED RELIEF IS OVERBROAD**

For the reasons stated above, Apollo believes that Whole Foods' motion should be denied in its entirety. However, in the event that the Court determines that Lang should have certain access to confidential discovery material, Apollo respectfully requests that the Court limit the scope of Lang's access to such documents.

1.   <u>Lang Should not be Granted Access to Restricted Confidential Discovery Material</u>

Even assuming, without more, that Lang plays no role in the competitive decisionmaking process at the company, it is clear that Lang need not be granted access to all confidential discovery material in order to assist Whole Foods in the current action. For example, Whole Foods does not explain why Lang must review "the most sensitive" information designated as Restricted Confidential Discovery Material in order to effectively assist in the representation of the company. Id. at 8. Restricted Confidential Discovery Material includes "marketing plans, pricing plans, financial information, trade secrets, or Documents of a like nature." IPO, "Definitions," ¶ 16. Giving Lang access to these types of third party documents, without a showing that such documents are in fact relevant to the claims or defenses in this action, is unwarranted on the facts of this case. In fact, as the IPO makes clear, the parties contemplated

that a Whole Foods representative could and would get access to documents marked Confidential Discovery Material, but specifically excluded such distribution for any documents marked with the more restrictive discovery label. Id., "Terms and Conditions of Protective Order," ¶¶ 8-9.

With respect to the diligence and valuation materials produced by Apollo, which qualify as Restricted Confidential Discovery Material, the disclosure of such documents to Lang could result in serious injury to Apollo as discussed above. This harm to Apollo is not balanced by any appreciable benefit to Whole Foods as these documents have little bearing on the key issues in this case. Accordingly, allowing Lang unrestricted access to Confidential Discovery Material would effectively balance Whole Foods' need to involve its General Counsel in this litigation with the need to maintain the confidentiality of Apollo's, and other third parties', most sensitive trade secrets. As the parties clearly recognized, "this particularly restrictive designation [of Restricted Confidential Discovery Material] should be utilized for only a select number of Documents." Id., "Definitions," ¶ 16. Given the relative handful of documents subject to the more restrictive designation, Whole Foods would be minimally prejudiced if such documents were limited to its outside counsel.

  2. <u>The Court Should Impose Limits of the Scope of Lang's Access to Restricted Confidential Discovery Material</u>

Finally, if the Court determines that Lang should have access to confidential discovery materials regardless of how such documents have been labeled, Apollo respectfully requests that the Court restrict Lang's access to such materials by granting Lang access only to transcripts and unredacted pleadings, without any exhibits thereto, and further restrict the method by which she may review such materials.

In a recent case also involving the FTC, the United States District Court for the District of New Mexico was faced with similar issues regarding the disclosure of confidential documents

to defendants' General Counsel.  See FTC v. Foster, No. CIV 07-352 JB/ACT (D.N.M. Apr. 26, 2007) (Whole Foods' Brief Ex. D).  In that case, the court balanced the interests of the parties and ruled that General Counsel were entitled to "limited access to some confidential information."  Id. at 13 (emphasis added).  Specifically, the court allowed defendants' General Counsel to "have access to confidential deposition transcripts, transcripts of FTC investigative hearings, and un-redacted pleadings, without exhibits, in the office(s) of [the company's] outside counsel, and who may take notes regarding such material but may not remove these notes from the office(s) of [the company's] outside counsel." Id. at 15.  The court further noted that "the limited nature of this [relief] substantially lessens the danger that [defendants] will be able to view, yet alone use, any information that could provide them advantages over their competitors." Id. at 13-14.

Accordingly, in the event that the Court grants Whole Foods' motion in part, Apollo respectfully requests that the Court impose the same types of limits on Lang's access to confidential information as imposed by the Foster court.  Here, as in Foster, such limitations would substantially reduce the danger that Apollo's most sensitive and confidential trade secrets might be disclosed to Apollo's competitive disadvantage.

## CONCLUSION

For the foregoing reasons, Apollo respectfully requests that the Court deny Whole Foods' motion.  In the alternative, Apollo respectfully requests that the Court limit Lang's access to discovery materials to documents marked Confidential Discovery Material, or limit the scope of her access to documents marked Restricted Confidential Discovery Material.

Dated: June 22, 2007

Respectfully Submitted,

/s/ Jonathan M. Rich
Jonathan M. Rich (DC Bar No. 447943)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Attorneys for Apollo Management Holding, L.P.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
---------------------------------------------------------------X
FEDERAL TRADE COMMISSION,                  :
                                           :
              Plaintiff,                   :
                                           :
       v.                                  :
                                           :
WHOLE FOODS MARKET, INC.,                  :    Civil Action No.: 07-CV-1021-PLF
                                           :
and                                        :
                                           :
WILD OATS MARKETS, INC.                    :
                                           :
              Defendants.                  :
                                           :
---------------------------------------------------------------X
```

## [PROPOSED] ORDER

Upon consideration of the Motion of Defendant Whole Foods Market, Inc. for Entry of a Final Protective Order (the "Motion"), it is hereby

[**ORDERED**, that the Motion is **denied**.]

[**ORDERED**, that Roberta L. Lang may have access to all documents marked Confidential Discovery Material, but not documents marked Restricted Confidential Discovery Material.]

[**ORDERED**, that Roberta L. Lang may have access to unredacted pleadings and transcripts, without exhibits, in the office(s) of Whole Foods Market, Inc.'s outside counsel, and may take notes regarding such material but may not remove these notes from such office(s).]

DATED:_____          _____
                                       Paul L. Friedman
                                       United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------X

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

WHOLE FOODS MARKET, INC.,

and

WILD OATS MARKETS, INC.

        Defendants.

---------------------------------------------------------------X

Civil Action No.: 07-CV-1021-PLF

## DECLARATION OF LAURIE MEDLEY

I, Laurie Medley, Vice President of Apollo Management Holding, L.P. ("Apollo"), hereby declare as follows:

1. In response to a *subpoena duces tecum* issued on April 9, 2007 by the Federal Trade Commission ("FTC") to Apollo, Apollo produced documents to the FTC on April 16 and 18, 2007.

2. Pursuant to the confidentiality provisions of the Federal Trade Commission Act, 15 U.S.C. sec. 57b-2(c), the Commission's Rules of Practice, 4.10-4.11, 16 C.F.R. secs. 4.10-4.11, and other applicable statutes and regulations, Apollo requested that the documents produced to the FTC be accorded confidential treatment and that they not be disclosed in response to any requests under the Freedom of Information Act.

3. These documents were further designated as **highly confidential**.

4.      These documents included, among other things, highly confidential and proprietary information regarding Apollo's business plans, acquisition strategies, pricing analyses, and financial projections.

5.      Specifically, these documents included Apollo's diligence and valuation materials relating to (i) potential acquisitions in the supermarket industry; (ii) the potential purchase of Wild Oats Market, Inc. ("Wild Oats") as a whole, and (iii) the purchase of certain Wild Oats stores from Whole Foods Market, Inc. ("Whole Foods") after the Whole Foods acquisition of Wild Oats is completed (the "Confidential Materials").

6.      The disclosure of the Confidential Materials to inside counsel for Whole Foods could undermine Apollo's investment strategy and therefore result in serious injury to Apollo.

Dated: June 22, 2007

_____
Laurie Medley