## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                    )
FEDERAL TRADE COMMISSION            )
                                    )
            Plaintiff,              )
                                    )
      v.                            )       Civil Action No. 1:07-CV-01021-PLF
                                    )
                                    )
WHOLE FOODS MARKET, INC.            )       Judge: The Hon. Paul L. Friedman
                                    )
and                                 )
                                    )
WILD OATS MARKETS, INC.             )
                                    )
            Defendants.             )
_____)

### THE KROGER CO.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE MOTION OF DEFENDANT WHOLE FOODS MARKET, INC. FOR ENTRY OF A FINAL PROTECTIVE ORDER

The Kroger Co. ("Kroger") respectfully submits this memorandum in opposition to the Motion Of The Defendant Whole Foods Market, Inc. For Entry Of A Final Protective Order (the "Whole Foods Motion").  For the reasons set forth below, this Court should deny the Whole Foods Motion.

### INTRODUCTION

During its pre-suit investigation into the proposed merger between Whole Foods Market Inc. ("Whole Foods") and Wild Oats Market, Inc. ("Wild Oats"), the Federal Trade Commission ("FTC") served a Civil Investigative Demand on Kroger, seeking a number of categories of confidential and highly confidential information about Kroger.  Kroger requested that its confidential business and trade secrets be protected from disclosure to unauthorized third parties, including its competitors, and the FTC made clear it would treat the documents and information

produced by Kroger confidentially consistent with its obligations under the law.  Kroger then produced highly sensitive trade secret information to the FTC.

On June 6, 2007, the FTC sued Whole Foods and Wild Oats.  Two days later, on June 8, 2007, the Court entered an Interim Protective Order ("IPO") that permitted the parties to share certain discovery with in-house counsel at Whole Foods and Wild Oats, but also prevented certain highly confidential information from being shared with in-house employees.  Then, on June 11, 2007, Whole Foods filed its motion, seeking to modify the IPO to permit sharing of all discovery – even the most highly sensitive information produced by companies that generally compete with Whole Foods – with the in-house General Counsel at Whole Foods.

The Whole Foods Motion raises critically important issues for Kroger.  Kroger has no problem with its information being produced subject to the terms of the IPO, but the "Final" protective order proposed by Whole Foods is simply unacceptable.  As set forth below, Kroger can demonstrate that a subset of the information that it produced to the FTC is highly sensitive commercial information that literally could move markets in Kroger's stock; as a result, it should be protected from disclosure to anyone – including, of course, employees at Whole Foods, which generally competes with Kroger.

Kroger joins in Sections II - IV of the brief filed by third-party Trader Joe's ("Trader Joe's Brief").[1]  The Trader Joe's Brief makes clear that under well-established law, in order for Whole Foods' in-house General Counsel to be granted access to Kroger's highly confidential information, Whole Foods bears the burden to show that: (1) this specific information needs to be shared with its in-house General Counsel; and (2) the General Counsel, Ms. Lang, does not participate in any "competitive decision-making" at Whole Foods.

Whole Foods has not met and cannot meet its burden to show that it needs to share these particular highly sensitive Kroger documents with Ms. Lang.  Further, most of Ms. Lang's

---

[1] Kroger does not join in those portions of Sections II-IV that relate specifically to discussions about materials produced by Trader Joe's.

declaration actually establishes that many of her responsibilities involve precisely the type of influence in competitive decision-making that should bar her access to Kroger's confidential information. A January 2006 article about Ms. Lang in the *National Law Journal* confirms as much:

> **Daily duties:** Lang, a self-described generalist, said there is no such thing as a typical day as Whole Foods' general counsel. As the manager of the in-house legal team, she participates in various projects with the firm's executive staff and national vice presidents. She sits on internal board committees as well. Her company is 'very team oriented,' so a substantial amount of legal work passes through her office.
>
>                                               * * *
>
> **Acquisitions and awards:** Lang was recently involved in the 'fairly large' acquisition of Fresh & Wild Holdings Ltd. and the six natural organic food stores that that company owned and operated in London. Whole Foods also signed a 'large lease' for a new Whole Foods market in London.

*See* Roger Adler, *Keeping it Natural: Roberta Lang, Whole Foods Market, Inc.*, 28 NAT'L L.J. 8 (2006) (Ex. A). Ms. Lang thus does not have a limited role that can be segregated from strategic decisions by management. This Court should not support the adoption of a protective order that would grant her unfettered access Kroger's highly confidential commercial data.

In short, this Court should deny Whole Foods' Motion.

## BACKGROUND

Kroger incorporates by reference the background section set forth in Kroger's Memorandum in Support of its Motion to Intervene.

## ARGUMENT

The Trader Joe's Brief establishes that: (1) Whole Foods' General Counsel has not demonstrated any need to review the trade secrets of Kroger or other third parties; and (2) the Whole Foods General Counsel's role and responsibilities at Whole Foods means that she

3

necessarily participates in competitive decision-making such that she should not have access to the trade secrets of Kroger or other third parties. Kroger thus joins in Sections II-IV of rader Joe's Brief as set forth above.

This separate memorandum briefly highlights the sensitive nature of the trade secrets that Kroger seeks to protect from disclosure to the in-house General Counsel at Whole Foods. After reaching an agreement with the Federal Trade Commission ("FTC") concerning the access to Kroger's confidential documents, Kroger produced a compact disc ("CD") containing twenty-one (21) separate electronic files, comprising approximately 5.9 megabytes of data, to the FTC. *See* Declaration of T. Foley ("Foley Decl.") ¶ 11 (Ex. B). The CD is clearly labeled "Highly Confidential." *Id.* These files included the following:

> A.     Employee headcount information, including data on the number of employees by store.
>
> B.     "4-12-07 Progress Reports for 2007-2010" ("Progress Reports"), which provides data on Kroger's real estate and strategic expansion program for the next three years, including remodels, expansions and new stores. This information is closely guarded within the organization and would never been furnished to any company that generally competes with Kroger.
>
> C.     Inventory information for Kroger's stores, which includes a representation of the number of Store Keeping Units by department for one store in each of three different divisions.
>
> D.     "Operating Statement" data, which contains operating information, including sales and profit, by store and by department. For obvious reasons, this information is highly confidential and trade secret information, and is among Kroger's most sensitive data.
>
> E.     Sixteen Files containing data for Kroger's supermarket divisions, including data regarding the number of transactions by store and by department. This information is highly sensitive because it could help competitors and other retailers to identify the relative performance of stores or departments within stores.

4

F.      Store Data Charts, which contain a wide range of factual information regarding each store facility, including information about departments and expansion and remodel information.

Certain information that Kroger produced to the FTC is not highly confidential, and Kroger does not object to that information being shared with in-house counsel at Whole Foods. *Id.* ¶12.  Those categories include (A), (C) & (F) above.  *Id.*  However, the Progress Reports (B), Operating Statements (D), and Supermarket Divisions (E) do contain highly confidential strategic information that Kroger's cannot share with anyone outside Kroger absent extreme circumstances.  *Id*. ¶ 13.  This information includes data on Kroger's strategic plans and its profitability that would be highly damaging to Kroger if shared with anyone at Whole Foods.  *Id.*

For example, were Whole Foods' General Counsel to gain access to the operating statements of Kroger's stores, the General Counsel could use that information in negotiations with lenders, lessors, suppliers, and other retailers.  In addition, were Whole Foods to consider expanding into a market in which Kroger operates, information in Kroger's Progress Reports might inform the judgments of the Whole Foods General Counsel in negotiations and strategic discussions.  It might never even be obvious to the General Counsel or others at Whole Foods that the information informing the strategic discussions came from information produced in this case, but Whole Foods should not be permitted to gain such a competitive advantage from discovery in this case.

At bottom, certain of the information that Kroger produced to the FTC in this case is obviously trade secret information.  Were it to be disclosed to Whole Foods' General Counsel, there is a strong likelihood that Whole Foods could benefit strategically from this disclosure.  And,Whole Foods has made no showing whatsoever that its in-house General Counsel needs access to the three categories of information above that Kroger seeks to protect from disclosure.

5

Under these circumstances, this Court should deny the Whole Foods Motion to Enter a Final Protective Order.

## CONCLUSION

WHEREFORE, Kroger respectfully requests that the Court deny Whole Foods' Motion to Enter a "Final" Protective Order that would permit sharing of Kroger's trade secrets with Whole Foods' in-house General Counsel. This Court should adopt the Interim Protective Order, with minor edits, as the Final Protective Order in this matter. The minor edits recommended are the insertion of Ms. Lang's name into the blank on page 9 of the Interim Protective Order, and deletion of Paragraph 23 regarding stipulation and the status of the Order as interim.

## REQUEST FOR HEARING

Pursuant to LCvR 7(f), Kroger, through undersigned counsel, requests a hearing on this matter.

Respectfully submitted,


/s/ Justin S. Antonipillai
Justin S. Antonipillai (D.C. Bar # 460046)
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004
(202) 942-5066
(202) 942-5999 (facsimile)
Justin_Antonipillai@aporter.com
Attorney for The Kroger Co.


June 22, 2007

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of June, 2007, I caused the foregoing Memorandum of Points and Authorities, Declaration of Todd Foley, supporting exhibits and proposed order in support thereof, to be uploaded into the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF. I have also sent separate copies of the foregoing directly to the individuals below by first class mail:

Matthew P. Hendrickson
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

Christopher James MacAvoy
HOWREY, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Thomas Pak
SKADDEN ARPS SLATE MEAGHER & FLOM
Four Times Square
New York, NY 10036

Terrence J. Wallock
LAW OFFICE OF TERRENCE J. WALLOCK
2224 Pacific Drive
Corona Del Mar, CA 92625

/s/ Jordan Esbrook
Jordan Esbrook[*]

---

[*] Admitted only in Minnesota; practicing in the District of Columbia pending approval of application for admission to the D.C. Bar and under the supervision of principals of the firm who are members in good standing of the D.C. Bar.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION )<br><br>Plaintiff, )<br><br>v. )<br><br>WHOLE FOODS MARKET, INC. )<br><br>and )<br><br>WILD OATS MARKETS, INC. )<br><br>Defendants. ) | Civil Action No. 1:07-CV-01021-PLF<br><br>Judge: The Hon. Paul L. Friedman |

**THE KROGER CO.'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO THE MOTION OF DEFENDANT**
**WHOLE FOODS MARKET, INC. FOR ENTRY OF A FINAL PROTECTIVE ORDER**

**EXHIBIT A**



The National Law Journal
Vol. 28, No. 18
Copyright (c) 2006 by American Lawyer Media, ALM, LLC

January 9, 2006

In-House Counsel

KEEPING IT NATURAL

Roger Adler

**ROBERTA LANG,** WHOLE FOODS MARKET, INC.

Name and title: **Roberta Lang,** vice president of legal affairs and general counsel

Age:47

Grocery giant: Founded in 1980 as a single small store in Austin, Texas, Whole Foods Market Inc. has blossomed to become the world's foremost natural foods chain and the largest organic and natural grocer in the United States. It is the country's first certified organic grocer and is widely credited with having pioneered the supermarket concept in health foods retailing. Whole Foods offers more than 1,500 items that are pesticide free and unadulterated by artificial preservatives, colorings, sweeteners or other additives. It features four lines of private-label goods, including a group of organic products for children.

A public company, it has 167 locations in the United States, Canada and the United Kingdom, serviced by eight distribution centers. Still based in Austin, and now with some 36,000 employees, Whole Foods' 2005 net income of $136.4 million placed it No. 479 in the Fortune 500.

Daily duties: Lang, a self-described generalist, said there is no such thing as a typical day as Whole Foods' general counsel. As the manager of the in-house legal team, she participates in various projects with the firm's executive staff and national vice presidents. She sits on internal board committees as well. Her company is 'very team oriented,' so a substantial amount of legal work passes through her office and is routed to other teams or regions. She handles 'lots and lots of e-mail, too,' and peruses the Internet extensively.

'Once in a while' she gets involved with immigration or union officials, and occasionally deals with other regulators, usually in tandem with members of other teams from within the firm. Whole Foods' legal arm has a uniform process to handle problems like slip-and-fall incidents and customer complaints, and such matters generally are directed to the appropriate regions. The company relies on national counsel to resolve complaints related to its private labels, but Lang said that 'she tends to get a little more involved' in such cases. If necessary, she will work directly with a manufacturer.

Although some duties connected to the Sarbanes-Oxley Act of 2002 have dwindled, other compliance responsibilities remain pressing for Lang. 'Just like for everyone,' Section 404 for the management assessment of internal controls is

Copyright ©  2007 The New York Law Pub. Co.

critical and time-consuming, she said. For Sarbanes-Oxley-related work she takes a team approach and works with her firm's accounting staff.

Acquisitions and awards: Lang was recently involved in the 'fairly large' acquisition of Fresh & Wild Holdings Ltd. and the six natural organic food stores that that company owned and operated in London. Whole Foods also signed a 'large lease' for a new Whole Foods market in London.

The company has been recognized by the U.S. Environmental Protection Agency for its 'green power' purchases. Whole Foods purchases or generates more than 20% of its total national power load from environmentally friendly 'green' sources. In states including California, Colorado and New Mexico, its stores and facilities are 100% 'green' powered. Three years ago, Lang set the goal of a paperless firm, and said that 'to a large degree' she has accomplished that.

Adhering to the organic-standards process is essential for the firm, as is maintaining accurate labeling and customer education efforts. To stay current, Lang and all team members attend continuing legal education seminars for their respective areas. She is a member of the National Retail Federation.

Animal compassion: Lang serves as general counsel of the Animal Compassion Foundation, an independent nonprofit. The organization focuses on learning and sharing 'best practices and methodologies' in animal husbandry so that ranchers, meat producers and researchers can improve living conditions for farm animals, while maintaining economic viability. She is a board member of the Whole Planet Foundation, created by Whole Foods to support community economic partnerships and 'develop world communities' to supply products to Whole Foods stores. Both foundations were funded by sales generated on the company's global 'five percent days,' when it reserves that proportion of its take for good works.

Legal team and outside counsel: An eight-member team tends to the firm's legal agenda. According to Lang, Whole Foods is 'very decentralized.' It is divided into 11 regions, each acting 'fairly independently.' At corporate headquarters ('Central'), there is a 50-50 split in legal matters handled in-house or farmed out. The regions send 100% of their work outside. Lang hires external counsel for Central, and works with the regions to bring attorneys aboard. Firms that she calls upon include DuBois, Bryant, Campbell & Schwartz of Austin for transactional work; the local office of Houston high technology firm Trop, Pruner & Hu for intellectual property matters; Chicago-based Seyfarth Shaw for products and general liability cases; and the services of New York-based Proskauer Rose are sought to resolve labor and employment issues.

Lang also liaises with European counsel for 'any number of things,' including overseas transactions involving real estate, construction and intellectual property. She reports to Whole Foods Chairman and Chief Executive Officer John P. Mackey and to Glenda Flanagan Chamberlain, the company's executive vice president and chief financial officer.

Route to the top: Lang graduated in 1987 from Indiana University and achieved her law degree three years later from Valparaiso University School of Law, also in Indiana. Following a stint working in the IT support arena, she moved to Chicago with her husband and launched a law practice at a small suburban firm, then known as Momkus, Ozog & McClusky. Later setting out on her own with a series of outside general counsel positions, she joined Whole Foods in 1998.

Personal: Lang and her husband, Richard Lang, are the parents of Dan Marek, 28, and Cole Lang, 20. Cooking, aikido and yoga fill her spare time, and she 'dabbles'

Copyright ©  2007 The New York Law Pub. Co.

1/9/2006 NLJ 8, (Col. 1)
  1/9/2006 Nat'l L.J. 8, (Col. 1)

in pottery. She commenced her career as the owner and operator of a natural foods
store in her hometown of South Bend, Ind.

  Last book and movie: Animals in Translation: Using the Mysteries of Autism to
Decode Animal Behavior, by Temple Grandin; and The Brothers Grimm.

1/9/2006 NLJ 8, (Col. 1)

END OF DOCUMENT

Copyright © 2007 The New York Law Pub. Co.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-01021-PLF |
| | ) | |
| | ) | |
| WHOLE FOODS MARKET, INC. | ) | Judge: The Hon. Paul L. Friedman |
| | ) | |
| and | ) | |
| | ) | |
| WILD OATS MARKETS, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THE KROGER CO.'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO THE MOTION OF DEFENDANT**
**WHOLE FOODS MARKET, INC. FOR ENTRY OF A FINAL PROTECTIVE ORDER**

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-01021-PLF |
| | ) | |
| | ) | |
| WHOLE FOODS MARKET | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WILD OATS MARKETS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF TODD A. FOLEY

Pursuant to 28 U.S.C. § 1746, I, Todd A. Foley, do hereby depose and state as follows:

1.    I am over 18 years of age and have personal knowledge of the matter stated herein.

2.    I serve as Assistant Corporate Controller for The Kroger Co. ("Kroger" or the "Company").

3.    Kroger was founded in 1883 and incorporated in 1902. As of February 3, 2007, the Company was one of the largest retailers in the United States based on annual sales.

4.    The Company's principal executive offices are located in Cincinnati, Ohio, and its shares are publicly traded on the New York Stock Exchange.

5.    The Company employs approximately 310,000 full and part-time employees, and as of February 3, 2007, the Company operated, either directly or through its subsidiaries, 2,468 supermarkets and multi-department stores.

6.    The Company's stores operate under several banners.  Supermarkets are generally operated under one of the following formats: combination food and drug stores ("combo

stores"); multi-department stores; price impact warehouses; or marketplace stores. In addition to supermarkets, the Company operates, either directly or through subsidiaries, 779 convenience stores and 412 fine jewelry stores. Kroger operates stores throughout the United States, and sells products that are also sold in other grocery and supermarket stores. Whole Foods Market ("Whole Foods") and Wild Oats Market, Inc. ("Wild Oats"), among others, generally compete with Kroger.

7.     Kroger is aware that Whole Foods has proposed acquiring Wild Oats. Kroger is also aware that the Federal Trade Commission ("FTC") commenced an investigation into this proposed acquisition.

8.     After the investigation was initiated, FTC requested that Kroger provide documents and other information pursuant to a formal Civil Investigative Demand ("CID").

9.     Kroger agreed to provide the requested information and provide additional information. But because Kroger routinely takes great care in assuring its business and trade secrets are protected and maintained as confidential, Kroger requested that its confidential business and trade secrets be protected from disclosure to unauthorized third parties including its competitors.

10.     The FTC made clear that it would treat the documents and information produced by Kroger confidentially consistent with its obligations under law and regulations, including the Hart-Scott-Rodino Act.

11.     After receiving assurances from the FTC that Kroger's confidential documents would not be disclosed, Kroger produced a compact disc ("CD") containing twenty-one (21) separate electronic files, comprising approximately 5.9 megabytes of data, to the FTC. The CD is clearly labeled "Highly Confidential." These files included the following:

A.     Employee headcount information, including data on the number of employees by store.

B.     "4-12-07 Progress Reports for 2007-2010" ("Progress Reports"), which provides data on Kroger's real estate and strategic expansion program for the next three years, including remodels, expansions and new stores. This

information is closely guarded within the organization and would never been furnished to anyone that generally competes with Kroger.

C.     Inventory information for Kroger's stores, which includes a representation of the number of SKUs by department for one store in each of three different divisions.

D.     "Operating Statement" data, which contains operating information, including sales and gross profit, by store and by department. For obvious reasons, this information is highly confidential and trade secret information, and is among Kroger's most sensitive data.

E.     Sixteen Files containing data for Kroger's supermarket divisions, including data regarding the number of transactions by store and by department. This information is highly sensitive because it could help competitors and other retailers to identify the relative performance of stores or departments within stores.

F.     Store Data Charts, which contain a wide range of factual information regarding each store facility, including departments and expansion and remodel information.

12.     Certain information set forth in paragraph 11 is not highly confidential and Kroger does not object to that information being shared with in-house counsel at Whole Foods. Those categories include 11(A), 11(C) & 11(F) above.

13.     However, the Progress Reports (11(B)), Operating Statements (11(D)), and Supermarket Division Data (11(E)) do contain highly confidential strategic information that Kroger's cannot share with anyone outside Kroger absent extreme circumstances. This information includes data on Kroger's strategic plans and its sales performance and profitability that would be highly damaging to Kroger if shared with anyone at Whole Foods.

14.     These documents are not technical documents. They can be easily understood without the aid of consultants or experts in the field. That is one of the reasons why Kroger considers the documents highly sensitive.

15.     In addition to producing the requested documents to the FTC, Kroger provided information during interviews that also disclosed its business and trade secrets.

16.     Kroger understands that on or about June 6, 2007, the FTC filed an action against Whole Foods and Wild Oats in the United States District Court for the District of Columbia seeking to prevent Whole Food's proposed acquisition of Wild Oats.

17.    In connection with this litigation, on June 8, 2007, the Court entered an Interim Protective Order that prevented certain highly confidential information from being shared with in-house employees at Whole Foods or Wild Oats.

18.    On June 11, 2007, Kroger learned that Whole Foods had filed a motion for entry of a substitute protective order that would permit even the most highly confidential information produced by Kroger to be shared with in-house counsel at Whole Foods.

19.    Kroger believes that the proposed protective order submitted by Whole Foods would irreparably harm Kroger's proprietary interests and provide Whole Foods with an unfair business advantage. By gaining access to Kroger's most sensitive documents, Whole Foods would immediately learn Kroger's confidential business plans and strategies, learn Kroger's customers' preferences and demands, and learn how Kroger's individual stores and departments in those stores operate, including sales and gross profit. In sum, the very essence of Kroger's business would be open to Whole Foods' scrutiny. As a result, Kroger will suffer substantial and irreparable harm, including certain economic harm.

20.    Whole Foods and Wild Oats both generally compete with Kroger. As a result, disclosure of Kroger's most sensitive trade secrets to Whole Foods would be improper under these circumstances, especially where there has been no specific showing that in-house counsel at Whole Foods needs to review the specific information at issue.

21.    Kroger's sole focus for seeking intervention into this matter is the protection of its confidential business and trade secrets.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 15, 2007

Todd A. Foley