**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>WHOLE FOODS MARKET, INC. )<br>)<br>and )<br>)<br>WILD OATS MARKETS, INC. )<br>)<br>Defendants. )<br>) | Civil Action No. 1:07-CV-01021-PLF |

**PUBLIX SUPER MARKETS, INC.'S OPPOSITION TO
DEFENDANT WHOLE FOODS MARKET, INC.'S MOTION
FOR ENTRY OF A FINAL PROTECTIVE ORDER**

Publix Super Markets, Inc. ("Publix") intervened in this action for the limited purpose of opposing the motion of defendant Whole Foods Market, Inc. ("Whole Foods") for entry of a final protective order. To avoid repetition, Publix hereby joins and incorporates by reference sections II, III, and IV of Third Party Trader Joe's Company's Opposition To Defendant's Motion For Protective Order, which is being filed today. Sections II and III of Trader Joe's opposition discuss the relevant legal principles, the facts concerning the roles and responsibilities of Whole Foods' General Counsel Roberta Lang, and the heightened need for protection of confidential third-party information in light of Whole Foods' publicity campaign relating to this litigation. Section IV of the Trader Joe's opposition asks the Court to deny Defendant's Motion for Final Protective Order and adopt the Interim Protective Order as the Final Protective Order,

with minor edits. Publix submits this separate opposition to apprise the Court of its specific circumstances, the nature of the information it provided to the FTC, and the bases for its objections to the protective order proposed by Whole Foods. Pursuant to Local Rule 7(f), Publix requests an oral hearing on this matter.

## BACKGROUND

Publix provided data and information to the Federal Trade Commission ("FTC") in response to a Civil Investigative Demand ("CID") issued by the FTC during its investigation of Whole Foods' proposed acquisition of Wild Oats Markets, Inc. ("Wild Oats"). Pursuant to this Court's June 8, 2007 Interim Protective Order, Publix designated the most sensitive and confidential information it produced to the FTC "Restricted Confidential Discovery Material." Under the terms of the Interim Protective Order, this information may not be disclosed to any in-house representative of Whole Foods. Publix strongly opposes Whole Foods' motion for this Court to enter a proposed protective order that would grant Whole Foods' General Counsel, Roberta Lang, access to Publix's "Restricted Confidential" information.

## ARGUMENT

**I.   WHOLE FOODS' PROPOSED PROTECTIVE ORDER WOULD HARM PUBLIX**

If Whole Foods' proposed protective order were to be put into effect, Publix would face a grave risk of commercial harm because confidential and highly-sensitive information relating to its store operations, store-level profitability, expansion and remodeling plans, store construction and closure plans, and other confidential financial and business information would be disclosed to the General Counsel of a competitor, Whole Foods, with the risk of further disclosure to other executives of Whole Foods. See Decl. of G. Gino DiGrazia at ¶ 2 (attached hereto as *Exhibit A*).

A. **Publix Operates Retail Grocery Stores In Some Of The Same Areas As Whole Foods**

Publix is an employee-owned company. *Exhibit A* ¶ 3. Publix operates approximately 900 supermarkets in Florida, Georgia, South Carolina, Alabama, and Tennessee. Its competitors include national and regional supermarket chains, independent supermarkets, supercenters, warehouse clubs, mass merchandisers, dollar stores, drug stores, specialty food stores, convenience stores, and other grocery retailers. *Id.* ¶ 4.

Publix operates stores in many of the same areas as Whole Foods and/or Wild Oats stores, including, for example, Atlanta, Georgia; Miami, Florida; Tampa, Florida; Nashville, Tennessee; and Charleston, South Carolina. *Ex. A* ¶ 4. Whole Foods, according to statements recently posted by its Chief Executive Officer on its web site, considers Publix one of its competitors: "Whole Foods doesn't merely compete with other natural foods supermarket companies such as Wild Oats, but also with natural foods discount chain Trader Joe's, upscale perishable supermarkets such as Wegman's and Central Market, *new supermarket created natural foods stores such as Green Wise by Publix*...." *Id.* (emphasis added). Whole Foods focuses its retail products on natural and organic foods. Publix's GreenWise Markets, referred to by Whole Foods' CEO, is a new store format that likewise will emphasize natural and organic products and healthy prepared foods. *Id.* at ¶ 5.

B. **Whole Foods General Counsel Should Not Have Access To The Highly Confidential Information Publix Produced To The FTC**

Publix received a Civil Investigative Demand ("CID") from the Commission on March 28, 2007. Publix responded to the CID by submitting data and other information on April 12, 2007. The information Publix provided to the FTC in response to the CID included:

- projected opening dates and locations of planned stores;

3

- projected dates when specific stores would be remodeled;
- store square footage and store selling space;
- Publix's assessment of the quality of the ingress, egress, and visibility of each of its stores;
- for each of its stores, gross and net sales by department;
- for each of its stores, gross margin by department;
- for each of its stores, the number of hourly and salaried employees and salaried employees in the store as a whole and in each department; and
- for each of its stores, the number of stock-keeping units (SKUs) per department and the number of customer transactions per week.

*Ex. A* ¶ 6.

Publix designated all of the information it produced to the FTC "confidential" and reiterated to the Commission in its transmittal that the information is business confidential and proprietary. *Id.* On June 7, 2007, the FTC staff sent a letter to Walter Engle, Senior Attorney at Publix, to advise Publix that the FTC was seeking a preliminary injunction to prevent Whole Foods' proposed acquisition of Wild Oats, and stating that "the merging parties may seek to obtain access to" the information previously provided by Publix pursuant to the CID. *Id.* ¶ 7.

On June 8, 2007, the Court entered the Interim Protective Order. Publix subsequently advised the FTC staff which of the previously produced materials was to be designated "Restricted Confidential." See Letter Dated June 15, 2007 from C. MacAvoy to J. Schwab, at 1 (attached hereto as *Exhibit B*). Publix has learned that Whole Foods filed a motion to allow its General Counsel to have access to all of the information produced by Publix to the FTC, including any information designated as "Restricted Confidential." *Ex. A* ¶ 10.

### C. Publix Would Be Commercially Harmed If Whole Foods' General Counsel Is Granted Access to Publix's "Restricted Confidential" Information

Given the General Counsel's position and duties at Whole Foods, Publix believes that disclosure of Publix's highly-sensitive Restricted Confidential information to her, with the risk of further disclosure to other Whole Foods executives, would cause substantial harm to Publix's business. *Ex. A* ¶ 11. The information Publix provided to the FTC included strategic, forward-looking information, such as projected opening dates and locations of new stores, projected remodeling dates, and projected store closing dates. Publix's CID response also included candid self-assessments of its stores. In addition, Publix produced highly detailed and recent financial data, of a type it closely protects against disclosure in the ordinary course of business, such as sales and profits at the department level, and information on hourly and salaried store staffing and transaction counts. *Id.*

The disclosure of this information to Whole Foods would be quite damaging to Publix. Whole Foods and Publix operate in many of the same areas. With this information, Whole Foods might adjust and target its prices, product mixes, and service levels to specific Publix stores. *Ex A* ¶ 11. Moreover, the information would give Whole Foods insight into Publix's growth strategy, including its plans for the GreenWise Markets stores, which might be used to preempt Publix's efforts to obtain new store locations or otherwise blunt Publix's moves. In sum, Publix would be greatly harmed if any of the Restricted Confidential information it produced to the FTC were disclosed to the General Counsel of Whole Foods.

## II. CONCLUSION

For the reasons stated above, and for the reasons stated in Third Party Trader Joe's Company's Opposition to Defendant's Motion For Protective Order, this Court should deny

Whole Foods' motion and enter the Interim Protective Order, with the minor edits proposed by Trader Joe's, as the final protective order.

                                                  Respectfully submitted,

                                                  /s/  Christopher J. MacAvoy
                                                  Christopher J. MacAvoy (DC Bar No. 367060)
                                                  **HOWREY LLP**
                                                  1299 Pennsylvania Ave., N.W.
                                                  Washington, DC 20004
                                                  Telephone:  (202) 783-0800
                                                  Facsimile:  (202) 383-6610
                                                  Email:  MacAvoyC@howrey.com

                                                  Attorney for Publix Super Markets, Inc.

June 22, 2007

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION </br></br> Plaintiff, </br></br> v. </br></br> WHOLE FOODS MARKET, INC. </br></br> and </br></br> WILD OATS MARKETS, INC. </br></br> Defendants. | Civil Action No. 1:07-CV-01021-PLF |

**DECLARATION OF G. GINO DIGRAZIA IN SUPPORT OF
PUBLIX SUPER MARKETS, INC.'S OPPOSITION TO
DEFENDANT WHOLE FOODS MARKET, INC.'S MOTION
FOR ENTRY OF A FINAL PROTECTIVE ORDER**

1. My name is G. Gino DiGrazia. I am the Vice President and Controller of Publix Super Markets, Inc. ("Publix"). I have held this position since May 2002, and prior to this I held the position of Director of Business Analysis and Reporting. The statements in this Declaration are true and are within my personal knowledge unless stated otherwise.

2. I make this Declaration in opposition to Whole Foods Market, Inc.'s ("Whole Foods") Motion for Entry of a Final Protective Order. If Whole Foods' proposed protective order were to be put into effect, Publix would face a grave risk of commercial harm because confidential and highly-sensitive information relating to its store operations, store-level profitability, expansion and remodeling plans, store construction and closure plans, and other

confidential financial and business information would be disclosed to the General Counsel of Whole Foods, with the risk of further disclosure to other executives of Whole Foods.

3. Publix is an employee-owned company; its stock is not publicly traded.

4. Publix operates approximately 900 supermarkets in Florida, Georgia, South Carolina, Alabama, and Tennessee. Our competitors include national and regional supermarket chains, independent supermarkets, supercenters, warehouse clubs, mass merchandisers, dollar stores, drug stores, specialty food stores, convenience stores, and other grocery retailers. Publix operates stores in many of the same cities as Whole Foods and/or Wild Oats stores, including, for example, Atlanta, Miami, Tampa, Nashville, and Charleston. The Chief Executive Officer of Whole Foods, in a recent statement posted on his company's web site, described Publix as a competitor of Whole Foods: *"Whole Foods doesn't merely compete with other natural foods supermarket companies such as Wild Oats, but also with natural foods discount chain Trader Joe's, upscale perishable supermarkets such as Wegman's and Central Market, new supermarket created natural foods stores such as Green Wise by Publix...."*

5. GreenWise Markets, referred to by Whole Foods' CEO, is a new store format that is being introduced by Publix. GreenWise stores will emphasize natural and organic products and healthy prepared foods.

6. Publix received a Civil Investigative Demand ("CID") from the Commission on March 28, 2007. Publix responded to the CID with a submission of data and other information on April 12, 2007. The information Publix provided to the FTC in response to the CID included:

- projected opening dates and locations of planned stores;
- projected dates when specific stores would be remodeled;
- store square footage and store selling space;

- Publix's assessment of the quality of the ingress, egress, and visibility of each of its stores;

- for each of its stores, gross and net sales by department;

- for each of its stores, gross margin by department;

- for each of its stores, the number of hourly and salaried employees and salaried employees in the store as a whole and in each department; and

- for each of its stores, the number of stock-keeping units (SKUs) per department and the number of customer transactions per week.

Publix designated all of the information it produced to the FTC "confidential." The Company's transmittal to the FTC reiterated that "[t]he information provided in the enclosed data is business confidential and proprietary, and is subject to all applicable nondisclosure rules and statutes of the FTC."

7.   On June 7, 2007, the FTC sent a letter to Walter Engle, Senior Attorney at Publix, advising Publix that the Commission had authorized the staff to seek a preliminary injunction blocking Whole Foods' proposed acquisition of Wild Oats, and stating that "the merging parties may seek to obtain access to" the information previously provided by Publix pursuant to the CID.

8.   A copy of the Interim Protective Order was attached to the FTC staff's June 7 letter to Mr. Engle. I reviewed the Interim Protective Order. The Order established a two-tier confidentiality system to protect competitively-sensitive information. Specifically, the Order permitted Publix to designate certain materials as "Confidential," which would limit disclosure of such materials to certain people including a representative of Whole Foods. The Order also

permitted Publix to designate materials as "Restricted Confidential," which would prohibit disclosure of such materials to anyone at Whole Foods.

9. Through outside counsel, Publix subsequently advised the FTC staff which of the previously produced materials was to be designated "Restricted Confidential." See Letter Dated June 15, 2007 from C. MacAvoy to J. Schwab, at 1 (attached as *Exhibit B*).

10. Publix has learned that Whole Foods has filed a motion to allow its General Counsel to have access to all of the information produced by Publix to the FTC, including the information designated as Restricted Confidential. Publix strongly opposes the dissemination of its confidential and proprietary information to the General Counsel of Whole Foods, whose retail grocery stores operate in many of the same cities where Publix operates, or may be planning to operate, stores.

11. Given the General Counsel's position at Whole Foods, Publix is greatly concerned that disclosure of Publix's highly-sensitive Restricted Confidential information to her, with the risk of further disclosure to other Whole Foods executives, would cause substantial harm to Publix's business. The information Publix provided to the FTC included strategic, forward-looking information, such as projected opening dates and locations of new stores, projected remodeling dates, and projected store closing dates. Publix's CID response also included candid self-assessments of its stores. Finally, Publix produced highly detailed and recent financial data, of a type it closely protects against disclosure in the ordinary course of business, such as sales and profits at the department level, and information on hourly and salaried store staffing and transaction counts. The disclosure of this information to another grocery retailer would be quite damaging to Publix. For example, it might permit Whole Foods to adjust and target its prices, product mixes, and service levels. Moreover, it would give Whole

Foods insight into Publix's growth strategy, which might be used to preempt Publix's efforts to obtain new store locations or otherwise blunt Publix's moves. In sum, Publix would be greatly harmed if any of the Restricted Confidential information it produced to the FTC were disclosed to the General Counsel of Whole Foods.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed: June 22, 2007

*/s/ G. Gino DiGrazia*
G. Gino DiGrazia

# EXHIBIT B

Case 1:07-cv-01021-PLF    Document 60-3    Filed 06/22/2007    Page 1 of 3

# HOWREY

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

Christopher J. MacAvoy
Partner
T 202.383.6546
F 202.318.8460
macavoyc@howrey.com

June 15, 2007                           **CONFIDENTIAL**

**VIA ELECTRONIC MAIL**

Jennifer K. Schwab
Bureau of Competition
Mergers IV Division
Federal Trade Commission
601 New Jersey Avenue, N.W.
Washington, D.C. 20001

Re:   *FTC v. Whole Foods Markets, Inc.*, Civ. No. 07-cv-01021-PLF

Dear Ms. Schwab:

    I am outside counsel for third party Publix Super Markets, Inc. ("Publix") in the above-captioned matter. This letter is in response to your letter dated June 7, 2007 to Walt Engle of Publix concerning Publix store data and other information that was provided by Publix to the Commission in its initial investigation of the proposed Whole Foods/Wild Oats merger. The Publix information was provided to the Commission in two multi-column spreadsheets. All of the information was designated, at the time of its production to the Commission, as "confidential," and the transmittal letter from Publix reiterated that the information was confidential and proprietary and subject to all applicable nondisclosure rules and statutes.

    Your June 7 letter to Mr. Engle enclosed a copy of the proposed Interim Protective Order Governing Discovery Material in this matter. Pursuant to Paragraph 4 of the Interim Protective Order, Publix hereby designates the following data fields in the spreadsheets it provided to the Commission as "Restricted Confidential Discovery Material," as that term is defined in the Interim Protective Order. In the first spreadsheet file, which consists of columns "a" through "jj": original opening date (col. o); projected opening date (col. p); projected close date (col. r); closing reason (col. t); remodel date (col. v); future remodel date (col. w); future expansion date (col. z); ingress quality (col. ee); egress quality (col. ff); and visibility (col. jj). In addition, all information in this file concerning potential store locations, which have been designated as "under consideration" or in "permitting," is Restricted Confidential Discovery Material.

    In the second spreadsheet file, which consists of columns "a" through "k," the following fields are designated Restricted Confidential Discovery Material: gross sales (col. c); net sales (col. d); gross margin (col. e); SKUs (col. g); hourly employees (col. h); transactions (col. i); salaried employees (col. j); and price indices (col. k). The foregoing information is highly confidential and commercially sensitive and is treated as

# HOWREY

Jennifer K. Schwab
June 15, 2007
Page 2

such by Publix in the ordinary course of business. Its release would likely cause substantial commercial harm to Publix.

All other information provided by Publix to the Commission remains Confidential Discovery Material.

Please contact me if you have any questions about this matter. Thank you for your assistance.

Sincerely,

Christopher J. MacAvoy
Counsel for Publix Super Markets, Inc.

CJM:cjm

cc:  Jill Frumin, Esq.
     Walt Engle, Esq.