IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| v. | ) |
| WHOLE FOODS MARKET, INC. | ) Civil Action No. 1:07-CV-01021-PLF |
| and | ) |
| WILD OATS MARKETS, INC. | ) |
| Defendants. | ) |

**INTERVENOR H. E. BUTT GROCERY COMPANY'S OPPOSITION TO
WHOLE FOODS MARKET, INC.'S MOTION FOR ENTRY OF A
FINAL PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND .................................................................................................. 2

APPLICABLE LEGAL STANDARDS ........................................................................... 5

ARGUMENT ...................................................................................................... 5

I      The Information H-E-B Produced To The FTC Includes Highly Competitively
Sensitive Real Estate Strategy And Sales Data ..................................................... 6

II     Disclosure Of H-E-B's Real Estate Data To Whole Foods' General Counsel A
Presents  Substantial Risk Of Commercial Harm to H-E-B. .................................... 7

III    Disclosure Of H-E-B's Competitively Sensitive Information To Whole Foods'
General Counsel Will Create A Significant Risk Of Inadvertent Disclosure To
Others. .................................................................................................. 9

IV    Precluding Whole Foods' General Counsel From Accessing H-E-B's Confidential
Information Will Not Impair Whole Foods' Ability To Defend This Action. ...... 10

CONCLUSION ................................................................................................... 11

Pursuant to Paragraph 22 of this Court's June 8, 2007 Interim Protective Order and this Court's June 15, 2007 Minute Order, H.E. Butt Grocery Company ("H-E-B") respectfully submits this opposition to the Motion of Defendant Whole Foods Market, Inc. ("Whole Foods") for Entry of a Final Protective Order.

## PRELIMINARY STATEMENT

H-E-B opposes Whole Food's motion for entry of a Final Protective Order because the disclosure to Whole Foods' General Counsel of H-E-B's competitively sensitive information—including its most closely guarded business secrets regarding its real estate expansion strategies and priorities—presents a risk of significant commercial harm to H-E-B that outweighs any potential benefit to Whole Foods. The disclosure of this competitively sensitive information to Whole Foods' General Counsel creates a significant potential for harm for several independent reasons.

*First*, Whole Foods' General Counsel is clearly involved in business decisions regarding strategic acquisitions—including transactions involving real estate—as demonstrated by her direct involvement in the company's proposed acquisition of Wild Oats. Granting Whole Foods' General Counsel unfettered access to H-E-B's confidential business information, including its highly sensitive real estate expansion plans, would unfairly put H-E-B at a severe competitive disadvantage with respect to Whole Foods, which could use that information to harm H-E-B in a number of different ways, including, for example, strategically buying real estate to block H-E-B from developing new store locations.

*Second*, even if Whole Foods' General Counsel was not directly involved in key business decisions, granting her access to H-E-B's competitively sensitive information unnecessarily creates a risk of inadvertent disclosure to other Whole Foods personnel that are involved in competitive decisionmaking. That is especially true if (as Whole Foods proposes)

1

the General Counsel is permitted to take documents containing H-E-B's sensitive business information back to her office at Whole Foods' headquarters in Austin, Texas, where H-E-B operates 23 supermarkets and two Central Market stores. Under those circumstances, the risk that H-E-B's confidential information could fall into the wrong hands—hands that would be well-situated to exploit that information to H-E-B's commercial disadvantage—are particularly acute.

For these reasons, the potential harm to H-E-B substantially outweighs any potential benefit to Whole Foods from permitting its General Counsel to have unfettered access to H-E-B's competitively sensitive information. That is especially true in this litigation because the FTC has not even alleged that the proposed transaction raises competitive concerns in geographic markets anywhere in Texas—the only state in which H-E-B operates. In light of that fact, there is little, if any, reason why Whole Foods' General Counsel needs the detailed data contained in H-E-B's confidential information in order to provide legal advice to her company, especially since Whole Foods is represented by competent antitrust counsel. In the absence of any compelling reason why Whole Foods needs access to H-E-B's competitively sensitive information, Whole Foods' motion should be denied.

## BACKGROUND

H-E-B was founded more than one hundred years ago as a single grocery store, and it has since grown into one of the nation's largest privately-owned food retailers, with more than 300 stores and 66,000 employees in the State of Texas and Mexico. H-E-B has a history of being at the forefront of innovation in the food retail industry, ranging from its "H-E-B Own Brand" products, including such staples as eggs, yogurt and bacon, to "Central Market," a fresh food market started in 1994 that has grown to eight stores across Texas. As a privately-owned company, H-E-B is not required to release

public financial statements, and it carefully guards its confidential and proprietary business information from disclosure.

On March 28, 2007, H-E-B received a Civil Investigative Demand ("CID") issued by the FTC in connection with the FTC's investigation of the proposed acquisition by Whole Foods of Wild Oats Markets, Inc. ("Wild Oats"). The FTC's CID sought production of, among other things, highly detailed information about H-E-B's current and future store locations. The CID also sought specific financial data broken down by department, including gross sales revenue, as well as the square footage of each individual department.

In response to the CID, H-E-B produced detailed data and information to the FTC, including (i) information about H-E-B's real estate strategy and priorities (the "Real Estate Data"); and (ii) financial data about H-E-B's 2007 sales for each H-E-B store in the United States (the "Sales Data"). Although H-E-B ultimately produced a total of fewer than 200 pages of documents to the FTC, those documents include some of the most closely guarded competitively sensitive information at H-E-B.

In particular, the Real Estate Data produced to the FTC includes highly sensitive detailed store-specific information about H-E-B's plans to open new stores or to remodel, relocate, expand, or close existing stores. This includes the planned size and projected opening date of new stores, their geographic locations (or expected geographic locations if real estate has not been purchased yet), the status of design and construction processes, and possible delays, as well as similar data about the remodeling and expansion of existing stores. The Real Estate Data is among H-E-B's most closely guarded competitive information, and it is considered so commercially sensitive within H-E-B that only senior management and other employees on a "need to know" basis are granted access. (Declaration of Stephen C. Mount ("Mount Decl."), ¶ 14.) In H-E-B's San Antonio corporate headquarters, for example, this information is held on two floors of a building that has separate security access from the

3

rest of the headquarters. (*Id.*) In H-E-B's Houston office, access to such information is restricted to just two individuals. (*Id.*)

Similarly, the H-E-B Sales Data contains detailed department-level information on total sales by department[1] in each H-E-B store in the United States, as well as the square footage by department[2] in each store in the United States. This data thus reflects the results of H-E-B's marketing and store operation strategies. The information requested by and produced to the FTC is so specific as to allow competitive insight into which grocery store department does well in which demographic area. This could allow H-E-B's competitors to develop specific marketing strategies targeted to individual H-E-B supermarkets or Central Market stores on a departmental basis.

In responding to the CID, H-E-B advised the FTC that the data and information it was producing constituted confidential, proprietary and competitively sensitive information and trade secrets, the disclosure of which could cause significant harm to H-E-B. Accordingly, H-E-B requested that the FTC afford H-E-B's data and information confidential treatment. When H-E-B learned that the FTC intended to challenge Whole Foods' planned acquisition of Wild Oats and received from the FTC a copy of this Court's Interim Protective Order Governing Discovery Material, H-E-B promptly informed the FTC that the data and information submitted to the FTC pursuant to the CID was to be designated "Restricted Confidential" pursuant to that Order.

On June 13, 2007, H-E-B learned that Whole Foods had filed a Motion for Entry of a Final Protective Order that would, among other things, permit the General Counsel of Whole

---

[1]   The departments for which sales revenue data was provided are: grocery, general merchandise, cosmetics, photography, meat, seafood, produce, floral, bakery, deli, food services, pharmacy and gasoline.

[2]   The departments for which square footage was provided include: general merchandise, frozen food, beer/wine, dairy, produce, floral, bakery, deli, Chinese, coffee, fish, meat, photography, prescriptions and video.

Foods (Ms. Roberta L. Lang) to access and possess confidential information previously

submitted to the FTC during the course of its investigation, including the highly confidential,

proprietary and competitively sensitive information produced by H-E-B to the FTC. H-E-B

thereafter filed a motion for leave to intervene for the limited purpose of opposing Whole Foods'

motion, and that motion was granted on June 21, 2007.

## APPLICABLE LEGAL STANDARDS

As requested by this Court's June 15, 2007 Minute Order, H-E-B has coordinated

with other third-party intervenors to reduce duplicative briefing on common issues.

Accordingly, H-E-B incorporates by reference the legal arguments contained in Third-Party

Trader Joe's Company's Opposition to Defendants' Motion for Protective Order, as well as

Plaintiff's Memorandum in Opposition to Defendant Whole Foods Market Inc.'s Motion,

including their discussions of the applicable legal standard for entry of a final protective order

and case law governing disclosure of confidential and commercially sensitive information under

these circumstances.

## ARGUMENT

Permitting Whole Foods' General Counsel to have direct access to the

information H-E-B produced to the FTC would create a significant risk of commercial harm to

H-E-B because: (i) the Real Estate Data and Sales Data information produced by H-E-B is highly

competitively sensitive; (ii) Whole Foods' General Counsel appears to be directly involved in

decisionmaking regarding significant business strategies, including acquisitions involving real

estate; (iii) there is a significant risk that H-E-B's competitively sensitive business information

will inadvertently be disclosed to other employees within Whole Foods who may exploit that

information to gain an unfair competitive advantage; and (iv) restricting Whole Foods' access to

H-E-B's information will not prejudice Whole Foods' ability to defend this action. Whole Foods' motion should therefore be denied.

**I      The Information H-E-B Produced To The FTC Includes Highly Competitively Sensitive Real Estate Strategy And Sales Data.**

The types of Real Estate Data and Sales Data that H-E-B provided to the FTC are among the most competitively sensitive and confidential information at H-E-B, and likely for any retailer in the food retail industry.

The Real Estate Data is highly sensitive for two reasons. First, expansion into new markets and within existing markets through new and remodeled stores is a crucial dimension in which food retailers compete. (Mount Decl. at ¶ 12.) In particular, a store's location, including its proximity to cities, major roads, local transportation, and other retail establishments, is a key determinant in the store's success. (*Id.*) Because land is unique, disclosure of this data could enable another food retailer (such as Whole Foods) or a real estate speculator to purchase parcels that are adjacent to—or perhaps even block—a planned H-E-B store location. (*Id.* at ¶ 13.) Such an acquisition could significantly increase H-E-B's real estate acquisition costs or frustrate H-E-B's strategy entirely if it allowed another retailer to purchase a parcel and thereby prevent H-E-B from assembling enough contiguous real estate for H-E-B to construct a new store and parking lot or expand an existing store. (*Id.*)

Second, because H-E-B's stores often exceed 150,000 square feet, acquiring the necessary real estate is often a difficult process, with limited options available. (*Id.*) For example, disclosure of information regarding a planned new store or the expansion of an existing store—which may foreshadow possible activity by H-E-B in local real estate markets—can have a substantial effect on those markets and affect H-E-B's ability to secure needed land. Because

6

of this, H-E-B takes extensive precautions to prevent disclosure of its identity when it is dealing with real estate brokers and agents. (*Id.* at ¶ 13.)

Early entry into new markets and store location are two of the most important profit drivers in the industry; as a result, information about future expansion plans, both in the form of opening new stores or remodeling or expanding existing stores, is one of H-E-B's most closely guarded secrets. (*Id.* at ¶ 12.) As noted above, even within H-E-B, such information is restricted to only high-level employees. (*Id.* at ¶ 14.) Needless to say, providing this information to H-E-B's competitor has the potential to cause significant harm to H-E-B. *See, e.g., Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 531 (N.D. Cal. 2000) (potential for injury is great where "information could be used to . . . interfere with [a] business plan and thereby gain a competitive advantage in the marketplace").

Similarly, detailed data about H-E-B's sales revenue and square footage information broken down by store and department is confidential and competitively sensitive. Such micro-level data is crucial to formulating corporate strategy in the food retail industry. Here, the data is so detailed that it provides competitive insight into the strengths and weaknesses of each grocery store department. (Mount Decl. at ¶ 16.) Disclosure of this information by a competitor of H-E-B could thus also cause significant commercial injury.

## II    Disclosure Of H-E-B's Real Estate Data To Whole Foods' General Counsel Presents A Substantial Risk Of Commercial Harm To H-E-B.

A crucial factor in determining whether in-house counsel for a party should be allowed access to confidential, competitively sensitive information of another party—or in this case, a third party—is the counsel's role within the organization. *See Brown Bag*, 960 F.2d at 1470. Where in-house counsel is involved in "competitive decision-making," the risk of

7

inadvertent disclosure may outweigh the need for confidential information. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468-69 (Fed. Cir. 1984); *Intel Corp.*, 198 F.R.D. at 529.

The participation of Whole Foods' General Counsel in the company's proposed acquisition of Wild Oats demonstrates that Ms. Lang is involved in decisionmaking regarding strategic transactions, including acquisitions—such as this one—involving real estate. Indeed, according to Ms. Lang's declaration, she was the first attorney hired by the company, has served as the company's General Counsel since 2000, and is the only attorney to have been involved in all aspects of the instant acquisition, termed by Ms. Lang as the "largest acquisition ever undertaken by Whole Foods." (Lang Decl. ¶ 10.) In light of this, it is clear that Ms. Lang provides advice or participates in major decisions made by the company, including decisions involving real estate.[3] *See also* Trader Joe's Opp. Mem. at 10 (quoting a 2006 National Law Journal article indicating that Ms. Lang was "recently involved in . . . a 'large lease' for a new Whole Foods market").

Although Ms. Lang's declaration disclaims her involvement in "competitive decisionmaking" generally, it tellingly does not mention whether she participates or advises on any real estate transactions, but focuses instead on her lack of involvement in decisions regarding pricing, purchasing, and product mix. (*See* Lang Decl. ¶ 4.) As Whole Foods' long-serving General Counsel, however, it is doubtful that Ms. Lang does not advise or otherwise participate in discussions of Whole Foods' expansion plans and real estate transactions. Indeed, for the reasons set forth in Plaintiffs' opposition brief, it appears that Ms. Lang serves in non-legal roles that inherently involve competitive decisionmaking. (*See* Plaintiff's Opp. at 3-6.)

---

[3]    If necessary, H-E-B may seek discovery, such as the deposition of Whole Foods' General Counsel, for the purpose of ascertaining her involvement in decisionmaking regarding (among other things) transactions involving real estate issues.

In light of Ms. Lang's involvement in these types of decisions, granting her access to H-E-B's confidential information—especially its most closely guarded secrets about real estate strategies and priorities—creates a substantial risk of commercial harm to H-E-B. Having gained that information through discovery in this action, Ms. Lang could not reasonably be expected to compartmentalize her mind and refrain from applying her knowledge in advising on subsequent transactions. *See, e.g., FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ("it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so"); *Sullivan Marketing, Inc. v. Valassis Communications, Inc.*, No. 93-6350, 1994 WL 177795, *3 (S.D.N.Y. May 5, 1994) ("where advice on a seemingly legal issue such as an antitrust question is sought, counsel's intimate knowledge of a competitor's . . . policies could surely influence the nature of the advice given"). Nor can Ms. Lang, as the company's chief legal officer, plausibly expect to recuse herself from all such future transactions. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (precluding access to discovery where disclosure "would place in-house counsel in the 'untenable position' of having to refuse his employer legal advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal" confidential discovery).

## III    Disclosure Of H-E-B's Competitively Sensitive Information To Whole Foods' General Counsel Will Create A Significant Risk Of Inadvertent Disclosure To Others.

Even if Whole Foods' General Counsel were not involved in business decisions involving real estate and other business strategies, granting her access to H-E-B's commercially sensitive business information would create a significant risk of inadvertent disclosure to other H-E-B personnel who are involved in competitive decisionmaking. That risk is especially large

where, as here, Whole Foods has sought permission for its General Counsel to take confidential

discovery materials to her office at Whole Foods headquarters in Austin, Texas.

As noted above, H-E-B operates primarily in the state of Texas, including 23

regular supermarkets and two Central Market stores in the Austin area—Whole Foods' "own

back yard." Like Whole Foods' markets, H-E-B's Central Market stores sell premium produce,

meats, cheeses, bakery items, prepared foods, and other items. (Mount Decl. ¶ 4.) H-E-B thus

considers Whole Foods to be a significant competitor, especially in areas—such as Austin—in

which H-E-B operates Central Market stores. (*Id.* at ¶ 17.) Under these special circumstances,

there is a heightened risk that H-E-B's confidential business secrets—including its Real Estate

Data and Sales Data—would inadvertently fall into hands at Whole Foods headquarters in Austin

that would be particularly interested in that data, and that would be especially well-positioned to

make use of that data in a way that could cause H-E-B substantial competitive injury. Precluding

Whole Foods' General Counsel's access to that data would eliminate that risk.

**IV    Precluding Whole Foods' General Counsel From Accessing H-E-B's Confidential Information Will Not Impair Whole Foods' Ability To Defend This Action.**

Whole Foods has failed to demonstrate that it will be prejudiced in its ability to

litigate the present action should its General Counsel be denied access to H-E-B's competitively

sensitive business information. *See Intel Corp.*, 198 F.R.D. at 529 ("[t]he party seeking access

must demonstrate that its ability to litigate will be prejudiced, not merely its ability to manage

outside litigation counsel").

The FTC has not alleged that the proposed transaction raises any competitive

concerns in geographic markets anywhere in Texas, which is the only U.S. state in which H-E-B

operates. *See* Complaint for Temporary Restraining Order ¶¶ 38-40. In light of that crucial fact,

there is little—if any—potential prejudice in precluding Whole Foods' General Counsel from

accessing H-E-B's competitively sensitive information. Indeed, there is no plausible reason why Whole Foods' General Counsel would be unable to coordinate Whole Foods' defense and provide more than adequate legal advice to senior management without knowing, for example, such detailed information as where H-E-B plans to open new stores over the next four and a half years, or the total sales of H-E-B's two Central Market stores in Austin. That is especially true here because Whole Foods is represented by highly experienced outside counsel that would in any event have restricted access to such information. *See Sullivan Marketing, Inc.*, 1994 WL 177795 at *2 (outside counsel's experience and lengthy involvement in the case weigh in favor restricting access to in-house counsel); *A. Hirsh, Inc. v. United States*, 657 F.Supp. 1297, 1305 (C.I.T. 1987) ("in view of retained counsel's competence, it is not clear how plaintiffs' position will be prejudiced by excluding [in-house] counsel from access").

In the end, the risk of substantial harm to H-E-B that would result from disclosure of H-E-B's most closely guarded competitive information—information that is severely restricted even within the company—manifestly outweighs any potential benefit to be gained from disclosure of such information to Whole Foods' General Counsel.

## CONCLUSION

For the foregoing reasons, H-E-B respectfully requests that the Court deny Whole Foods' Motion for Entry of a Final Protective Order. In the alternative, H-E-B respectfully requests that the Court enter the current Interim Protective Order as the Final Protective Order

11

(with minor revisions), and thereby continue to restrict access to information designated as

"Restricted Confidential" to Whole Foods' and Wild Oats' outside counsel only.[4]

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____

Joseph J. Simons (DC Bar No. 376168)
1615 L Street, NW, Suite 1300
Washington, DC 20036

Leslie G. Fagen (DC Bar No. 395962)
Andrew C. Finch (DC Bar No. 494992)
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

Attorneys for H.E. Butt Grocery Company

---

[4]    H-E-B would request that, if the Court enters the current Interim Protective Order as the Final Protective Order, it include the revisions proposed by Trader Joe's Company. *See* Trader Joe's Opp. Mem. at 14.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 22th day of June, 2007, I caused the foregoing

Intervenor H.E.Butt Grocery Company's Opposition to Whole Foods Market Inc.'s

Motion for Entry of a Final Protective Order to be served on the persons listed below by

U.S. mail:

**Attorneys for Plaintiff**

Michael J. Bloom
Thomas H. Brock
Eric Matthew Sprague
FEDERAL TRADE COMMISSION
601 New Jersey Ave., NW
Washington, DC 20001

Thomas J. Lang
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005

**Attorneys for Defendant Whole Foods Market Inc.**

Alden Lewis Atkins
John David Taurman
Neil W. Imus
VINSON & ELKINS, LLP
1455 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004

**Attorneys for Defendant Wild Oats Markets, Inc.**

Gary A. McDonald
Clifford H. Aronson
Matthew P. Hendrickson
Thomas Pak
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.

Washington, D.C. 20005

Terrence J. Wallock
LAW OFFICE OF TERRENCE J. WALLOCK
2224 Pacific Drive
Corona Del Mar, CA 92625

Danielle M. Clark

Danielle Monnig Clark

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WHOLE FOODS MARKET, INC. | ) | Civil Action No. 1:07-CV-01021-PLF |
| | ) | |
| and | ) | |
| | ) | |
| WILD OATS MARKETS, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[PROPOSED] ORDER**

AND NOW, this ____ day of June, 2007, upon consideration of Whole Foods Market, Inc.'s Motion for Entry of a Final Protective Order, Intervenor H.E. Butt Grocery Company's Opposition to Whole Foods' Motion, and all related documents, it is hereby ORDERED that the Motion is DENIED.

_____
Hon. Paul L. Friedman
United States District Judge

Copies to:

| | |
|---|---|
| Thomas H. Brock, Esq.<br>Bureau of Competition<br>Federal Trade Commission<br>600 New Jersey Ave., N.W.<br>Washington, D.C. 20580 | Alden L. Atkins<br>Vinson & Elkins L.L.P.<br>1455 Pennsylvania Ave., N.W., Suite 600<br>Washington D.C. 20004 |
| | Clifford H. Aronson<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, NY 10036 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,  )
                           )
            Plaintiff,     )
                           )
      v.                   )
                           )
WHOLE FOODS MARKET, INC.   )      No. 1:07-CV-01021-PLF
                           )
and                        )
                           )
WILD OATS MARKETS, INC.    )
                           )
            Defendants.    )
                           )

**H.E. BUTT GROCERY COMPANY'S OPPOSITION TO WHOLE FOODS
MARKET, INC.'S MOTION FOR ENTRY OF A FINAL PROTECTIVE ORDER**

Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>WHOLE FOODS MARKET, INC. )<br><br>and )<br><br>WILD OATS MARKETS, INC. )<br><br>Defendants. ) | No. 1:07-CV-01021-PLF |

## DECLARATION OF STEPHEN C. MOUNT

1.      My name is Stephen C. Mount.  I am currently employed by Intervenor H.E. Butt Grocery Company ("H-E-B") as Vice President of Corporate Law and am competent to make this declaration.  The statements in this declaration are true and are based upon my personal knowledge.

2.      I graduated from the University of Texas-Austin School of Law in 1985.  I am a member in good standing of the bar of Texas.

3.      I joined H-E-B in October of 2005 as Vice President of Corporate Law and continue to serve in this position.  My responsibilities include, *inter alia*, responsibility for the review, negotiation and supervision of corporate matters, including real estate transactions.

4.      H-E-B is a privately-owned food retailer with over 300 stores and 66,000 employees across Texas and Mexico.  In 1994, H-E-B launched its first "Central Market" store.  Central Market is a premium supermarket that sells premium produce,

1

meats, cheeses, bakery items, gourmet prepared foods, and other products.   Today, there are eight Central Market stores located throughout Texas.   HEB operates 23 regular supermarkets and two Central Market stores in the Austin, Texas area.

5.    On March 28, 2007, H-E-B received a Civil Investigative Demand ("CID") issued by the Federal Trade Commission ("FTC") as part of the FTC's investigation of the proposed acquisition by Whole Foods of Wild Oats Markets, Inc. ("Wild Oats").

6.    I personally oversaw the process of gathering information responsive to the CID.   This information included, among other things, detailed information about H-E-B's real estate strategy, recent information on sales for each department (e.g., grocery, meat, seafood, produce, deli, pharmacy) in each H-E-B store in the United States, and the square footage of each department in each H-E-B store in the United States.

7.    During my tenure at H-E-B, I have become familiar with the types of information that H-E-B considers to be highly sensitive confidential and proprietary business information.   I am also familiar with the policies and procedures that H-E-B has implemented and enforces in order to guard against disclosure of its confidential business information.   H-E-B considers the type of information gathered in response to the CID to be highly sensitive confidential and proprietary business information, and has taken steps within the company to prevent its disclosure, including limiting access to this information to company personnel who need this information in order to perform their duties.

2

8.    On April 18, 2007, the FTC sent to H-E-B, at H-E-B's request, a letter detailing the limited circumstances under which confidential information can be disclosed.

9.    On April 20, 2007, H-E-B produced responsive data to the FTC. I ensured that outside counsel for H-E-B informed the FTC that it considered the data it produced to be confidential, proprietary and competitively sensitive information and trade secrets, and requested that the FTC afford the data confidential treatment.

10.    Although H-E-B considers all of the data it produced to the FTC to be confidential and proprietary business information, it believes that several categories of that information are extremely competitively sensitive and that the disclosure of that information outside of H-E-B could cause the company significant harm.

11.    First, H-E-B produced highly detailed information about its current and future grocery store real estate strategy and expansion plans ("Real Estate Data"). This Real Estate Data includes detailed store-specific information about H-E-B's plans to open new stores or to remodel, relocate, expand, or close existing stores. This includes the planned size and opening date of each new store, their geographic locations (or expected geographic locations if real estate has not been purchased yet), the status of design and construction processes, and possible delays, as well as similar data about the remodeling and expansion of existing stores.

12.    Real Estate Data is the among the most closely guarded competitively sensitive information at H-E-B because the opening of new stores, as well as the remodeling and expansion of existing stores, is a crucial dimension in which supermarkets and other food retailers compete. In this industry, the location of a store—

3

including its proximity to major roads, population centers, and other retail establishments—is a key feature that determines its success or failure.

13. H-E-B believes that the disclosure of its Real Estate Data could harm H-E-B in a number of ways. Because land is unique, disclosure of this data could enable another food retailer (such as Whole Foods) or a real estate speculator to purchase parcels that are adjacent to—or perhaps even block—a planned H-E-B store location. Such an acquisition could significantly increase H-E-B's real estate acquisition costs or frustrate H-E-B's strategy entirely if it enabled another retailer or a real estate speculator to purchase a parcel and thereby prevent H-E-B from assembling enough contiguous real estate for H-E-B to construct a new store and parking lot or expand an existing store. Indeed, H-E-B is so concerned about revealing its real estate strategy that it takes extensive precautions to prevent disclosure of its identity when it is dealing with real estate brokers and agents.

14. H-E-B is also so cautious about disclosure of its Real Estate Data that it takes precautions to severely restrict dissemination of that data within the company. For example, information about grocery store real estate priorities is restricted to individuals on a "need-to-know" basis and senior management. In the San Antonio corporate headquarters, this information is stored on two floors of a building that has separate security access from the rest of the headquarters. In Houston, this information is restricted to two individuals.

15. In addition to the Real Estate Data, H-E-B also produced competitively sensitive information to the FTC about each of H-E-B's stores in the United States, including detailed 2007 sales data on individual stores and 13 departments

4

within each store ("Sales Data").  The departments for which information was provided are: grocery, general merchandise, cosmetics, photography, meat, seafood, produce, floral, bakery, deli, food services, pharmacy and gasoline.

16.     H-E-B believes that the disclosure of its Sales Data could harm H-E-B.  The information requested by the FTC is so specific as to allow competitive insight into which grocery store department does well in which demographic area.  This could allow very specific marketing strategies to be tailored to individual H-E-B or Central Market stores on a departmental basis.  This information represents the results of H-E-B's marketing and store operation strategies for specific stores and departments.

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

17.     H-E-B is particularly concerned about the disclosure of its confidential and proprietary information—especially including the Real Estate Data and the Sales Data—to anyone at Wild Oats or Whole Foods. H-E-B considers Whole Foods to be a significant competitor in certain areas in Texas, especially those in which H-E-B operates a Central Market store. H-E-B believes that disclosure of its competitively sensitive information to either of those companies (including the General Counsel of Whole Foods) has the potential to competitively disadvantage H-E-B as described above.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 22, 2007,

Stephen C. Mount, Esq.

6