# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

WHOLE FOODS MARKET, INC. and
WILD OATS MARKETS, INC.,

        Defendants.

**Civil No. 1:07-CV-01021-PLF**

## TARGET CORPORATION'S *AMICUS* BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO WHOLE FOODS MARKET, INC.'S MOTION FOR ENTRY OF A FINAL PROTECTIVE ORDER

Target Corporation respectfully submits this *amicus* brief due to its profound concern that Whole Foods Market, Inc. ("Whole Foods") is attempting to obtain access for its General Counsel to highly sensitive commercial information that Target safeguards as confidential and trade secrets. Target shares the concerns of the numerous other retailers that have filed motions to intervene in this matter for the purpose of opposing Whole Foods' proposed Protective Order. Indeed, the scope of concern harbored by the proposed intervenors underscores the potential for harm that could occur should Whole

# RECEIVED

JUN 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Foods' General Counsel be given access to closely guarded commercial data about other grocery retailers.[1]

## FACTUAL BACKGROUND

The Federal Trade Commission ("FTC") served a subpoena on Target seeking detailed information about Target's stores in the metropolitan areas that are apparently of concern in this action.  See Exhibit 1.  The information sought includes, *inter alia*, revenue and margins on products sold by Target on a store-by-store basis in the categories of organic foods, natural foods, and private-label foods.  The FTC also seeks detailed information about the layout, planning, employees, and customer base for each store.  Moreover, the subpoena requests documents concerning Target's business strategies related to organic and natural foods and products.

Prior to this subpoena, Target provided a significant amount of similar information to the FTC in response to a Civil Investigative Demand issued during the FTC's pre-litigation investigation.  See Exhibit 2.

## ARGUMENT

As the FTC notes in its brief, the case law on the proper scope of a Protective Order focuses on whether in-house counsel is involved in "competitive decision making."

---

[1] Target does not intend by this *amicus* brief to take a position regarding the proper scope of the relevant product market in this action.  At some level, Target competes against virtually all retailers in the geographic markets where its stores are present, and it would strongly object to any competing retailer, grocery or otherwise, gaining access to its confidential commercial information.  Whether competing retailers inhabit the same product market under the antitrust laws is a distinct legal question.

See, e.g., United States Steel Corp. v. United States, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984). That determination is made with reference to the confidential information at issue in discovery -- if the discoverable information could impact business decisions in which the in-house attorney is involved, then in-house counsel should be denied access to that information. Id. (focusing on whether attorney advises clients regarding decisions affected by information from a competitor).

Here, because the information that the FTC has subpoenaed from Target is so far-reaching and so fundamental to basic business decisions, Whole Foods cannot deny that its General Counsel will counsel her client regarding decisions potentially impacted by Target's confidential information. For example, the FTC has requested Target's plans for future stores in particular geographic markets and documents related to Target's strategic planning for products comparable to those offered by Whole Foods. This type of basic market intelligence could weigh heavily on key decisions by Whole Foods about store expansion, allocation of resources, and a host of critical planning decisions that inevitably involve General Counsel.[2]

---

[2] While Target does not question the veracity of the Declaration submitted by Whole Foods' General Counsel, or suggest that she would intentionally misuse confidential information produced in this matter, the D.C. Circuit recognizes that it is impossible for in-house counsel to compartmentalize and ignore confidential discovery materials when advising business clients. FTC v. Exxon Corp., 636 F.2d 1336, 1350 (D.C. Cir. 1980). Additionally, even inadvertent leakage of sensitive data would threaten Target with commercial harm.

This Court has recognized the need to protect the confidential business information of third parties submitted during antitrust litigation from disclosure to in-house counsel. State of New York v. Microsoft Corp., Civ. No. 98-1233 CKK, 2002 WL 31628219, *2 (D.D.C. Nov. 18, 2002) (holding that it would be "fundamentally unfair" to give Microsoft's in-house attorneys access to confidential information submitted by third parties). See also FTC v. Exxon Corp., 636 F.2d at 1350 (explaining the inherent risk of competitive harm arising when in-house counsel gains access to confidential commercial information).

The information that the FTC seeks from Target is very sensitive and threatens Target with commercial harm if used by Whole Foods to make business decisions, even unintentionally. The FTC requests detailed information regarding the operation of Target stores that threaten Target with the following sorts of commercial harm:

- Competitors possessing Target's revenue and margin information for product segments in particular stores would possess an advantage when making pricing decisions;

- Access to information about Target's revenues in particular stores for organic products could affect numerous business decisions by Whole Foods, including its product lines, brands, store expansion, and marketing strategies;

- Information regarding the number of employees, employee compensation, training hours, and other requested human resource information also risks competitive harm if released to Whole Foods. Whole Foods could use that

information to compete against Target in the labor market or in the manner of service provided to customers.

Additionally, the FTC seeks Target's strategic planning documents for organic foods and natural products. Such documents are closely guarded proprietary information essential to Target's future business plans.

## CONCLUSION

For the foregoing reasons, Target respectfully requests that the Court issue a Protective Order precluding in-house counsel at Whole Foods or Wild Oats Markets, Inc. from viewing confidential business documents produced by third parties such as Target.


Dated:  June 22, 2007

John E. Schmidtlein, DC # 441261
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5901

**Attorneys for Proposed *Amicus* Target Corporation**

Of counsel:

Michael A. Ponto, MN # 203944
Richard A. Duncan, MN # 192983
Craig S. Coleman, MN # 325491
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,

        Plaintiff,

vs.

WHOLE FOODS MARKET, INC. and
WILD OATS MARKETS, INC.,

        Defendants.

**Civil No. 1:07-CV-01021-PLF**

**EXHIBIT INDEX TO TARGET
CORPORATION'S AMICUS BRIEF
IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO WHOLE FOODS
MARKET, INC'S MOTION FOR
ENTRY OF A FINAL PROTECTIVE
ORDER**

| Exh. No. | Description | Pages |
|---|---|---|
| 1 | Subpoena In A Civil Case | 1-01 through 1-17 |
| 2 | Civil Investigative Demand | 2-01 through 2-11 |

**RECEIVED**

JUN 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Dated:  June 22, 2007

_____

John E. Schmidtlein, DC # 441261
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5901

**Attorneys for Proposed *Amicus* Target
Corporation**

Of counsel:

Michael A. Ponto, MN # 203944
Richard A. Duncan, MN # 192983
Craig S. Coleman, MN # 325491
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000

fb.us.2135810.01

2

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

Federal Trade Commission, Plaintiff

V.

Whole Foods Market, Inc., et al, Defendants

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  1:07-CV-01021

TO:  Jason Walborn, General Counsel
Target Corporation
1000 Nicollet Mall
Minneapolis, Minnesota  55403

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE   Federal Trade Commission, 601 New Jersey Avenue, NW Washington, DC 20001 | DATE AND TIME 6/25/2007 4:00 pm |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 6/18/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Thomas H. Brock, Esq., Federal Trade Commission, 601 New Jersey Ave., NW, Washington DC 20001 (202) 326-2813

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**Exhibit 1-01**

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**Exhibit 1-02**

**ATTACHMENT A**
**DOCUMENTS TO BE PRODUCED PURSUANT TO SUBPOENA DUCES TECUM**

REQUESTS FOR PRODUCTION OF DOCUMENTS

Per the terms of this request as provided below, the Company shall produce documents as requested below:

1.    All documents, submitted separately for: (i) each Relevant Company Store; and (ii) for those subparts with an asterisk (*), each department within each Relevant Company Store (including, but not limited to: Bakery, Catering, Cheese and Specialty Foods, Floral, Gift Baskets, Grocery, Meat and Poultry, Prepared Foods, Produce, Seafood, Tea, Beer and Wine, Holistic Health, Body Care and Cosmetics, Nutritional Supplements, Bulk Items, Juice Bar, Java Bar, and Pet Food), sufficient to show:

    a.    Store name;
    b.    Store number;
    c.    Full street address (including city, state, and zip code);
    d.    * Department name and description;
    e.    Original opening date of store at this location;
    f.    Projected opening date at this location (if not currently open);
    g.    Date store was closed (if applicable);
    h.    Date store is projected to close (if applicable);
    i.    Date store is projected to relocate (if applicable);
    j.    Reason store was or will be closed (if applicable);
    k.    * Total square footage;
    l.    * Square footage of selling space;
    m.    Linear footage of Natural Foods and Products;
    n.    Linear footage of Organic Foods and Products;
    o.    Percentage of total sales attributable to non-food items;
    p.    * Total number of SKUs;
    q.    * Number of Natural Foods and Products SKUs;
    r.    * Number of Organic Foods and Products SKUs;
    s.    * Number of Private Label Foods and Products SKUs;
    t.    * Number of Perishables SKUs;
    u.    * Total number of SKUs offered at a discounted or sale price on the following dates: (i) September 27, 2006; and (ii) November 22, 2006.
    v.    Store hours of operation;
    w.    * Gross sales revenues;
    x.    * Total net sales;
    y.    * Net sales of Natural Foods and Products;
    z.    * Net sales of Organic Foods and Products;
    aa.    * Net sales of Private Label Foods and Products;
    bb.    * Net sales of Natural Foods and Products sold as Private Label Foods and

1

**Exhibit 1-03**

|      | Products; |
|------|-----------|
| cc.  | * Net sales of Organic Foods and Products sold as Private Label Foods and Products; |
| dd.  | * Net sales of Perishables; |
| ee.  | Net sales of Tobacco Products; |
| ff.  | Total gross margin; |
| gg.  | Gross margin of Natural Foods and Products; |
| hh.  | Gross margin of Organic Foods and Products; |
| ii.  | Gross margin of Private Label Foods and Products; |
| jj.  | Gross margin of Natural Foods and Products sold as Private Label Foods and Products; |
| kk.  | Gross margin of Organic Foods and Products sold as Private Label Foods and Products; |
| ll.  | Gross margin of Perishables; |
| mm.  | Gross margin of Tobacco Products; |
| nn.  | * Total number of employees; |
| oo.  | * Total number of employees who: (i) regularly work thirty (30) hours or more per week; and (ii) are eligible for benefits (*e.g.*, health insurance). |
| pp.  | Average hours of training per non-cashier employee; |
| qq.  | Average hours of training per cashier employee; |
| rr.  | Features in the store (including, but not limited to: full-service butcher counter, full-service seafood counter, sushi bar, coffee bar, cafeteria, kitchens, and bakeries); |
| ss.  | Trade or draw area (the geographic area closest to the Relevant Company Store where customers representing approximately 85% of the Relevant Company Store's customers reside); and |
| tt.  | Number of parking spaces. |

**Provided however,** that in lieu of documents, the Company may provide a machine-readable electronic spreadsheet in the format provided in Attachment B (*i.e.*, Microsoft Excel) containing the requested information for Request No. 1, accompanied by a certification by an officer of the Company that the information provided is accurate and complete. List each Relevant Company Store in a separate row. List each subpart of Request No. 1 in a separate column. For stores that have relocated, list the original and the relocated stores in separate rows. For stores that are a "store within a store," list separately both the Company store and the hosting store.

2.  All advertisement documents, including, but not limited to, brochures, flyers, announcements, coupons, discounts, leaflets, circulars, notices, newspapers, or magazine ads distributed, disseminated, or offered by any Relevant Company Store from: (i) September 10, 2006, through and including September 30, 2006; and (ii) November 15, 2006, through and including December 15, 2006.

2

**Exhibit 1-04**

3.     Documents sufficient to show any storewide sales promotions (such as receiving a percentage off a total order or a dollar amount off of a total order), effective on September 27, 2006, and November 22, 2006.

4.     All documents sufficient to show the Company's strategy concerning Natural Foods and Products and Organic Foods and Products, including, but not limited to, entry, expansion, store refreshes, and repositioning efforts in the Relevant Area.

3

**Exhibit 1-05**

## DEFINITIONS

The following definitions apply:

A.  The term "the Company" means the Company identified on this Subpoena, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, consultants, agents and representatives of the foregoing.

B.  The term "Relevant Company Store" means any Company-owned store (either currently in operation or planned to open within two (2) years of the date of this subpoena) located within six (6) miles of a current or planned store owned or operated by Whole Foods Market, Inc. or Wild Oats Markets, Inc. (excluding any Sun Harvest and Henry's Farmers Market stores) in the following Metropolitan Statistical Areas (MSAs):  Chicago-Naperville-Joliet, IL-IN-WI;  Hartford-West Hartford-East Hartford, CT; Portland-South Portland-Biddeford, ME; Portland-Vancouver-Beaverton, OR-WA; Nashville-Davidson-Murfreesboro-Franklin, TN; Denver-Aurora, CO; and Boulder, CO.

C.  The term "Person" means any natural person, corporate entity, partnership, or association.

D.  The term "SKU" means Stock Keeping Unit.

E.  The term "Natural Foods and Products" means foods and products that are minimally processed and largely or completely free of artificial ingredients, preservatives, and other non-naturally occurring substances.

F.  The term "Organic Foods and Products" means foods and products that conform to the United States Department of Agriculture's Organic Foods Protection Act of 1990.  For the purposes of these Requests, if a food or product is Organic, please include it only in

4

**Exhibit 1-06**

the Organic category (and not in the Natural category, if applicable).

G.    The term "Private Label Foods and Products" means foods and products that are marketed or manufactured under the Company's brand.

H.    The term "Perishables" means deli foods, produce, fresh meat, seafood, floral, bakery, and prepared foods.

I.    The term "Tobacco Products" means cigarettes, chewing tobacco, cigars, snuff, and related accessories.

J.    The term "Relevant Area" means, and documents shall be provided separately for, a ten (10) mile radius surrounding each of the Relevant Company Stores.

K.    The "Transaction" means Whole Foods Market, Inc.'s proposed acquisition of Wild Oats Markets, Inc.

L.    The terms "and" and "or" have both conjunctive and disjunctive meanings.

M.    The term "document" includes all writings, electronic mail, spreadsheets, databases, evaluations, studies, analyses, computer models, and any other data compilations or electronic documents responsive to the specifications of this request.

## INSTRUCTIONS

I.    This request calls for the production of all documents in the Company's custody or control.  Unless otherwise indicated in the specific Request, all documents requested are for the time period from January 1, 2006, through the date of the complete response to this subpoena.

II.    Submit entire documents, including all attachments, cover letters, memoranda and appendices, for each request.  Copies that have been altered in any way from an original

5

**Exhibit 1-07**

are deemed to be separate documents and should be produced separately. All electronic

documents shall reflect the actual date of their creation or be accompanied by metadata

accurately reflecting such date.

III.    Please produce all documents as they are kept in the ordinary course of business,

including any file folders and labeling for groups of documents, with a designation of the

individual in whose files the documents are found. All documents clipped or otherwise

attached to responsive documents are requested to be produced in a manner

demonstrating such clipping or attachment.

IV.    In lieu of producing documents in hard-copy format, the Company may provide the data

and documents requested in machine-readable spreadsheet format, after conferring with

the individual listed in paragraph VI of this subpoena.

V.    If any documents were produced in response to an identical request in a Civil

Investigative Demand issued to the Company by the Federal Trade Commission in

conjunction with the Commission's investigation of the Transaction, the Company does

not need to resubmit those documents.

VI.    Plaintiff is prepared to discuss reasonable means of limiting the scope of any specification

and other reasonable modifications to minimize the cost, expense, and time required to

comply with this request. To expedite your production, Plaintiff requests that documents

be produced on a rolling basis as they are identified as responsive. To discuss these

matters or any other arrangements, please contact Jenny Schwab, Esq., of the Federal

Trade Commission, at (202) 326-2335.

6

**Exhibit 1-08**

APPENDIX B TO SUBPOENA

| Store Name | Store Number | Street Address | Dept. Name/Description | Orig. Opening Date | Proj. Opening Date |
|------------|--------------|----------------|------------------------|--------------------|--------------------|
|            |              |                |                        |                    |                    |

Exhibit 1-09

APPENDIX B TO SUBPOENA

| Date Store Closed | Proj. Close Date | Proj. Relocation Date | Reason Store Closed | Total Sq. Footage | Sq. Footage Sell Space |
|---|---|---|---|---|---|
| | | | | | |

**Exhibit 1-10**

APPENDIX B TO SUBPOENA

| Linear Footage Natural | Linear Footage Organic | %age of Total Sales Non-Food Items | Total # SKUs | # Natural SKUs | # Organic SKUs | # Priv. Label SKUs |
|---|---|---|---|---|---|---|
| | | | | | | |

**Exhibit 1-11**

APPENDIX B TO SUBPOENA

| # Perishables SKUs | # Discounted SKUs 9/27/2006 | # Discounted SKUs 11/22/2006 | Store Hours | Gross Sales Revenues | Total Net Sales | Net Sales Natural |
|---|---|---|---|---|---|---|
| | | | | | | |

**Exhibit 1-12**

APPENDIX B TO SUBPOENA

| Net Sales Organic | Net Sales Priv. Label | Net Sales Priv. Label & Natural | Net Sales Priv. Label & Organic | Net Sales Perishables | Net Sales Tobacco |
|---|---|---|---|---|---|
| | | | | | |

**Exhibit 1-13**

APPENDIX B TO SUBPOENA

| Total Gross Margin | Gross Margin Natural | Gross Margin Organic | Gross Margin Priv. Label | Gross Margin Priv. Label & Natural | Gross Margin Priv. Label & Organic | Gross Margin Perishables |
|---|---|---|---|---|---|---|
| | | | | | | |

**Exhibit 1-14**

APPENDIX B TO SUBPOENA

| Gross Margin Tobacco | Total # Employees | Total # FTEs | Avg. Hrs. Training Non-Cashier EE | Avg. Hrs. Training Cashier EE | In-Store Features | Trade/Draw Area |
|---|---|---|---|---|---|---|
| | | | | | | |

**Exhibit 1-15**

# Pkg. Spaces

APPENDIX B TO SUBPOENA

**Exhibit 1-16**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on such date I served the foregoing Subpoena Duces Tecum and all Attachments via overnight delivery to:

Jason Walborn, Esq.
General Counsel
Target Corporation
1000 Nicollet Mall
Minneapolis, MN 55403

And via overnight delivery and electronic mail to:

Michael Ponto, Esq.  (Counsel for Target Corporation)
Faegre & Benson L.L.P.
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, MN  55402
mponto@faegre.com

Alden L. Atkins, Esq.  (Counsel for Defendant Whole Foods Market, Inc.)
Vinson & Elkins LLP
The Willard Office Building
1455 Pennsylvania Ave., N.W., Suite 600
Washington, D.C.  20004-1008
Aatkins@velaw.com

Gary Alan MacDonald, Esq. (Counsel for Defendant Wild Oats Markets, Inc.)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, D.C.  20005-2111
Gmacdona@skadden.com

Clifford H. Aronson, Esq.  (Counsel for Defendant Wild Oats Markets, Inc.)
Thomas A. Pak, Esq.
Matthew P. Hendrickson, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
Caronson@skadden.com
Tpak@skadden.com
Mhendric@skadden.com

Terrence J. Wallock, Esq.  (Counsel for Defendant Wild Oats Markets, Inc.)
Law Office of Terrence J. Wallock
2224 Pacific Drive
Corona Del Mar, California 92625
Terry@wallock.com

Dated: June 18, 2007

/s/ Thomas H. Brock
Thomas H. Brock, Esq.

**Exhibit 1-17**



# CIVIL INVESTIGATIVE DEMAND
## Documentary Material

| 1. TO | 2. FROM |
|---|---|
| Target Corporation<br>1000 Nicollet Mall<br>Minneapolis, MN  55403<br><br>Attn: Nancy Hagerty,  Esq. (In-House Counsel) | UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION |

This demand is issued pursuant to Section 20 of the Federal Trade Commission Act, 15 U.S.C. § 57b-1, in the course of an investigation to determine whether there is, has been, or may be a violation of any laws administered by the Federal Trade Commission by conduct, activities or proposed action as described in Item 3.

**3. SUBJECT OF INVESTIGATION**

In the matter of the Proposed Acquisition by Whole Foods Market, Inc., of Wild Oats Markets, Inc., File No. 071-0114. See the attached Resolution directing use of Compulsory Process.

You are required by this demand to produce all documentary material in the attached schedule that is in your possession, custody or control, and to make it available at your address indicated above for inspection and copying or reproduction.

| 4. DATE AND TIME MATERIAL MUST BE AVAILABLE | 5. COMMISSION COUNSEL |
|---|---|
| April 7, 2007 by cob 5:00 P.M. | Marc I. Alvarez, Esquire    (202) 326-3662<br>Michael Franchak, Esquire  (202) 326-3406 |

| 6. RECORDS CUSTODIAN | 7. DEPUTY RECORDS CUSTODIAN |
|---|---|
| Catherine M. Moscatelli, Deputy Assistant Director<br>Federal Trade Commission<br>601 New Jersey Avenue NW -  Suite 5238<br>Washington, DC  20001 | Marc I. Alvarez, Esquire<br>Federal Trade Commission<br>601 New Jersey Avenue NW -  Suite 6137<br>Washington, DC  20001 |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 3/28/07 | *Pamela J. Harbour* |

## INSTRUCTIONS AND NOTICES

The delivery of this demand to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.  The production of documentary material in response to this demand must be made under a sworn certificate, in the form printed on the second page of this demand, by the person to whom this demand is directed or, if not a natural person, by a person or persons having knowledge of the facts and circumstances relating to such production.  This demand does not require approval by OMB under the Paperwork Reduction Act of 1980.

## PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this demand be filed within 20 days after service, or, if the return date is less than 20 days after service, prior to the return date.  The original and twelve copies of the petition must be filed with the Secretary of the Federal Trade Commission, and one copy should be sent to the Commission Counsel named in Item 5.

## YOUR RIGHTS TO REGULATORY ENFORCEMENT FAIRNESS

The FTC has a longstanding commitment to a fair regulatory enforcement environment. If you are a small business (under Small Business Administration standards), you have a right to contact the Small Business Administration's National Ombudsman at 1-888-REGFAIR (1-888-734-3247) or www.sba.gov/ombudsman regarding the fairness of the compliance and enforcement activities of the agency. You should understand, however, that the National Ombudsman cannot change, stop, or delay a federal agency enforcement action.

The FTC strictly forbids retaliatory acts by its employees, and you will not be penalized for expressing a concern about these activities.

FTC Form **143** (rev. 3/03)

**Exhibit 2-01**

## Form of Certificate of Compliance*

I/We do certify that all of the documents required by the attached Civil Investigative Demand which are in the possession, custody, control, or knowledge of the person to whom the demand is directed have been submitted to a custodian named herein.

If a document responsive to this CID has not been submitted, the objection to its submission and the reasons for the objection have been stated.

Signature_____

Title_____

Sworn to before me this day

_____     _____

_____
Notary Public

_____

*In the event that more than one person is responsible for submitting documents responsive to this demand, the certificate shall identify the documents for which each certifying individual was responsible. In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

**Exhibit 2-02**



UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

# CIVIL  INVESTIGATIVE DEMAND
## ISSUED  TO TARGET, INC.

### FTC File No. 071 0114

Unless modified by agreement with the staff of the Federal Trade Commission, each specification of this Civil Investigative Demand ("CID") requires a complete search of "the Company" as defined in Paragraph "A" of the Definitions and Instructions, which appear after the Specifications.  If the Company believes that any part of this CID can be narrowed in any way that is consistent with the Commission's need for information, you are encouraged to discuss such questions and possible modifications with the Commission representative identified on the last page of this CID.  All modifications to this CID must be agreed to in writing by the Commission representative.[1]

## SPECIFICATIONS

1.    Submit an electronic spreadsheet listing each store the Company has owned, operated, or plans to own or operate for any point in time from January 1, 2003 to December 31, 2011. List each store in a separate row.  For stores that have relocated, list the original and the relocated stores in separate rows.  For stores that are a "store within a store," list separately both the Company store and the hosting store.  For each store, list in a separate column:
   a.    the current trade name;
   b.    all prior trade names (if applicable);
   c.    dates each prior trade name was in use (if applicable);
   d.    store name;
   e.    store number;
   f.    store acronym;
   g.    telephone number;
   h.    full street address;
   i.    city;
   j.    state;
   k.    zip code;
   l.    current operating status;
   m.    longitude (in degrees up to at least five decimal places);
   n.    latitude (in degrees up to at least five decimal places);

---

[1]     Staff is operating on the assumption that all of the data requested is contained in an electronic database that can be queried at minimal human cost.  If this is not the case or there are other circumstances that make it difficult or impossible for the recipient of this CID to comply with the requests as written, then as stated above, the recipient is encouraged to contact the Commission representative to discuss modifications.

**Exhibit 2-03**

**Civil Investigative Demand Directed to
Target, Inc.**                                              **Page 2 of 8**

    o.     original opening date the store opened at that location (regardless of ownership);
    p.     projected opening date at that location (if not currently open);
    q.     date the store was closed (if applicable);
    r.     date the store is projected to be closed (if applicable);
    s.     date the store is projected to be relocated (if applicable);
    t.     reason the store was closed (if applicable);
    u.     reason the store was relocated (if relocated);
    v.     dates of any remodeling;
    w.     projected dates of any future remodeling;
    x.     dates the store was expanded by more than ten percent;
    y.     square feet added by any expansion greater than ten percent;
    z.     projected dates of any future expansions;
    aa.     company from whom the store was acquired (if applicable);
    bb.     date the store was acquired (if applicable);
    cc.     total square feet;
    dd.     total square feet of selling space;
    ee.     quality of ingress (e.g., poor, fair or good);
    ff.     quality of egress (e.g., poor, fair or good);
    gg.     features in the store (including, but not limited to: sushi bar, coffee bar, meat counter, seafood counter, chocolate enrobing station);
    hh.     number of parking spaces;
    ii.     proximity to public transit; and
    jj.     visibility of the store from the street.

2.     Submit an electronic spreadsheet listing for each store overall and for each department within the store (including, but not limited to: Bakery, Catering, Cheese and Specialty Foods, Floral, Gift Baskets, Grocery, Meat and Poultry, Prepared Foods, Produce, Seafood, Tea, Wine, Holistic Health, Body Care and Cosmetics, Nutritional Supplements, Beer, Bulk Items, Juice Bar, Java Bar, Pet Food), for the most recently concluded fiscal quarter, the following information:

    a.     store number;
    b.     department name & description;
    c.     gross sales revenues (specifying any adjustments (e.g., slotting allowances, merchandising allowances, marketing development funds, volume discounts) to gross sales revenues);
    d.     net sales;
    e.     gross margin;
    f.     square feet;
    g.     the number of distinct stock keeping units ("SKUs"), or unique products if SKUs are not used;
    h.     the number of hourly-wage employees;
    i.     total number of transactions;
    j.     the number of salaried employees; and

**Exhibit 2-04**

**Civil Investigative Demand Directed to
Target, Inc.**                                                   **Page 3 of 8**

     k.    any price indices used by the Company during the ordinary course of business.

**Exhibit 2-05**

Civil Investigative Demand Directed to
Target, Inc.                                                    **Page 4 of 8**

## DEFINITIONS AND INSTRUCTIONS

For the purposes of this CID, the following definitions and instructions apply:

A.  The term "the Company" or "Target" means Target, Inc., its domestic and foreign
    parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures,
    and all directors, officers, employees, agents and representatives of the foregoing. The
    terms "subsidiary," "affiliate," and "joint venture" refer to any person in which there is a
    partial (25 percent or more) or total ownership or control between the Company and any
    other person.

B.  The terms "and" and "or" have both conjunctive and disjunctive meanings.

C.  All references to year refer to fiscal year. Unless otherwise specified, each of the
    specifications calls for information from the last fiscal year, from October 1, 2005 to
    September 30, 2006. If fiscal year information is not available, supply the Company's last
    full calendar year data indicating the twelve month period covered, and provide the
    Company's best estimate of calendar year data.

D.  Whenever a specification requests the submission of data, unless otherwise specified, the
    Company should provide the data in hard copy and in a format consistent with the format
    described in Appendix A. If information is not kept in the form requested, the Company
    is encouraged to contact the Commission representative to discuss alternative formats in
    which the information may be provided.

E.  This CID shall be deemed continuing in nature so as to require production of all
    information responsive to any specification included in this CID produced or obtained by
    the Company up to thirty calendar days prior to the date of the company's full compliance
    with this CID.

F.  If any documents or information are withheld from production based on a claim of
    privilege, provide a statement of the claim of privilege and all facts relied upon in support
    thereof, in the form of a log that includes each document's authors, addressees, date, a
    description of each document, all recipients of the original and any copies, the
    specification(s) of this CID to which the document is responsive, whether the document
    has been redacted, and, if so, the control number(s) of each redacted document.
    Attachments to a document should be identified as such and entered separately on the log.
    For each author, addressee, and recipient, state the person's full name, title, and employer
    or firm, and denote all attorneys with an asterisk. The description of the subject matter
    shall include the number of pages of each document and shall describe the nature of each
    document in a manner that, though not revealing information itself privileged, provides
    sufficiently detailed information to enable the Commission to assess the applicability of
    the privilege claimed. For each document withheld under a claim that it constitutes or

**Exhibit 2-06**

**Civil Investigative Demand Directed to**
**Target, Inc.**                                                          **Page 5 of 8**

contains attorney work product, also state whether the company asserts that the document was prepared in anticipation of litigation or for trial and, if so, identify the anticipated litigation or trial upon which the assertion is based. Submit all nonprivileged portions of any responsive document (including nonprivileged or redactable attachments) for which a claim of privilege is asserted (except where the only nonprivileged information has already been produced in response to this instruction), noting where redactions in the document have been made. Documents authored by outside lawyers representing the company that were not directly or indirectly furnished to the company or any third-party, such as internal law firm memoranda, may be omitted from the log.

G.    If the Company is unable to answer any question fully, supply such information as is available. Explain why such answer is incomplete, the efforts made by the Company to obtain the information, and the source from which the complete answer may be obtained. If books and records that provide accurate answers are not available, enter best estimates and describe how the estimates were derived, including the sources or bases of such estimates. Estimated data should be followed by the notation "est." If there is no reasonable way for the Company to make an estimate, provide an explanation.

H.    In order for the Company's response to this CID to be complete, the attached certification form must be executed by the official supervising compliance with this CID, notarized, and submitted along with the responsive materials.

Any questions you have relating to the scope or meaning of anything in this CID or suggestions for possible modifications thereto should be directed to Marc I. Alvarez at 202-326-3662. The response to the Civil Investigative Demand shall be addressed to the attention of Marc I. Alvarez, Esq., Room 6137, 601 New Jersey Avenue, NW, Washington, D.C. 20001, and delivered between 8:30 a.m. and 5:00 p.m. on any business day to Federal Trade Commission. If you wish to submit your response by United States mail, please call Mr. Alvarez for mailing instructions.

**Exhibit 2-07**

Civil Investigative Demand Directed to
Target, Inc.                                                                     **Page 6 of 8**

## APPENDIX A

Magnetic media shall be submitted in the following forms and formats:

A.      Magnetic storage media.

The FTC will accept:

(1) 9-track computer tapes recorded in ASCII or EBCDIC format at either 1600 or 6250 BPI;

(2) 3.5-inch microcomputer floppy diskettes, high-density, double-sided, formatted for IBM compatible computers (1.44 MB capacity);

(3) Iomega ZIP disks formatted for IBM compatible PCs (100 MB capacity);

(4) CD-R74 CD-ROM readable disks formatted to ISO 9660 specifications (650 MB capacity);

(5) Iomega DITTO mini data cartridges (2000 MB capacity). Where data is to be transferred from an UNIX operating system the FTC will accept data provided on 8mm DAT cassettes with files compressed using TAR or CPIO, or created using DD copy.

B.      File and record structures.

(1) Magnetically-recorded information from centralized non-microcomputer- based systems (mainframes): (a) File structures. The FTC will accept sequential files only. All other file structures must be converted into sequential format. (b) Record structures. The FTC will accept fixed length records only. All data in the record is to be provided as it would appear in printed format:  i.e., numbers unpacked, decimal points and signs printed.

 (2) Magnetically-recorded information from microcomputers.  Microcomputer-based data: word-processing documents should be in DOS-text (ASCII), WordPerfect 8 or prior version, or Microsoft Word 97 or prior version format. Spreadsheets should be in Microsoft Excel(.xls) 97 or prior version, or Lotus-compatible (.wk1) format. Database files should be in Microsoft Access (.mdb) 97 or earlier version, or dBase-compatible (.dbf), version 4 or prior, format.  Database or spreadsheet files also may be submitted after conversion to ASCII delimited, comma separated or fixed length field format, with field names as the first record.  Graphic images must be in TIFF 4 format, compressed and unencrypted. Other proprietary software formats for word processing documents, spreadsheets, databases, graphics and other data files will be accepted by pre-authorization only.  For microcomputer files that are too large for one disk, files may be provided in a compressed WINZIP format.

**Exhibit 2-08**

**Civil Investigative Demand Directed to
Target, Inc.**                                                                  **Page 7 of 8**

C.    Documentation.

(1) Data provided by the respondent must be accompanied by the following information:
(a) full pathname of the file and (b) the disk on which the file resides.  In the case of
complex files or directories of files, all component files that are part of a given directory
must be specified with their full pathnames. Where necessary, the subdirectories that
must be created in order to successfully read these submitted files must be provided.

(2) Files provided on tape must be accompanied by the following information: (a)
filename; (b) the tape on which the file resides; (c) the position of the file on the tape.
For sequential database files, the documentation also must include (a) the number of
records contained in the file; (b) the length and block size of each record; and (c) the
record  layout, including (i) the name of each element, (ii) the respective element size in
bytes, and (iii) the element's data type. The documentation should be included in the same
package as the tape, along with a printout of the first 100 records in report format.

D.    Shipping.

Magnetic media should be carefully packed to avoid damage, and must be shipped clearly
marked: MAGNETIC MEDIA DO NOT X-RAY.

**Exhibit 2-09**

**Civil Investigative Demand Directed to
Target, Inc.**                                             **Page 8 of 8**

## CERTIFICATION

I certify that all of the information required by the attached CID that is in the possession, custody, control, or knowledge of the person to whom the demand is directed has been submitted to a custodian named herein.

If an interrogatory or a portion of the request has not been fully answered or a portion of the report has not been completed, the objection to such interrogatory or uncompleted portion and the reasons for the objection have been stated.


_____
       (Signature)


_____
       (Title)


_____
       (Company)


Subscribed and sworn to before me at the City of _____,

State of _____, this _____ day of _____, 20\_\_\_.


_____
       (Notary Public)

My Commission Expires: _____


**Exhibit 2-10**

UNITED STATES OF AMERICA
BEFORE FEDERAL TRADE COMMISSION

COMMISSIONERS:    Deborah Platt Majoras, Chairman
Pamela Jones Harbour
Jon Leibowitz
J. Thomas Rosch
William E. Kovacic

RESOLUTION DIRECTING USE OF
COMPULSORY PROCESS IN NON-PUBLIC INVESTIGATION

File No. 071-0114

Nature and Scope of Investigation:

To determine whether the proposed acquisition of Wild Oats Markets, Inc. by Whole Foods Markets, Inc., if consummated, would be in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, as amended, or Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended; and to determine whether the requirements of Section 7A of the Clayton Act, 15 U.S.C. § 18a, have been or will be fulfilled with respect to said transaction.

The Federal Trade Commission hereby resolves and directs that any and all compulsory processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10 and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50 and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. §§ 1.1, *et seq.*, and supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

Dated:    March 19, 2007

**Exhibit 2-11**