## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:07-CV-01021-PLF |
| WHOLE FOODS MARKET, INC. | ) | |
| and | ) | |
| WILD OATS MARKETS, INC. | ) | |
| Defendants. | ) | |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF DEFENDANT WHOLE FOODS MARKET, INC. FOR ENTRY OF A FINAL PROTECTIVE ORDER

Whole Foods Market, Inc. ("Whole Foods") submits this reply memorandum of points and authorities in support of its motion for entry of a Final Protective Order [Doc. 12], and in response to the opposition briefs and supporting exhibits filed by the Federal Trade Commission ("FTC") [Doc. 47] and the various Whole Foods competitors that have intervened in these proceedings.[1]

This is complex, very fast-paced litigation over Whole Foods' largest acquisition, a "matter of extreme importance to the company." Lang Decl. ¶ 10 (Def. Mem. Ex. C [Doc. 12]).

---

[1] The intervenors include Trader Joe's ("TJ"), H.E. Butt Grocery Company ("HEB"), Publix Supermarkets, Inc. ("Publix"), Supervalu Inc. ("Supervalu"), Wegmans Food Markets, Inc. ("Wegmans"), Winn-Dixie Stores, Inc. ("Winn-Dixie"), Apollo Management Holding, L.P. ("Apollo"), The Kroger Co. ("Kroger"), Safeway, Inc. ("Safeway"), Target Corporation ("Target," appearing as "amicus"), and Wal-Mart Stores, Inc. ("Wal-Mart"). Most of the intervenors expressly join in the legal arguments pressed by Trader Joe's.

By dint of her unique experience and training, the company's General Counsel, Roberta Lang, is the only person capable of providing the kind of immediate, comprehensive assistance that outside litigation counsel need to defend this case in the time available,[2] and the only person in a position to effectively advise the company's senior executives and board members on matters of status and strategy as this litigation progresses.  To do her job (and to help outside counsel do theirs), Ms. Lang needs some understanding of the facts bearing on the critical question in this case of whether and to what extent her company competes with the intervenors and other grocery industry retailers.  As it stands, however, Ms. Lang is sidelined, and her outside counsel hindered as a result, because much of this important information from Whole Foods' competitors – compelled in the first instance by the FTC itself – is designated "Restricted Confidential" under the Interim Protective Order and therefore cannot be shown to her.

That is not an appropriate outcome.  The intervenors' sensitivity to access by *anyone* at Whole Foods, which they view as a competitor, only underscores how critically relevant the information is to addressing the competitive issues in dispute.  For all the sound and fury of these competitors' opposition, moreover, none raises any substantial reason to believe that the one person at Whole Foods who proposes to see this information in any form – a lawyer and officer of the Court, Ms. Lang – has any involvement in competitive decisionmaking at her company, or otherwise has the inclination or opportunity to permit the intervenors' information to be used inappropriately.  Finally, as the FTC itself proposes in the alternative (as does intervenor Apollo), Whole Foods is willing to limit Ms. Lang's access so that she only sees unredacted pleadings, transcripts, and expert reports (whether in draft or final form), and not also the

---

[2]    See United States v. Sungard Data Sys., Inc., 173 F. Supp. 2d. 20, 24 (D.D.C. 2001) (Facciola, J.) (considering the accelerated pace of a merger challenge as a factor weighing in favor of granting complete access to in-house counsel who are most intimately familiar with their businesses).

accompanying exhibits or underlying discovery materials.[3]  She would, of course, not reveal to anyone at Whole Foods the content of any protected material referenced in these pleadings, transcripts, and reports.   This voluntary restriction will greatly reduce the universe of confidential third party information that she sees, while permitting outside counsel and her client to benefit from Ms. Lang's fully informed judgment about the matters at issue in this case.  If Ms. Lang were not permitted this limited access to intervenors' information, then the senior legal officer of the company and the person best able to assist outside counsel would be unable to participate in any meaningful way in preparing the briefs to be filed and working with the experts as they prepare the testimony that the Court will hear.  The Court would lose the benefit of her input in the submissions, and Whole Foods' ability to defend itself would be unfairly restricted.

## ARGUMENT

### A.    The Information at Issue Is Critically Relevant.

Joined by several other competitors that have intervened, Trader Joe's asserts that Whole Foods has not shown that third party confidential information is relevant enough to justify sharing it with anyone at Whole Foods, not even the company's General Counsel.  TJ Opp. 2, 7 [Doc. 50].  Relevance, however, is obvious.  This case is about the nature and extent of competition in the retail grocery industry, and in particular whether and to what extent participants in that industry constrain each other's pricing and other economic decisionmaking. The fact that these other supermarkets and grocery sellers so vigorously express their worry that *anyone* at Whole Foods might see their competitively sensitive information is a plain admission of its relevance to those central questions – and more, a real-world rejection of the FTC's

---

[3]    A proposed protective order reflecting this additional restriction is attached as Exhibit A. But for the addition of language in Paragraph 8(c) reflecting this change, Exhibit A is the same proposed protective order as the one attached as Exhibit A to the Whole Foods opening memorandum supporting its motion [Doc. 12].

litigation position that Whole Foods and Wild Oats stand virtually alone in a "premium natural organic supermarket" market, neither constraining nor constrained by the economic activity of other supermarkets and grocers.

The relevance of this information is established by the FTC's Complaint in this action and its opposition brief on this motion [Docs. 3, 47]. The Complaint alleges that "premium natural and organic supermarkets" are so distinctive from other supermarkets that they constitute a separate relevant market for antitrust purposes. The Complaint also alleges that "premium natural and organic supermarkets" are so distinctive from other retailers and other natural and organic retailers that they constitute a separate relevant market for antitrust purposes. Compl. ¶¶ 20-32. The Defendants vigorously contest these allegations. See Whole Foods Answer [Doc. 24]. Finally, the Complaint alleges that the primary competition for "premium natural and organic supermarkets" comes from other "premium natural and organic supermarkets," conceding, by implication, that other firms are also competitors. Compl. ¶ 33. Indeed, while the FTC asserts that these supermarkets and grocers only compete "at some level" and "in some manner" with Whole Foods, FTC Opp. 8-9 n.4, the intervenors are not so tepid. There is no mistaking their admission that they compete vigorously with Whole Foods, so much so that they say they would suffer competitive harm if Whole Foods saw their pricing, store location, product mix, and other sensitive information.[4]

---

[4]     See TJ Opp. 5, 6, 8 [Doc. 50] (Whole Foods' access to TJ's information would give Whole Foods a "distinct competitive advantage") & Palbaum Decl. ¶ 3 (TJs "competes with all other retailers that sell similar products – namely grocery stores, including Whole Foods and Wild Oats"); Winn-Dixie Opp. 3 [Doc. 66] (Lang's access to Winn-Dixie confidential information would be "immediately harmful to Winn-Dixie's business interests because Whole Foods is also a grocery retailer"); Kroger Opp. 2 [Doc. 53] (Whole Foods "generally competes with Kroger") & Foley Decl. ¶¶ 6, 19, 20 (Whole Foods and Wild Oats "generally compete with Kroger," such that showing Kroger data to Whole Foods would "provide Whole Foods with an unfair business advantage"); Safeway Opp. 3 [Doc. 54] & Gordon Decl. ¶ 9 (Safeway "sells

The other clear indication of relevance is the fact that *the FTC* issued compulsory process to get it – Civil Investigative Demands during its investigation phase and, now, Rule 45 subpoenas as it prepares for the hearing on its motion for Preliminary Injunction.[5]   The FTC would not be wasting its time and resources seeking this information in a very truncated discovery period unless it was highly relevant.   Nor would its witness list reflect (as it does) anticipated testimony from Trader Joe's, Safeway, Wegmans, Kroger, Walmart, and Publix on the very topics that these intervenors want to withhold from Ms. Lang – including "[i]nformation concerning expansion plans" and "SKU counts by category."   Ex. B (Plaintiff's List of Preliminary Fact Witnesses) (June 15, 2007).   Given those facts, it should come as no surprise that the FTC's brief, unlike the intervenors' briefs, does not raise relevance as an argument for opposing Whole Foods' motion.

Finally, the Court can be assured of the relevance of the intervenors' confidential information, and of Ms. Lang's legal rather than competitive motives, precisely because Ms. Lang is not asking to see it in its raw and complete form.   She is seeking access to unredacted pleadings, expert reports, and transcripts (including the draft work product of outside counsel

---

some of the same products" and operates in some of the same geographic areas as Whole Foods); Wal-Mart Opp. 2 [Doc. 56] (Whole Foods is "a competitor to Wal-Mart"); HEB Opp. 10 [Doc. 61] ("H-E-B thus considers Whole Foods to be a significant competitor, especially in areas – such as Austin – in which H-E-B operates Central Market stores."); Wegmans Opp. 3 [Doc. 58] (crediting statements by Whole Foods that Wegmans is "one of Whole Foods' primary competitors in some areas"); Supervalu Opp. 2, 4 [Doc. 59] (identifying Whole Foods as a "competitor," especially with respect to Supervalu's Sunflower Markets," a new store format that likewise emphasizes natural and organic products and healthy prepared foods"); Publix Opp. 2-3 [Doc. 60] (identifying Whole Foods as a "competitor," especially with respect to Publix's GreenWise Markets, "a new store format that likewise will emphasize natural and organic products and healthy prepared foods").

[5]     The FTC's boilerplate argument that third party cooperation would be "chilled" by entry of anything less restrictive than the Interim Protective Order (FTC Opp. 7) is belied by the fact that it could and did use compulsory process here to ensure cooperation.

and retained experts), but not exhibits or the discovery itself.  <u>See</u> Ex. A ¶ 8(c).  That means she will only see third party information to the extent that someone – the FTC, outside counsel for Whole Foods, a witness, or an expert – relied on that information to make a point at issue in this litigation.  If no one ever sees the relevance of the information, it will never find its way to Whole Foods' General Counsel.

For these reasons, the intervenors' protests that their information is not relevant or necessary to Ms. Lang's discharge of her obligation to advise and counsel her client in this case are ill-founded.  As the FTC itself recognizes (by compelling production of this information and not arguing irrelevance to protect it), the issue is not relevance at all, but whether a General Counsel must be denied access in order to assure that it remains confidential.

### B.    Ms. Lang Is Not Involved in Competitive Decisionmaking.

The FTC and the intervenors conclude that Ms. Lang is involved in Whole Foods' competitive decisionmaking, <u>see</u> <u>U.S. Steel Corp. v. United States</u>, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), only by taking liberties with what she says in her declaration.[6]

First, identifying <u>Carpenter Technology Corp. v. Armco, Inc.</u>, 132 F.R.D. 24 (E.D. Pa. 1991), as "perhaps the most instructive decision for the pending motion," the FTC compares Ms. Lang to the in-house counsel who was denied access to discovery in that case because, according to the FTC, that lawyer was "inevitably involved in all the company's legal affairs."  FTC Opp. 5.  The in-house lawyer denied discovery in <u>Carpenter</u>, however, had submitted an affidavit in which he only denied "direct" involvement in competitive decisionmaking – which begged the

---

[6]    Some intervenors also try to bolster their positions by citing Whole Foods CEO John Mackey's "blog," in which he is said to display an "interest" in information about Whole Foods' competitors.  <u>See</u>, <u>e.g.</u>, TJ Opp. 13-14 [Doc. 50].  Of course he does; that is his job.  That "interest" does not indicate that Mr. Mackey or any competitive decisionmaker at Whole Foods would violate a court order to get at such information, let alone that Ms. Lang would breach her professional obligations and defy the order.  Nor does it suggest in any way that Ms. Lang is herself involved in competitive decisionmaking, which is the question before this Court.

question for the court of what his true role was, especially when compared to the affidavit of another lawyer at the company who said he had "absolutely no involvement" in competitive decisions.  132 F.R.D. at 27-29.  *That* lawyer was given access, and Ms. Lang is much more like him than the other lawyer who claimed no "direct" involvement.  Ms. Lang does not just say that she avoids "pricing" and "product design" decisions (as the FTC incorrectly construes her testimony); nor does she say merely that "she is not the *final* decisionmaker" on competitive issues (see TJ Opp. 11 [Doc. 50], emphasis added).  Instead, she says quite plainly that she has *no* role in *any* type of competitive decisionmaking:

> I do not participate in competitive decisionmaking at Whole Foods.  I do not participate in any decisions about formulating or implementing strategies to compete with our competitors or any decisions about formulating or implementing pricing strategies.  I am not involved in pricing decisions, selection of vendors, purchasing decisions, marketing, or other competition-related issues that are the subjects of confidential information in this case.  I am also not involved in decisions about how much product to purchase at wholesale, the mix of products to carry, where to sell those products, or how to transport those products.

Lang Decl. ¶ 4 (Def. Mem. Ex. C [Doc. 12]).

Unable to contradict that sworn, dispositive statement, the FTC and intervenors try to chip away at it by speculating about Ms. Lang's various roles at the company.  However, the fact that she gives legal advice to Whole Foods' most senior executives serving on a group called the "E Team," which makes competitive, business, and policy decisions for the company "at the national level," is meaningless.  See Lang Decl. ¶ 6.  The only legally significant type of competitive decisionmaking is the type that is "made in light of similar or corresponding information about a competitor."  U.S. Steel, 730 F.2d at 1468 n.3.  The particular kind of information that Whole Foods' competitors are concerned about is store by store, department by department profitability, staffing, and product mix information, as well as specific information

– 7 –

about anticipated store locations.[7]  That is locally sensitive competitive information.[8]  It does not

"correspond" (as the U.S. Steel Court might put it) to the national, "macro" level of competitive

decisionmaking done by the E Team.  "Most decisions about pricing and competitive strategy are

made at the regional level rather than at the national level by the E Team," Lang Decl. ¶ 6, and

Ms. Lang is clear that she plays no part in those regional decisions.  See also id. ¶ 5 ("Most

competitive decisions at Whole Foods, particularly with respect to product pricing, product mix,

and competitive strategy, are made at the regional level by Regional Presidents and those

working under them.").

Ms. Lang's role on the Whole Foods Leadership Network is also irrelevant.  Yes, the

WFLN may sometimes discuss the "competitive landscape," but only "generally," and Ms. Lang

makes clear in any event that this group simply "does not make decisions about competitive

strategies."  Id.  ¶ 7.  This is critical because the focus of the analysis under U.S. Steel is the

inside counsel's involvement in "the client's *decisions*."  730 F.2d at 1468 n.3 (emphasis added).

Whatever the 27 members of the WFLN might discuss from time to time, they meet "to make

decisions about policy matters *unrelated to competition*," like employees benefits, product

---

[7]    See, e.g., Target Amicus Br. 2 [Doc. 62] (FTC subpoena sought "revenue and margins on products sold by Target on a store-by-store basis in the categories of organic foods, natural foods, and private-label foods," as well as "detailed information about the layout, planning, employees, and customer base for each store"); Wegmans Opp. 3-5 [Doc. 58] (expressing concern that store-specific financial, employee, product mix and anticipated store location information "might permit Whole Foods to adjust and target its prices, product mixes, and service levels to *specific Wegmans stores*") (emphasis added); Supervalu Opp. 6 [Doc. 59] (same, emphasizing that store and department-specific information "might be used to preempt SUPERVALU's efforts to obtain new store locations or otherwise blunt SUPERVALU's moves").

[8]    It is also exactly the sort of information *about Whole Foods* that the FTC wants to share with the general public, departing from the protective stance it takes here with respect to *third party* competitive information.  The FTC's apparent double standard is separately addressed in Whole Foods' accompanying opposition to the FTC's motion to unseal the memorandum supporting its motion for a temporary restraining order [Doc. 51].

quality standards, and charitable programs.  Lang Decl. ¶ 7 (emphasis added).  This is hardly a forum for airing the secrets of Whole Foods' competitors, let alone capitalizing on those secrets somehow through competitive decisionmaking.  Again, "[c]ompetitive strategies are made at the regional level by the Regional Presidents and their teams."  Id.

In addition, while the FTC adverts to Ms. Lang's role in negotiating the proposed acquisition of Wild Oats and coordinating the company's response to the FTC's review of that transaction, it cannot and does not say that any of that activity matters.  FTC Opp. 5.  Ms. Lang was not called upon to help Whole Foods evaluate competitive information and actually make the competitive *decision* to pursue the acquisition in light of that information.  Rather, as a lawyer, she was implementing a competitive decision made by others.  Only by oddly characterizing the Wild Oats acquisition as "involving real estate" does one intervenor bootstrap its way into an argument that Ms. Lang stands to make competitive use of that company's store location and other "Real Estate Data."  HEB Opp. 1, 6-7 [Doc. 61].  Ms. Lang is not involved in local and regional decisions about where to locate stores; rather, she helped to negotiate and has sought to win regulatory approval for a large *national* acquisition of another grocery chain. Betraying its own proper conclusion that Ms. Lang's role in this transaction should not bar her access to discovery, another intervenor simply omitted mention of that role – quoting her statement that she is "called upon daily to provide legal advice to the Eteam, the board of directors, and our senior leadership," TJ Opp. 10 [Doc. 50], but omitting the end of that sentence, "*concerning this [Wild Oats] transaction*."  Lang Decl. ¶ 10 (emphasis added).

– 9 –

Finally, the FTC and several intervenors insist that Ms. Lang surely must be involved in competitive decisionmaking because she is identified as an officer or director of dozens of Whole Foods subsidiaries. See FTC Opp. 5. None of that involvement contradicts Ms. Lang's testimony that she is *not* involved in making competitive decisions. See Lang Decl. ¶ 4. Her affiliation with those entities is for purposes unrelated to competitive decisionmaking. She is authorized to sign contracts for them, serves as their resident agent for service of process, and assures that they are properly organized and registered under the laws governing their formation. Lang Supp. Decl. ¶ 3 (attached as Ex. C). Ms. Lang does not make or participate in competitive decisions at any of these entities and, for many, she simply serves as their legally required point of contact with respect to their state licenses to sell alcohol. Id. ¶¶ 3-4. "[D]enial of access sought by in-house counsel on the sole ground of status as a corporate officer is error," Matsushita Elec. Indus. Co. v. United States, 929 F.2d 1577, 1580 (Fed. Cir. 1991), and yet that categorical denial of access represents the sum and substance of the position taken by the FTC and the intervenors.

### C.    Whole Foods Has Proposed Adequate Restrictions on Ms. Lang's Access.

As we have emphasized already, Ms. Lang aims only to represent her client effectively in litigation, not to gain for Whole Foods an unfair competitive advantage by serving as a conduit for confidential competitor information. For that reason, Whole Foods will agree that she have access only to unredacted pleadings, transcripts, and expert reports (in draft as well as final form), but neither the exhibits to those documents nor the underlying discovery materials. This substantially reduces the universe of confidential information that she can be expected to see, and it provides the added assurance that she will see only the most pertinent information – that which either the FTC or the outside lawyers or their experts has thought important enough to discuss in the case. That, plus the fact that Ms. Lang stands (at most) at the periphery of any

competitive decisionmaking, provides ample protection for the FTC and the intervenors, while allowing Ms. Lang to do her job by coordinating her client's litigation effort.  The FTC and at least one intervenor endorse this proposed restriction.  See FTC Opp. 10; Apollo Opp. 7 [Doc. 52].

That same appropriate balance is not achieved by maintaining a two-tiered protective order that would allow Ms. Lang to see merely "Confidential" information but bar her from "Restricted Confidential" material.  The most critically relevant of all information relating to the nature and extent of grocery industry competition is likely to be encompassed by the "Restricted Confidential" category, which is reserved for current "marketing plans, pricing plans, financial information," and any other information that would "likely cause substantial commercial harm" to the producing party if disclosed inappropriately.  See Interim Protective Order Def'n. ¶ 16 [Doc. 11].  Most of the information the intervenors have produced has been or will be designated in this "restricted' category.[9]  This is the information that the FTC itself has demanded, and that will most reveal whether and to what extent there really is a "premium natural and organic supermarket market" that is unconstrained by other supermarkets and grocery industry participants.  This is also the information that those litigating with the FTC on Whole Foods' behalf – including Ms. Lang – must be able to see, understand, and use to their client's litigation advantage.[10]

---

[9]    See, e.g., HEB Opp. 4 [Doc. 61]; Winn-Dixie Opp. 3 [Doc. 66]; Kroger Opp. 4 [Doc. 53]; Safeway Opp. 4 [Doc. 54]; Wegmans Opp. 4 [Doc. 58]; Supervalu Opp. 5 [Doc. 59]; Publix Opp. 4 [Doc. 60].

[10]    The fact that other litigants in the past have consented to protective orders like the one proposed by the FTC, see FTC Opp. 7-8, says little if anything about what ought to occur here. For all we know, the nature of the information at issue there and the role of in-house counsel were entirely different from what they are in this case, and the entry of the protective order was uncontested for those reasons.

Finally, there is no need to require Ms. Lang to leave her office to review and take notes on protected information. That procedure was employed in <u>FTC v. Foster</u>, No. 07-cv-532 JB/ACT, Mem. Op. & Order (D.N.M. Apr. 26, 2007) (Def. Mem. Ex. D [Doc. 12]), but only because the merging parties volunteered it, and then only because it gave the court added comfort that in-house counsel – as here, not involved in competitive decisionmaking – would not be in position to facilitate their clients' use of that information for improper purposes. Whole Foods did not volunteer this additional restriction; on the contrary, we regard it as offering little additional protection to the intervenors at a tremendous cost to Whole Foods. If imposed, this restriction would require Ms. Lang, who is her company's only "generalist" in-house lawyer, to absent herself from her office at Whole Foods headquarters in Austin (and from her many and varied clients within the organization) in order to review pleadings and draft pleadings at some separate location. Having to do so would impose a great burden on Ms. Lang and her company even if she were only going across town to do her review; it becomes especially so when one considers that the company's outside counsel are in Washington, DC. Lang Decl. ¶ 12. If this is the only way the Court is inclined to permit Ms. Lang to see what she needs to see in order to represent her client properly, we will of course abide by it. We reserve our position, however, that under the circumstances this sort of a restriction is needless and even punitive, placing significant barriers in the path of one litigant that another (here, the FTC) need not bear.

## CONCLUSION

For the foregoing reasons, defendant Whole Foods Market, Inc. respectfully requests that the Court vacate the existing Interim Protective Order and substitute the Final Protective Order attached as Exhibit A to this Reply Memorandum.

– 12 –

Defendant Whole Foods also renews its request for oral argument in connection with its Motion for Entry of a Final Protective Order.

Respectfully submitted,

/s/ Alden L. Atkins
Alden L. Atkins (DC Bar No. 393922)
Neil W. Imus (DC Bar No. 394544)
John D. Taurman (DC Bar No. 133942)
John M. Faust (DC Bar No. 433553)
VINSON & ELKINS L.L.P.
The Willard Office Building
1455 Pennsylvania Avenue, N.W., Suite 600
Washington, DC  20004-1008
Telephone (202) 639-6500
Facsimile (202) 639-6604


/s/ Paul T. Denis
Paul T. Denis (DC Bar No. 478958)
James A. Fishkin (DC Bar No. 437040)
DECHERT L.L.P.
1775 Eye Street, N.W.
Washington, DC  20006
Telephone (202 261-3430
Facsimile (202) 261-3333

Attorneys for Whole Foods Market, Inc.

June 27, 2007

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that, on this 27th day of June, 2007, I caused the foregoing Reply Memorandum of Points and Authorities in Support of the Motion of Defendant Whole Foods Market, Inc. for Entry of a Final Protective Order to be filed and served using the Court's ECF system:

**Attorneys for Plaintiff**

Michael J. Bloom
Thomas H. Brock
Eric M. Sprague
Thomas J. Lang
FEDERAL TRADE COMMISSION
601 New Jersey Ave., N.W.
Washington, D.C.  20001
mjbloom@ftc.gov
tbrock@ftc.gov
esprague@ftc.gov
tjlang@ftc.gov

**Attorneys for Defendant Wild Oats Markets, Inc.**

Gary A. MacDonald
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC  20005
gmacdona@skadden.com

Clifford H. Aronson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036
caronson@skadden.com

**Attorneys for Third Parties**:

Justin S. Antonipillai
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC  20004
Justin_Antonipillai@aporter.com

Attorney for Kroger Co.

Karin F.R. Moore
Richard G. Parker
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC  20006-4001
kmoore@omm.com
rparker@omm.com

Attorney for Trader Joe's Company

Darren S. Tucker
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC  20006-4001
dtucker@omm.com

Attorney for Wal-Mart Stores, Inc.

Peter L. Winik
Edward Marcellus Williamson
LATHAM & WATKINS LLP
555 11th Street N.W.
Suite 1000
Washington, DC  20004
Peter.Winik@lw.com

Attorney for Safeway, Inc.

Kristen Ceara Limarzi
KING & SPALDING, LLP
1700 Pennsylvania Avenue, N.W.
Washington, DC 20006
Email: klimarzi@kslaw.com

Attorney for Winn-Dixie Stores Inc.

Jonathan M. Rich
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004-2541
Email: jrich@morganlewis.com

Attorney for Apollo Management Holding LP

John E. Schmidtlein
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Email: jschmidtlein@wc.com

Attorney for Target Corporation

Joseph J. Simons
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1615 L Street, N.W., Suite 1300
Washington, DC 20036
Email: jsimons@paulweiss.com

Attorney for H.E. Butt Grocery Company

**The following persons have been served by electronic mail:**

Thomas A. Pak
Matthew P. Hendrickson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
tpak@skadden.com
mhendric@skadden.com

Attorney for Wild Oats Markets, Inc.

Terrence J. Wallock
2224 Pacific Dr.
Corona Del Mar, CA  92625
terry@wallock.com

Attorney for Wild Oats Markets, Inc.

Christopher J. MacAvoy *
HOWREY SIMON ARNOLD & WHITE LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
MacAvoy@howrey.com

Attorney for
Wegman Food Markets, Inc.
Publix Super Markets, Inc., and
SUPERVALU, Inc.

*Also served by Hand Delivery*

Alexander Maltas
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, DC 20004
alexander.maltas@lw.com

Attorney for Safeway, Inc.

/s/ Alden L. Atkins
Attorney for Whole Foods Market, Inc.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION )<br><br>Plaintiff, )<br><br>v. )<br><br>WHOLE FOODS MARKET, INC. )<br><br>and )<br><br>WILD OATS MARKETS, INC. )<br><br>Defendants. ) | Civil Action No. 1:07-CV-01021-PLF |

## PROTECTIVE ORDER GOVERNING DISCOVERY MATERIAL

For the purpose of protecting the interests of the Parties and Third Parties against the improper use and disclosure of confidential information submitted or produced in connection with this Matter:

IT IS HEREBY ORDERED THAT this Protective Order Governing Discovery Material (the "Protective Order") shall govern the handling of all Discovery Material in the above captioned Matter.

### DEFINITIONS

For purposes of this Protective Order, the following definitions shall apply:

1.    "Whole Foods" means defendant Whole Foods Market, Inc., a corporation organized, existing, and doing business under and by virtue of the laws of the State of Texas, with its office and principal place of business at 550 Bowie Street, Austin, Texas 78703, and its predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THE MOTION OF DEFENDANT
WHOLE FOODS MARKET, INC. FOR
ENTRY OF A FINAL PROTECTIVE ORDER

1:07-CV-01021-PLF

Exhibit A

2.      "Wild Oats" means defendant Wild Oats Markets, Inc., a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 3375 Mitchell Lane, Boulder, Colorado 80301, and its predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures.

3.      "Commission" or "FTC" means the Federal Trade Commission, or any of its employees, agents, attorneys, and all other persons acting on its behalf, excluding persons retained as consultants or experts for the purposes of this Matter.

4.      "Confidential Discovery Material" means all Discovery Material that is confidential or proprietary information produced in discovery.  Such material is referred to in, and protected by, Rule 26(c)(7) of the Federal Rules of Civil Procedure.  Confidential Discovery Material shall include non-public trade secret or other research, development, or commercial information, the disclosure of which would likely cause commercial harm to the Producing Party or to Defendants, in instances where the Producing Party produces information generated by the Defendants.  The following is a non-exhaustive list of examples of information that likely will qualify for treatment as Confidential Discovery Material: strategic plans (involving pricing, marketing, research and development, product road maps, corporate alliances, or mergers and acquisitions) that have not been fully implemented or revealed to the public; trade secrets; customer-specific evaluations or data (e.g., prices, volumes, or revenues); sales contracts; system maps; personnel files and evaluations; information subject to confidentiality or non-disclosure agreements; proprietary technical or engineering information; proprietary financial data or projections; and proprietary consumer, customer, or market research or analyses applicable to current or future market conditions, the disclosure of which could reveal Confidential Discovery Material.  Discovery Material will not be considered confidential if it is in the public domain.

5.    "Counsel of Record" means counsel who file a notice of appearance in this Matter.

6.    "Disclosing Party" means a party that is disclosing or contemplating disclosing Discovery Material pursuant to this Protective Order.

7.    "Discovery Material" includes without limitation deposition testimony, deposition exhibits, interrogatory responses, admissions, affidavits, declarations, Documents produced pursuant to compulsory process or voluntarily in lieu thereof, and any other Documents or information produced or given to one Party by another Party or by a Third Party in connection with discovery in this Matter.   Information taken from Discovery Material that reveals its substance shall also be considered Discovery Material.

8.    "Document" means the complete original or a true, correct, and complete copy and any non-identical copies of any written or graphic matter, no matter how produced, recorded, stored, or reproduced.  "Document" includes, but is not limited to, any writing, letter, envelope, telegraph, e-mail, meeting minute, memorandum, statement, affidavit, declaration, book, record, survey, map, study, handwritten note, working paper, chart, index, tabulation, graph, drawing, chart, photograph, tape, phono record, compact disc, video tape, data sheet, data processing card, printout, microfilm, index, computer readable media or other electronically stored data, appointment book, diary, diary entry, calendar, organizer, desk pad, telephone message slip, note of interview or communication, and any other data compilation from which information can be obtained, and includes all drafts and all copies of such Documents and every writing or record that contains any commentary, notes, or marking whatsoever not appearing on the original.

9.    "Expert/Consultant" means testifying or consulting experts or other persons who are retained to assist Plaintiff's Counsel or Defendants' Counsel in preparation for the hearing or to give testimony at the hearing.

10.    "Matter" means the above captioned matter pending in the United States District Court for the District of Columbia, and all subsequent administrative, appellate or other review proceedings related thereto.

11.    "Outside Counsel" means the law firms that are Counsel of Record for Defendants in this Matter, their partners and associated attorneys, or other persons regularly employed by such law firm(s) including legal assistants, clerical staff, vendors assisting with electronic discovery and information management personnel and temporary personnel retained by such law firm(s) to perform legal or clerical duties, or to provide logistical litigation support with regard to this Matter; provided that any attorney associated with Outside Counsel shall not be a director, officer, or employee of Defendants.  The term Outside Counsel does not include persons retained as consultants or experts for the purposes of this Matter.

12.    "Party" means either the FTC, Whole Foods, or Wild Oats.

13.    "Person" means any natural person, business entity, corporate entity, sole proprietorship, partnership, association, governmental entity, or trust.

14.    "Producing Party" means a Party or Third Party that produced or intends to produce Confidential Discovery Material to any of the Parties.  With respect to Confidential Discovery Material of a Third Party that is in the possession, custody, or control of the FTC, or has been produced by the FTC in this Matter, the Producing Party shall mean the Third Party that originally provided such material to the FTC. The Producing Party shall mean the FTC for purposes of any Document or Discovery Materials prepared by, or on behalf of, the FTC.

15.    "Defendants" means Whole Foods and Wild Oats.

16.    "Third Party" means any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Matter and its employees, directors, officers, attorneys, and agents.

## TERMS AND CONDITIONS OF PROTECTIVE ORDER

1.    Discovery Material, or information derived therefrom, shall be used solely by the Parties for purposes of this Matter, and shall not be used for any other purpose, including without limitation any business or commercial purpose.    Notwithstanding the foregoing, nothing contained in this Protective Order shall prevent the Commission from using any material produced as part of the investigation in this Matter, including any Discovery Material, for any authorized law enforcement purpose, provided that the Commission may only use or disclose Discovery Material as provided by (a) its Rules of Practice, and any cases so construing them, (b) Sections 6(f) and 21 of the Federal Trade Commission Act, and any cases so construing them, and (c) any other legal obligation imposed upon the Commission.    The Parties, in conducting discovery from Third Parties, shall attach to all discovery requests a copy of this Protective Order and a cover letter that will apprise such Third Parties of their rights hereunder.

2.    Confidential Discovery Material may be designated as such by (a) placing or affixing on each page of a Document containing such material, in a manner that will not interfere with its legibility, the notation "CONFIDENTIAL - FTC v. Whole Foods," or (b) any Party or Third Party instructing the court reporter, with notice to all Parties, within five (5) business days of the receipt of the transcript, to designate as "Confidential" each page of the deposition transcript containing the Confidential Discovery Material.    Such designations constitute a good-faith representation by counsel for the Party or Third Party making the designation that the

Document or transcript constitutes or contains Confidential Discovery Material. All deposition transcripts shall be treated as Confidential Discovery Material until the expiration of five (5) business days after the receipt of the transcript. A Producing Party will use reasonable care to avoid designating any Discovery Material as Confidential Discovery Material that is not entitled to such designation.

3.    Confidential Discovery Material shall not be copied or reproduced for use in this Matter except to the extent such copying or reproduction is reasonably necessary to the conduct of this Matter. All such copies or reproductions of the Discovery Material and any documents generated by the Parties containing information drawn from such Discovery Material shall be subject to the terms of this Protective Order. If the duplication process by which copies or reproductions of Confidential Discovery Material are made does not preserve the confidentiality designations that appear on the original Documents, all such copies or reproductions shall be stamped with the same confidentiality designation as the original.

4.    All Documents obtained by compulsory process or voluntarily in lieu of process from any Party or Third Party, regardless of whether designated or marked confidential by the Party or Third Party, and transcripts of any investigational hearings, interviews, or depositions that were obtained before this Protective Order was adopted, shall be treated as Confidential Discovery Material for a period of ten (10) days from the time notice of the intent to produce is given to the Producing Party. At the expiration of that time, this material shall be treated as non-confidential unless documents or transcripts pages are otherwise designated with specificity by the Producing Party as Confidential Discovery Material.

5.    If any Party seeks to challenge a Producing Party's designation of material as Confidential Discovery Material, the challenging Party shall notify the Producing Party and all

other Parties of the challenge.  Such notice shall identify with specificity (*i.e.*, by document control numbers, deposition transcript page and line reference, or other means sufficient to locate easily such materials) the designation being challenged.  The Producing Party may preserve its designation by providing the challenging Party and all other Parties a written statement of the reasons for the designation within three (3) business days of receiving notice of the confidentiality challenge.  If the Producing Party timely preserves its rights, the Parties shall continue to treat the challenged material as Confidential Discovery Material, absent a written agreement with the Producing Party or order of the Court providing otherwise.

6.     If any conflict regarding a confidentiality designation arises and the Parties involved have failed to resolve the conflict via good-faith negotiations, a Party seeking to disclose Confidential Discovery Material or challenging a confidentiality designation may make written application to the Court for relief.  The application shall be served on the Producing Party and the other Parties to this Matter, and shall be accompanied by a certification that good-faith negotiations have failed to resolve the outstanding issues.  The Producing Party and any other Party shall have three (3) business days after receiving a copy of the motion to respond to the application.  While an application is pending, the Parties shall maintain the pre-application status of the Confidential Discovery Material.  Nothing in this Protective Order shall create a presumption or alter the burden of persuading the Court of the propriety of a requested disclosure or change in designation.

7.     The Parties shall not be obligated to challenge the propriety of any designation or treatment of information as Confidential Discovery Material and the failure to do so promptly shall not preclude any subsequent objection to such designation or treatment, or any motion seeking permission to disclose such material to Persons not otherwise entitled to access under the

terms of this Protective Order. If Confidential Discovery Material is produced without the designation attached, the material shall be treated as Confidential from the time the Producing Party advises Plaintiff's Counsel and Defendants' Counsel in writing that such material should be so designated and provides all the Parties with an appropriately labeled replacement. The Parties shall return promptly or destroy the unmarked materials.

      8.     Confidential Discovery Material shall not, directly or indirectly, be disclosed or otherwise provided to anyone except:

(a)    Plaintiff's counsel and the Commission, as permitted by the Commission's Rules of Practice;

(b)    Outside Counsel;

(c)    Roberta L. Lang, General Counsel of Whole Foods Market, Inc., on condition that Ms. Lang shall have access only to unredacted draft and final versions of pleadings, deposition and hearing transcripts, and expert reports, but shall not have access to any accompanying exhibits or underlying discovery materials to the extent those exhibits or discovery materials have been designated "Confidential";

(d)    Experts/Consultants;

(e)    court reporters and deposition transcript reporters;

(f)    judges and other court personnel of any court having jurisdiction over any proceedings involving this Matter;

(g)    any author or recipient of the Discovery Material; any individual who was in the direct chain of supervision of the author at the time the Discovery Material was created or received; any employee or agent of the entity that created or received the Discovery Material; or anyone representing the author or recipient of the Discovery Material in this Matter; and

(h)    any other Person(s) authorized in writing by the Producing Party.

      9.     Confidential Discovery Material shall not, directly or indirectly, be disclosed or otherwise provided to an Expert/Consultant until such person has executed and transmitted to counsel for the party retaining such person a declaration in the form attached as Exhibit "A."

Each Party's counsel shall maintain a file of all such declarations for the duration of the litigation.

10.     If any Party desires to disclose Confidential Discovery Material to (a) either any Expert/Consultant, any deponent, or any witness that is or was an officer, director or employee of Whole Foods or Wild Oats, or (b) any Person other than those referred to in paragraph 8 of this Protective Order, the Disclosing Party shall notify the Producing Party any other Party of its desire to disclose such material.  The notice shall identify those materials sought to be disclosed with specificity (*i.e.*, by document control numbers, deposition transcript page and line reference, or other means sufficient to locate easily such materials) and the specific Person to whom the Confidential Discovery Material is to be disclosed.  For disclosure to any Expert/Consultant, deponent, or witness that is or was an officer, director, or employee of Whole Foods or Wild Oats, the identification of the Person shall include, but not be limited to, the full name, professional address and/or affiliation, and current curriculum vitae of the identified Person.  The Producing Party may object to the disclosure of the Confidential Discovery Material within five (5) business days of receiving notice of an intent to disclose such material to the Person by providing the Disclosing Party with a written statement of the reasons for objection.  If the Producing Party timely objects, the Disclosing Party shall not disclose the Confidential Discovery Material to the identified Person, absent a written agreement with the Producing Party or order of the Court permitting the disclosure.  If the Producing Party does not object to the disclosure of Confidential Discovery Material to the identified Person within five (5) business days, the Disclosing Party may disclose the Confidential Discovery Material to the identified Person.

11.    If the FTC (a) receives a discovery request that may require the disclosure by it of a Third Party's Confidential Discovery Material, or (b) intends to or is required to disclose, voluntarily or involuntarily, a Third Party's Confidential Discovery Material (whether or not such disclosure is in response to a discovery request), the FTC promptly shall notify the Third Party of the receipt of such request or its intention to disclose such material.  Such notification shall be in writing and, if not otherwise done, sent for receipt by the Third Party at least five (5) business days before disclosure, and shall include a copy of this Protective Order and a cover letter that will apprise the Third Party of its rights hereunder.

12.    If any Person receives a discovery request in another proceeding that may require the disclosure of a Producing Party's Confidential Discovery Material, the recipient of the discovery request shall promptly notify the Producing Party of receipt of the request.  The notification shall be in writing and be received by the Producing Party at least five (5) business days before production in the other proceeding, and shall include a copy of this Protective Order and a cover letter apprising the Producing Party of its rights.  Nothing herein shall be construed as requiring the recipient of the discovery request or anyone else covered by this Protective Order to challenge or appeal an order requiring production of Confidential Discovery Material, to subject itself to any penalties for noncompliance with such an order, or to seek any relief from the Court.  The recipient shall not oppose the Producing Party's efforts to challenge the discovery request calling for the production by the recipient of the Producing Party's Confidential Discovery Material.  In addition, nothing herein shall limit the applicability of Section 4.11(e) of the FTC Rules of Practice, 16 C.F.R. § 4.11(e), to discovery requests in another proceeding that are directed to the Commission.

13.    Counsel for the Parties or any Producing Party shall have the right to exclude from oral depositions any person not authorized to receive Confidential Discovery Material, during periods of examination or testimony relating to such material.

14.    In the event that any Confidential Discovery Material is contained in any pleading, motion, exhibit, brief, or other paper filed or to be filed with the Court, the Party filing the papers shall inform the Clerk of Court, and the papers shall be filed under seal pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Columbia.    Confidential Discovery Material contained in papers (including Confidential Discovery Material from the Parties and Third Parties) shall remain under seal until further order of the Court; provided, however, that the papers may be furnished to persons or entities who may receive Confidential Discovery Material pursuant to this Protective Order. After filing any paper containing Confidential Discovery Material, the filing Party must file on the public record a duplicate copy of the paper with the Confidential Discovery Material deleted, within five (5) business days of the original filing.    Further, if the protection for any such material ceases, any Party may file on the public record a copy that also contains the formerly protected material.

15.    If counsel for a Party plans to introduce into evidence at trial any Document or transcript containing Confidential Discovery Material produced by a Third Party or any other Party, the counsel shall provide forty-eight (48) hours advance notice before such introduction to the Producing Party and any other Party, or as much notice before the introduction as practicable under the circumstances, for purposes of allowing that Party to seek an order that the Document or transcript be granted *in camera* treatment.    Except where an order seeking *in camera* treatment is granted, all Documents and transcripts shall be part of the public record.    If *in camera*

treatment is granted, a copy of the Document or transcript with the Confidential Discovery Material deleted must be placed on the public record.

16.    The inadvertent production or disclosure of (i) material provided to the FTC during its investigation under the Hart-Scott-Rodino Antitrust Improvement Act, 15 U.S.C. § 18a, or (ii) any Discovery Material, which a Producing Party claims should not have been produced or disclosed because of a privilege, will not be deemed to be a waiver of any privilege to which the Producing Party would have been entitled had the privileged Discovery Material not inadvertently been produced or disclosed. In the event of such claimed inadvertent production or disclosure, the procedures of Federal Rules of Civil Procedure 26(b)(5)(B) shall apply. The inadvertent production of a privileged document shall not be deemed a waiver of any privilege applicable to any other documents relating to that subject matter.

17.    Nothing in this Protective Order shall be construed to conflict with the provisions of Sections 6, 10, and 21 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 50, 57b-2, or with Rules 3.22, 3.45, or 4.11 (b)-(e), 16 C.F.R. §§ 3.22, 3.45, and 4.11 (b)-(e). Any Party or Producing Party may move at any time for *in camera* treatment of any Confidential Discovery Material or any portion of the proceedings in this Matter to the extent necessary for proper disposition of this Matter.

18.    At the conclusion of this Matter, the Defendants shall (a) return or destroy all Documents obtained in this Matter that contain or refer to Confidential Discovery Material, other than materials that have been made part of the public record in this Matter, and (b) provide the Producing Party with an affidavit of destruction, provided that the provisions of 15 U.S.C. § 18a and § 4.12 of the FTC Rules of Practice, 16 C.F.R. § 4.12, shall govern the retention, return, or destruction of any documents obtained by the FTC prior to the filing of the Complaint to the

extent the provisions of that statute or regulation is inconsistent with the provisions of this Protective Order.    At the time that any Expert/Consultant or other person retained to assist counsel in the preparation of this Matter concludes participation in this Matter, that person shall return to counsel all copies of Documents or portions thereof designated Confidential Discovery Material that are in the possession of that person, together with all notes, memoranda, or other papers containing Confidential Discovery Material.

19.    The provisions of this Protective Order, insofar as they restrict the communication and use of Confidential Discovery Material shall, without written permission of the Producing Party or further order of the Court, continue to be binding after the conclusion of this Matter.

20.    This Protective Order shall not apply to the disclosure by a Producing Party or its Counsel of the Producing Party's Confidential Discovery Material to the Producing Party's current or former employees, agents, board members, directors, and officers.

21.    Entry of the foregoing Protective Order is without prejudice to the right of the Parties or Third Parties to apply for further protective orders or for modification of any provision of this Protective Order by application to the Court for good cause shown,

ORDERED:

_____
Paul L. Friedman
United States District Judge

Dated:

WE ASK FOR THIS:

Alden L. Atkins
Vinson & Elkins L.L.P.
1455 Pennsylvania Ave., N.W., Suite 600
Washington, D.C. 20004-1008
(202) 639-6613
aatkins@velaw.com

Counsel for Whole Foods Market, Inc.


WITH ADDITIONAL COPIES TO:

Thomas H. Brock
Bureau of Competition
Federal Trade Commission
600 New Jersey Ave., N.W.
Washington, D.C. 20580
(202) 326-2813
TBrock@FTC.gov

Counsel for the Federal Trade Commission

Clifford H. Aronson
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
(212) 735-3000
caronson@skadden.com

Counsel for Wild Oats Markets, Inc.

**EXHIBIT A**
**TO THE PROTECTIVE ORDER GOVERNING DISCOVERY MATERIAL**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WHOLE FOODS MARKET, INC., ) <br> ) <br> - and - ) <br> ) <br> WILD OATS MARKETS, INC., ) <br> ) <br> Defendants. ) | Civil Action No. 1:07-CV-01021-PLF |

**DECLARATION CONCERNING PROTECTIVE**
**ORDER GOVERNING DISCOVERY MATERIAL**

I, [NAME], hereby declare and certify the following to be true:

1.      [Statement of employment]

2.      I have read the "Protective Order Governing Discovery Material" ("Protective Order") issued by the Court on [Date], in connection with the above captioned Matter. I understand the restrictions on my access to and use of any Confidential Discovery Material (as that term is used in the Protective Order) in this Matter, and I agree to abide by the Protective Order.

3.      I understand that the restrictions on my use of such Confidential Discovery Material include:

    a.      that I will use such Confidential Discovery Material only for the purpose of preparing for this proceeding, and hearing(s) and any appeal of this proceeding and for no other purpose;

    b.      that I will not disclose such Confidential Discovery Material to anyone, except as permitted by the Protective Order;

    c.      that I will use, store and maintain the Confidential Discovery Material in such a way as to ensure its continued protected status; and

     d.     that, upon the termination of my participation in this proceeding, I will promptly return all Confidential Discovery Material and all notes, memoranda, or other papers containing Confidential Discovery Material, to Plaintiff's Counsel or Defendants' Outside Counsel, as appropriate.

    4.    I understand that if I am receiving Confidential Discovery Material as an Expert/Consultant, as that term is defined in this Protective Order, the restrictions on my use of Confidential Discovery Material also include the duty and obligation to:

     a.     maintain such Confidential Discovery Material in separate locked room(s) or locked cabinet(s) when such Confidential Discovery Material is not being reviewed;

     b.     return such Confidential Discovery Material to Plaintiff's Counsel or Defendants' Outside Counsel, as appropriate, upon the conclusion of my assignment or retention, or upon conclusion of this Matter; and

     c.     use such Confidential Discovery Material and the information contained therein solely for the purpose of rendering consulting services to a Party to this Matter, including providing testimony in judicial or administrative proceedings arising out of this Matter.

    5.    I am fully aware that, pursuant to Rule 26, Federal Rules of Civil Procedure, Rule 37, Federal Rules of Civil Procedure, and Section 3.42(h) of the FTC Rules of Practice, 16 C.F.R. § 3.42(h), my failure to comply with the terms of the Protective Order may constitute contempt of the Commission and may subject me to sanctions imposed by the Court or the Commission.

_____     Date: _____

Full Name [Typed or Printed]


_____



UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

Thomas H. Brock
Senior Litigation Counsel

Direct Dial
202-326-2813

June 15, 2007

**Via Electronic Mail**

Mr. Alden L. Atkins, Esq.
Vinson & Elkins
The Willard Office Building, Suite 600
1455 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-1008

Mr. Clifford H. Aronson, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, N.Y. 10036

Re: *FTC v. Whole Foods, et al.*

Dear Counsel:

Pursuant to the proposed Case Management Order the Commission provides the following list of Preliminary Fact Witnesses and a summary of the topics of their testimony. Plaintiff reserves the right to modify or supplement this list, as necessary.

**Walter Robb (Whole Foods) -** Information concerning the business operations of Whole Foods during his tenure as President and Co-COO of the company, as well as during his prior work at Whole Foods, and other topics relevant to the complaint.

**John Mackey (Whole Foods) -** Information concerning the business operations of Whole Foods during his tenure as Chairman, Founder and CEO of the company and other topics relevant to the complaint.

**Betsy Foster (White Foods) -** Information concerning the business operations of Whole Foods during her tenure as Vice-President of Business Growth and Development of the company, as well as during her prior work at Whole Foods, and other topics relevant to the complaint.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THE MOTION OF DEFENDANT
WHOLE FOODS MARKET, INC. FOR
ENTRY OF A FINAL PROTECTIVE ORDER

1:07-CV-01021-PLF

<u>Exhibit B</u>

Page 2

**James Sud (Whole Foods)** - Information concerning the business operations of Whole Foods during his tenure as Senior Vice-President of Business Growth and Development of the company, as well as during his prior work at Whole Foods, and other topics relevant to the complaint.

**Will Paradise (Whole Foods)** - Information concerning the business operations of Whole Foods during his tenure as Regional President of the Rocky Mountain Region of the company, as well as during his prior work at Whole Foods, and other topics relevant to the complaint.

**Edmund Lamacchia (Whole Foods)** - Information concerning the business operations of Whole Foods during his tenure as Vice-President of Procurement, Perishables of the company, as well as during his prior work at Whole Foods, and other topics relevant to the complaint.

**Glenda Chamberlain (Whole Foods)** - Information concerning the business operations of Whole Foods during her tenure as Chief Financial Officer of the company, as well as during her prior work at Whole Foods, and other topics relevant to the complaint.

**Gene Kadish (Whole Foods)** - Information concerning his role as Vice President, Corporate Development Research, work done for Whole Foods prior to assuming that position, and other topics relevant to the complaint.

**Greg Mays (Wild Oats)** - Information concerning the business operations of Wild Oats during his tenure as Chairman, interim CFO and interim CEO; Information concerning his efforts to find a new CEO for Wild Oats; Information concerning his efforts with Apollo to purchase Wild Oats, and other topics relevant to the complaint.

**Roger Davidson (Wild Oats)** - Information concerning the business operations of Wild Oats during his tenure as Senior Vice-President Merchandising & Marketing, and other topics relevant to the complaint.

**Freya Breyer (Wild Oats)** - Information concerning the site selection process at Wild Oats, the business operations of Wild Oats, and other topics relevant to the complaint.

**Cheri Zeeb (Wild Oats)** - Information concerning the site selection process at Wild Oats, the business operations of Wild Oats, and other topics relevant to the complaint.

**Sam Martin (Wild Oats)** - Information concerning the business operations of Wild Oats during his tenure as Senior Vice-President Operations, in prior positions at the company, and other topics relevant to the complaint.

**Jim Middleton (Wild Oats)** - Information concerning the business operations of Wild Oats during his tenure as Senior Director of Operations Services, in prior positions at the company, and other topics relevant to the complaint.

Page 3

**Laura Coblentz (Wild Oats)** - Information concerning the business operations of Wild Oats during her tenure as Vice-President of Marketing, in prior positions at the company, and other topics relevant to the complaint.

**Perry Odak (Wild Oats)** - Information concerning the business operations of Wild Oats during his tenure as CEO, and other topics relevant to the complaint.

**Michael Frazier (Wild Oats)** - Information concerning competitive environment in Portland, OR and other topics relevant to the complaint.

**Michael Longe (Wild Oats)** - Information concerning competitive environment in West Hartford, CT and other topics relevant to the complaint.

**Jim Mason (Wild Oats)** - Information concerning competitive environment in Tampa, FL and other topics relevant to the complaint.

**Fred Meyer (Wild Oats)** - Information concerning competitive environment in Cincinnati, OH and other topics relevant to the complaint.

**Kevin Miller (Wild Oats)** - Information concerning competitive environment in Denver, CO and other topics relevant to the complaint.

**Robert Ostrochovsky (Wild Oats)** - Information concerning competitive environment in Portland, OR and other topics relevant to the complaint.

**Scott Reed (Wild Oats)** - Information concerning competitive environment in Portland, ME and other topics relevant to the complaint.

**Milva Ricci (Wild Oats)** - Information concerning competitive environment in Medford, MA and other topics relevant to the complaint.

**Leslie Wallace (Wild Oats)** - Information concerning competitive environment in Littleton, CO and other topics relevant to the complaint.

**Daniel Bane (Trader Joe's)** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

**Rohan Hasker (Safeway)** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

Page 4

**Wegman's** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

**Kroger** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

**Walmart** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

**Publix** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the Complaint.

**Ahold** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

**Harris Teeter** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

**Food Lion** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

**Hannaford** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

**United Natural Foods, Inc.** - Information concerning the supply of natural and organic products to retailers and other topics relevant to the Complaint.

**Earth Fare** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

**Other Regional and/or store managers in the cities identified in the Complaint** - Information concerning expansion plans, SKU counts by category and other areas of possible differentiation among food retailers, the competitive environment and other topics relevant to the complaint.

Page 5

**Ronald Burkle** - Information relating to investments in and involvement with Wild Oats and supermarkets.

Very truly yours,

*Thomas H. Brock*

Thomas H. Brock

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION    )

          Plaintiff,             )

                          )

          v.                )     Civil Action No. 1:07-CV-01021-PLF

                          )

WHOLE FOODS MARKET, INC.    )

and                        )

WILD OATS MARKETS, INC.     )

          Defendants.       )

## SUPPLEMENTAL DECLARATION OF ROBERTA L. LANG
## IN SUPPORT OF THE MOTION OF DEFENDANT WHOLE FOODS MARKET, INC.
## FOR ENTRY OF A FINAL PROTECTIVE ORDER

1.    My name is Roberta L. Lang. I am over 21 years of age, and I am competent to make this affidavit. The statements herein are true and are within my personal knowledge unless stated otherwise.

2.    On June 11, 2007, I submitted a declaration in support of the Motion of Whole Foods Market, Inc. ("Whole Foods") for entry of a final protective order. In that declaration, I described in detail my role as General Counsel of Whole Foods. I now supplement my previous declaration in order to clarify the nature of my role as an officer and/or director at Whole Foods and its subsidiaries as shown in Exhibit 1 to Plaintiff's Memorandum in Opposition to Whole Foods' Motion.

3.    My participation in these entities as an officer and/or director is for purposes unrelated to competitive decisionmaking. I occupy those roles principally so that I am

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THE MOTION OF DEFENDANT
WHOLE FOODS MARKET, INC. FOR
ENTRY OF A FINAL PROTECTIVE ORDER

1:07-CV-01021-PLF

Exhibit C

empowered to execute contracts on behalf of these entities when called upon to do so, so that I may appropriately serve as their registered agent for service of process, so that I can assure that these entities are properly organized and registered under the laws governing their formation, and so that I can track and implement any proposed changes in the form of their organization under the law. In many cases, I am an officer and/or director in order to serve as the legally required point of contact for those entities with respect to their state licenses to sell alcohol. By law, such representatives typically are required to undergo fingerprinting and a background check. As a condition of state bar membership as an attorney, I completed that process some time ago and accordingly was a logical choice to serve as the liquor license representative for Whole Foods and its subsidiaries.

4.    In my previous declaration, I explained that I am not involved in competitive decisionmaking at Whole Foods, which occurs primarily at the regional level by Whole Foods' Regional Presidents and those working under them. To the extent that any of the Whole Foods subsidiaries participate in making competitive decisions, it is as part of this regional decisionmaking process. I am not involved in that process, either at Whole Foods or at the subsidiary level.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 26, 2007.

Roberta L. Lang

– 2 –