**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FEDERAL TRADE COMMISSION

                Plaintiff,

       v.

WHOLE FOODS MARKET, INC.

and

WILD OATS MARKETS, INC.,

                Defendants.

Case No. 1:07-CV-01021 (PLF)

**THIRD PARTY TRADER JOE'S COMPANY'S OPPOSITION TO JOINT**
**MOTION FOR ENTRY OF A FINAL PROTECTIVE ORDER**

Trader Joe's Company ("Trader Joe's") is a third party intervenor to this action who provided materials and information to the Federal Trade Commission ("FTC") pursuant to compulsory process during the FTC's initial investigation of Whole Foods Market, Inc.'s ("Whole Foods") proposed acquisition of Wild Oats Markets, Inc. ("Wild Oats"), and has since provided materials, and will soon provide further testimony, to both the FTC and Whole Foods pursuant to Rule 45 subpoenas.   Trader Joe's hereby files this Opposition to the Joint Motion for Entry of a Final Protective Order, filed by the FTC and Whole Foods on June 29, 2007 [Doc. 77].   Pursuant to Local Rule 7(f), Trader Joe's hereby requests an oral hearing on this matter.

Trader Joe's position is simple:  Whole Foods' general counsel should not be allowed access to any documents or information designated "Restricted Confidential Discovery Material" as that term is defined in the Interim Protective Order, whether it is in documents, pleadings,

expert reports or transcripts.  Interim Prot. Order, Terms and Conditions, ¶ 16 (June 8, 2007) [Doc. 11].  The compromise position of Whole Foods and the FTC simply addresses the quantity of information she has access to, and not the nature or quality of it.   The compromise does *nothing* to meet the concerns addressed in our Opposition to Defendant Whole Foods' Motion for Final Protective Order on June 22, 2007 [Doc. 50].

Allowing Whole Foods' General Counsel access to unredacted pleadings, unredacted expert reports and unredacted transcripts quite simply allows a senior executive at Whole Foods unfettered access to the *most highly* competitively sensitive information in this litigation, all in neat, tidy packages.  We refer the Court to our June 22, 2007 Opposition for a more comprehensive Statement of the Facts and Argument.  We respectfully urge the Court to adopt an order that balances Ms. Lang's need for information against injury to the third parties that may result from disclosure.  Accordingly, Trader Joe's urges the Court to deny the Joint Motion and enter the Interim Protective Order, with minor modifications, as the Final Protective Order in this matter.

## I.    ARGUMENT

### A.    Incorporation

Trader Joe's hereby incorporates the arguments made in its Opposition to Whole Foods' Motion for Final Protective Order, filed with the Court on June 22, 2007 [Doc. 50].

### B.    Whole Foods' Assertion Regarding Lang's Lack of "Competitive Decision Making" Duties Does Not Justify the Proposed Modification of the Stipulated Protective Order

As discussed in our earlier Opposition, and in Defendant's Reply brief, Ms. Lang is called upon daily to provide legal advice to the executive level managers, the board of directors,

and senior leadership regarding this transaction. Lang Decl. ¶ 10; Def.'s Reply of June 27, 2007 at 9 [Doc 72]. Daily updates on the status of this litigation, now combined with access to deposition transcripts that contain detailed discussions by Whole Foods' competitors about their businesses, indicate that the risk that she will inadvertently divulge confidential information that she should not is very high. Trader Joe's, a non-party to this litigation, would be the party injured by such disclosure - whether it is inadvertent or not. Trader Joe's should not be forced to bear such a risk.

Whole Foods' General Counsel plainly participates in competitive decision-making under the test set forth in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984) (requiring an assessment of the specific circumstances and responsibilities of the counsel to determine whether particular counsel should have access to confidential information). As we indicated before, Ms. Lang is Whole Foods' Chief Legal Advisor (and indeed was the only legal advisor for a time), the only "generalist attorney" in the legal department, and member of the "Whole Foods Leadership Network" that "may discuss the competitive landscape generally." Decl. of Roberta L. Lang in Support of the Mot. of Def. Whole Foods Market, Inc. for Entry of a Final Prot. Order (June 11, 2007) ("Lang Decl.") ¶¶ 7, 11 (attached as Ex. C to Def.'s Mot. for Final Prot. Order). Further, Ms. Lang is deeply involved in the management of Whole Foods:

- "I am the only 'generalist' in the legal department." Lang. Decl. ¶ 4.
- "I am called upon daily to provide legal advice to the Eteam, the board of directors, and our senior leadership." *Id.*
- No other lawyer "shares my comprehensive knowledge of the company." *Id.* ¶ 5.

Those admissions establish that Ms. Lang is sufficiently involved in the competitive decision-making process to justify precluding access to "Restricted Confidential Discovery Material." *See Carpenter Tech. Corp. v. Armco, Inc.,* 132 F.R.D. 24, 28 (E.D. Pa. 1990)("[u]pon the

absence of a complete explanation of the extent of [in-house counsel's] involvement in competitive decisions," court denies access to confidential information).

Ms. Lang does assert that she does not participate in "decisions about formulating or implementing strategies to compete." Lang Decl. ¶ 4. What Ms. Lang appears to be saying is that she is not the final decision-maker on these issues. But that is not the test under *U.S. Steel* and related cases. Those cases recognize that participating in or influencing discussions on strategic or competitive decisions can disqualify counsel under these circumstances. *See Akzo N.V. v. United States Int'l Trade Comm'n*, 808 F.2d 1471, 1483 (Fed. Cir. 1986) ("Obviously, where confidential material is disclosed to an employee of a competitor, the risk of the competitor's obtaining an unfair business advantage may be substantially increased."); *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ("in-house counsel stand in a unique relationship to the corporation in which they are employed . . . . their continuing employment often intimately involves them in the management and operation of the corporation of which they are a part."); *D & L Supply Co. v. United States*, 693 F. Supp. 1179, 1182 (Ct. Int'l Trade 1988) ("The attorneys are not in-house counsel who might be susceptible to demands of their corporate employers to violate a protective order."). Thus, Whole Foods' general counsel should not be allowed access to highly competitively sensitive information about Whole Foods' competitors.

### C.    Limiting Access by Whole Foods General Counsel to "Confidential" Material Will Not Impair Whole Foods Ability to Litigate this Matter.

The Interim Protective Order struck the right balance, allowing access to most documents, but restricting (although not eliminating) access to a smaller category of "Restricted Confidential" documents. This provided protection to the non-parties to the FTC action against Whole Foods. The Joint Protective Order proposed by the FTC and Whole Foods relieves

Whole Foods of its burden to demonstrate, *on specific facts*, why its general counsel needs access to particular highly confidential information.

While Trader Joe's and the other third parties in this action have clearly established in the earlier Oppositions filed in this matter that good cause exists to protect its highly confidential commercial information,[1] Whole Foods has yet to establish why disclosure of such third party restricted confidential information is relevant to Ms. Lang's assistance to Whole Foods' outside counsel or to update senior executives at Whole Foods. *See Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 292 (D. Del. 1985) ("If [the requisite good cause] showing is made, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action.") (internal quotation marks omitted); *Plough Inc. v. Nat'l Academy of Sciences*, 530 A.2d 1152, 1155 (D.C. 1987); 8 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & P.* § 2043 (2d ed. 2006). It is simply not believable that prohibiting Whole Foods' in-house counsel from accessing Trader Joe's or other third parties' "Restricted Confidential Discovery Material," as defined in the Interim Protective Order, will substantially impair Whole Foods' ability to litigate this case. *See Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (claim that party's president was "uniquely qualified" to understand technical issues in litigation and thus should be allowed access to other party's confidential information was rejected where that party had not investigated the availability of outside experts). Ms. Lang does not need access to the third parties' most competitively sensitive information to provide "informed judgment about the matters at issue in this case." Def.'s Reply at 3. She does not need to know the sales per

---

[1] The risk to Trader Joe's of Whole Foods' misuse of Trader Joe's commercially confidential information is substantial. Trader Joe's is a private, closely held corporation. Decl. of Bryan Palbaum ("Palbaum Decl.") ¶¶ 1, 4 (June 15, 2007) (attached as Ex. A). There is no publicly available information regarding how Trader Joe's business operates, or the results of those operations, including financials, marketing, sales or margins, and other areas of competitive interest, and Trader Joe's has the right to keep it that way. *Id.* ¶ 4.

square foot of Trader Joe's Alexandria, Virginia store. She does not need to know our gross margins. She does not need to know where Trader Joe's plans to open stores in the next five years. All of this competitively sensitive information can and should be aggregated for Ms. Lang by her outside counsel. This particular minutiae is irrelevant to her informed judgment.

Further, grocery retailing is not so highly technical that her outside counsel requires her assistance to understand the documents they are reviewing or the arguments they are making. *See, e.g., United States v. Sungard Data Systems, Inc., et al.,* 173 F.Supp.2d 20, 21 (D.D.C. 2001) (highly technical field in which court indicated it would be "extremely difficult, if not impossible" for outside counsel to prepare case for trial without assistance of in-house counsel). Indeed, Whole Foods has retained as outside counsel "the prime architect of the [Federal Trade] Commission's supermarket merger enforcement program" and someone who managed "virtually all of the major supermarket merger investigations" at the FTC. Biography of James A. Fishkin of Dechert, LLP, *available at* http://www.dechert.com/lawyers/lawyers.jsp?pg=detail&id=5035 (attached as Exh. B).

In short, there is little chance that Whole Foods' will be injured if access to highly competitively sensitive information is denied to its in-house counsel. The full impact of the injury if she is allowed access and that information is inadvertently disclosed will be felt entirely by Trader Joe's and other third parties.

### D. Unredacted Transcripts Contain Not Only Competitively Sensitive Information, but Discussions of it as well.

Whole Foods' argument that Ms. Lang "will only see third party information to the extent that someone relied on that information to make a point at issue in this litigation," Def.'s Reply at 6, is entirely unpersuasive, especially as it regards transcripts. It makes no sense to deny Ms. Lang access to documents and at the same time allow her access to transcripts: the same

principles apply.  The Court is well aware that anything can be read into the record during a deposition.  In this litigation, it is extremely likely that the most competitively sensitive information will be read into the record and discussed in great detail during the depositions.  The FTC deposed the CEO of Trader Joe's for approximately five hours on April 16, 2007 regarding how and why we do what we do, and the financial results of those decisions.  Whole Foods is deposing the same person this coming Thursday, and it is a certainty that they will cover the same information and more during the upcoming deposition.

The transcripts in their unredacted form are unnecessary for Ms. Lang to perform her duties.  General counsels make assessments of litigation risk every day without reading a single transcript.  They also assist their outside counsel in litigation without reading transcripts.   There is simply no need for Ms. Lang to have access to unredacted transcripts.  Should the Interim Protective Order be entered as the Final Protective Order in this matter, Ms. Lang will have access to most of the information contained in the deposition transcripts, in addition to all documents designated "Confidential" under the Interim Protective Order.  This is more than sufficient for her purposes, and indeed, is more information than she has access to under the jointly proposed protective order.

   E.   **Whole Foods and the FTC are Chipping Away at the protections afforded by *Sungard* and *Foster*.**

Whole Foods and the FTC appear to rely heavily on the order in *Federal Trade Commission v. Foster, et al.,* No. 07-cv-532 JB/ACT, Mem. Op. & Order (D.N.M. Apr. 26, 2007), Def.'s Reply at 12, for the entry of their proposed protective order.  While the court did not indicate as such, the protective order in *Foster* took its cues from *Sungard,* 173 F.Supp.2d 20*.*  The *Sungard* protective order allowed access by in-house counsel to confidential

information, but imposed substantial penalties for violation of the protective order. 173 F.Supp.2d at 30 (imposing penalty of $250,000 for violation of protective order paid by the individual violator with no reimbursement or indemnification by the violator's employer). *See also Intervet, Inc. v. Merial Ltd., et al.*, 241 F.R.D. 55, 58 (D.D.C. 2007) (imposing the same penalties as *Sungard*). The *Foster* court did away with the penalty, but limited in-house counsel's access to the actual documents to the offices of outside counsel. In-house counsel was not allowed to leave outside counsels' offices with any notes regarding the confidential materials. Now, we have a proposed protective order that does away with the added protections imposed by the *Sungard, Intervet,* and *Foster* courts.

This is simply not enough protection for the materials that Ms. Lang would review. While they have proposed to limit Ms. Lang's access to materials, our objections are not based on the amount of information she has access to, but the nature of it. This latest proposed protective order does nothing to further Trader Joe's interest in maintaining the confidentiality of our materials.

## II.    <u>CONCLUSION</u>

For the reasons stated above and in our Opposition filed on June 22, 2007, this Court should deny the Joint Motion for Entry of a Final Protective Order and adopt the Interim Protective Order, with minor edits, as the Final Protective Order in this matter. The minor edits recommended are the insertion of Ms. Lang's name into the blank on page 9 of the Interim Protective Order, and deletion of Paragraph 23 regarding stipulation and the status of the Order as interim. A revised Proposed Final Protective Order is attached.

Dated:  July 2, 2007                    ____/s/ Karin F.R. Moore_____
                                        Richard G. Parker (D.C. Bar No. 327544)
                                        Karin F.R. Moore (D.C. Bar No. 480275)
                                        O'MELVENY & MYERS LLP
                                        1625 Eye Street, N.W.
                                        Washington, D.C.  20006-4001
                                        Telephone:  (202) 383-5300
                                        Facsimile:   (202) 383-5414

                                        *Attorneys for Third Party Trader Joe's Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July 2007, I electronically filed the foregoing **OPPOSITION TO JOINT MOTION FOR FINAL PROTECTIVE ORDER** with the Court using ECF, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF. I have also sent separate copies of the foregoing directly to the individuals below by first class mail:

Matthew P. Hendrickson
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

Alexander Maltas
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004

Thomas Pak
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

John Shin
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178

Terrence J Wallock
LAW OFFICE OF TERRENCE J. WALLOCK
2224 Pacific Drive
Corona Del Mar, CA 92625

___/s/ Karin F.R Moore_____
Karin F. R. Moore

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION

            Plaintiff,

       v.

WHOLE FOODS MARKET, INC.

and

WILD OATS MARKETS, INC.,

            Defendants.

Case No. 1:07-CV-01021 (PLF)

**THIRD PARTY TRADER JOE'S COMPANY'S OPPOSITION TO JOINT
MOTION FOR ENTRY OF A FINAL PROTECTIVE ORDER**

**Exhibit A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION

    Plaintiff,

   v.

WHOLE FOODS MARKET, INC.

and

WILD OATS MARKETS, INC.,

    Defendants.

Case No. 1:07-CV-01021 (PLF)

## DECLARATION OF BRYAN PALBAUM

I, Bryan Palbaum, hereby declare and state as follows:

1. I am Senior Vice President - Finance and Administration and Chief Financial Officer of Trader Joe's Company ("Trader Joe's"). The Company is a privately owned and operated chain of 279 specialty grocery stores headquartered in California.

2. Trader Joe's is an innovative company with a distinctive format. Trader Joe's considers itself a chain of neighborhood grocery stores that sells a limited number of high quality products at good values.

3. Notwithstanding Trader Joe's unique and distinctive format, the Company competes with any other retailer that sells similar grocery products. For example, Trader Joe's sells, among other things, meat, dairy and produce items - thus the Company competes with all other retailers that sell similar products - namely grocery stores, including Whole Foods and Wild Oats.

4. As a closely held private company, Trader Joe's does not publicly disclose any information, other than what is on its website. The Company considers any information about how its business operates, or the results of those operations, as highly confidential, the disclosure of which would cause substantial commercial harm. For example, the process of obtaining new store locations is extremely competitive. Disclosure of any information related to our potential future store locations to any other retail company would cause substantial commercial harm to Trader Joe's ability to fairly compete for new store locations in the real estate marketplace.

5.    The confidential and competitively sensitive information at issue here is not known outside Trader Joe's business. Trader Joe's has taken great measure to ensure that all officers, employees and agents of Trader Joe's guard the confidentiality of such information. Trader Joe's requires everyone with access to such information to execute an affidavit that requires them to maintain the confidentiality of, and not divulge, any learned corporate information.

6.    Trader Joe's is not a party to this litigation and is not a publicly held company. As a private company, Trader Joe's wishes to fully exercise its rights to protect its highly confidential and competitively sensitive information.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on this 15th day of June, 2007.

Bryan Palbaum


Subscribed and sworn to me this 15th day of ___June___, 2007.

*see attached*

Clerk or Notary Public
My commission expires: Jan 10, 2011

# JURAT

State of California

County of  Los Angeles

Subscribed and sworn to (or affirmed) before me on

this 15th ******* day of  June ********************************* ,20 07       ,

by  Bryan Palbaum

personally known to me or proved to me on the basis of satisfactory
evidence to be the person(s) who appeared before me.



GLORIA WONG CHAU
COMM. # 1714738
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. JAN. 10, 2011

(seal)                    Signature_____

Re: Declaration of Bryan Palbaum
    In the US District Court for the
    District of Columbia
              Case No. 1:07-CV-01021 (PLF)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION | Case No. 1:07-CV-01021 (PLF) |
| Plaintiff, | |
| v. | |
| WHOLE FOODS MARKET, INC. | |
| and | |
| WILD OATS MARKETS, INC., | |
| Defendants. | |

## THIRD PARTY TRADER JOE'S COMPANY'S OPPOSITION TO JOINT MOTION FOR ENTRY OF A FINAL PROTECTIVE ORDER

## Exhibit B

# Dechert
## LLP



search lawyers
view A to Z
view by office
view by practice area
view by industry sector

## James A. Fishkin

◄ Back

James A. Fishkin
Partner
Washington
+1 202 261 3421
(fax) +1 202 261 3333
james.fishkin@dechert.com

Printable Version ▶

**Litigation**
Antitrust/Competition

**Experience and Background**

James A. Fishkin is a partner in the antitrust group. He advises clients on a wide range of antitrust issues, including mergers and acquisitions, distribution practices, and agency practice. He also represents clients in private litigation. Mr. Fishkin has particular experience and interest on issues relating to food retailing and the manufacture and distribution of food products. Mr. Fishkin has represented clients from a variety of industries on mergers and acquisitions before the Federal Trade Commission and the Department of Justice, advised clients on non-merger issues, and participated as counsel in private litigation in federal court with primary responsibility for antitrust claims.

Prior to entering private practice, Mr. Fishkin spent 15 years at the Federal Trade Commission where he had a uniquely distinguished career and acquired a deep understanding of complex antitrust and litigation issues. Mr. Fishkin was the lead attorney on many high profile merger investigations, including some of the most significant antitrust matters of the period. Such investigations resulted in successful litigation, major settlements, or terminated mergers. As lead attorney on merger investigations, Mr. Fishkin was responsible for all aspects of the investigation and trial preparation, including Second Requests, CIDs, subpoenas, depositions, preparing fact and expert witnesses, developing legal and economic theories, drafting recommendation memoranda to the Commission, and coordinating joint investigations with state Attorneys General. He also negotiated and drafted numerous FTC consent agreements.

Mr. Fishkin was the prime architect of the Commission's supermarket merger enforcement program and he managed virtually all of the major supermarket merger investigations. Some of his most prominent supermarket merger matters included Albertson's/American Stores (1999), Ahold/Pathmark (1999), and Kroger/Winn-Dixie (2000). Mr. Fishkin also managed or played a significant role in major investigations of mergers between food manufacturers, including General Mills/Pillsbury (2001) and Heinz/Vlasic (2001).

Mr. Fishkin's tenure with the Commission also included extensive work on mergers involving a variety of nonfood retailers, cable networks, cable systems, and chemical manufacturers. He was lead attorney in the Staples/Office Depot (1997) investigation and the principal draftsman of the staff recommendation memorandum outlining the various vertical and horizontal theories in Time Warner/Turner (1996). Mr. Fishkin also led or worked on consummated merger investigations, mergers before bankruptcy

courts, investigations involving anticompetitive conduct by trade associations, and Hart-Scott-Rodino violation investigations that resulted in various enforcement actions.

Mr. Fishkin played significant roles in several of the Commission's landmark merger trials, including the successful efforts to block Heinz's acquisition of Beech Nut (baby food), FTC v. H.J. Heinz Co., 116 F. Supp.2d 190 (D.D.C. 2000), rev'd, 246 F.3d 708 (D.C. Cir. 2001), and Staples' acquisition of Office Depot, FTC v. Staples, Inc., 970 F. Supp. 1066 (D.D.C. 1997). Mr. Fishkin's litigation and trial responsibilities included direct and cross-examination of witnesses, depositions, discovery, selecting court exhibits, drafting findings of fact, and formulating trial strategies. These key merger decisions are analyzed in leading antitrust treatises and text books. They are also frequently cited by courts, commentators, and antitrust officials for their impact on current merger law and enforcement priorities. Mr. Fishkin was also lead counsel in the Red Apple Companies, Inc. (1995) administrative litigation, including obtaining the Commission's first-ever decision authorizing staff to seek injunctive relief to prevent the shut down and sale of assets pending the culmination of the litigation.

Mr. Fishkin received numerous honors at the Federal Trade Commission, including the Distinguished Service award (2002), the Paul Rand Dixon award (2000), and the Superior Service award (1996). He is a member of the Bars of Nebraska and the District of Columbia.

### Education
Mr. Fishkin is a graduate of the University of Iowa (B.A., with distinction, 1983), Phi Beta Kappa, and the University of Iowa College of Law (J.D. 1986), where he was Note and Comment Editor of the *Iowa Law Review*.

### Publications and Lectures
Mr. Fishkin has been a speaker at industry and academic conferences, a guest law school lecturer, and a lecturer to antitrust practitioners at CLE-approved events. He has also made educational presentations to antitrust officials from the EU Merger Task Force, several European and South American countries, Japan, Russia, and the Federal Trade Commission. A summary of his most recent presentation in June 2004 before the American Antitrust Institute's Fifth Annual Conference: Buyer Power and Antitrust is available at http://www.antitrustinstitute.org/recent2/341.cfm. He is also frequently quoted in leading newspapers and magazines regarding antitrust issues.

◄ Back

© 2007 Dechert LLP      sitemap      disclaimer & privacy policy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION

               Plaintiff,

     v.

WHOLE FOODS MARKET, INC.

and

WILD OATS MARKETS, INC.,

               Defendants.

Case No. 1:07-CV-01021 (PLF)

## [PROPOSED] FINAL PROTECTIVE ORDER
## GOVERNING DISCOVERY MATERIAL

For the purpose of protecting the interests of the Parties and Third Parties against the improper use and disclosure of confidential information submitted or produced in connection with this Matter:

IT IS HEREBY ORDERED THAT this Final Protective Order Governing Discovery Material ("Final Protective Order") shall govern the handling of all Discovery Material during the proceedings in the above captioned Matter.

## DEFINITIONS

For purposes of this Protective Order, the following definitions shall apply:

1.      "Whole Foods" means defendant Whole Foods Market, Inc., a corporation organized, existing, and doing business under and by virtue of the laws of the State of Texas,

with its office and principal place of business at 550 Bowie Street, Austin, Texas 78703, and its

predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures.

2.     "Wild Oats" means defendant Wild Oats Markets, Inc., a corporation organized,

existing, and doing business under and by virtue of the laws of the State of Delaware, with its

office and principal place of business located at 3375 Mitchell Lane, Boulder, Colorado 80301,

and its predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures.

3.     "Commission" or "FTC" means the Federal Trade Commission, or any of its

employees, agents, attorneys, and all other persons acting on its behalf, excluding persons

retained as consultants or experts for the purposes of this Matter.

4.     "Confidential Discovery Material" means all Discovery Material that is

confidential or proprietary information produced in discovery.  Such material is referred to in,

and protected by, Rule 26(c)(7) of the Federal Rules of Civil Procedure.  Confidential Discovery

Material shall include non-public trade secret or other research, development or commercial

information, the disclosure of which would likely cause commercial harm to the Producing Party

or to Defendants, in instances where the Producing Party produces information generated by the

Defendants.  The following is a non-exhaustive list of examples of information that likely will

qualify for treatment as Confidential Discovery Material: strategic plans (involving pricing,

marketing, research and development, product road maps, corporate alliances, or mergers and

acquisitions) that have not been fully implemented or revealed to the public; trade secrets;

customer-specific evaluations or data (*e.g.*, prices, volumes, or revenues); sales contracts; system

maps; personnel files and evaluations; information subject to confidentiality or non-disclosure

agreements; proprietary technical or engineering information; proprietary financial data or

projections; and proprietary consumer, customer or market research or analyses applicable to

current or future market conditions, the disclosure of which could reveal Confidential Discovery

Material. Discovery Material will not be considered confidential if it is in the public domain.

5.      "Counsel of Record" means counsel who file a notice of appearance in this

Matter.

6.      "Disclosing Party" means a party that is disclosing or contemplating disclosing

Discovery Material pursuant to this Protective Order.

7.      "Discovery Material" includes without limitation deposition testimony, deposition

exhibits, interrogatory responses, admissions, affidavits, declarations, Documents produced

pursuant to compulsory process or voluntarily in lieu thereof, and any other Documents or

information produced or given to one Party by another Party or by a Third Party in connection

with discovery in this Matter. Information taken from Discovery Material that reveals its

substance shall also be considered Discovery Material.

8.      "Document" means the complete original or a true, correct and complete copy and

any non-identical copies of any written or graphic matter, no matter how produced, recorded,

stored or reproduced. "Document" includes, but is not limited to, any writing, letter, envelope,

telegraph, e-mail, meeting minute, memorandum, statement, affidavit, declaration, book, record,

survey, map, study, handwritten note, working paper, chart, index, tabulation, graph, drawing,

chart, photograph, tape, phono record, compact disc, video tape, data sheet, data processing card,

printout, microfilm, index, computer readable media or other electronically stored data,

appointment book, diary, diary entry, calendar, organizer, desk pad, telephone message slip, note

of interview or communication, and any other data compilation from which information can be

obtained, and includes all drafts and all copies of such Documents and every writing or record

that contains any commentary, notes, or marking whatsoever not appearing on the original.

9.      "Expert/Consultant" means testifying or consulting experts or other persons who are retained to assist Plaintiffs Counsel or Defendants' Counsel in preparation for the hearing or to give testimony at the hearing.

10.     "Matter" means the above captioned matter pending in the United States District Court for the District of Columbia, and all subsequent administrative, appellate or other review proceedings related thereto.

11.     "Outside Counsel" means the law firms that are Counsel of Record for Defendants in this Matter, their partners and associated attorneys; or other persons regularly employed by such law firm(s) including legal assistants, clerical staff, vendors assisting with electronic discovery and information management personnel and temporary personnel retained by such law firm(s) to perform legal or clerical duties, or to provide logistical litigation support with regard to this Matter; provided that any attorney associated with Outside Counsel shall not be a director, officer or employee of Defendants.  The term Outside Counsel does not include persons retained as consultants or experts for the purposes of this Matter.

12.     "Party" means either the FTC, Whole Foods, or Wild Oats.

13.     "Person" means any natural person, business entity, corporate entity, sole proprietorship, partnership, association, governmental entity, or trust.

14.     "Producing Party" means a Party or Third Party that produced or intends to produce Restricted Confidential or Confidential Discovery Material to any of the Parties.  With respect to Restricted Confidential or Confidential Discovery Material of a Third Party that is in the possession, custody, or control of the FTC, or has been produced by the FTC in this Matter, the Producing Party shall mean the Third Party that originally provided such material to the FTC.

The Producing Party shall mean the FTC for purposes of any Document or Discovery Materials prepared by, or on behalf of, the FTC.

15.     "Defendants" means Whole Foods and Wild Oats.

16.     "Restricted Confidential Discovery Material" means Confidential Discovery Material designated as "Restricted Confidential Discovery Material" that contains non-public, current information that is highly sensitive (*e.g*., marketing plans, pricing plans, financial information, trade secrets, or Documents of a like nature) and the disclosure of which would likely cause substantial commercial harm to the Producing Party or to Defendants.  It is the intention of the Parties that this particularly restrictive designation should be utilized for only a select number of Documents.  Such a designation shall constitute a representation by counsel for the Producing Party or Defendants, in instances where the Producing Party produces information generated by the Defendants, that the material is properly subject to Restricted Confidential treatment under this Order.

17.     "Third Party" means any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Matter and its employees, directors, officers, attorneys, and agents.

<u>TERMS AND CONDITIONS OF PROTECTIVE ORDER</u>

1.     Discovery Material, or information derived therefrom, shall be used solely by the Parties for purposes of this Matter, and shall not be used for any other purpose, including without limitation any business or commercial purpose.  Notwithstanding the foregoing, nothing contained in this Protective Order shall prevent the Commission from using any material produced as part of the investigation in this Matter, including any Discovery Material, for any authorized law enforcement purpose, provided that the Commission may only use or disclose Discovery Material as provided by (a) its Rules of Practice, and any cases so construing them;

(b) Sections 6(f) and 21 of the Federal Trade Commission Act, and any cases so construing them; and (c) any other legal obligation imposed upon the Commission.  The Parties, in conducting discovery from Third Parties, shall attach to all discovery requests a copy of this Protective Order and a cover letter that will apprise such Third Parties of their rights hereunder.

2.      Confidential or Restricted Confidential Discovery Material may be designated as such by (a) placing or affixing on each page of a Document containing such material, in a manner that will not interfere with its legibility, the notation "CONFIDENTIAL - FTC v. Whole Foods," or "RESTRICTED CONFIDENTIAL, OUTSIDE COUNSEL ONLY - FTC v. Whole Foods;" or (b) any Party or Third Party instructing the court reporter, with notice to all Parties, within five (5) business days of the receipt of the transcript, to designate as "Confidential" or "Restricted Confidential" each page of the deposition transcript containing the Confidential or Restricted Confidential Discovery Material. Such designations constitute a good-faith representation by counsel for the Party or Third Party making the designation that the Document or transcript constitutes or contains Confidential Discovery Material or Restricted Confidential Discovery Material.  All deposition transcripts shall be treated as Restricted Confidential Discovery Material until the expiration of five (5) business days after the receipt of the transcript. A Producing Party will use reasonable care to avoid designating any Discovery Material as Confidential or Restricted Confidential that is not entitled to such designation.

3.      Restricted Confidential or Confidential Discovery Material shall not be copied or reproduced for use in this Matter except to the extent such copying or reproduction is reasonably necessary to the conduct of this Matter.  All such copies or reproductions of the Material and any documents generated by the Parties containing information drawn from such Material, shall be subject to the terms of this Protective Order.  If the duplication process by which copies or

reproductions of Restricted Confidential or Confidential Discovery Material are made does not preserve the confidentiality designations that appear on the original Documents, all such copies or reproductions shall be stamped with the same confidentiality designation as the original.

4.      All Documents obtained by compulsory process or voluntarily in lieu of process from any Party or Third Party, regardless of whether designated or marked confidential by the Party or Third Party, and transcripts of any investigational hearings, interviews, or depositions that were obtained before this Protective Order was adopted, shall be treated as Restricted Confidential Discovery Material for a period of ten (10) days from the time notice of the intent to produce is given to the Producing Party.  At the expiration of that time, this material shall be treated as Confidential Discovery Material unless documents or transcripts pages are otherwise designated with specificity by the Producing Party as either Restricted Confidential Discovery Material or non-confidential.

5.      If any Party seeks to challenge a Producing Party's designation of material as Restricted Confidential or Confidential Discovery Material, the challenging Party shall notify the Producing Party and all other Parties of the challenge.  Such notice shall identify with specificity (*i.e.*, by document control numbers, deposition transcript page and line reference, or other means sufficient to locate easily such materials) the designation being challenged.  The Producing Party may preserve its designation by providing the challenging Party and all other Parties a written statement of the reasons for the designation within three (3) business days of receiving notice of the confidentiality challenge.  If the Producing Party timely preserves its rights, the Parties shall continue to treat the challenged material as Restricted Confidential or Confidential Discovery Material, absent a written agreement with the Producing Party or order of the Court providing otherwise.

6.      If any conflict regarding a confidentiality designation arises and the Parties involved have failed to resolve the conflict via good-faith negotiations, a Party seeking to disclose the Restricted Confidential or Confidential Discovery Material or challenging a confidentiality designation may make written application to the Court for relief.  The application shall be served on the Producing Party and the other Parties to this Matter, and shall be accompanied by a certification that good-faith negotiations have failed to resolve the outstanding issues.  The Producing Party and any other Party shall have three (3) business days after receiving a copy of the motion to respond to the application.  While an application is pending, the Parties shall maintain the pre-application status of the Restricted Confidential or Confidential Discovery Material.  Nothing in this Protective Order shall create a presumption or alter the burden of persuading the Court of the propriety of a requested disclosure or change in designation.

7.      The Parties shall not be obligated to challenge the propriety of any designation or treatment of information as Restricted Confidential or Confidential Discovery Material and the failure to do so promptly shall not preclude any subsequent objection to such designation or treatment, or any motion seeking permission to disclose such material to Persons not otherwise entitled to access under the terms of this Protective Order.  If Restricted Confidential or Confidential Discovery Material is produced without the designation attached, the material shall be treated as Restricted Confidential or Confidential from the time the Producing Party advises Plaintiffs Counsel and Defendants' Counsel in writing that such material should be so designated and provides all the Parties with an appropriately labeled replacement.  The Parties shall return promptly or destroy the unmarked materials.

8. Restricted Confidential Discovery Material shall not, directly or indirectly, be disclosed or otherwise provided to anyone except:

    (a) Plaintiffs counsel and the Commission, as permitted by the Commission's Rules of Practice;

    (b) Outside Counsel;

    (c) Experts/Consultants;

    (d) court reporters and deposition transcript reporters;

    (e) judges and other court personnel of any court having jurisdiction over any appeal proceedings involving this Matter;

    (f) any author or recipient of the Discovery Material; any individual who was in the direct chain of supervision of the author at the time the Discovery Material was created or received; any employee or agent of the entity that created or received the Discovery Material; or anyone representing the author or recipient of the Discovery Material in this Matter; and

    (g) any other Person(s) authorized in writing by the Producing Party.

9. Confidential Discovery Material shall not, directly or indirectly, be disclosed or otherwise provided to anyone other than those persons listed in paragraph 8 of this Protective Order and to the following representative of Whole Foods: Roberta Lang; provided that each such representative executes a declaration in the form attached as Exhibit A. Defendants' Counsel shall maintain a file of all such declarations for the duration of the litigation.

10. Restricted Confidential or Confidential Discovery Material shall not, directly or indirectly, be disclosed or otherwise provided to an Expert/Consultant until such person has executed and transmitted to counsel for the party retaining such person a declaration in the form

attached as Exhibit A. Each Party's counsel shall maintain a file of all such declarations for the duration of the litigation.

11.     If any Party desires to disclose Restricted Confidential or Confidential Discovery Material to (a) either any Expert/Consultant, any deponent, or any witness that is or was an officer, director or employee of Whole Foods or Wild Oats, or (b) any Person other than those referred to in paragraphs 8 and 9 of this Protective Order, the Disclosing Party shall notify the Producing Party any other Party of its desire to disclose such material. The notice shall identify those materials sought to be disclosed with specificity (*i.e.*, by document control numbers, deposition transcript page and line reference, or other means sufficient to locate easily such materials) and the specific Person to whom the Confidential or Restricted Confidential Material is to be disclosed. For disclosure to any Expert/Consultant, deponent or witness that is or was an officer, director or employee of Whole Foods or Wild Oats, the identification of the Person shall include, but not be limited to, the full name, professional address and/or affiliation, and current curriculum vitae of the identified Person. The Producing Party may object to the disclosure of the Restricted Confidential or Confidential Discovery Material within five (5) business days of receiving notice of an intent to disclose such material to the Person by providing the Disclosing Party with a written statement of the reasons for objection. If the Producing Party timely objects, the Disclosing Party shall not disclose the Restricted Confidential or Confidential Discovery Material to the identified Person, absent a written agreement with the Producing Party or order of the Court permitting the disclosure. If the Producing Party does not object to the disclosure of Restricted Confidential or Confidential Discovery Material to the identified Person within five (5) business days, the Disclosing Party may disclose the Restricted Confidential Discovery Material to the identified Person.

12.     If the FTC (a) receives a discovery request that may require the disclosure by it of a Third Party's Restricted Confidential or Confidential Discovery Material, or (b) intends to or is required to disclose, voluntarily or involuntarily, a Third Party's Restricted Confidential or Confidential Discovery Material (whether or not such disclosure is in response to a discovery request), the FTC promptly shall notify the Third Party of the receipt of such request or its intention to disclose such material.  Such notification shall be in writing and, if not otherwise done, sent for receipt by the Third Party at least five (5) business days before disclosure, and shall include a copy of this Protective Order and a cover letter that will apprise the Third Party of its rights hereunder.

13.     If any Person receives a discovery request in another proceeding that may require the disclosure of a Producing Party's Restricted Confidential or Confidential Discovery Material, the recipient of the discovery request shall promptly notify the Producing Party of receipt of the request.  The notification shall be in writing and be received by the Producing Party at least five (5) business days before production in the other proceeding, and shall include a copy of this Protective Order and a cover letter apprising the Producing Party of its rights.  Nothing herein shall be construed as requiring the recipient of the discovery request or anyone else covered by this Protective Order to challenge or appeal an order requiring production of Restricted Confidential or Confidential Discovery Material, to subject itself to any penalties for noncompliance with such an order, or to seek any relief from the Court.  The recipient shall not oppose the Producing Party's efforts to challenge the discovery request calling for the production by the recipient of the Producing Party's Restricted Confidential or Confidential Discovery Material.  In addition, nothing herein shall limit the applicability of Section 4.11(e) of the FTC

Rules of Practice, 16 C.F.R. 44.1l(e), to discovery requests in another proceeding that are directed to the Commission.

14.     Counsel for the Parties or any Producing Party shall have the right to exclude from oral depositions any person not authorized to receive Restricted Confidential or Confidential Discovery Material, during periods of examination or testimony relating to such material.

15.     In the event that any Restricted Confidential or Confidential Discovery Material is contained in any pleading, motion, exhibit, brief, or other paper filed or to be filed with the Court, the Party filing the papers shall inform the Clerk of Court, and the papers shall be filed under seal pursuant to the Federal Rules of Civil Procedure and the Rules of the United States District Court for the District of Columbia.  Restricted Confidential or Confidential Discovery Material contained in papers (including Restricted Confidential or Confidential Discovery Material from the Parties and Third Parties) shall remain under seal until further order of the Court; provided, however, that the papers may be furnished to persons or entities who may receive Restricted Confidential or Confidential Discovery Material pursuant to this Protective Order.  After filing any paper containing Restricted Confidential or Confidential Discovery Material, the filing Party must file on the public record a duplicate copy of the paper with the Restricted Confidential or Confidential Discovery Material deleted, within five (5) business days of the original filing.  Further, if the protection for any such material ceases, any Party may file on the public record a copy that also contains the formerly protected material.

16.     If counsel for a Party plans to introduce into evidence at trial any Document or transcript containing Restricted Confidential or Confidential Discovery Material produced by a Third Party or any other Party, the counsel shall provide forty-eight (48) hours advance notice

before such introduction to the Producing Party and any other Party, or as much notice before the introduction as practicable under the circumstances, for purposes of allowing that Party to seek an order that the Document or transcript be granted *in camera* treatment. Except where an order seeking in camera treatment is granted, all Documents and transcripts shall be part of the public record. If in camera treatment is granted, a copy of the Document or transcript with the Restricted Confidential or Confidential Discovery Material deleted must be placed on the public record.

17.    The inadvertent production or disclosure of (i) material provided to the FTC during its investigation under the Hart-Scott-Rodino Antitrust Improvement Act, 15 U.S.C. § 18a, or (ii) any Discovery Material, which a Producing Party claims should not have been produced or disclosed because of a privilege will not be deemed to be a waiver of any privilege to which the Producing Party would have been entitled had the privileged Discovery Material not inadvertently been produced or disclosed. In the event of such claimed inadvertent production or disclosure, the procedures of Federal Rules of Civil Procedure 26(b)(5)(B) shall apply. The inadvertent production of a privileged document shall not be deemed a waiver of the privilege for all documents relating to that subject matter.

18.    Nothing in this Protective Order shall be construed to conflict with the provisions of Sections 6, 10, and 21 of the Federal Trade Commission Act, 15 U.S.C. § 46, 50, 57b-2, or with Rules 3.22, 3.45 or 4.11(b)-(e), 16 C.F.R. §§ 3.22, 3.45 and 4.11(b)-(e). Any Party or Producing Party may move at any time for in camera treatment of any Confidential Discovery Material or any portion of the proceedings in this Matter to the extent necessary for proper disposition of this Matter.

19.    At the conclusion of this Matter, the Defendants shall (a) return or destroy all Documents obtained in this Matter that contain or refer to Restricted Confidential or Confidential Discovery Material, other than materials that have been made part of the public record in this Matter, and (b) provide the Producing Party with an affidavit of destruction, *provided that* the provisions of 15 U.S.C. § 18a and § 4.12 of the FTC Rules of Practice, 16 C.F.R. 4.12, shall govern the retention, return, or destruction of any documents obtained by the FTC prior to the filing of the Complaint to the extent the provisions of that statute or regulation is inconsistent with the provisions of this Protective Order.  At the time that any Expert/Consultant or other person retained to assist counsel in the preparation of this Matter concludes participation in this Matter, that person shall return to counsel all copies of Documents or portions thereof designated Restricted Confidential or Confidential Discovery Material that are in the possession of that person, together with all notes, memoranda, or other papers containing Restricted Confidential or Confidential Discovery Material.

20.    The provisions of this Protective Order, insofar as they restrict the communication and use of Restricted Confidential and Confidential Discovery Material shall, without written permission of the Producing Party or further order of the Court, continue to be binding after the conclusion of this Matter.

21.    This Protective Order shall not apply to the disclosure by a Producing Party or its Counsel of the Producing Party's Restricted Confidential or Confidential Discovery Material to the Producing Party's current or former employees, agents, board members, directors, and officers.

22.     Entry of the foregoing Protective Order is without prejudice to the right of the

Parties or Third Parties to apply for further protective orders or for modification of any provision

of this Protective Order by application to the Court for good cause shown.

DATE: _____

 ORDERED:                                    _____
                                             The Honorable Paul L. Friedman
                                             United States District Judge
                                             District of Columbia

**EXHIBIT A**

**TO THE PROTECTIVE ORDER GOVERNING DISCOVERY MATERIAL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>           Plaintiff,<br><br>    v.<br><br>WHOLE FOODS MARKET, INC.<br><br>and<br><br>WILD OATS MARKETS, INC.,<br><br>           Defendants. | Case No. 1:07-CV-01021 (PLF) |

**DECLARATION CONCERNING PROTECTIVE
ORDER GOVERNING DISCOVERY MATERIAL**

I, [NAME], hereby declare and certify the following to be true:

      1.      [Statement of employment]

      2.      I have read the "Protective Order Governing Discovery Material" ("Protective Order") issued by the Court _____on _____, in connection with the above captioned Matter.  I understand the restrictions on my access to and use of any Restricted Confidential or Confidential Discovery Material (as these terms are used in the Protective Order) in this Matter and I agree to abide by the Protective Order.

      3.      I understand that the restrictions on my use of such Restricted Confidential or Confidential Discovery Material include:

              a.      that I will use such Restricted Confidential or Confidential Discovery Material only for the purpose of preparing for this proceeding, and hearing(s) and any appeal of this proceeding and for no other purpose;

b.      that I will not disclose such Restricted Confidential or Confidential Discovery Material to anyone, except as permitted by the Protective Order;

c.      that I will use, store and maintain the Restricted Confidential and Confidential Discovery Material in such a way as to ensure its continued protected status; and

d.      that upon the termination of my participation in this proceeding I will promptly return all Restricted Confidential or Confidential Discovery Material, and all notes, memoranda, or other papers containing Restricted Confidential or Confidential Discovery Material, to Plaintiffs Counsel or Defendants' Outside Counsel, as appropriate.

4.      I understand that if I am receiving Confidential Discovery Material as an Expert/Consultant, as that term is defined in this Protective Order, the restrictions on my use of Confidential Discovery Material also include the duty and obligation to:

a.      maintain such Restricted Confidential or Confidential Discovery Material in separate locked room(s) or locked cabinet(s) when such Restricted Confidential or Confidential Discovery Material is not being reviewed;

b.      return such Restricted Confidential or Confidential Discovery Material to Plaintiff's Counsel or Defendants' Outside Counsel, as appropriate, upon the conclusion of my assignment or retention, or upon conclusion of this Matter; and

c.      use such Restricted Confidential or Confidential Discovery Material and the information contained therein solely for the purpose of rendering consulting services to a Party to this Matter, including providing testimony in judicial or administrative proceedings arising out of this Matter.

5.      I am fully aware that, pursuant to Rule 26, Federal Rules of Civil Procedure, Rule 37, Federal Rules of Civil Procedure, and Section 3.42(h) of the FTC Rules of Practice, 16 C.F.R. § 3.42(h), my failure to comply with the terms of the Protective Order may constitute contempt of the Commission and may subject me to sanctions imposed by the Court or the Commission.


_____          Date: _____
Full Name [Typed or Printed]


_____

2