UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
FEDERAL TRADE COMMISSION,   )
                                            )
       Plaintiff,                      )
                                            )
       v.                                )    Civil Action No. 07-1021 (PLF)
                                            )
WHOLE FOODS MARKET, INC.,    )
                                            )
       and                              )
                                            )
WILD OATS MARKETS, INC.,         )
                                            )
       Defendants.                   )
_____)

MEMORANDUM OPINION AND ORDER

        This lawsuit was filed on June 6, 2007. The Federal Trade Commission ("FTC") seeks to enjoin Whole Foods Market, Inc. from acquiring Wild Oats Markets, Inc. This case is set to be litigated on a very fast track. See June 21, 2007 Case Management Order. On June 8, 2007, the Court signed an Interim Protective Order agreed upon by the parties. On June 11, 2007, defendant Whole Foods moved for the entry of a Final Protective Order. The FTC opposed the motion. In addition, a number of non-party grocery companies moved, and were permitted by the Court, to intervene for the limited purpose of opposing Whole Foods' motion. The dispute centered around what access, if any, Roberta L. Lang, Esq., Whole Foods' General Counsel, should have to confidential business information of Whole Foods' competitors during the course of this litigation.

        The Interim Protective Order had a two-tiered designation system for confidential

information.  The Interim Protective Order precludes *any* access by in-house counsel to so-called "Restricted Confidential Discovery Material."  See Interim Protective Order, entered June 8, 2007, Definitions, ¶¶ 4, 16.  Under that Order, Ms. Lang was not entitled to see the "Restricted" material, only outside counsel was.  See id., Terms and Conditions of Protective Order, ¶¶ 2, 3.

On June 29, 2007, the FTC and the defendants were able to resolve their differences with respect to the Final Protective Order, and they filed a joint motion for the entry of a Final Protective Order, which is now before the Court.[1]  The proposed protective order agreed to by the FTC and the defendants eliminates the distinction between "Restricted Confidential Discovery Material" and "Confidential Discovery Material."  See Proposed Protective Order, Definitions, ¶ 4.  It provides that Ms. Lang may have access to some but not all "Confidential Discovery Material," specifically "only to unredacted draft and final versions of pleadings, deposition and hearing transcripts, and expert reports, but shall not have access to any accompanying exhibits or underlying discovery materials to the extent those exhibits or discovery materials have been designated 'Confidential'[.]" Proposed Protective Order, Terms and Conditions of Protective Order, ¶ 8(c).  The Court understands this to mean that Ms. Lang may review draft and final versions of pleadings, motions and other briefs, deposition and hearing transcripts, and expert reports – including portions of such filings that quote or paraphrase "Confidential Discovery Material" – but may not see exhibits to such filings, depositions or reports or underlying discovery material designated as "Confidential."  This proposal is opposed by a number of the intervening grocery companies, whose confidential

---

[1] On July 2, 2007, the Court denied as moot Whole Foods' original motion for entry of a final protective order.

business information, previously produced to the FTC, is at issue. Specifically, each of the following intervenors filed a brief in opposition to the joint motion: Trader Joe's Company, Wegmans Food Markets, Inc., Supervalu, Inc., Publix Super Markets, Inc., Wal-mart Stores, Inc., H.E. Butt Grocery Company, Safeway, Inc., and Kroger Co.[2]

In connection with Whole Foods' original motion for entry of a final protective order, Ms. Lang submitted a sworn declaration. See Declaration of Roberta L. Lang , Ex. C to Whole Foods' Motion for Entry of a Final Protective Order ("Lang Decl."). She states:

> I do not participate in competitive decisionmaking at Whole Foods. I do not participate in any decisions about formulating or implementing strategies to compete with our competitors or any decisions about formulating or implementing pricing strategies. I am not involved in pricing decisions, selection of vendors, purchasing decisions, marketing, or other competition-related issues that are the subjects of confidential information in this case. I am also not involved in decisions about how much product to purchase at wholesale, the mix of products to carry, where to sell those products, or how to transport those products.

Lang Decl. ¶ 4. In addition, Ms. Lang stated in her sworn declaration that she will not make use of any confidential information, "directly or indirectly, for any purpose other than the defense of this action." Id. ¶ 15. She also "acknowledge[d] and agree[d] that [she is] subject to the jurisdiction of the Court and to its contempt powers." Id. ¶ 14. Finally, she volunteered "to remain subject to the Court's jurisdiction at all times, including after this litigation is concluded." Id.

Magistrate Judge Facciola recently confronted a similar situation in Intervet, Inc. v. Merial Ltd., 241 F.R.D. 55 (D.D.C. 2007). As he explained there:

---

[2] The Trader Joe's brief was joined or adopted by each of the other intervenors to file an opposition brief.

> [T]he courts have precluded access to confidential information from those who can be described as competitive decision-makers. The "leading authority" is <u>U.S. Steel Corp. v. United States</u>, 730 F.2d 1465 (Fed. Cir. 1984). In that case, the Federal Circuit said:
>
>> The parties have referred to involvement in "competitive decisionmaking" as a basis for denial of access. The phrase would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.
>
> <u>Id</u>. at 1468 n.3.
>
> Thus, <u>U.S. Steel</u> would preclude access to information to anyone who was positioned to advise the client as to business decisions that the client would make regarding, for example, pricing, marketing, or design issues when that party granted access has seen how a competitor has made those decisions. E.g., <u>Brown Bag Software</u>, 960 F.2d [1465, 1471 (9th Cir. 1992)] (counsel could not be expected to advise client without disclosing what he knew when he saw competitors' trade secrets as to those very topics); <u>Matsushita Elec. Indus. Co v. United States</u>, 929 F.2d 1577, 1579-80 (Fed. Cir. 1991) (determination by agency forbidding access was arbitrary when lawyer precluded from access testified that he was not involved in pricing, technical design, selection of vendors, purchasing and marketing strategies); <u>Volvo Penta of the Americas, Inc. v. Brunswick Corp.</u>, 187 F.R.D. 240, 242 (E.D. Va. 1999) (competitive decision-making involves decisions "that affect contracts, marketing, employment, pricing, product design" and other decisions made in light of similar or corresponding information about a competitor); <u>Glaxo Inc. v. Genpharm Pharm., Inc.</u>, 796 F. Supp. 872, 876 (E.D.N.C. 1992) (improper to preclude inhouse counsel from access to confidential information because he gave no advice to his client about competitive decisions such as pricing, scientific research, sales, or marketing).

<u>Intervet, Inc. v. Merial Ltd.</u>, 241 F.R.D. at 57-58 (footnotes omitted).  Because there was no

4

evidence before Magistrate Judge Facciola in <u>Intervet</u> that the in-house counsel was a "competitive decision-maker," or "involved in competitive decision-making," he allowed her to have access to the materials in question. <u>See id</u>. at 58; <u>see also</u> <u>United States v. Sungard Data Systems</u>, 173 F.Supp.2d 20, 21 (D.D.C. 2001) (Facciola, J.) (allowing access by in-house counsel to confidential information); <u>cf</u>. <u>Brown Bag Software v. Symantec Corp.</u>, 960 F.2d at 1471 (affirming order allowing access only by an independent consultant, rather than by in-house counsel).

    Applying these principles, based on her declaration the Court is unable to conclude that Ms. Lang is involved in competitive decision-making, despite the intervenors' arguments to the contrary. In addition, as in other cases, the pace of the instant litigation makes any other preventative measures impracticable. Accordingly, the Court will grant the joint motion for entry of a final protective order, with one addition. In an abundance of caution, as Magistrate Judge Facciola did in each of the cases in which he allowed in-house counsel to have access to confidential information, the Court will order the parties to amend the proposed protective order so that it contains the following penalty provision, as an added incentive against inadvertent misuse of any confidential information that Ms. Lang will be privy to. The penalty provision shall state:

> Any violation of this Order will be deemed a contempt and punished by a fine of $250,000. This fine will be paid individually by the person who violates this Order. Any violator may not seek to be reimbursed or indemnified for the payment the violator has made. If the violator is an attorney, the Court will deem the violation of this Order to warrant the violator being sanctioned by the appropriate professional disciplinary authority and Judge Friedman will urge that authority to suspend or disbar the violator.

With these principles and protections in mind, it is hereby

ORDERED that the [77] joint motion for entry of a Final Protective Order is GRANTED, with the modifications described herein. The parties shall submit a modified proposed Final Protective Order in accordance with this Memorandum Opinion and Order to the Court on or before Monday, July 9, 2007. When signed by the Court, the Final Protective Order shall supersede the Interim Protective Order entered on June 8, 2007.

SO ORDERED.

                                                            /s/
                                      PAUL L. FRIEDMAN
                                      United States District Judge

DATE: July 6, 2007