IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUBMBIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

WHOLE FOODS MARKET, INC.

and

WILD OATS MARKETS, INC.,

Defendants.

Civil Action No.: 1:07-CV-01021 (PLF)

**MOTION FOR LEAVE TO FILE AMICUS BRIEF ON BEHALF OF THE AMERICAN ANTITRUST INSTITUTE THE CONSUMER FEDERATION OF AMERICA AND THE ORGANIZATION FOR COMPETITIVE MARKETS IN SUPPORT OF THE FEDERAL TRADE COMMISSION**

The American Antitrust Institute, The Consumer Federation of America, and the

Organization for Competitive Markets, through their counsel for this matter, David Balto, hereby

move this Honorable Court for an order permitting these parties to file an Amicus Brief in

opposition to the merger.

The American Antitrust Institute ("AAI") is an independent Washington-based non-profit

education, research, and advocacy organization. Its mission is to increase the role of

competition, assure that competition works in the interests of consumers, and challenge abuses of

concentrated economic power in the American and world economy. The AAI is particularly

involved in research and advocacy on retail competition issues. It has sponsored preeminent

seminars on retail competition bringing together industry participants, antitrust enforcers, and

academics on important topics such as market power, buyer power, merger policy, category management and other supermarket promotion practices. It has submitted public comments on proposed supermarket merger enforcement actions, testified on merger enforcement standards and provided Congressional testimony on federal government enforcement policy.

The Consumer Federation of America ("CFA") is the nation's largest consumer-advocacy group, composed of over 280 state and local affiliates representing consumer, senior citizen, low income, labor, farm, public power and cooperative organizations, with more than 50 million individual members. CFA represents consumer interests before federal and state regulatory and legislative agencies and participates in court proceedings.

The Organization for Competitive Markets ("OCM") is a national non-profit, public policy research organization headquartered in Lincoln, Nebraska which advocates for open and competitive markets in the food and agriculture industry.  OCM has testified before Congress and filed amicus briefs on numerous competition issues, including supermarket mergers and merger enforcement.

The Amicus consumer groups request to file this brief to express its views on the competitive impact of Whole Foods' proposed acquisition of Wild Oats. In merger litigation consumers, especially individuals, rarely have the opportunity to testify as to their views on the impact of a proposed consolidation. This is especially true in a case like this one with millions of individual consumers. The Amici file this brief to support the Federal Trade Commission's efforts to enjoin this merger, because based on our experience as consumer advocates in retail

markets, we believe this merger will lead to higher prices, less service, and diminished consumer choice.[1]

Therefore, these *Amici* hereby respectfully move this Court for leave to file their *Amici* Brief as friends of the Court in opposition to the merger.

Dated:  July 31, 2007                          Respectfully submitted,

                                               /s/ David A. Balto
                                               David A. Balto, D.C. Bar No. 412314
                                               2600 Virginia Ave. N.W.
                                               Washington, D.C. 20037
                                               (202) 577-5424


                                               *Counsel for Amicus Curiae*

---

[1]  Amicus counsel telephoned  the parties prior to filing this motion to obtain consent. Whole Foods and the FTC have consented, however, the other party has yet to reply.

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 31st day of July, 2007, I caused the foregoing Motion to allow Amicus Brief to be filed and served using the Court's ECF system:

Alden L. Atkins, Esq.
Vinson & Elkins LLP
The Willard Office Building
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004-1008
(202) 639-6613
Aatkins@VELaw.com

Counsel for Defendant Whole Foods Market, Inc.

Clifford H. Aonson, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
(212) 735-2614
Caronson@Skadden.com

Counsel for Defendant Wild Oats Markets, Inc.

Michael J. Bloom
Federal Trade Commission
601 New Jersey Avenue, N.W.
Washington, D.C.  20001
(202) 326-2475
mjbloom@ftc.gov

Counsel for Federal Trade Commission

Dated:  July 31, 2007                    /s/ David A. Balto
                                          David A. Balto, Esq.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION, )
)
Plaintiff, )
)
v. )    Civ. No. 1:07-cv-01021-PLF
)
WHOLE FOODS MARKET, INC. and )
)
)
WILD OATS MARKET, INC. )
)
)
Defendants. )

---

**AMICUS BRIEF ON BEHALF OF THE AMERICAN ANTITRUST INSTITUTE THE
CONSUMER FEDERATION OF AMERICA AND THE ORGANIZATION FOR
COMPETITIVE MARKETS IN SUPPORT OF THE FEDERAL TRADE COMMISSION**

**DAVID A. BALTO**
**2600 VIRGINIA AVE., N.W.**
**SUITE 1111**
**WASHINGTON, D.C. 20037**
**dbalto@yahoo.com**
**Attorney for Amicus Curiae**

July 31, 2007

## TABLE OF CONTENTS

Interests of Amici ............................................................................................................................ 2

I.   The FTC's Market Definition of Premium Natural and Organic Foods
     Supermarket   Market is Supported by Mainstream Antitrust Law ........................... 3

II.  The Merger Poses a Significant Threat to Potential Competition in the Relevant
     Market................................................................................................................................. 8

III. The Whole Foods-Wild Oats Merger will Substantially Harm Competition in
     Consumer Choice ...………………………………………………………………    12

IV.  CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Bon-Ton Stores, Inc. v. May Dep't Stores Co.*, 881 F. Supp. 860 (W.D.N.Y. 1994) ..................... 5

*Brown Shoe v. United States*, 370 U.S. 294 (1962) ......................................................... 7

*California v. American Stores Co.*, 495 U.S. 271 (1990) ................................................... 9

*California v. American Stores*, 697 F. Supp. 1125 (C.D. Cal. 1988) ..................................... 5

*FTC v. Cardinal Health, Inc.,* 12 F. Supp. 2d 34 (D.D.C. 1998) ......................................... 7

*FTC v. Coca-Cola Co.*, 641 F. Supp. 1128 (D.D.C. 1986), *vacated mem. as moot*, 829 F.2d 191
    (D.C. Cir. 1987) ................................................................................ 7

*FTC v. Staples, Inc.,* 970 F. Supp. 1066 (D.D.C. 1997) ................................................. 5, 7

*FTC v. Swedish Match,* 131 F. Supp. 2d 151 (D.D.C. 2000) ................................................ 7

*Nat'l Soc'y of Prof. Eng'rs v. United States,* 435 U.S. 679 (1978) ..................................... 12

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210 (D.C. Cir. 1986).................... 7

*Seeburg Corp. v. FTC,* 425 F.2d 124 (6th Cir. 1970) .................................................... 12

*United States v. Philadelphia National Bank*, 374 U.S. 321 (1963)...................................... 12

*United States v. Philips Petroleum Co.,* 367 F. Supp. 1226 (C.D. Cal. 1973), *aff'd mem.,* 418
    U.S. 906 (1974)................................................................................... 9

*Yamaha Motor Co. v. FTC,* 657 F.2d 971 (8th Cir. 1981) ................................................. 9

## INTERESTS OF AMICI

The American Antitrust Institute ("AAI") is an independent Washington-based non-profit education, research, and advocacy organization. Its mission is to increase the role of competition, assure that competition works in the interests of consumers, and challenge abuses of concentrated economic power in the American and world economy. The AAI is particularly involved in research and advocacy on retail competition issues. It has sponsored preeminent seminars on retail competition bringing together industry participants, antitrust enforcers, and academics on important topics such as market power, buyer power, merger policy, category management and other supermarket promotion practices. It has submitted public comments on proposed supermarket merger enforcement actions, testified on merger enforcement standards and provided Congressional testimony on federal government enforcement policy.

The Consumer Federation of America ("CFA") is the nation's largest consumer-advocacy group, composed of over 280 state and local affiliates representing consumer, senior citizen, low income, labor, farm, public power and cooperative organizations, with more than 50 million individual members. CFA represents consumer interests before federal and state regulatory and legislative agencies and participates in court proceedings.

The Organization for Competitive Markets ("OCM") is a national non-profit, public policy research organization headquartered in Lincoln, Nebraska which advocates for open and competitive agriculture and retail markets. OCM has testified before Congress and filed amicus briefs on numerous competition issues, including supermarket mergers and merger enforcement.

In merger litigation consumers, especially individuals, rarely have the opportunity to testify as to their views on the impact of a proposed consolidation. This is especially true in a case like this one with millions of individual consumers. The Amici file this brief to support the Federal Trade Commission's efforts to enjoin this merger, because based on our experience as consumer advocates in retail markets, we believe this merger will lead to higher prices, less service, and diminished consumer choice. In particular, we highlight these central points about how competition and consumers will be harmed by this proposed merger:

- First, market definition is critical to the resolution of this case and based on public information we believe that the relevant antitrust product market is premium natural and organic foods supermarkets. The Federal Trade Commission ("FTC") has identified many aspects of service and variety that are important to consumers of organic and natural food products. Whole Foods' model for success is based on providing a wide variety of natural and organic products, in an upscale environment, with extremely knowledgeable staff. This clearly provides a very different shopping experience than buying a few organic items at your local supermarket.

- Recognizing aspects of service and distribution competition in antitrust market definition is important from a policy perspective. If markets are defined solely in terms of price the drive to compete on other factors such as service and quality will be valued less. The incentive to compete on these dimensions will receive less attention and consumers will suffer from the loss of nonprice competition.

- Second, this merger will be anticompetitive because it will diminish potential competition that is critical to future competition in this market. Section 7 of the Clayton Act prohibits acquisitions that may substantially lessen competition. Years of antitrust jurisprudence have led courts to prohibit mergers which may impact future competition through the elimination of a firm that is poised to enter the market.

- This case is a significant example of the importance of potential competition. But for this acquisition, both Whole Foods and Wild Oats would likely continue to expand by entering into more of each other's geographic markets. That increased head to head competition would result in significant future benefits to competition and consumers. In fact, some of the key reasons for

2

this acquisition, articulated by Whole Foods' CEO, are to prevent this potential competition and while removing these assets from the market so no other buyer can use them to enter Whole Foods' markets.

- Finally, Amici believe that this case emphasizes the importance of protecting consumer choice in merger enforcement. The antitrust laws seek to protect competition in many respects, including price and non-price factors. Courts should not evaluate the effect of a merger simply based on price factors. In many cases, non-price concerns such as choice, variety, service and innovation may be of competitive concern. The antitrust laws appropriately protect competition in all of these non-price dimensions and this merger raises significant concerns over the loss of consumer choice.

## I.    THE FTC'S MARKET DEFINITION OF A PREMIUM NATURAL AND ORGANIC FOODS SUPERMARKET MARKET IS SUPPORTED BY MAINSTREAM ANTITRUST LAW

Defining a relevant market establishes the framework for the fact finder's assessment of the effects a merger will have on competition. Defendants in this case suggest that since natural and organic foods are the same regardless of who sells them, a wide array of retailers – traditional supermarkets, mass merchandisers, and specialty retailers – should be included in the relevant market. But decades of antitrust jurisprudence have explained that simply because products or services are similar does not mean they are in the relevant market. Rather only those products that can constrain price increases (or decreases in quality or service) are properly considered to be in the relevant market.

The need to look beyond similarities of inventory is especially pronounced in the context of retail mergers. As the field of marketing has understood for some time, retailing is not simply a matter of distributing products and providing for the basic utilities of time and place. Increasingly, retailers compete in dimensions of quality, service, variety, and choice including selection, depth and breadth of inventory. These

3

aspects of competition are important to consumers who may value the one-stop shopping experience or customized service or the opportunity to sample, learn and experience products. **This reflects the common sense notion that when consumers shop they are choosing not only the product and price but also the shopping experience and overall value received**. For some shoppers beyond product and price considerations a certain level of service and information will be critical to their purchase decision; for others time and variety may be crucial; still others may seek a wide variety of products to select from in their shopping experience. Some consumers may even desire to shop at a particular retailer based upon the perceived lifestyle associated with frequenting and purchasing from the retailer versus other retailers. Together, these considerations shape how firms compete against each other and thus each must be considered in defining a relevant market.

The FTC's successful challenge to the Staples-Office Depot merger demonstrates how the retail format can influence relevant market definition. Staples and Office Depot -- which had developed a novel mode of distribution that came to be known as the office supply superstore -- sought to merge. The parties developed a new market category and their success led people to recognize the unique importance of office superstores. When the FTC announced the challenge to the merger, the parties and most commentators objected; observing that everything that could be purchased in a Staples or Office Depot could be purchased in another type of store or by mail order. In fact, several thousand distributors of office supplies existed at the time, and less than 6% of all office supplies were purchased at a Staples or Office Depot.

4

This Court rejected the defendants' attempt to broaden the relevant market, however, stating that **"the mere fact that a firm may be termed a competitor in the overall marketplace does not necessarily require that it be included in the relevant product market for antitrust purposes."**[1]  The Court then observed that the sale of consumable office supplies by office superstores was a relevant antitrust market, based on several factors including industry recognition of an office superstore category, evidence that pricing was different at these office superstores, and the stores had distinctive formats and customers.

Judge Hogan's conclusions about the importance of retail format in relevant marked definition were reinforced when—at the parties' suggestion—he visited several stores in Rockville, Maryland, including a Wal-Mart, Staples, Office Depot, Target and other stores.  The Judge concluded that a relevant market existed for superstores which, unlike the other stores, offered "the combination of size, selection, depth and breadth of inventory" that distinguished them.[2]  Only office supply superstores offered the one-stop shopping experience in which a consumer could shop for the broadest variety of office supply consumables, computers and other equipment and office furniture.  After visiting all the stores, Judge Hogan concluded that "[s]uperstores are simply different in scale and appearance from the other retailers," such that "[n]o one entering Staples or Office Depot would mistakenly think he or she was in Best Buy or CompUSA."[3]  Judge Hogan's

---

[1] *FTC v. Staples, Inc.*, 970 F. Supp. 1066 (D.D.C. 1997).  The mere fact that two different classes of retail vendors both sell a particular type of merchandise does not mean that they are in the same product market. *Bon-Ton Stores, Inc. v. May Dep't Stores Co.*, 881 F. Supp. 860, 869 (W.D.N.Y. 1994); *California v. American Stores*, 697 F. Supp. 1125, 1129 (C.D. Cal. 1988) ("[e]ven if convenience stores competitively price a few food items, such as bread and milk, in direct competition with supermarkets, such is not sufficient to justify inclusion of all retail grocery sales from whatever outlet in the relevant product market"), *rev'd in part on other grounds*, 872 F.2d 837 (9th Cir. 1989), *rev'd*, 495 U.S. 271 (1990), *reinstated in pertinent part*, 930 F.2d 776 (9th Cir. 1991).
[2] *Staples,*, 970 F. Supp. *a*t 1079.
[3] *Id.*

observations confirm that in defining a relevant market it is necessary to evaluate not only

what is purchased but the entire retail shopping experience.

The evidence on this issue will be fully presented at trial. But the FTC has

introduced numerous company documents strongly suggesting that both Whole Foods and

Wild Oats perceive a premium natural and organic food distribution market in which they

are each other's main rival. [4]  Although the parties may seek to walk away from many of

these documents, it is precisely this type of internal workaday evidence that has been

crucial to relevant market decisions in numerous merger cases. As Judge Gesell

explained a generation ago these types of documents expose the "business realit[ies]"

critical to the workings of the market -- "how the market is perceived by those who strive

to profit in it." *FTC v. Coca-Cola Co.*, 641 F. Supp. 1128, 1132 (D.D.C. 1986), *vacated*

*mem. as moot*, 829 F.2d 191 (D.C. Cir. 1987).[5]

The courts rely on a variety of factors in defining relevant product markets,

including: distinct consumer characteristics, product characteristics, distinct product

prices, specialized sellers, and unique production facilities. . *Brown Shoe v. United States*,

370 U.S. 294 (1962). Although the FTC may rely extensively on pricing factors in its

case, recent merger decisions of this Court have continued to focus on the traditional

---

[4] A form of distribution may be a relevant product market. *Staples*, 970 F. Supp. at 1074-76 (sale of office supplies by office supply superstores); *JBL Enters. v. Jhirmack Enters.*, 698 F.2d 1011, 1016-17 (9th Cir. 1982) (sale of beauty products to beauty salons and other professional outlets), *cert. denied*, 464 U.S. 829 (1983); *California v. American Stores*, 697 F. Supp. at 1129 (supermarkets).

[5] *See also Beatrice Foods Co. v. FTC*, 540 F.2d 303, 309 (7th Cir. 1976)(manufacturers of brushes and rollers do not consider aerosols or spray paints when setting price); *Reynolds Metal Co. v. FTC*, 309 F.2d 223, 228-29 (D.C. Cir. 1962) (finding florist foil to be a product market separate from other types of aluminum foil based on, *inter alia*, evidence in company documents); *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1079-80 (D.D.C. 1997); *Community Publishers, Inc. v. Donrey Corp.*, 892 F. Supp. 1146, 1153-54, 1156 (W.D. Ark. 1995) (where firm routinely concentrates on some presumptively competitive products, and ignores others, implication is that other products are not in relevant product market), *aff'd*, 139 F.3d 1180 (8th Cir. 1998); *Tasty Baking Co. v. Ralston Purina Inc.*, 653 F. Supp. 1250, 1259 (E.D. Pa. 1987)

6

*Brown Shoe* factors. *See Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d

210, 219 (D.C. Cir. 1986) (*Brown Shoe's* "submarket indicia are viewed as proxies for

cross-elasticities [and] assist in predicting a firm's ability to restrict output and hence to

harm consumers."); *see also FTC v. Swedish Match,* 131 F. Supp. 2d 151, 156 (D.D.C.

2000); *FTC v. Cardinal Health, Inc.,* 12 F. Supp. 2d 34, 45 (D.D.C. 1998); *FTC v.*

*Staples, Inc.,* 970 F. Supp. 1066, 1075 (D.D.C. 1997)("well-defined submarkets may exist

which, in themselves, constitute product markets for antitrust purposes.").

Many of these factors suggest a premium natural and organic foods supermarket

market in this case. For example, the Commission's complaint points to Whole Foods'

and Wild Oats' marketing philosophy that centers on health and sustainability-oriented

"lifestyle" retailing. This approach is built around service, superior quality, amenities,

knowledgeable personnel, trustworthiness (e.g., in actually implementing natural, organic,

and sustainable strategies in product offerings) and a store "environment" (e.g., ambience

and experience) that is very different from conventional supermarket shopping.

Both Whole Foods and Wild Oats acknowledge this when they state:

> "We [Whole Foods] are a lifestyle retailer and have created a unique shopping
> environment built around satisfying and delighting our customers."[6]

> "Wild Oats is more than a retail chain—it's about a lifestyle, and that's how we
> market ourselves."[7]

In such a market, the creation of brand identity and loyalty, private-label offerings,

reputation (e.g., goods plus service), and a one-stop shopping experience are key

marketing tools. Presumably, this experience is what consumers seek out and for which

---

(evidence of bakers' pricing practices and other internal documents supports market limited to snack cakes and
pies).
[6] FTC Complaint at 7.

they are willing to pay premium prices. And it is clear that Whole Foods and Wild Oats

seek to differentiate their stores from conventional supermarkets. The FTC thus appears

to have a strong case for a relevant market defined around premium natural and organic

supermarkets, in keeping with the precedent of this Court.8

## II.    THE MERGER POSES A SIGNIFICANT THREAT TO POTENTIAL
COMPETITION IN THE RELEVANT MARKET

Antitrust analysis under Section 7 of the Clayton Act is inherently prospective.

The Supreme Court has instructed that Section 7 "creates a relatively expansive definition

of antitrust liability," by requiring a showing that the merger's effect "*may be*

substantially to lessen competition." *California v. American Stores Co.*, 495 U.S. 271,

284 (1990) (emphasis in original).   The statute prohibits any acquisition of stock or assets

"where in any line of commerce in any section of the country, the effect of such acquisition

may be substantially to lessen competition or to tend to create a monopoly."[9]  Thus, the

courts must judge whether a merger may eliminate potential competition – competition

from a firm waiting in the wings.

---

[7] FTC Complaint at 3.

8 In their pretrial brief, the Defendants argue for several pages that the FTC's market definition is not
sufficiently precise.  Their approach is misguided.  Decades of antitrust jurisprudence have made it
abundantly clear that markets need not be defined with scientific precision. *United States. v. Pabst Brewing
Co.*, 384 U.S. 546, 549-50 (1966)(because the chief concern of Section 7 is the potential anticompetitive
impact of a merger -- rather than formalistic boundary demarcation -- the law does not require "delineation
of a 'section of the country' by metes and bounds as a surveyor would lay off a plot of ground."); *see also
United States. v. General Dynamics Corp.*, 415 U.S. 486, 521 (1974)("the Government is not required to
delineate § 7 markets by 'metes and bounds'").  In Judge Posner's words, defendants seek to engage the
Court in "a hunt for the snark of delusive exactness." *Blue Cross & Blue Shield United v. Marshfield
Clinic*, 65 F.3d 1406, 1411 (7th Cir. 1995), *cert. denied*, 516 U.S. 1184 (1996).  Indeed, as former FTC
Chairman Robert Pitofsky has observed "[t]he tendency to see relevant market definition as an all-or-
nothing proposition rather than as an array of estimates with no market description being exactly right has
led to the most serious errors in antitrust enforcement."  Robert Pitofsky, *New Definitions of Relevant
Market and the Assault on Antitrust*, 90 COLUM. L. REV. 1805, 1812-13 (1990).
[9] 15 U.S.C. Sec. 18 (2004).

8

The elimination of a potential competitor in a market such as this – characterized by high concentration, high entry barriers, and no other potential entrants – is illegal under Section 7. *E.g., Yamaha Motor Co. v. FTC,* 657 F.2d 971, 977-980 (8th Cir. 1981) (affirming Commission decision that acquisition of a potential entrant violated Section 7); *United States v. Philips Petroleum Co.,* 367 F. Supp. 1226, 1232-34 (C.D. Cal. 1973), *aff'd mem.,* 418 U.S. 906 (1974). The Antitrust Division and Federal Trade Commission have brought many enforcement actions challenging mergers based on potential competition theories, including supermarket mergers.[10] Recent scholarship has emphasized the importance of the potential competition doctrine in protecting marketplace rivalry.[11]

This merger raises potential competition concerns in two respects. First, there may be many potential suitors for Wild Oats or its assets. One reason for this acquisition, according to Whole Foods' CEO is to keep these stores out of the hands of another rival that might turn Wild Oats into a much more significant competitive threat. Second, Whole Foods and Wild Oats have a long history of invading each other's territories, and by doing so, forcing each other to lower prices, improve service and innovate. But for this acquisition they would very likely continue to invade each other's territories, bringing increased competition and benefits to consumers.

Firms may engage in acquisitions for numerous reasons: they may seek to expand product offerings, expand geographically, or achieve certain efficiencies. Firms may also acquire rivals for strategic and anticompetitive reasons. The most problematic merger is

---

[10] David Balto, Antitrust Enforcement in the Clinton Administration, Cornell Journal of Law and Public Policy (Fall 1999); David Balto, "Supermarket Merger Enforcement," *Antitrust Report* (Aug. 1999).
[11] Darren Bush and Salvatore Massa, "Rethinking the Potential Competition Doctrine," Wisconsin Law

one in a concentrated market with substantial entry barriers. In that type of market a firm

may have a strong incentive to acquire a rival or a rival's assets to prevent those assets

from falling into the hands of a new entrant that may present a more dangerous

competitive threat to the acquiror.

It is rare that there is explicit evidence of an intent to merge to prevent potential

competition – but this is that case.[12]  Whole Foods' CEO explained to his Board of

Directors that a reason for the transaction was:

> By buying them we will ... avoid nasty price wars in Portland (both Oregon and
> Maine), Boulder, Nashville, and several other cities which will harm our gross
> margins and profitability. OATS may not be able to defeat us but they can still hurt
> us. Furthermore, we eliminate forever the possibility of Kroger, Super Value, or
> Safeway using their brand equity to launch a competing national natural/organic
> food chain to rival us.... [Wild Oats] is the only existing company that has the
> brand and number of stores to be a meaningful springboard for another player to
> get into this space. Eliminating them means eliminating that threat forever, or
> almost forever.[13]

In his deposition, Mr. Mackey reaffirmed that a major reason for the acquisition

was to keep Wild Oats out of the hands of other supermarkets:

> So it is either Whole Foods buy them or we potentially see someone like Kroger
> or Safeway or Tesco or God knows who else, a private equity firm, buy them
> and recapitalize them, potentially bring in new management. And we would
> rather not see that happen.[14]

---

Review (2004), available at http://ssrn.com/abstract=956494

[12] Anticompetitive motive as shown here is highly probative of the likely effect of the proposed merger on
competition. Although a good motive will not justify a merger once it has been shown to be substantially
anticompetitive, *United States v. E.I. duPont de Nemours & Co.*, 353 U.S. 586, 607 (1957), "knowledge of
intent may help the court to interpret facts and predict consequences." *Chicago Bd. of Trade v. United
States*, 246 U.S. 231, 238 (1918).
In their reply brief, Defendants make much of two passages from Professor Areeda's Antitrust Law treatise
suggesting the limited value of evidence of intent. (*See* pp.68-69 of Defendants' brief). The passages cited
relate to evaluation of intent documents in anticompetitive conduct cases, not merger cases. The section of
the treatise that deals with intent evidence in merger cases notes that such evidence may be probative that
the market "has been too broadly defined," or that "the acquired firm, though having a relatively small
share, is a particularly disruptive force" or an intent to engage in price fixing. Areeda, Antitrust Law Par
964c at 20 (2006). The first two factors are clearly relevant in this case.
[13] FTC Complaint at 15.
[14] Exhibit 2 (Transcript of Investigational Hearing of John Mackey, at 54:22-55:2, PX01324 at 054055).

10

Mr. Mackey's own words reveal several things. First, they strongly suggest that the intent of the merger was to prevent a rival from getting a toehold in many important markets and to "terminate with prejudice" any possibility of its smaller and weaker rival coming under the control of an owner who could turn it into a much more dangerous competitor. Second, his statements support the FTC's argument that entry or repositioning into premium natural and organic supermarkets is "time-consuming, costly, and difficult," since it would not be worthwhile to acquire these assets (at a premium) to forestall entry unless entry was difficult. Third, Mr. Mackey acknowledges that a certain scale and brand identity characterizes the "space" or market in which Whole Foods competes. This supports the relevant market of natural and organic supermarkets.

Additionally, the merger would extinguish the ongoing rivalry between Whole Foods and Wild Oats that will n the normal course of events lead to significant future benefits to consumers as the two chains continue to invade each other's territories. Again we return to *FTC v. Staples* to explain the importance of this future competition. At the time of the proposed merger, both chains had around 500 superstores with plans of expansion. The court granted an injunction in part because of the impact on potential competition: "allowing the defendants to merge would eliminate significant future competition. Absent the merger, the firms are likely, and in fact have planned, to enter more of each other's markets, leading to a deconcentration of the market and, therefore, increased competition between the superstores."[15]

---

[15] *Staples,* 970 F. Supp. at 1082.

11

The lesson of *Staples* is simple but powerful. Because the merger was enjoined, both firms had to succeed the old fashion way – by competing. In the past decade, both firms continued to grow rapidly and expand their geographic reach. Currently both firms have more than doubled the amount of stores – over 1000 each and between the two chains there are now over 3000 stores.[16] The continual expansion and invasion of each other's territories has led to better service, lower prices and greater innovation.

## III.    THE WHOLE FOODS-WILD OATS MERGER WILL SUBSTANTIALLY HARM COMPETITION IN CONSUMER CHOICE

It long has been a bedrock of merger analysis that antitrust law is concerned with more than low prices. Indeed, the antimerger laws are concerned with any price or non-price criterion that is important to consumers. As the Supreme Court has observed, competition protects "all elements of a bargain – quality, service, safety, and durability – and not just the immediate cost." *Nat'l Soc'y of Prof. Eng'rs v. United States,* 435 U.S. 679, 695 (1978). Consumer choice and variety are an essential aspect of this nonprice rivalry and it "is the purpose of Section 7 to preserve buyers the choice" arising from competing offers. *Seeburg Corp. v. FTC,* 425 F.2d 124, 128 (6th Cir. 1970).

In *United States v. Philadelphia National Bank*, 374 U.S. 321 (1963) the Supreme Court discussed the anticompetitive effects of undue concentration and the reason underlying the presumption that unduly large mergers were anticompetitive. The Court expressed a concern with possible adverse effects of the merger on not only price, but also nonprice factors such as "variety of credit arrangements, convenience of location,

---

[16] *See* Investor Relations pages of Staples and Office Depot websites.
http://investor.staples.com/phoenix.zhtml?c=96244&p=irol-IRHome (Staples has over 1900 office supply superstores);   http://investor.officedepot.com/phoenix.zhtml?c=94746&p=irol-IRHome (Office Depot has

attractiveness of physical surroundings, credit information, investment advice, service

charges, personal accommodations, advertising, miscellaneous special and extra

services...." *Id.* at 368.[17] The Court thus explained its fear of undue concentration in

terms of a reduction in either price or nonprice competition that might harm consumers.

Consumer choice was at the core of the Court's concerns. The Court wanted consumers

to be able to choose freely on the basis of any price or nonprice issue important to

them. The Court feared that a merger might lead to a reduction of some aspect of

consumer choice -- not necessarily in higher prices. Consumer choices that are important

enough to be reflected in the operation of the free market should be respected, not

artificially interfered with or second-guessed. Indeed, this deference is an axiom of free

market capitalism.[18]

There is no question that a significant number of consumers prefer to purchase

food that is organic and natural, the "variety" recognized as important by the Court in

*Philadelphia National Bank.* There also is no doubt that a large number of consumers of

organic and natural foods value both the unique variety and depth of these foods as

offered by these two companies, and the relatively intangible but very real shopping

experience afforded by Whole Foods and Wild Oats. Millions of consumers vote with

their pocket books by paying a premium for the upscale shopping experience developed

---

over 1100 office supply superstores).

[17] Former FTC Commissioner Thomas Leary has provided an insightful speech on how firms compete in terms of providing a certain type of experience and variety. *See* Thomas B. Leary, "The Significance of Variety in Antitrust Analysis," available at http://www.ftc.gov/speeches/leary/atljva4.shtm. Many of the factors of variety and experience are relevant to the competitive impact of the Whole Foods-Wild Oats merger. To give just one example, both firms attempt to provide a different shopping experience than a traditional supermarket.

[18] For a detailed discussion of the importance of consumer choice in antitrust analysis *see* Neil W. Averitt & Robert H. Lande, "Using the 'Consumer Choice Approach to Antitrust Law," 74 Antitrust L. J. 175 (2007); Robert H. Lande, "Consumer Choice as the Ultimate Goal of Antitrust," 62 U. Pitt. L. Rev. 503 (2001).

by Whole Foods and Wild Oats. These factors are analogous to the service-related

criteria the Court recognized as important in *Philadelphia National Bank* of

"attractiveness of physical surroundings," "personal accommodations," and

"miscellaneous special and extra services." 374 U.S. at 368.

Since a large number of consumers are willing to pay for these intangibles offered

by premium natural and organic supermarkets, the merger laws should preserve this

competition in service, choice and variety. Whole Foods and Wild Oats actively compete

to provide a better variety of natural and organic foods, and a superior shopping

experience. This rivalry should be preserved by enjoining the proposed acquisition.

## IV.    CONCLUSION

The purpose of the antitrust laws is to protect competition in all respects: price,

service, quality innovation, variety, and choice. There are few markets where these

factors are as important as contemporary retail markets. Whole Foods proposed

acquisition of Wild Oats raises a significant threat to competition, not only by

diminishing current price competition but also in terms of potential competition and

competition in choice in variety. Therefore, the Amici consumer groups respectfully urge

this Court to grant the FTC's request for a preliminary injunction.

Dated:  July 31, 2007                          Respectfully submitted,

                                               /s/ David A. Balto
                                               David A. Balto, D.C. Bar No. 412314
                                               2600 Virginia Ave., N.W.
                                               Washington, D.C. 20037
                                               (202) 577-5424
                                               dbalto@yahoo.com
                                               *Counsel for Amicus Curiae*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of July 2007, the foregoing papers were to be filed

and served using the Court's ECF system:

Alden L. Atkins, Esq.
Vinson & Elkins LLP
The Willard Office Building
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C. 20004-1008
(202) 639-6613
Aatkins@VELaw.com

Counsel for Defendant Whole Foods Market, Inc.

Clifford H. Aonson, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(212) 735-2614
Caronson@Skadden.com

Counsel for Defendant Wild Oats Markets, Inc.

Michael J. Bloom
Federal Trade Commission
601 New Jersey Avenue, N.W.
Washington, D.C. 20001
(202) 326-2475
mjbloom@ftc.gov

Counsel for Federal Trade Commission

Dated: July 31, 2007                    /s/ David A Balto
                                        David A. Balto, Esq.