## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,    )
                             )
            Plaintiff,       )
                             )
        v.                   )    Civ. No. 1:07-cv-01021 – PLF
                             )
WHOLE FOODS MARKET, INC.,    )    **PUBLIC VERSION**
                             )
And                          )
                             )
WILD OATS MARKETS, INC.,     )
                             )
            Defendants.      )
_____    )

### JOINT FINDINGS OF FACT & CONCLUSIONS OF LAW
### OF WHOLE FOODS MARKET, INC., AND WILD OATS MARKETS, INC.
### IN OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION

Paul T. Denis (DC Bar No. 437040)
Paul H. Friedman (DC Bar No. 290635)
Jeffrey W. Brennan (DC Bar No. 447438)
James A. Fishkin (DC Bar No. 478958)
Michael Farber (DC Bar No. 449215)
Rebecca Dick (DC Bar No. 463197)
Gorav Jindal (DC Bar No. 471059)

DECHERT LLP
1775 I Street, N.W.
Washington, DC 20006
Telephone: (202) 261-3430
Facsimile: (202) 261-3333

*Of Counsel:*

Roberta Lang
Vice-President of Legal Affairs
  and General Counsel
Whole Foods Market, Inc.
550 Bowie Street
Austin, TX 78703

Alden L. Atkins (DC Bar No. 393922)
Neil W. Imus (DC Bar No. 394544)
John D. Taurman (DC Bar No. 133942)

VINSON & ELKINS L.L.P.
The Willard Office Building
1455 Pennsylvania Avenue, N.W., Suite 600
Washington, DC 20004-1008
Telephone (202) 639-6500
Facsimile (202) 639-6604

*Attorneys for Whole Foods Market, Inc.*

Clifford H. Aronson (DC Bar No. 335182)
Thomas Pak (Pro Hac Vice)
Matthew P. Hendrickson (Pro Hac Vice)

SKADDEN, ARPS, SLATE, MEAGHER
     & FLOM LLP
Four Times Square
New York, NY  10036
Telephone: (212) 735-3000
caronson@skadden.com

Gary A. MacDonald (DC Bar No. 418378)
SKADDEN, ARPS, SLATE, MEAGHER
     & Flom LLP
1440 New York Avenue, N.W.
Washington, DC  20005
Telephone:  (202) 371-7000
gmacdona@skadden.com

Terrence J. Wallock (Pro Hac Vice)
2224 Pacific Dr.
Corona Del Mar, CA  92625
(949) 375-0683

*Attorneys for Defendant Wild Oats Markets, Inc.*

August 3, 2007

**TABLE OF CONTENTS**

I.    BACKGROUND ................................................................................ 1
      A.    Whole Foods. .................................................................... 1
      B.    Wild Oats ........................................................................... 2
      C.    The Whole Foods-Wild Oats transaction .......................... 3
      D.    The FTC's investigation and this lawsuit ......................... 3

II.   THE RELEVANT PRODUCT MARKET IS BROADER THAN PREMIUM
      NATURAL AND ORGANIC SUPERMARKETS ............................ 4
      A.    Whole Foods and Wild Oats are supermarkets. ................ 4
      B.    All supermarkets, including Whole Foods and Wild Oats, seek to
            differentiate themselves from competitors. ..................... 6
            1.    Supermarkets differentiate themselves on a number of different
                  attributes, such as, price selection, services, perishable
                  departments, promotions, quality, private label offerings, and
                  others. ..................................................................... 6
            2.    Growth in consumer demand for natural and organic products has
                  changed the nature of supermarket competitions. .............. 7
            3.    In response to consumer demand, other supermarkets have eroded
                  the points of differentiation once enjoyed by Whole Foods and
                  Wild Oats. ................................................................ 10
            4.    As a result of the loss of differentiation, the attributes that the FTC
                  identifies with Whole Foods and Wild Oats are emphasized and
                  shared by other supermarkets. .................................... 13
      C.    Intense competition against other supermarkets is a daily reality for Whole
            Foods and Wild Oats. .................................................... 14
            1.    Consumers who shop at Whole Foods and Wild Oats also shop at
                  supermarkets for the same products. ............................ 15
                  a.    Many Whole Foods and Wild Oats customers shop
                        regularly at other supermarkets and retailers. ......... 15
                  b.    Consumers buy the same products at Whole Foods and at
                        other supermarkets. ........................................... 18
                  c.    The percentage of "loyal" Whole Foods customers has
                        declined ........................................................... 20
            2.    Whole Foods and Wild Oats compete with other supermarkets. ............ 21
                  a.    Whole Foods has engaged in a number of strategies to
                        attract a broader group of consumers, including larger
                        stores, expanded service and food venues. ............. 21
                  b.    Whole Foods checks prices and "comp shops" against other
                        supermarkets ................................................... 23
                  c.    Whole Foods' private label program is designed to compete
                        with other supermarkets .................................... 26
                  d.    The Site Selection process for new Whole Foods
                        supermarkets considers locations of all other supermarkets ........ 29

e.    Competition with other supermarkets has affected Whole Foods' rate of growth. ................................................. 33

f.    Wild Oats won customers from other supermarkets during the California-supermarket strike. ................................. 34

g.    Wild Oats' non-compete agreement demonstrates that it considers other supermarkets as competitors ....................... 35

3.   Other supermarkets view Whole Foods and Wild Oats as competitors. ..................................................................... 36

4.   There is no "unique" competition between Whole Foods and Wild Oats ..................................................................... 40

D.  Whole Foods and Wild Oats also face brisk competition from other food retailers. ......................................................... 41

E.  The consumer survey performed by Ms. Conway shows that customers are buying the same types of products at other supermarkets. .................... 44

F.  Defendants' industry expert, whose views are not contested, confirms that Whole Foods and WO compete with all supermarkets. ........................ 47

G.  The economic evidence confirms that Whole Foods and WO compete against all supermarkets. ...................................................... 48

1.   Dr. Scheffman's critical loss analysis confirms that the relevant market includes supermarkets. .......................................... 50

2.   Dr. Scheffman's entry analysis confirms that the relevant market includes supermarkets. ...................................................... 54

3.   Dr. Murphy's conclusions on the relevant product market are not persuasive because he does not control for competitor behavior responsive to and independent of Whole Foods entry. ............. 56

H.  The FTC's reliance on transfer rates in Project Goldmine for proof of product markets is misplaced. Project Goldmine denies, rather than supports, the existence of a market composed of only premium natural and organics supermarkets. ............................................. 57

I.  The FTC has failed to properly define the "premium natural and organic supermarket" product market. ............................................ 58

J.  Dr. Stanton's Qualifications ................................................. 58

K.  Response to Misleading Statements by Michael Bloom Regarding Dr. Stanton During his Closing ................................................... 59

L.  The Cross-Sectional Analysis of Whole Foods' Margins in WF-WF "Markets" vs. WF-WO "Markets" Does Not Yield a Meaningful Result ........... 60

M.  Exit Events ................................................................... 61

III.  THE GOVERNMENT HAS FAILED TO PROPERLY DEFINE ANY RELEVANT GEOGRAPHIC MARKETS ........................................... 62

A.  The FTC's shifting positions (at least six different positions) undermines its credibility about the geographic markets alleged. .................... 62

B.  The FTC has failed to properly define geographic market. ................... 63

1.   Whole Foods measures a new store's potential reach a number of different ways. .............................................................. 64

2.    Projections of sales of a new store, and where those sales come from, do not conform neatly to a circle. ................................................. 65

    a.    Local factors matter in determining geographic contours of competition. .............................................................................. 65

    b.    Draw areas vary. ...................................................................... 65

    c.    Draw areas reflect current market conditions, not what customers would do in the event of a price increase. ................... 65

IV.    THE MERGER WILL NOT HARM COMPETITION ........................................... 66

A.    The FTC's proposed market definition implies that monopoly pricing already plagues the country. ...................................................................... 66

B.    There is no evidence that the number of premium natural or organic supermarkets in a particular area affects market pricing. ....................... 67

    1.    Dr. Scheffman's cross-sectional pricing analysis and the testimony of supermarket operators confirms that Whole Foods and Wild Oats do not price in response to one another. ......................................... 67

    2.    Whole Foods' inability to raise prices in Ft. Collins, CO after Wild Oats exited substantiates the existence of considerable competition from other sources. ................................................................ 71

C.    Wild Oats is not a unique constraint on Whole Foods. Wild Oats' prices ████████████████ Whole Foods' prices. ............................... 71

D.    Other Supermarkets will continue to constrain Whole Foods post-merger. ........ 75

    1.    Economic evidence demonstrates that Whole Foods is constrained by other supermarkets. ........................................................ 75

    2.    Other supermarkets have advantages over Whole Foods in size, scope, and distribution, which will continue to exert pressure on Whole Foods ..................................................................... 75

    3.    Whole Foods and Wild Oats face more intense competition than at any other time. ..................................................................... 76

E.    Other food retailers will continue to take sales from Whole Foods and Wild Oats. .............................................................................................. 76

    1.    ████████ offers price and non-price competition, including an eclectic product mix and high quality products. ........................ 76

    2.    Tesco, a new class of competitor, will redefine the sale of high-quality perishables. ................................................................ 78

    3.    Mass merchandisers like Costco have focused on selling high-velocity natural and organic foods, which is attracting Whole Foods consumers. .............................................................................. 79

F.    ████████████████ ........................................................... 80

    1.    ████████████████████ ............................. 82

    2.    ████████████████████. ............................ 83

    3.    ████████████████ ........................................... 84

    4.    ██████████ ...................................................... 85

    5.    Its new prototype store in Boulder, CO ████████████ ...................................................... 86

    6.    ████████████████████. .......................... 88

G.  Whole Foods invests in store improvements and renovations. ............................ 90
  1.  It has a comprehensive program to provide capital to stores. ................. 92
  2.  It invests in store improvements in response to all competitors,
      including Safeway, Trader Joe's and Ralph's Fresh Fare.
      There is no evidence that investments depend on the presence
      of Wild Oats. ................................................................................ 92
  3.  The FTC has no basis to conclude that non-price competition
      will be reduced by the merger. .................................................... 93
H.  The merger will not harm competition in any alleged geographic area. ............. 93
  1.  Albuquerque, NM ..................................................................... 93
  2.  Boston, MA ............................................................................... 96
  3.  Boulder, CO .............................................................................. 99
  4.  Cleveland, OH ......................................................................... 104
  5.  Denver, CO .............................................................................. 106
  6.  Evanston and Hinsdale, IL ....................................................... 109
  7.  Henderson and Las Vegas, NV ................................................. 111
  8.  Kansas City – Overland Park, KS ............................................. 114
  9.  Los Angeles, CA and Pasadena, CA ......................................... 116
  10.  Louisville, KY ........................................................................ 121
  11.  Omaha, NE ............................................................................. 126
  12.  Portland, ME .......................................................................... 128
  13.  Portland, OR .......................................................................... 131
  14.  St. Louis, MO ......................................................................... 135
  15.  West Hartford, CT ................................................................. 137
  16.  Fairfield County, CT (potential competition) ........................... 140
  17.  Miami Beach, FL (potential competition) ................................ 142
  18.  Naples, FL (potential competition) .......................................... 143
  19.  Nashville, TN (potential competition) ..................................... 144
  20.  Palo Alto, CA (potential competition) ..................................... 147
  21.  Reno, NV (potential competition) ............................................ 149
  22.  Salt Lake City, UT (potential competition) .............................. 150
I.  Competitive Effects in Overlap Markets Where the Wild Oats Store May
    be Closed    ........................................................................................ 151
J.  Analyses of the effect of Whole Foods Entry on Wild Oats' Margins, Net
    Sales and Prices are Neither Reliable nor Relevant ..................................... 154
  1.  Margins are not prices ............................................................. 154
  2.  Failure to Control for Competitor Behavior Responsive to and
      Independent of Whole Foods Entry. .......................................... 155
K.  Analyses of the effect of Whole Foods' Entry on Wild Oats' Margins, Net
    Sales and Prices is not Particularly Probative of the effect of Wild Oats'
    Exit on the Prices Whole Foods Charges in the Future ................................. 157
L.  Analyses of the effect of Other Competitors' Entry on Whole Foods'
    Margins, Net Sales and Prices are Not Relevant .......................................... 160
M.  There is no evidentiary basis for the FTC's "better buyer" claim. ................. 160
N.  Third parties believe this merger will either have no negative impact on
    competition or will actually *increase* competition among supermarkets. .......... 161

O.  Statements of John Mackey, by themselves, cannot demonstrate likely competitive harm.  The statements of CEO John Mackey describe his feelings, his predictions, or his efforts to influence public opinion, not objective market facts. ................................................................... 164

    1.  The statements of Mackey are not all one-sided, as the FTC suggests.  The record is replete with evidence that Mackey was preparing the company for battle in the new competitive environment. .................................................................. 164

        a.  The statements of Mackey are not all one-sided, as the FTC suggests.  The record is replete with evidence that Mackey was preparing the company for battle in the new competitive environment. .......................................... 164

    2.  Mackey did not project a price increase post-merger. ......................... 167
    3.  Mackey did project improvement of Wild Oats stores. ........................ 167
    4.  Even crediting the FTC's views, the competitive effects of the merger can be effectively assessed only on the basis of evidence of market dynamics, not on the basis of hopes expressed by corporate officials. ............................................................................ 168

P.  Whole Foods has not made final decisions on the closing of Wild Oats' stores because it has not had access to store-level financial data. ..................... 168

Q.  The purchase price does not reflect a premium to eliminate Wild Oats as a competitor ....................................................................................... 170

R.  The FTC's alleged non-price competitive effect is nonsensical:  if the merged firm permits quality to decline, it will no longer be differentiated in any way from conventional supermarkets. .............................................. 171

S.  The testimony of Perry Odak is unreliable and biased. ........................... 172

    1.  Odak's testimony reveals his lack of experience and knowledge of the supermarket industry. ................................................................ 172
    2.  This lack of experience and knowledge led to Wild Oats' decision not to renew his contract. ........................................................... 173
    3.  Odak is embittered toward Wild Oats and its current managements, which has made him a biased witness. ........................................ 174

V.  SUPERMARKET REPOSITIONING AND ENTRY WILL CONTINUE TO EXERT ADDITIONAL COMPETITIVE PRESSURE ON THE COMBINED FIRM ................................................................................................. 174

A.  Repositioning by supermarket and other retailers is ongoing. ..................... 174

    1.  Delhaize America ............................................................................ 176
        a. ....... ████████████████████████████████ ..................... 179
        b. ....... ████████████████████████████████
                 ████████████ ..................................................... 182
    2.  Safeway ........................................................................................ 184
    3.  Publix .......................................................................................... 189
    4.  Kroger 191
    5.  SuperValu ..................................................................................... 192
    6.  Wegmans ...................................................................................... 194

| | 7. | Giant Eagle | 195 |
| | 8. | Wal-Mart. | 196 |
| | 9. | Target (SuperTarget). | 198 |
| | 10. | Other supermarkets | 198 |
| B. | | The trends in supermarket and retail repositioning will continue | 201 |

VI.    THE TRANSACTION WILL MAKE WHOLE FOODS A MORE EFFICIENT SUPERMARKET, WHICH WILL LOWER ITS COSTS AND ENABLE IT TO OFFER LOWER PRICES AND ENHANCED SERVICE ........................ 202

| A. | | Whole Foods has improved the prices, quality, and performance of the stores it has purchased previously | 202 |
| | 1. | Wellspring Grocery. | 203 |
| | 2. | Bread & Circus. | 203 |
| | 3. | Mrs. Gooch's. | 204 |
| | 4. | Fresh Fields. | 204 |
| | 5. | Bread of Life. | 205 |
| | 6. | Nature's Heartland. | 205 |
| | 7. | Food for Thought. | 205 |
| | 8. | Harry's. | 205 |
| B. | | Whole Foods has in the past transformed underperforming Wild Oats stores into productive supermarkets | 206 |
| C. | | Wild Oats is ▮▮▮▮▮▮▮ current and future competitive position must be discounted. | 206 |
| | 1. | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 206 |
| | 2. | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 207 |
| D. | | Whole Foods will improve the performance of Wild Oats stores. | 209 |
| E. | | The acquisition will enable Whole Foods to lower prices and expand output | 210 |
| F. | | The acquisition will allow Whole Foods to compete better with larger supermarkets | 212 |

VII.    THE BALANCE OF THE EQUITIES FAVORS DENIAL OF THE PRELIMINARY INJUNCTION ........................ 212

VIII.    CONCLUSIONS OF LAW ........................ 213

| A. | | The FTC has not proven a "likelihood of ultimate success" on the merits that the effect of the proposed merger "may be substantially to lessen competition." 15 U.S.C. §§ 18, 53(b). | 213 |
| | a. | The FTC failed to allege or prove what products are at issue. | 216 |
| | b. | In pursuing this case, the FTC has ignored its past enforcement practices and its Horizontal Merger Guidelines. | 217 |

c.    The alleged product market seems to have been constructed for this case alone, because it does not reflect the reality of everyday competition. ................................... 218

4.    The FTC's two potential competition claims are, respectively, legally insupportable and unproved. ........................................ 229

a.    The Clayton Act does not prohibit a merger because it fails to enhance competition ............................................ 229

b.    As to the geographic markets in which it alleges harm to potential competition, the FTC fails to establish the initial element of a potential competition claim. ................................... 229

5.    Attention to purported intent evidence, including the statements of John Mackey, cannot distract from analysis of relevant marketplace conduct (*i.e.*, everyday competition), which the Court has determined is the relevant inquiry. ................................... 230

a.    The statements of John Mackey have been misinterpreted and misused. ........................................................ 230

b.    The testimony of Perry Odak is unreliable and biased. .............. 231

B.    The public interest and the balance of the equities do not favor issuance of an injunction  ........................................................ 231

IX.    CONCLUSION ........................................................................... 1

**TABLE OF AUTHORITIES**

## Cases

*A. A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.,* 881 F.2d 1396, 1402 (7th Cir. 1989) .................................................................................................................. 183

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1973 n.13 (2007) .......................... 183

*Brown Shoe v. U.S.,* 370 U.S. at 325 ................................................................ 174, 175

*FTC v. H.J. Heinz Co.,* 246 F.3d 708 (D.C. Cir. 2001) .................................... 173

*FTC v. Arch Coal, Inc.* 329 F. Supp. 109, 116 (D.D.C. 2004) ............................ passim

*FTC v. Elders Grain, Inc.,* 868 F.2d 901, 904 (7th Cir. 1989) ................................ 185

*FTC v. Exxon Corp.,* 636 F.2d 1336, 1343 (D.C.Cir. 1980) ............................ 184

*FTC v. Foster, Memorandum Op.* ¶ 181, No. CIV-07-352 JB/ACT (D.N.M. May 29, 2007 (appeal pending) (*"Western Refining"*) ....................................... 175

*FTC v. Freeman Hospital,* 69 F.3d 260, 263 (8th Cir. 1995) ....................... 178

*FTC v. Great Lakes Chemical Corp.,* 528 F. Supp. 84, 98 (N.D. Ill. 1981) ............. 184

*FTC v. H.J. Heinz* 10, 246 F.3d 708 (D.C. Cir. 2001) ....................................... 173

*FTC v. Libbey, Inc.,* 211 F. Supp. 2d 34, 45 (D.D.C. 2002) ........................ 179

*FTC v. Nat'l Tea,* 603 F.2d 694, 697 (8th Cir. 1979) .................................. 185

*FTC v. Occidental Petroleum Corp.,* 1986-1 Trade Cas. (CCH) ¶ 67,071 at 62,516 (D.D.C. 1986) ...................................................................... 184, 185

*FTC v. Staples, Inc.,* 970 D. Supp. 1066, 1072 (D.D.C. 1997) .................. 174, 179, 180

*FTC v. Swedish Match,* 131 F. Supp. 2d . 151, 172 (D.D.C. 2000) ................... 185

*FTC v. Tenet Health Corp.,* 186 F.3d 1045, 1052 (8th Cir. 1999) ............... 177

*FTC v. Weyerhaeuser Co.,* 665 F.2d 1072, 1082 (D.C. Cir. 1981) ............ 184, 185

*Morgan v. Ponder,* 893 F.2d 1355, 1359 (8th Cir. 1989) ......................... 183

*United States v. Baker-Hughes Inc.*, 908 F.2d 981, 982-83 (D.C. Cir. 1990) ........... 173, 174, 175

*United States v. Central State Bank*, 817 F.2d 22, 23 (6th Cir. 1987) ....................................... 175

*United States v. Connecticut National Bank*, 418 U.S. 656 (1974) ............................................. 178

*United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 593 (1957) ............................ 174

*United States v. General Dynamics Corp.*, 415 U.S. 486 (1974) ................................................. 180

*United States v. Gillette Co.*, 828 F. Supp. 78, 83 (D.D.C. 1993) .............................................. 176

*United States v. International Harvester Co.*, 564 F.2d 769, 775-65 (7th Cir. 1977) .............. 181

*United States v. Long Island Jewish Medical Center*, 983 F. Supp. 121, 138

    (E.D.N.Y. 1997) .................................................................................................. 175, 181

*United States v. Marine Bancorporation*, 418 U.S. 602, 622-23 (1974) ........................... 173, 182

*United States v. Oracle Corp.*, 331 F. Supp. 2d 1098 (N.D. Cal 2004) ............................ 175, 176

*United States v. Philadelphia National Bank*, 374 U.S. 321 (1963) ............................................ 173

*United States v. SunGard Data Sys.*, 172 F. Supp. 2d 172, 191-92 (2001) ................................ 176

## Statutes

§ 7 of the Clayton Act .......................................................................................................... passim

15 U.S.C § 18 ................................................................................................................................ 171

15 U.S.C. § 18 ............................................................................................................................... 174

15 U.S.C. § 53(b) ................................................................................................................... 164, 176

15 U.S.C. §§ 15, 53(b) ................................................................................................................. 164

Hart-Scott-Rodino Antitrust Improvements Act of 1976 ................................................................ 3

**Other Authorities**

G. Manne & W. Williamson, *Hot Docs and Cold Economics*, 47 Ariz. L. Rev. 609,

646 (2005) ............................................................................................................ 176

Horizontal Merger Guidelines § 1.0 (1992) ...................................................... 167

P. Areeda & H. Hovenkamp Antitrust Law § 1506 (2d d3d. 2003) ................... 175

## INTRODUCTION

Whole Foods Market, Inc. ("Whole Foods") and Wild Oats Markets, Inc. ("Wild Oats") respectfully submit that the following joint proposed findings of fact and conclusions of law are fully supported by the evidence in the record. The clear weight of the evidence provides a clear basis for denying the Federal Trade Commission's ("FTC's") motion for a preliminary injunction.

In short, the evidence overwhelmingly shows that competition among supermarkets and other retailers has never been more intense across the entire country. Whole Foods and Wild Oats are two of many supermarkets fighting for the business of consumers in every area in which they operate. Combined, the two companies will be able to better compete and will deliver to customers lower prices and improved quality.

In this Section 13(b) proceeding, the FTC failed to carry its burden of "showing that, weighing the equities and considering the Commission's likelihood of ultimate success," a preliminary injunction "would be in the public interest." To the contrary, the evidence establishes that: (1) Wild Oats imposes no meaningful constraint on Whole Foods; (2) the acquisition of Wild Oats by Whole Foods will not alter Whole Foods prices; (3) Whole Foods and Wild Oats compete with other supermarkets and other retailers; (4) the proposed transaction will not harm competition; (3) substantial equities favor permitting the merger to proceed; and (5) a preliminary injunction would be adverse to the public interest.

I.     **BACKGROUND**

A.     **Whole Foods.**

1.     Whole Foods first opened its doors in 1980. At that time, all of Whole Foods' operations consisted of a single 10,000-square-foot health foods store in Austin, Texas. Its current Austin store is approximately 80,000 square feet and, like Whole Foods' 193 other stores in the United States, is a full-service supermarket with a broad array of conventional, natural, organic, gourmet, prepared and specialty product offerings. Sud Decl. ¶¶ 14, 16, 17.

2.     Whole Foods currently employs over 39,000 people (referred to by the Company as "team members") across its 194 U.S. stores. DX 457 (Whole Foods 2006 10-K). Its operations in the United States are divided into eleven regions. Each region is headed by a regional president. Each regional president reports to one of the two Whole Foods' Co-Presidents and Chief Operating Officers.

3.     Due to Whole Foods' decentralized corporate structure, most competitive decisions – and nearly all decisions with respect to pricing – are made at the regional level under the supervision of Whole Foods' regional presidents. Sud Decl. ¶¶ 7-9; Allshouse Decl. ¶ 5; Besancon Decl. ¶ 2; Bradley Decl. ¶¶ 1-3; Lannon Decl. ¶ 4; Megahan ¶ 23; Meyer Decl. ¶ 3; Paradise Decl. ¶ 4; JX 41 at 51-52 (Foster I.H.).

4.     Each Whole Foods store in the U.S. is headed by a store team leader and is operated by between 40 to 650 team members comprising up to 13 teams per store. Each team is led by a team leader and is responsible for a different product category or aspect of store operations such as customer service, prepared foods, grocery, meat, produce, and others. Much as with its regions, each store promotes a decentralized approach that allows teams to make decisions on behalf of the store. DX 457; Bradley Decl. ¶ 3.

5.      Whole Foods has evolved from a health food store into a supermarket. Whole Foods' new stores typically range in size between 50,000 and 60,00 square feet. DX 457. Its 92 stores in development average 54,500 square feet. Sud Decl. ¶ 18. Whole Foods currently operates four stores in excess of 65,000 square feet and has an additional 17 stores of that size in development. DX 457. The Company is building larger stores so that it can sell products to a broader consumer base. *Id.*, Sud Decl. ¶ 17.

6.      At the same time, Whole Foods has adjusted its product mix to attract customers that historically shopped at other supermarkets and other food retailers. Whole Foods' stores now carry a wide variety of conventional products, everyday value private label items, and premium and gourmet offerings. Many of these items are not organic; including more than half of the produce Whole Foods sells and a much larger portion of its prepared foods, bakery, and specialty items. Sud Decl. ¶¶ 17, 25.

**B.      Wild Oats**

7.      Wild Oats Markets, Inc. ("Wild Oats"), is headquartered in Boulder, Colorado and operates 115 stores in the U.S., under three different banners: Wild Oats Marketplace[1], Henry's Farmers Market, and Sun Harvest. DX 494 at 3 (2006 Wild Oats 10-K).

8.      Wild Oats offers a range of natural and organic foods, household products, vitamins and supplements, and body care products. *Id.* Its stores (for the Wild Oats banner only) average 23, 700 square feet. Mays Decl. ¶ 22. Thirty-five of the 70 Wild Oats banner stores today are less than 25,000 square feet (Wild Oats Response to Spec. 2 of FTC's Second Request, DX 807), which Dr. Murphy says "are not competitively significant." Murphy Expert Report ¶ 26.

---

[1]This includes a single store in Boulder, CO that operates under the name "*Id.*eal Market," but is reported under the Wild Oats banner.

C.    **The Whole Foods-Wild Oats transaction**

9.    On February 21, 2007 Whole Foods and Wild Oats executed an Agreement and

Plan of Merger ("Agreement"), pursuant to which Whole Foods would commence a tender offer

for all Wild Oats stock at a price of $18.50 per share. At this share price, the total price of the

transaction would be approximately $565 million. The parties have agreed to close the

transaction contemplated by the Agreement on or before August 31, 2007. Sud Decl. ¶ 45.

Whole Foods filed a notice of this planned transaction with the Federal Trade Commission on

February 26, 2007, pursuant to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as

amended.

D.    **The FTC's investigation and this lawsuit**

10.    On March 13, 2007, Whole Foods and Wild Oats Markets, Inc. received a Second

Request for additional information from the FTC in connection with the proposed tender offer.

The Second Request contained twenty-six specifications, many with multiple sub-parts,

requesting detailed information and data relating to, *inter alia*, the parties' individual stores,

products, pricing, and business plans. Pursuant to the Second Request, Whole Foods produced

approximately 2.5 million pages of documents and approximately 2300 MB of data and Wild

Oats produced over 14 million pages of documents and over 100 MB of data. *See* Status Conf.

Tr. at 3 (June 11, 2007). During the course of this investigation, the FTC also conducted

investigational hearings of five employees of Whole Foods, five employees of Wild oats, the

chief executive officer of Trader Joe's, and the former chief executive officer of Wild Oats.

During its investigation, the FTC also sent civil investigative demands to dozens of third parties,

including Safeway, Kroger, SuperValu, Delhaize America, and Trader Joe's.

11.     The FTC announced its plans to challenge the proposed transaction on June 5, 2007. On June 6, 2007, the FTC filed a Complaint in Federal District Court in the District of Columbia seeking a temporary restraining order and preliminary injunction to halt the transaction pending an administrative trial on the merits. With the consent of the parties, a temporary restraining order was entered to delay completion of the transaction until the court ruled on the motion for a preliminary injunction.

12.     During the prosecution of this lawsuit, the FTC served the parties with three separate requests for production of documents and data. In response, Whole Foods produced thousands more documents and over 68 GB of additional data, mostly relating to pricing. Whole Foods and Wild Oats also produced fourteen witnesses for deposition, including five who had been previously questioned by the FTC at investigational hearings. The FTC also requested vast amounts of economic data from third parties and deposed representatives of industry competitors such as Delhaize America, Safeway, and Trader Joe's. The FTC furthermore deposed and reviewed the reports of each of Defendant's three expert witnesses and had the opportunity to work with its own expert – Dr. Murphy – who prepared three separate reports in support of the FTC's case. In all, the FTC has deposed over two dozen individuals during the course of this litigation. Status Conf. Tr. at 22 (June 11, 2007).

## II.     THE RELEVANT PRODUCT MARKET IS BROADER THAN PREMIUM NATURAL AND ORGANIC SUPERMARKETS

### A.     Whole Foods and Wild Oats are supermarkets.

13.     The complaint alleges that Whole Foods and Wild Oats are supermarkets. Complaint ¶ 2, 4; Stanton Report ¶ 3, 17-18, 80.

14.     Whole Foods and Wild Oats each target a large base of supermarket shoppers in competition with other supermarkets. Stanton Report ¶¶ 3, 15, 18, 25, 80; Sud Decl. ¶ 14; JX 28

4

at 31 (Mackey I.H.); ███████████████████████████████████

██████████████████; Mays Decl. ¶ 12; Martin Decl. ¶¶ 6-14, 16-17; DX 626 at 150

(Coblentz I.H.); JX 17 at 37-43 (Zeeb Dep.).

     15.    A "supermarket" is a well-defined and widely accepted term within the food

retailing industry – it is a retail food store that carries a full-line and wide variety of food and

non-food grocery items, and typically maintains the selection and depth of products to provide

one-stop shopping for a customer's food and grocery needs.  Stanton Report ¶ 15.

     16.    A typical Whole Foods store carries all the traditional categories of products:

fresh produce (both conventional and organic), frozen foods (including ice cream from Ben &

Jerry's, Breyer's and Edy's), shelf-stable food and beverage products (including popular brands

such as Goya, Del Monte green beans, McIlhenny's Tabasco Sauce and French's Yellow

Mustard), bread and bakery items, dairy, refrigerated foods (including Kozy Shack puddings and

juices from Tropicana and Dole), fresh and prepared meats and poultry, fresh seafood, deli,

prepared foods, health and beauty aids, cleaning supplies, paper products and other general

merchandise, including pet products, kitchen tools, and magazines.  Whole Foods accepts

coupons, sells gift cards and offers services such as prepared coffee, flowers and gift baskets.

Stanton Report ¶ 18.

     17.    All supermarkets, including Whole Foods and Wild Oats, possess these similar

attributes, and this is what makes them relevant competitors for the same base of supermarket

consumers.  Stanton Report ¶ 16; ████████████████████████████████

████████████████████████████

18.    Consumers can obtain all of their requirements at Whole Foods or Wild Oats, just as they can at other supermarkets, whether they are stocking up for a week or picking up only a few items.  Stanton Report ¶¶ 15, 23, 80; *see also* JX 41 at 130-31 (Foster I.H.).

**B.    All supermarkets, including Whole Foods and Wild Oats, seek to differentiate themselves from competitors.**

1.    Supermarkets differentiate themselves on a number of different attributes, such as, price selection, services, perishable departments, promotions, quality, private label offerings, and others.

19.    Given that they all offer the same essential product categories and a wide-assortment of products within those categories, all supermarket operators, including Whole Foods and Wild Oats, attempt to differentiate themselves in order to give customers a reason to shop at its stores instead of the supermarkets operated by its competitors.  Stanton Report ¶¶ 3, 21-26; ███████████████; JX 28 at 34 (Mackey I.H.); Martin Decl. ¶¶ 4-5.

20.    Differentiation is the primary method by which supermarkets compete with each other, and in many ways has become the most important element of competition.  Differentiation "is now the primary method a supermarket operator uses to attract customers away from its supermarket competitors; just as location and low prices [were] the primary method of competition several decades ago."  Stanton Report ¶ 26; *see also* ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████; Boardman Decl. ¶ 10; ███████████████████████████████████████████

███████████████████████.

21.    Every supermarket seeks to seeks to differentiate itself in some ways from its competitors.  Whole Foods' CEO, John Mackey, testified "Kroger doesn't have every product

6

that Safeway sells and vice versa. There will always be some differentiation between stores in the marketplace. Part of that differentiation will be on product." JX 28 at 34 (Mackey I.H.).

22.     In today's world of differentiation, most successful supermarkets have developed one or two benefits that distinguish them from the "average" supermarket and give customers a reason for shopping their stores. Stanton Report ¶ 23. Differentiating factors can include, for example, low prices, ethnic appeal, quality prepared foods, expanded variety within a specific category or department, customer service, or perishable departments such as meats or produce. *Id.; see also* ██████████████████████████████████████ ████.

23.     Supermarket differentiation is a dynamic process and changes as the consumer's desires for various benefits change. As consumer demands change, supermarket operators will continue to change with them. Stanton Report ¶ 28; ████████████████ Supermarkets modify, re-define and re-format themselves all the time as they evolve with both the trends in consumer demand and the trends in competition. Stanton Report ¶ 28; ████████████ ██████████████████████████████████████████████.

2.     Growth in consumer demand for natural and organic products has changed the nature of supermarket competitions.

24.     Consumer demand for natural and organic products has sky-rocketed over the past several years. JX 2 at 56-57 (Robb Dep.); ████████████████████ ██████████████████████████; Stanton Report ¶¶ 31, 66-71; Scheffman Report, Appendix E ¶ 4; DX 573.

25.     Demand for the following specific types of organic products has increased dramatically over the past five years: organic milk (20-30% annually); soymilk (10% annually); organic bread and grain products (13-21% annually); organic fruits and vegetables (10-20%

annually); organic meat, poultry and fish (32-120% annually); organic sauces and condiments (16-24% annually); organic packaged and prepared foods (11-20% annually); organic snack foods and (15-30% annually). DX 591 (Organic Trade Association's 2006 Manufacturers' Survey).

26.     The explosive growth in demand for natural and organic products is expected to continue. DX 591; Stanton Report ¶ 31; JX 21 at 72 (consumer demand for natural and organic products is not a fad and "is here to stay"); ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████.

27.     Now that natural and organic products have entered the mainstream, supermarkets have responded. Supermarket chains throughout the country have been expanding and growing their natural and organic offerings, and most are steadily increasing their offerings of these products. ████████████████████████; Mays Decl. ¶ 13; Stanton Report ¶¶ 31-34; Scheffman Report, Appendix E ¶ 8. Most supermarkets have even added full lines of private-label natural and organic products. Stanton Report ¶¶ 33, 35 (Delhaize), 39 (Safeway), 44 (Wegman's), 48 (Supervalu), 56 (Publix), 62 (Bashas'); DX at 37-40 (Wal-Mart, Costco, and Tesco), ████████████; DX 593 (Safeway 2006 annual report); JX 41 at 118-19 (Foster I.H.); DX 25 (Wal-Mart is working with organic suppliers and competing aggressively on prices); DX 36 (Wal-Mart calling out a nationwide organic program); DX 37; DX 354; ████

████████████████████████████████████████

████████████████████████████████████████

28.     Manufacturers of natural and organic products no longer rely on "natural food" stores for distribution of their products. While this may have been the case in prior years, the growth in consumer demand for these products has now made them part of the mainstream.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████; Mays Decl. ¶¶ 16-17, 19; Megahan Decl. ¶¶ 18-20; DX 7 (symposium for natural and organic companies inviting Costco and Safeway and join Whole Foods for panel presentations).

29.     ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

30.     Manufacturers have responded to the rapid growth in demand for natural and organic products by rapidly expanding their product offerings. This includes both "traditional" natural and organic companies such as WhiteWave and Hain Celestial, but also conventional and mainstream food companies. Stanton Report at ¶¶ 72-75.

31.     For instance, Kellogg sells organic cereals through its Kashi line, but has also added organic versions of its popular ready-to-eat cereals such as Rice Krispies, Corn Flakes and Raisin Bran.  Stanton Report ¶ 72.  Other mainstream manufacturers, such as General Mills, and PepsiCo have all expanded into natural and organic product lines.  Stanton Report ¶¶ 73-75.

> 3.     In response to consumer demand, other supermarkets have eroded the points of differentiation once enjoyed by Whole Foods and Wild Oats.

32.     In prior years, Whole Foods was able to use its differentiation strategy to achieve higher sales growth rates than the supermarket industry generally.  Stanton Report ¶ 29.  Not surprisingly, its supermarket competitors have paid attention to Whole Foods' success and to the changing consumer demands for fresh, natural and organic foods.  *Id.*  In response, these competitors have been refocusing their strategies and repositioning their formats to respond to the changes in consumer demands.  *Id.*; Robb Decl. ¶ 19; Gallo Decl. ¶ 20.

33.     Whole Foods faces "eroding product differentiation" as other supermarkets continue to stock many of the same products that Whole Foods offers.  DX 12  Whole Foods is in "a time of unprecedented competition" where it increasingly does not have "the advantage of offering a unique selection of products."  DX 1; *see also* Robb Decl. ¶ 24 ("Losing customers to our supermarket competitors hurts, especially now since they are doing things that used to set Whole Foods apart."); Sud Decl. ¶ 28; DX 253 (competitors mimicking Whole Foods in offering high quality natural and organic foods); DX 259 (competitors copying the offerings and atmosphere of Whole Foods); JX 28 at 122-23 (Mackey I.H.) ("Our basis of differentiation is eroding"); DX 362; DX 383 (other stores have closed the gap and product uniqueness, quality, selection, and presentation); DX 723 at 3 (Whole Foods' margins will be pressured "once the soccer moms stop shopping at Whole Foods so often now that the same or equivalent products are available at Safeway"); Stanton Report ¶¶ 3, 28-30, 79-83.

34.    Most of the major supermarket chains (regional and national) are becoming more competitive by improving perishable departments and offering an increased selection of natural and organic foods.  DX 1.  This combination has brought Whole Foods into a "new era of the natural foods revolution in which "we will all have to work harder and smarter to compete and differentiate."  DX 198; Robb Decl. at ¶ 18; JX 28 at 33 (Mackey I.H.) (Whole Foods' success has "caused all these supermarkets to try to want to steal Whole Foods' mojo."); Stanton Report ¶¶ 32-65 (the trend in supermarket retailing is toward expanded selections of fresh, quality perishables, expanded selections of natural and organic products, and improving the overall shopping experience); Scheffman Report, Appendix E ¶ 8 ("many large supermarkets are focusing on improving quality and freshness and expanding natural and organic products in response to changing consumer demands."); DX 720; DX 721.

35.    Many of supermarket competitors to Whole Foods and Wild Oats are larger, better capitalized companies.  Sud Decl. ¶ 28.  These companies have invested a significant amount of resources into developing and opening new stores.  Many of these stores mimic Whole Foods' store designs and product offering.  *Id.*; *see also, infra*, ¶¶ 23, 24, 26-30.

36.    As a result of increased competition and decreased differentiation from other supermarkets, Whole Foods has tried to expand its customer bases to appeal to a wider range of customers.  Sud Decl. ¶ 17.  Whole Foods has expanded product offerings to include a variety of items in each product category – from conventional products to everyday value private label items to organic, premium, or gourmet items.  *Id.*; Stanton Report ¶¶ 23, 80; ██████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

37.    Channel blurring is becoming especially noticeable as the natural foods class of trade is rapidly losing insulation from competition." DX 8 at 4, *see also* DX 40 at 14; DX 705 at 3. Access to "the same brands at cheaper prices" at other retailers are causing Whole Foods customers to "split[] their purchases." DX 8 at 4.

38.    There are no impediments to a supermarket operator establishing distribution for natural and organic products or increasing the number or volume of stock keeping units ("SKUs") that it already carries.  Manufacturers have made it easy for supermarket firms to establish and grow distribution, either directly or through a distributor. █████████████████████████████

██████████████████████████

39.    Many supermarkets have modeled the look and feel of their stores, as well as many of their current competitive strategies, on Whole Foods.  Remodeled competitors' stores often include expanded produce and organic selection, pro-active customer service, in-store demonstrations and promotions, and attractive, high quality fixtures and product cases.  *See, e.g.*,

██████████████████████████████████████████████████████████

████████████████████████████; Paradise Decl. ¶¶ 21, 46-47, DX 49, DX 357, DX 368, DX 480 (discussing Safeway Lifestyle stores); DX 747 (discussing Publix Greenwise stores); DX 763 (Safeway); Bradley Decl. ¶ 25; JX 6 at 81 (Bradley Dep.); DX 225 at 21(Byerly's supermarket design based upon Whole Foods' flagship Austin store); DX 546 at 6; (Baker's Omaha store remodeled in response to Whole Foods' opening); Lannon Decl. ¶ 21; DX 504 (Shaw's president, stating that its newly remodeled store "sounds like a Whole Foods, looks like a Whole Foods, but it's a Shaw's").

40.    Overall, Whole Foods and Wild Oats are more like other supermarkets than they are different.  Mays Decl. ¶¶ 15-19.  They both carry the same categories of products and share

the same customers, distributors, and suppliers as other supermarkets. *Id.*; JX 33 at 97-103 (Coblenz I.H.).

        4.     As a result of the loss of differentiation, the attributes that the FTC identifies with Whole Foods and Wild Oats are emphasized and shared by other supermarkets.

41.     Supermarkets are increasing their selection of natural and organic foods, and "HEB, Wegmans, Publix, Safeway, Ahold, etc, are all figuring out ways to offer much nicer customer[] experiences than they did in the past." DX 1.  This is "a new era of competition" for Whole Foods. DX 19; DX 38; Gallo Decl. ¶ 19 Robb Decl. ¶ 18;  JX 2 at 224 (Robb Dep.); DX 721 at 12 ("This new business model moves supermarkets away from center aisle groceries to a fresher, more exciting, format that emphasizes high-quality perishables departments and prepared foods.").

42.     The percentage of Wild Oats' total sales in perishable items is about ▮▮▮▮▮.  Wild Oats defines "perishables" to include produce (including floral), meat, seafood, deli, bakery and food service, and excludes dairy and frozen items, which, although literally perishable, are considered "grocery" items.  Moreover, Wild Oats' percentage of perishables sales is ▮▮▮▮▮▮▮▮▮conventional supermarkets, which typically have perishables sales (using the same categories that Wild Oats uses) in the 25-35% range.  In fact, because most conventional supermarkets are much larger and have much higher sales volumes than even the largest Wild Oats stores, conventional retailers generally have higher absolute perishables sales than do Wild Oats.  Martin Decl. ¶ 23.

43.     Nearly every national supermarket chain carries a wide array of natural and organic products, and many have significantly expanded their offerings of prepared and specialty foods.  Sud Decl. ¶¶ 20, 22; Gallo Decl. ¶ 24; Stanton Report ¶¶ 32-65; DX 21; DX 49 (Safeway

Lifestyle); DX 54 (Shop Rite); DX 56 (Publix); DX 77 (Wegmans); DX 216 (Ahold); DX 237

(Whole Foods private label strategy); DX 269 (Publix).

44.     Most competing supermarket chains have launched their own private label store

brands of natural and organic products. These private labels allow other supermarkets to begin

competing very quickly with Whole Foods' both in terms of product offerings and price. Sud

Decl. ¶¶ 22, 26; DX 263 (Ahold); DX 269; DX 270 (Stop & Shop's private label advertised with

tagline "Organic can be affordable.").

45.     "[T]he days of waiting for new vendors and new products to come to [Whole

Foods] first are over. Costco and Safeway are changing that landscape forever." DX 7 at 1. As

a consequence, Whole Foods' ███████████ are declining as more and more other

supermarkets begin to carry the same types of natural and organic foods. DX 4 at 3. "[S]tronger

competition in the health food area from mainstream companies such as Kroger, Safeway and

Albertsons has taken a toll." DX 31; *see also* DX 254, DX 255 (noting increased supermarket

competition in traditional Whole Foods spaces); DX 262 (Whole Foods is not unique anymore

because its products are sold by other supermarkets).

**C.     Intense competition against other supermarkets is a daily reality for Whole
        Foods and Wild Oats.**

46.     Whole Foods now faces "unprecedented competition" from a significant number

of "newly improved supermarkets." DX 1; Gallo Decl. ¶ 19; Robb Decl. ¶¶ 6, 18; Sud Decl.

¶ 23; *see also* DX 384 ("very big" topic for meeting with Whole Foods Co-Presidents and

regional presidents will be the "new competition"); DX 40 (presentation entitled "What does it

take for us to win?"); DX 61 (lists of a number of Whole Foods' supermarket competitors in

different regions in the eastern United States); Meyer Decl. ¶ 36; DX20 at 2 ("███████████

████████████████████████████████████████████████████████████"

████████████ We cannot underestimate what is happening in the retail industry."); DX 209 ("more intense competition everywhere").

1.  Consumers who shop at Whole Foods and Wild Oats also shop at supermarkets for the same products.

a.  Many Whole Foods and Wild Oats customers shop regularly at other supermarkets and retailers.

47.  Whole Foods' customers typically shop at other supermarkets and retailers, given the restrictions Whole Foods places on what products its stores can carry. Whole Foods' customers are now buying even more products at other supermarkets and retailers, splitting their purchases, and looking for the best price on a variety of different grocery items that they might purchase at Whole Foods. Robb Decl. ¶ 21; Gallo Decl. ¶ 19; DX 8; Stanton Report ¶ 27; ████████ ████████████.

48.  The fact that Whole Foods' customers can buy an increasing variety of products at competing supermarkets is sometimes at Whole Foods referred to as the "pick-off factor." Bradley Decl. ¶ 9; JX 6 at 39 (Bradley Dep.).

49.  More than ████ of Whole Foods customers also shop at these other supermarkets and at grocers such as Trader Joe's. Boardman Decl. ¶ 5; *see* generally, Conway Report.

50.  A significant number of Whole Foods customers "cross-shopped" between Whole Foods and other supermarkets, such as Kroger, Safeway, Albertsons, Ahold, Publix, and H-E-B. DX 2 at 16. "



; *see also* DX 15 (frequent Whole Foods customers split purchases between Whole Foods and other stores such as Safeway, Costco, Wal-Mart, and Trader Joes); DX 727; DX 735 at 5.

51.     Cross shopping has become particularly prevalent as the different types of distribution channels for natural and organic goods have blurred. Over the last few years, Whole Foods' point of differentiation from other stores has eroded and consumers can purchase natural and organic foods from a number of different outlets. Robb Decl. ¶ 21; Gallo Decl. ¶ 19; DX 3; DX 8 at 4; DX 13 (Wal-Mart); DX 15 at 18 ("Organic Users and Specialty/Gourmet Users[are] shopping ore in mainstream [supermarkets], less in [Whole Foods]…"); DX 16 at 8; DX 24 (HEB); DX 25 (Wal-Mart); DX 31 (Safeway); DX 37 (Wal-Mart); DX 38 (Costco); DX 40 (All competitors); DX 370 (Costco, Trader Joe's, Safeway, Wal-Mart, and Food Lion all components of "New Era of Competition"); DX 384 (Wal-Mart); *see also* ███████████████

████████████████████████████████████████████████████████████████

███████

52.     Whole Foods' customers often shop in other stores as often as once a week. JX 10 at 66 – 67 (Meyer Dep.) ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████. *See also,* ███████████████████; Stanton Report ¶ 27; Allshouse Decl. ¶ 7.

53.     Research by other supermarket chains show that their customers are cross-shopping with Whole Foods. For instance, ███████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████



54.

55.     Market research demonstrates that shoppers at Whole Foods and Wild Oats shop frequently at other supermarkets and grocery retailers, and often do so more frequently than they shop at Whole Foods or Wild Oats.  Indeed, shoppers at Whole Foods and Wild Oats overwhelmingly spend more than ▇▇ of their total grocery shopping purchases at retailers other than Whole Foods and Wild Oats.  *See* Scheffman Report ¶¶ 131, 140, 148-49, 152, 161, 165-66; DX 568 (The Wild Oats' "core customer[s] only spend[] about ▇▇ of their dollars at Wild Oats."); DX 691 (NMI Organic Trends & Perspective Study); DX 694; DX 702 at 13-18 (most segments of Whole Foods shoppers spend less than ▇▇ of total grocery budget at Whole Foods).

56.     Market research indicates that a substantial percentage of shoppers at Whole Foods and Wild Oats purchase "healthy," organic and natural products at other supermarkets as well.  *See* Scheffman Report ¶¶ 131, 141, 150-51, 167-68; DX 568; DX 691; DX 694; DX 703.

57.     Market research demonstrates Whole Foods shoppers cross-shop for private label products with other supermarkets and grocery retailers.  Scheffman Report ¶¶ 171-72; DX 16 at 8 ("Multiple channel options and a myriad of reasons for purchasing have blurred the

17

marketplace."); DX 240 ("There are significant levels of cross shopping between WFM and [Trader Joe's]).

58.    Wild Oats' customers view Wild Oats as a "fill in" store and over ▇ of them do the majority of their food shopping at other stores.  DX 567 at 3; DX 568 at 6, 48-49 ("Even [Wild Oats'] core customer only spends about ▇ of their dollars at Wild Oats," whereas ▇ of their grocery dollars are spent in "traditional food stores" such as Kroger, Albertson's, and Safeway); DX 575, DX 576 (customer interviews); *see* JX 37 at 86 – 88 (Odak JH); JX 16 at 62 – 65 (Odak Dep.) (Wild Oats customers shop at other supermarkets and compare prices).

> b.    Consumers buy the same products at Whole Foods and at other supermarkets.

59.    Whole Foods faces declines in store sales growth as more and more conventional supermarkets begin to carry the same types of natural foods.  "After a total slump by the supermarket industry over the past 5 years, we are seeing a comeback by the survivors. Safeway, Giant Eagle, Giant, Stop & Shop, Harris Teeter, Food Lion, Publix are all opening lots of new stores and remodeling existing stores on the East Coast.  Every time they open a new store or remodel an existing one with better perishables and natural foods [Whole Foods] see[s] a hit."  DX 3 at 1.

60.    Whole Foods has recognized a need to be more price competitive as more and more conventional supermarkets begin to carry the same types of natural and organic foods. "The world has changed now – [Whole Foods has] real competition, other stores are selling [Whole Foods] products" and consequently, Whole Foods is "forced to be much, much sharper on price than we have ever had to be in our past."  DX 5 at 2.  "Any 'extra profit dollars' [we save]…are all going to be spent being more price competitive with Trader Joe's, Wegmans, Safeway, Wal-Mart, etc."  DX 11 at 1; *see also* Lannon Decl. ¶ 12; JX 8 at 48

(Lannon Dep.) (Whole Foods sells products like Ben & Jerry's ice cream, "just like every other supermarket we compete with"); Mays Decl. ¶ 16 (approximately ▮▮ of Wild Oats' top SKUs are available at conventional supermarkets); DX 748 (other supermarkets carrying brands that "Whole Foods has grown up with").

61.    The majority of natural and organic goods sold in the United States are sold by so-called "conventional" supermarkets.  Mays Decl. ¶ 19; PX 2072 at 96; *see also* Scheffman Report ¶ 131.

62.    The Hartman Group was retained by Wild Oats for some consumer research,



(PX02072).  JX 33 at 89-104 (Coblentz Dep.).

63.    The FTC discounts defendants' volumes of evidence of price competition with multitude other supermarkets yet it relies on a subset of the same type of ordinary course of price competition as evidence of "unique" competition between Whole Foods and Wild Oats.  8/1 Hearing Tr. at 46-47 (citing a single $5 discount, planned discounts and fliers in one market, and a one-time 20% off discount as evidence of systematic competition).  Competitive interacting between Whole Foods and Wild Oats is not unique to supermarket competition in any area where defendants have stores.

64.    Evidence of competition between Whole Foods and Wild Oats is dwarfed by the evidence showing that Whole Foods monitors, tracks, and responds to the actions of other supermarkets to retain sales.  *See e.g.,* DX 2 (AC Nielsen market research showing that

significant Whole Foods customers shop at other supermarkets across the United States); DX 1 (Gallo e-mail discussing cross-shopping and new competitive realities); *See supra* II.C.2.b.

65.    That Whole Foods no longer regularly price checks Wild Oats is not surprising since Wild Oats' prices ███████. *See infra* IV.C.

c.    The percentage of ███████ Whole Foods customers has ███████

66.    The consumer base for Whole Foods is increasingly diverse and fragmented. While a 1999 market research study segmented Whole Foods customers into various "lifestyle" groups, a similar 2007 study updated those customer groups "in light of the changing marketplace." The study concludes that "[t]he WFM shopper is *evolving* from the fringe consumer who was devoted to Whole Foods based on philosophies related to organic/[Lifestyles of Health and Community Sustainability]/community *to a larger and more diverse, 'conventional' consumer base (where WFM philosophies are not the main purchase drivers)*." DX 703 at 3 (February 2007 NMI market research report).

67.    Categories of "core" Whole Foods customers are ███████████████ ███████████████. In a study run for Whole Foods in early 2007, the data shows that Whole Foods share of specialty/gourmet customers have ███████████ in 2005 ███████ in 2006, whereas for traditional grocery stores that percentage has risen from 80% in 2005 to 94% in 2006. DX 15 at 14. Wild Oats estimates that so-called "core" customers comprise only approximately ███ of its total customers. Mays Decl. ¶ 18.

68.    Indeed, market research shows that there is no definable "core customer" for Whole Foods and Wild Oats. Whole Foods and Wild Oats customers cannot be characterized by a unique set of descriptors. Scheffman Report ¶ 170; DX 16; DX 240 at 9 (██████████ ████████████████████████████████████████████████████████

██████; DX 703 (study identifying "█ unique customer segments whose differing attitudes and opinions impact their diverse shopping and buying behaviors"); DX 713 at 12 (Whole Foods draws customers from a variety of demographics).

69.     The majority of Whole Foods shoppers do not place a heavy emphasis on natural and organic foods and beverages. In a 2003 study, less than ██████ of Whole Foods shoppers indicated that the consumption or use of organic and natural foods and beverages were extremely important to a "healthy, balanced lifestyle." JX 21 at 40. Today, only ██████ of Whole Foods' shoppers are strong, organically focused consumers. *Id.* at 12, 15 (describing the characteristics of the "Corganics" category).

        2.     Whole Foods and Wild Oats compete with other supermarkets.

70.     Whole Foods views all supermarkets and food retailers as its competition. "Every grocery is a competitor of [Whole Foods], so any Safeway, Kroger, Albertsons, local regional player, Wegman's, Molly Stone's, anyone is a competitor." JX 41 at 101 (Foster I.H.); *see also* JX 41 at 182 (Foster I.H.).

71.     Wild Oats views its competitors to "include other independent and multi-unit natural foods supermarkets, smaller traditional natural foods stores, conventional supermarkets and specialty grocery stores." DX 494 at 6, 8 (2006 Wild Oats 10-K); *see also* Martin Decl. ¶¶ 7-8, 15-17.

        a.     Whole Foods has engaged in a number of strategies to attract a broader group of consumers, including larger stores, expanded service and food venues.

72.     One of Whole Foods' priorities is to build and operate large format stores that attract a broad customer base. DX 457 (Whole Foods 2006 10-K). At these large format stores, Whole Foods seeks to provide a large selection of products, including freshly prepared foods,

food venues and other features to attract a variety of different types of customers.  Sud Decl.

¶ 17; DX 17 (█████████████████████████); DX 373 (██████████████████

███████████████████████████); DX 508 (███████████████████

████████████████); JX 28 (Paradise I.H.) at 188 █████████████████

███████████████████); DX 209 (Whole Foods' plans to upgrade

██████████████████████████████████████ DX 218

(Discussing many of the features of Whole Foods' Fair Lakes [Fairfax, VA] store.).

73.     In response to increasing pressure from competing supermarkets, Whole Foods

has invested in stores to expand offerings and to attract a wider range of customers.  Robb Decl.

¶ 34; DX 236 (notes of a Whole Foods personnel, including Robb, "walk through" of the

██████████████████ to develop plans to counter the ██████ store's featured attributes);

DX 759; DX 763;  see also DX 209 (Whole Foods is improving its ███████████ store design

in response to ██████); Meyer Decl. ¶ 17; DX 196 at 2 (Kenney email August 2003,

explaining that a "perceptual design group" has been engaged to assist with the ████████ store

remodel); Lannon Decl. ¶ 18: DX 503 (improving Kosher foods selection in ████████);

Lannon Decl. ¶ 20; JX 8 at 182-84 (Lannon Dep.) (████████████████████████

████ store to better compete with ███████████████). DX 59 at 2-3 (strategies to

compete with ████████); Meyer Decl. ¶ 14; Meyer Decl. ¶ 17,  DX 218 at 1-3 (███████████

store renovations in response to █████████); Meyer Decl. ¶ 34; JX 10 at 69-70, 72 (Meyer

Dep.); DX 91 at 1 (Whole Foods store in ███████████ responded to hit in sales caused by

opening of two ███████████ stores by relocating its store); Meyer Decl. ¶ 35; DX 94 (Whole

Foods store in ████████████ responded to ██ drop in sales caused by opening of new █████

█████ store by price-matching and re-merchandising, and currently planning major renovation to



███████ store); Meyer Decl. ¶ 36; DX 86 (forming Mid-Atlantic region "competition task force" to collect metrics on ████████████ to evaluate its quality and overall customer experiences). DX 207 (████████ store to be remodeled to answer ██████ ███); Besancon Decl. ¶ 51 (remodel of ████████ store in response to competition from ████████████); Sud Decl. ¶ 11 (Whole Foods doubled the size of its ████████ store in response to a planned ████████ store); Paradise Decl. ¶¶ 29, 35.

> b.     Whole Foods checks prices and "comp shops" against other supermarkets

74.     Because Whole Foods recognizes that other supermarkets are its competitors, it constantly checks its prices against their prices, and "comp shops" their stores. Robb Decl. ¶ 27; Gallo Decl. ¶ 28. A "comp shop" is a competitive assessment of another supermarket, and may involve an assessment of a combination of store attributes, including prices, product offerings, configuration, and others. Allshouse Decl. ¶ 10; Besancon Decl. ¶ 33.

75.     At Whole Foods, price checks or comp shops are performed by either an outside third party or by a Whole Foods team member. This types of analysis of prices and other factors takes a number of different forms. Gallo ¶ 27; Robb ¶ 28. Most analyses of supermarket competitors will involve an assessment of prices of common items (sometimes referred to as "known value items"). These are the items that customers purchase often (*e.g.*, organic milk). Robb Decl. ¶ 21; Meyer Decl. ¶ 20.

76.     Whole Foods has adopted a "████████" to enhance Whole Foods' image as a place where customers can get good value for their money. Sud Decl. ¶ 30; DX 8; DX 396. This strategy focuses on ████████ competing supermarkets on the prices of "███ ████." *See* Gallo Decl. ¶ 20; Robb Decl. ¶ 21; DX 85 (applying ████████ ████████████████████████████

23

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████ ); DX 9, DX 17, DX 215.

77.    Whole Foods price checks or comp shops is each geographic area in which the

FTC has alleged the proposed transaction will cause anticompetitive effects.

78.    Whole Foods price checks or comp shops against other supermarkets in every

area in which it operates:



North Atlantic Region:

Mid-Atlantic Region:

South Region:

Florida Region:

Midwest Region:



**Rocky Mountain Region:**

**Southern Pacific Region:**



**Pacific Northwest:**

**Northern California Region:** DX 465

79.     Although Wild Oats has not historically engaged in competitive pricing, it has price checked other grocery stores such as

        c.     Whole Foods' private label program is designed to compete with
               other supermarkets

26

80.     Whole Foods has three national private label programs: 365 Everyday Value ("365"), 365 Organic, and Whole Brands. The first is the lowest priced category of products offered by Whole Foods, and represents an inexpensive alternative to its branded counterparts. Boardman Decl. ¶ 8. The second is the organic version of the 365 line. The last consists of a family of products carrying the prefix "Whole" (*e.g.,* Whole Catch, Whole Creamery, Whole Dairy, Whole Fields, Whole Kitchen, Whole Pantry, Whole Paws, Whole Ranch, Whole Treat). *Id.*

81.     Whole Foods' private label program is very competitive with the natural and organic private label products of many supermarkets. There is a significant overlap of private label offerings between WFM, Safeway, Kroger, Costco, and Ahold, although each retailer has put "effort into diversifying their product line." DX 21. For many of these overlapped SKUs, "[Whole Foods'] prices are very competitive, and in many cases better than those of other stores (with the exception of ███████, most likely due to volume discounts, lower margins, and distribution structure)." *Id.* at 2.

82.     Whole Foods checks prices against private label offerings at other supermarkets and grocers. Whole Foods actively checks against a list of over ████████████████ that overlap with Whole Foods private label SKUs. DX 26, 35. Further, Whole Foods' private label pricing strategy requires 365 and 365 Organic private label prices to ██████████████ ██████████████████████ Boardman Decl. ¶ 17; 17 n.1. DX 27. For organic private label items, ████████████████████████████████████████████████████████ ██████████████████████████████████

83.     Whole Foods designed its private label program to compete against other supermarkets. The private label acts as "the entry point for crossover shoppers" and as such

faces competition from Trader Joe's and supermarket brands.  DX 27, DX 29; DX 733 (Whole Foods Private Label Review); DX 752 (Referring to Safeway, Whole Foods Director Mo Siegel opined that "[a]s competition increases the relevance of our private label increases.").

84.     Today, Whole Foods' private label program exists primarily to enhance competition with other supermarkets.  A decade ago, Whole Foods recognized that it was losing sales to ▮▮▮▮▮, a grocer that sells high quality natural and organic products under its successful private label.  Boardman Decl. ¶ 4.  In response, Whole Foods began to develop its own private label products.  *Id.*  Although the private label program was originally focused on competition with ▮▮▮▮, over time its goals have expanded.

85.     Now, Whole Foods uses its private label products to compete with other supermarkets as well.  *Id.* ¶ 5.  DX 27, 29.  It identifies where it has a product gap compared to competitors, and it develops competing products.  Boardman Decl. ¶¶ 13-14.  Then, to ensure that its products are competitive, it carefully studies the prices being charged by competitors and ▮▮▮▮▮▮▮▮.  *Id.* ¶¶ 15-22.  It recognizes it will lose sales if it prices above its competitors.  *Id.* ¶ 15.

86.     Trader Joe's product roster is uniquely positioned to compete with Whole Foods private label.  More than 80% of Trader Joe's SKUs are private label.  *Id.* ¶ 23.

87.     H.E.B. / Central Market has an organic private label brand under the Central Organics label, which was established by former Whole Foods employees.  This program has contributed to the success of Central Market, which is the leading food retailer in Texas.  *Id.* ¶ 23.d.

88.    Whole Foods private label program is also designed to help promote Whole Foods' value image, to show customers that they can buy either a premium item at a premium price or an alternative private label product at a price comparable to what they *see* at other supermarkets. *Id.* ¶ 6.  Linda Boardman, Senior Coordinator for Private Label for Whole Foods, explained that "[b]ecause more than ███ of Whole Foods shoppers cross-shop at Trader Joe's, other supermarkets, and mass market stores, we want customers to purchase from Whole Foods more of the products they purchase from competing stores." *Id.* ¶ 5.  Thus, the private label program was created to respond to competitive pressures from other supermarkets and to enhance Whole Foods' ability to compete with, and attract consumer dollars from, other supermarkets.

89.    "The biggest competitive threats to Whole Foods' private label are Trader Joe's, Safeway, Ahold (Giant), Wegmans, Kroger, Loblaw's, and H.E.B." *Id.* ¶ 23. Whole Foods does not even bother to check Wild Oats prices for its private label products. *Id.* ¶ 22.

90.    Whole Foods' broadening of ████████████████████████ ████████ program and application of program to competing with other retailers has helped control erosion of customers and sales to other competitors.  Meyer Decl. ¶ 9; JX 10 at 63-64 (Meyer Dep.); DX 93 (Zambito email February 2007, describing how comp results from ███████ reflect lower pricing on ██████████ products by either Whole Foods ██████████, that ██████ is "highlighting some of [Whole Foods'] ████████, and suggesting Whole Foods "call them out too"); DX 97 (Foster email September 2003, forwarding extremely detailed plan ██████████████████████████████.

d.    The Site Selection process for new Whole Foods supermarkets considers locations of all other supermarkets

91.    When Whole Foods reviews a potential location for a store, it systematically considers *every* significant supermarket chain in the area a potential competitor for the new store. Sales projections presume that the Whole Foods store will draw the vast majority of its sales from other large supermarket chains. Sud Decl. ¶ 57. The following documents show Whole Foods' approach to site selection decisions:

*Florida Region*:  DX 116 (Miami); DX 117 (Miami); DX 118 (Wellington, FL); DX 119 (Pembroke Pines, FL); DX 120 (Naples, FL); DX 121 (Jacksonville, FL); DX 123 (Coral, FL); DX 124 (Orlando, FL).

*Mid-Atlantic Region*: DX 80 (Louisville, KY); DX 99 (Yonkers, NY); DX 100 (White Plains, NY); DX 101 (Brooklyn (Park Slope), NY); DX 102 (New York (Tribeca), NY); DX 103 (New York, New York); DX 122 (Union, NJ); DX 159 (Annapolis, MD); DX 160 (Cleveland, OH); DX 161 (Philadelphia, PA); DX 162 (Plymouth Meeting, PA); DX 163 (Jersey City, NJ); DX 164 (Concordville, DE); DX 165 (Charlottesville, VA); DX 166 (Short Pump, VA); DX 167 (South Hills, PA); DX 168 (Paramus, NJ); DX 177 (Cleveland, OH); DX 805 (Rockville, MD).

*Midwest Region*: DX 104 (St. Louis, MO); DX 105 (Madison, WI); DX 106 (Kildeer and Vernon Hills, IL); DX 107 (Schaumberg, IL); DX 108 (Northbrook, IL); DX 109 (Chicago, IL); DX 110 (Chicago, IL); DX 111 (Chicago, IL); DX 112 (Naperville, IL); DX 113 (Town & Country, MO); DX 114 (Sugenash, IL); DX 115 (Minneapolis, MN); DX 455 (Indianapolis, IN); DX 634 (Evanston, IL); DX 639 (Omaha, NE).

*North Atlantic Region*: DX 169 (Fairfield County, CT); DX 170 (Darien, CT); DX 171 (Portland, ME); DX 173 (Dedham, MA); DX 174 (Reading, MA); DX 178 (Cranston, RI); DX 172 (Glastonbury, CT); DX 175 (Nashua, NH); DX 176 (Glastonbury, CT); DX 484 (Portland, ME); DX 636 (West Hartford, CT);

*Northern California Region*: DX 125 (Reno, NV); DX 142 (Oakland, CA); DX 152 (Napa and Sonoma, CA); DX 153 (Coddington, CA); DX 154 (Flosom, CA); DX 155 (Albany, CA); DX 156 (Roseville, CA); DX 158 (Novato, CA).

*Pacific Northwest Region*: DX 189 (East Portland, OR); DX 190 (Portland, OR); DX 191 (Eugene, OR); DX 192 (Tanasbourne, OR); DX 193 (West Seattle, WA); DX 239 (Lake Oswego, OR); DX 514 (Portland, OR); DX 638 (Portland, OR)

*Rocky Mountain Region*: DX 184 (Salt Lake City, UT); DX 185 (Basalt, CO); DX 187 (South Denver, CO); DX 188 (Boise, ID); DX 635 (Boulder, CO); DX 637 (Overland Park, KS); DX 641 (Lakewood/Golden, CO).

*South Region*: DX 144 (Nashville, TN); DX 146 (Birmingham, AL); DX 148 (Alpharetta, GA); DX 149 (Cary, NC); DX 150 (Asheville, NC); DX 151 (Charlotte, NC); DX 180 (Sugarland, TX).

*Southern Pacific Region*: DX 126 (Las Vegas, NV); DX 127 (Phoenix); DX 128 (Scottsdale, AZ); DX 129 (Hollywood/LA); DX 130 (Los Angeles, Manhattan Beach); DX 131 (San Fernando Valley, CA); DX 132 (Venice, CA); DX 133 (Oxnard, CA); DX 134 (Malibu, CA); DX 135 (Santa Rosa, CA); DX 136 (Dublin, CA); DX 137 (Santa Barbara, CA); DX 138 (Burbank, CA); DX 139 (Malibu, CA); DX 140 (Kahului, HI); DX 141 (Santa Clara Valley, CA); DX 143 (Tustin, CA); DX 152 (San Francisco/Sonoma); DX 153 (Coddington, CA); DX 154 (Flosom, CA); DX 155 (Albany, CA); DX 156 (Roseville, CA); DX 157 (Portero Hill, CA); DX 158 (Novato, CA); DX 186 (South Pasadena); DX 640 (Henderson, NV); DX 642 (Pasadena, CA).

*Southwest Region*: DX 147 (Sugar Land, TX); DX 179 (Houston, TX); DX 181 (Austin, TX); DX 182 (Dallas – University Park, TX).

92.    The initial decision as to whether a particular area offers a good opportunity for a new store begins with a Whole Foods regional president taking a broad overview of the proposed area. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████

93.    If the area passes this initial "gut check," the regional president will request that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████    Bradley Decl. ¶ 6; JX 6 at 34-35 (Bradley Dep.).

94.    ████████████████████████████████████████████████

████████████████████████████████████████████████████ *See*

*e.g.*, DX 80 (Louisville, KY site study). ██████████████████████████

████████████████████████████████████████████████████

31



See *e.g.*, DX 635 (Boulder, CO site study); Megahan Decl. ¶ 11-15.

95.

JX 7 at 9 (Kadish Dep.).

. JX 7 at 116 (Kadish Dep.).

96.    Such ▮▮▮ models are used by virtually every supermarket chain in the country. JX 7 at 123 (Kadish Dep.).

JX 7 at 118 (Kadish Dep.).

. JX 7 at 121 (Kadish Dep.).  With the addition of the proposed Whole Foods site, the model

JX 7 at 125 (Kadish Dep.).

97.



98.     If the Real Estate Committee approves a new site, a team from Whole Foods again visits each supermarket in the area to gauge their retail savvy. The team studies each competitor's selection, promotions and pricing. Whole Foods looks at the quality of the perishables each supermarket is offering and looks at each competitor's customer service. Whole Foods also price checks against competing supermarkets to see how they measure up. Bradley Decl. ¶ 7; JX 6 at 35 (Bradley Dep.).

99.     The Site Selection process for new Wild Oats stores considers locations of all other supermarkets. DX 587 (Wild Oats maps all of its competitors on site plan maps); JX 37 at 105-06, 124 (Odak I.H.) (Wild Oats managements visits local supermarkets); JX 12 at 213-15 (Brier Dep.). ███████████████████████████████████████

███████████████████████████████████████

        e.      Competition with other supermarkets has affected Whole Foods'
                rate of growth.

100.     In October 2006, members of the Whole Foods executive team ("E-Team") e-mailed one another about Whole Foods' declining rate of sales growth. One common reason cited was increasing competition from other supermarkets. Whole Foods Co-President A.C. Gallo noted:



DX 3.

101. "With the entrance of Wal Mart and other competitive pressures such as ███████ ████████████████ [Whole Foods] will continue to see margin pressures that will impact our plans going forward." DX 13 at 2. In the Southwest region Whole Foods projects erosion of margins if "███████████████████████████" *Id.*

102. ██████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████ Meyer Decl. ¶¶ 4, 8; JX 10 at 18-19, 80, 82 (Meyer Dep.).████████████
██████████████████████████████████████████████████
███████

103. "[S]ales dropped at Whole Foods stores in ██████████████████
████████████, after ███████████████ stores opened in those areas . . . sales dropped at Whole Foods stores in ██████████████████████████, after ██████████ stores opened in those areas." Meyer Decl. ¶ 4; JX 10 at 18-19 (Meyer Dep.).

      f.     Wild Oats won customers from other supermarkets during the California-supermarket strike.

104. During the Southern California supermarket strike, which occurred from October 2003 to March 2004 and affected three major supermarket chains including Vons/Pavilions,

Ralph's and Albertsons, five Wild Oats stores in the area experienced ███████████ ████████████████████████████ in same store comparable sales ("comps"). For the two quarters after the strike ended, the Wild Oats stores comps ███████████ ██████████████████████████████. DX 460. This dramatic ███████████ provides strong evidence that Wild Oats was able to retain some of the business that it had taken from the supermarkets affected by the strike. Martin Decl. ¶¶ 12-14;

105.    The strike had a positive impact on Wild Oats stores and post-strike Wild Oats attempted to keep the customers it had gained. JX 16 at 41-46 (Odak Dep.).

> g.    Wild Oats' non-compete agreement demonstrates that it considers other supermarkets as competitors.

106.    The Employment Agreement of Perry Odak, Wild Oats' former Chief Executive Officer, prohibited him from "engaging[ing] in any matter in any activity that is directly or indirectly competitive with the business of the Company [Wild Oats]," which was expressly defined to be "retail or wholesale operations for the sale of groceries and ancillary Products, such as health and beauty aids, vitamins and supplements" DC 492 at LOAT-000899.

107.    In the summer of 2006, Robert Miller, who had been the non-executive Chairman of the Board of Wild Oats up to that time, was required to resign as Chairman because his acceptance of the position of ECO of Albertson's LLC, a major competitor of Wild Oats, created a conflict of interest. Mays Decl. ¶ 3; JX 15 at 100-101 (Mays Dep.).

108.    Wild Oats' founder, Mike Gilliland, breached his non-compete agreement when he left Wild Oats to start a competing chain of stores named Sunflower. DX 615 at 109-112.

3.  Other supermarkets view Whole Foods and Wild Oats as competitors.

109. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

110.  Supermarkets routinely price check Whole Foods' stores and adjust prices based upon their assessment of Whole Foods' prices.  See, *e.g.*, DX 359 (Whole Foods team member observing King Soopers employee walking Whole Foods' store and thereafter adjusting prices); Meyer Decl. ¶ 22; JX 10 at 48 (Meyer Dep.), DX 74 (Wegmans directly comparing prices to Whole Foods); DX 72 (scan of two bib tags from Wegmans' shelf directly comparing prices on two organic/natural products); Meyer Decl. ¶ 23 (Giant signage comparing prices to Whole Foods); DX 73 (Gallo email March 2007, forwarding picture of a sign from DC metro Giant supermarket comparing its prices to Whole Foods in a similar fashion as Trader Joe's as well as nearby store team member's report of Giant's inaccuracies in its representations of Whole Foods' prices).

36

111. 

112.

113.



114.

115.

116.

117.

118.

119.    A number of supermarket competitors of Whole Foods and Wild Oats have intervened in this proceeding to prevent disclosure to Whole Foods and Wild Oats of competitively sensitive information.  This reflects the fact that these supermarkets view Whole Foods and Wild Oats as competitors:

> *Kroger*:  "Whole Foods Market ("Whole Foods") and Wild Oats Market, Inc ("Wild Oats"), among others, generally compete with Kroger."  Foley Decl. ¶ 6; "The FTC has obtained sensitive business information from Kroger that Kroger would never otherwise disclose to unauthorized persons outside the company, much less companies like Whole Foods and Wild Oats that generally compete with Kroger."  Mem. of Points and Auths. in Support of Unopposed Mot. of the Kroger Co. to Intervene for the Purpose of Protecting its Confidential Bus. Info. at 5, FTC v. Whole Foods Mkt., No 1:07-CV-01021-PFL (D.D.C. dated June 18, 2007);

> *Supervalu*:  "If Whole Foods' proposed protective order were to be put into effect, SUPERVALU would face a significant risk of commercial harm because proprietary and highly-sensitive information relating to its store operations, store-level margins, store expansion, remodeling, construction and closure plans, and other confidential financial and business information would be disclosed to the General Counsel of a competitor."  Supervalu Inc.'s Opp. to Def.. Whole Foods Mkt., Inc.'s Mot. for Entry of a Final Protective Order at 2, FTC v. Whole Foods Mkt., No. 1:07-CV-01021-PFL (D.D.C. dated June 22, 2007); "SUPERVALU seeks intervention in order to protect its confidential and competitively-sensitive information from reaching the hands of the general counsel of another grocery retailer."  Supervalu Inc.'s Mot. to Intervene at 5, FTC v. Whole Foods Mkt., No. 1:07-CV-01021-PFL (D.D.C. dated June 18, 2007);

> *Safeway*:  "Safeway operates grocery stores in a number of the geographic areas where Whole Foods operates stores. The Safeway stores sell some of the same products as the Whole Foods stores."  Gordon Decl. ¶ 9;

> *Wegmans*:  "Wegmans' confidential information no doubt would be commercially valuable to Whole Foods, given the stated view of Whole Foods' CEO that Wegmans is one of his company's primary competitors."  Arsdale Decl. ¶ 9.;

> *Publix*:  "If Whole Foods' proposed protective order were to be put into effect, Publix would face a grave risk of commercial harm because confidential and highly-sensitive information relating to its store operations, store-level profitability, expansion and remodeling plans, store construction and closure plans, and other confidential financial and business information would be disclosed to the General Counsel of a competitor, Whole Foods…"  Publix Super Mkts., Inc.'s Opp. to Def. Whole Foods Mkt., Inc.'s Mot. for Entry of a Final Protective Order at 2, FTC v. Whole Foods Mkt., No. 1:07-CV-01021-PFL (D.D.C. dated June 22, 2007);

*Trader Joe's*: "Notwithstanding Trader Joe's unique and distinctive format, the Company competes with any other retailer that sells similar grocery products. For example, Trader Joe's sells, among other things, meat, dairy and produce items - thus the Company competes with all other retailers that sell similar products - namely grocery stores, including Whole Foods and Wild Oats." Third Party Trader Joe's Co.'s Opp. to Def.'s Mot. for Protective Order, Decl. of Bryan Palbaum ¶ 3, FTC v. Whole Foods Mkt., No. 1:07-CV-01021-PFL (D.D.C. executed June 15, 2007); "Access to this information – inadvertent or not – would provide Whole Foods with a distinct competitive advantage and would cause Trader Joe's irreparable commercial harm." Third Party Trader Joe's Co.'s Opp. to Def.'s Mot. for Protective Order at 6, FTC v. Whole Foods Mkt., No. 1:07-CV-01021-PFL (D.D.C. dated June 22, 2007);

*H-E-B*: "Granting Whole Foods' General Counsel unfettered access to H-E-B's confidential business information, including its highly sensitive real estate expansion plans, would unfairly put H-E-B at a severe competitive disadvantage with respect to Whole Foods...." Intervenor H.E. Butt Grocery Co.'s Opp. to Whole Foods Mkt., Inc.'s Mot. for Entry of a Final Protective Order at 1, FTC v. Whole Foods Mkt., No. 1:07-CV-01021-PFL (D.D.C. dated June 22, 2007);

*Target*: "For example, the FTC has requested Target's plans for future stores in particular geographic markets and documents related to Target's strategic planning for products comparable to those offered by Whole Foods." Target Corp.'s Amicus Br. in Support of Pl.'s Opp. to Whole Foods Mkt., Inc.'s Mot. for Entry of a Final Protective Order at 3, FTC v. Whole Foods Mkt., No. 1:07-CV-01021-PFL (D.D.C. dated June 22, 2007);

*Wal-Mart*: "Permitting highly confidential and sensitive business information to be examined and analyzed at competitor's headquarters is intuitively problematic." Wal-Mart Stores, Inc.'s Opp. to Joint Mot. for the Entry of a Protective Order at 2-3, FTC v. Whole Foods Mkt., No. 1:07-CV-01021-PFL (D.D.C. dated July 3, 2007).

    4.       There is no "unique" competition between Whole Foods and Wild Oats

120.    Whole Foods' does not have any specific competitive policies, practices, or strategies directed specifically at Wild Oats – its approach towards competing in a geographic area is the same whether Wild Oats is present or not. Gallo Decl. ¶ 29; Robb Decl. ¶ 29.

121.    Wild Oats' prices ████████████ Whole Foods' prices. Gallo Decl. ¶ 9; Robb Decl. ¶ 15; Paradise Decl. ¶ 30; Lannon Decl. ¶¶ 14, 24; Besancon Decl. ¶ 64; JX 28 at 186-87 (Mackey I.H.); DX 488; DX 491; DX 584; DX 580; DX 581; DX 582; JX 37 at 41-46

(Odak I.H.).  Given this, Whole Foods price checks or comp shops Wild Oats' stores less than it price checks or comp shops other supermarket competitors.  Mays Decl. ¶ 27.

122.    There is no evidence of unique competition (price or non-price) between Whole Foods and Wild Oats.  The competitive rivalry between Whole Foods, Wild Oats, and other supermarkets and retailers is as great as any rivalry between Whole Foods and Wild Oats.

123.    There is no evidence of the likelihood of "nasty price wars" between Whole Foods and Wild Oats in Portland, Oregon, Portland, Maine, Boulder, Colorado, Nashville, Tennessee, or anywhere else.

**D.    Whole Foods and Wild Oats also face brisk competition from other food retailers.**

124.    Whole Foods shares many of its customers with other food retailers such as ███████████.  A significant number of Whole Foods customers cross-shopped between Whole Foods and retailers like ███████████.  DX 2 at 16.  ███████████

125.    Whole Foods has recognized a need to be more price competitive as more and more conventional supermarkets begin to carry the same types of natural and organic foods.  "Other stores have closed the gap on the advantage [Whole Foods] had in product uniqueness, selection, quality and presentation.  [Whole Foods'] stores and product selection are not

differentiated from [its] competition as they were in the past." DX 6 at 2. Many of the products that were once unique to Whole Foods are now being sold through low-price retailers such as Costco and Trader Joe's. DX 6 at 3, *see also* DX 40.

126.    Other food retailers such as Costco are continuing to stock organic items and competition for organic suppliers between food retailers is intensifying. "[T]he days of waiting for new vendors and new products to come to [Whole Foods Market] first are over. Costco and Safeway are changing that landscape forever." DX 7 at 1.

127.    Whole Foods ███████████ as more and more mass market retailers and other food retailers begin to carry the same types of natural and organic foods. Scheffman Report, Appendix E ¶ 11. "With the entrance of Wal Mart and other competitive pressures such as Trader Joe's, Safeway Lifestyle[,] [Whole Foods] will continue to see ███████ that will impact our plans going forward." DX 13 at 2. In the Southwest region Whole Foods projects ████████████████████████████ *Id.*

128.    In many areas, Whole Foods faces aggressive competition from █████ a fast growing grocery store chain that sells a significant number of natural and organic products. Whole Foods competes with ██████ by matching prices on a significant number of items, both branded and private label. Gallo Decl. ¶ 26; Robb Decl. ¶ 26; DX 81 (e-mail regarding posting comp shop results against ████████████ in Whole Foods); DX 251; DX 252; DX 257; DX 262 (Price matching necessary to "stop or minimize the loss of business that [Whole Foods has] been experiencing whenever ███████ opens near" a Whole Foods store); DX 264; DX 267; DX 276 (AC Gallo email announcing "[t]his is exactly the 'war' that I have wanted with ███. Take the gloves off in ████ and put up our own comparisons in our stores…"); DX 279 (E-mail regarding posters in ██████ locations in

██████████ and ████████ that post comparative register receipts from Whole Foods); DX 285 (████████ comp shop); DX 383; DX 422 ████████ shopper flow analysis); DX 426.

129.    ████████ was engaging Whole Foods in areas throughout the ███Coast by posting signs with direct Whole Foods/████████ register receipt comparisons. Meyer had all his region's store post more accurate comparison signs targeting ████████, monitoring ████████ ███ pricing weekly, and changing signs and lowering Whole Foods prices ████████ lowered its prices.  Meyer Decl. ¶¶ 24, 32; JX 10 at 61-63 (Meyer Dep.); DX 75 at 3-6 (Meyer email October 2006, detailing planned response in ████████ to ████████ price comparison tactics, and emphasizing that Whole Foods should ████████, *i.e.*, fail to lower its prices if ████████ does); DX 76 at 1 (Gallo email October 2006, calling for Meyer and other Whole Foods Regional Presidents to be just as "aggressive" as ████████ at their own game); DX 81 (Gallo email October 2006, encouraging Meyer and other regional presidents to check ████████ pricing every week, and forwarding a ████████ to use in the stores).

130.    Comp shopping of ████████ is to establish a competitive benchmark – because ████████ usually has lowest pricing among all other competitors, by price-matching to ████ ████ Whole Foods knows it is competitively priced against all other competitors.  Lannon Decl. ¶ 15; JX 8 at 142 (Lannon Dep.); DX 508 (explanation by Lannon in September 2006 that by focusing on ████████ prices "we cover ███ of our ████████"); DX 510 (explanation by Lannon in October 2006 that by "competing on price with ████████ . . makes us super competitive with 'regular' chains like ████████); DX 498 (benchmarking prices

43

through ███████ comp shop was Lannon's rationale for "approving a competitive response

to ███████ pending opening of a new store in ███████, where we would offer certain

products at what a store member called "███████" to retain customers.").

131.     ███████ not only price-checks against Whole Foods in all markets in which

they both operate, but also posts the results in its stores.  JX 10 at 48 (Meyer Dep.).

**E.     The consumer survey performed by Ms. Conway shows that customers are buying the same types of products at other supermarkets.**

132.     Whole Foods and Wild Oats retained the polling companyTM, inc. to conduct a

telephone survey of Whole Foods and Wild Oats shoppers for use in this proceeding.  Conway

Decl. ¶ 2.  The survey was directed by the President and CEO of the polling companyTM, inc.,

Kellyanne Conway ("Conway").  *Id.*

133.     Conway has extensive experience in the field of market research and has testified

as an expert witness based on surveys conducted by her firm under her direction.  Conway Decl.,

Exhibit 1; JX 20 at 31-42, 45-51, 54-55, 67-94 (Conway Dep.).  Conway also has experience

performing market research in the grocery industry.  JX 20 at 77-82, 117 (Conway Dep.).

Conway is qualified as an expert to conduct and analyze the consumer survey ("Conway

Survey") described in the Conway Report.

134.     The Conway Survey was carried out June 22-28, 2007 in eight localities selected

by Whole Foods' and Wild Oats' economic expert, Dr. David Scheffman.  Conway Report at 2;

Scheffman Report ¶ 184.  The eight localities included four "overlap" areas where both Whole

Foods and Wild Oats are present: Portland, Maine; Medford and Saugus, Massachusetts;

Hinsdale, Illinois; and Los Angeles, Santa Monica, and Brentwood, California.  Scheffman

Report ¶ 184.  The other four localities surveyed were two in which Whole Foods is present but

Wild Oats is not (the Washington, D.C. metropolitan area and West Bloomfield, Michigan) and

two in which Wild Oats is present but Whole Foods is not (Memphis, Tennessee and Salt Lake City, Utah). Conway Report at 2; Scheffman Report ¶ 184. The eight localities were selected to emphasize a variety of competitive situations within a variety of geographic areas. Scheffman Report ¶ 184.

135.    In each of the eight localities, Whole Foods or Wild Oats customers were identified in each of two groups: "Frequent" shoppers and "Cusp" shoppers. Conway Report at 2-3. "Frequent" shoppers were survey respondents who reported shopping at Whole Foods or Wild Oats at least once a month, and "Cusp" shoppers were survey respondents who reported having shopped at Whole Foods or Wild Oats, but less frequently than once a month. *Id.* at 2.

136.    The 1,607 Frequent and Cusp Whole Foods and Wild Oats shoppers included in the Conway Survey reported buying groceries at a number of different types of stores, including supermarkets; specialty, organic, or ethnic stores; warehouse or super stores; farmer's markets or food co-ops; and discount clubs. Conway Report at 6. The survey respondents in each locality also identified by name a large number of retail outlets where they bought groceries. *Id.* at 7.

137.    Whole Foods and Wild Oats customers shop at a number of different stores for their grocery needs. Conway Report at 5. Fewer than 10% of those surveyed devoted 51% or more of their total grocery expenditure to Wild Oats or Whole Foods. Conway Report at 5.

138.    In the six localities surveyed where Whole Foods is present, 53% of Frequent Whole Foods shoppers reported spending 20% or less of their grocery budget at Whole Foods, and only 14% reported spending 51% or more of their grocery budget at Whole Foods. Conway

45

Report at 9. In the six localities surveyed where Wild Oats is present, 62% of Frequent Wild Oats shoppers reporting spending 20% or less of their grocery budget at Wild Oats, and only 9% reported spending 51% or more of their grocery budget at Wild Oats. *Id.* at 12. Thus, the majority of shoppers surveyed who were Frequent Whole Foods or Wild Oats customers reported spending most of their grocery budget elsewhere. Not only do these customers visit other stores, but they buy same or similar products at the other stores. Conway Report at 36.

139.    Only a minority of respondents who qualified as Frequent Whole Foods or Wild Oats shoppers (ranging from 5% to 19%) reported buying products from produce, natural and organic foods, dairy products, fresh meat and fish, prepared foods, breads, rolls, and other bakery items, and frozen foods only at Whole Foods or Wild Oats and never at another grocery store. Conway Report at 14. A substantial portion of Frequent Whole Foods or Wild Oats shoppers (ranging from 40% to 71%) reported buying products in these categories as often, or more often, at other grocery stores. *Id.* These findings were not materially different in overlap versus non-overlap localities. *Id.* at 15. Accordingly, the surveyed Frequent Whole Foods and Wild Oats shoppers reported extensive cross-shopping at other grocery stores in each of the categories, including natural and organic foods. Conway Report at 14-35.

140.    The data underlying the Conway Survey indicate that very few of the survey respondents reported cross-shopping between Whole Foods and Wild Oats JX 27 at 234-38 (Van Liere Dep.); DX 775 at 115 (cross-tabulation of survey responses regarding frequency of purchasing produce at Wild Oats versus other grocers, showing little overlap with Whole Foods).

46

**F.    Defendants' industry expert, whose views are not contested, confirms that Whole Foods and WO compete with all supermarkets.**

141.    The FTC had the opportunity to provide its own industry expert to challenge Dr. Stanton's conclusions, but either could not or did not.  The FTC also had ample opportunity to challenge or refute Dr. Stanton's conclusions both at his deposition and at trial, and again it did not or could not.  Dr. Stanton's conclusions are therefore uncontested in this matter.

142.    Dr. Stanton's conclusions can best be summarized by Paragraph 3 of his Expert Report:

> Whole Foods and Wild Oats each compete in the supermarket industry with a plethora of other supermarket businesses.  All supermarket retailers, including Whole Foods, attempt to differentiate themselves so as to give customers a reason to shop its stores over its competitors.  This does not, however, indicate that differentiated supermarkets do not compete with each other; to the contrary, it is how they compete with each other.  As consumer demand for fresh, healthy, organic and natural products has increased, more and more supermarket competitors have expanded their product offerings and store formats to more effectively compete for customers; the same customer base that Whole Foods is targeting.  This trend has been dramatic, and will continue as consumer demand for these products, and competitor responses, continue to evolve.  Whole Foods and Wild Oats face robust competition today in all the cities in which they compete, and Whole Foods will continue to face robust competition in the future after acquiring Wild Oats.

Stanton Report ¶ 3.

143.    Dr. Stanton further testified at his deposition that "I believe that Wild Oats or Whole Foods and/or Wild Oats will face robust competition just about any major area that they go into.  I believe that."  JX 19 (Stanton Dep.) 120.  When asked to explain what he meant by "robust competition," Dr. Stanton testified, "I mean that other supermarket chains will fight tooth and nail for those customers."  JX 19 (Stanton Dep.) 121.  When asked if this competition includes price competition, Dr. Stanton testified "It certainly does."  JX 19 (Stanton Dep.) 121.

47

**G.    The economic evidence confirms that Whole Foods and WO compete against all supermarkets.**

144.    Dr. David T. Scheffman, Ph. D., is an Adjunct Professor of Business Strategy and Marketing, Owen Graduate School of Management, Vanderbilt University, and a Director with LECG, LLC.  Scheffman Report ¶ 1 and App. A at 1.  He has twice served as Director of the Bureau of Economics at the Federal Trade Commission, most recently from 2001-03.  *Id.* at 1 & 3.  He is an expert in the fields of economics, microeconomics, industrial organization economics, antitrust economics (including mergers), econometrics, statistics, marketing, financial analysis, and retailing.  Scheffman Report ¶¶ 3-6, 13, 16.  Dr. Scheffman has taught, written and consulted extensively in these areas.  Scheffman Report App. A at 3-18.

145.    From his service as head economist at the FTC and in other senior positions at the FTC covering twelve years, Dr. Scheffman has extensive experience analyzing the competitive and efficiency benefits of mergers.  Scheffman Report ¶ 16.  This experience, and experience from private economics consulting, includes extensive work involving the supermarket industry.  JX 18 at 21-24 (Scheffman Dep.).  The FTC invited Dr. Scheffman to speak at its May, 2007, conference on "Grocery Store Antitrust:  Historical Retrospective & Current Developments."  PX 322; Scheffman Report App. A at 7; JX 18 at 38-39 (Scheffman Dep.).  The FTC's Director of the Bureau of Economics introduced Dr. Scheffman at this conference as his "eminent predecessor" (*id.* at 9) and remarked that "there's no one better able to comment" on the supermarket antitrust topics at hand than Dr. Scheffman.  *Id.* at 137.

146.    The framework for defining the relevant product market comes from case law and the Horizontal Merger Guidelines.  It is a forward-looking test that asks where customers would turn if a hypothetical monopolist of the candidate product imposed a "small but significant and nontransitory increase in price" (SSNIP").  *Guidelines* § 1.11.  If there are alternatives to which

48

customers could readily take their business such that the price increases would be unprofitable, the proposed product market is too narrow and additional alternatives must be included, even if customers did not view them as substitutes at the lower price. *Id.*

147.    Dr. Scheffman applied the hypothetical monopolist test to the facts in this case. JX 18 at 33-34 (Scheffman Dep.); Scheffman Report ¶ 49. In this case, the FTC contends that the relevant market is "premium and natural organic supermarkets" ("PNOS"). The product market analytical framework here focuses on how consumers would behave if the price of grocery products in PNOS rose relative to the price of grocery products in other supermarkets. The economic implication of this framework is that product market definition must focus its attention on "consumers at the margin" rather than consumers who are "inframarginal." Scheffman Report ¶¶ 50, 99. JX 18 at 95 (Scheffman Dep.).

148.    A marginal consumer is someone who would switch where he or she shops in response to a SSNIP. In the context of supermarkets, including premium and natural organic supermarkets, marginal consumers can switch or divert their purchases in any of three ways. First, they can reduce the size of their shopping basket at one supermarket and substitute by buying the same or similar items at another retailer. Second, from the set of supermarkets that they currently frequent, the consumer can switch a particular shopping trip from one supermarket to another. Third, the consumer can change retailers by deciding to no longer frequent a particular supermarket that they no longer believe offers good quality for value. Scheffman Report ¶ 51.

149.    Firms compete to retain existing business and win new business by competing for marginal consumers. Intuitively, it is these consumers who are susceptible to being won or

retained by offering better prices, improved service, higher quality or more diverse product offerings. Scheffman Report ¶ 52.

150.    Because supermarket retailers make their pricing, quality and service decisions in ways to retain and attract marginal consumers, the appropriate focus for defining the relevant product (and geographic) market definition is those marginal consumers. This is consistent with the analytical framework set out in the DOJ/FTC Merger Guidelines. Scheffman Report ¶ 53.

1.    Dr. Scheffman's critical loss analysis confirms that the relevant market includes supermarkets.

151.    Dr. Scheffman used critical loss analysis to analyze the FTC's proposed product market. This is a widely accepted analytical tool in antitrust cases both for market definition and competitive effects. Scheffman Report ¶ 100; JX 18 at 33-34. The FTC does not dispute this. 8/1 Hearing Tr. at 64. Critical loss is implicit in the hypothetical monopolist test. *Id.* The latter tests whether a SSNIP would be profitable over a candidate product; critical loss analysis assesses how much substitution in response to a SSNIP could occur before a SSNIP becomes unprofitable. Scheffman Report ¶ 110.

152.    Critical loss analysis stems from the recognition that for almost any product, a price increase results in some lost sales as consumers make do with less, switch to other suppliers, or substitute other products. There is a profit detriment to the price increase equal to the product of the per unit gross margin and the number of units lost. But there is also an economic gain from the increased gross margin earned from the higher price on each remaining unit sold. The "critical loss" is the amount of lost sales at which the economic detriment equals the economic gain. It is a "critical" loss because any greater loss will result in the economic detriment exceeding the economic gain, thereby rendering the price increase unprofitable. Scheffman Report ¶ 96.

153.    The application of the critical loss technique to market definition is a three step process. The first step is to estimate the incremental margin (gross margin) and determine the volume the hypothetical monopolist (or merged entity) would have to lose to render the price increase unprofitable (*i.e.*, the critical loss). The second step is to separately estimate what the actual loss in volume is likely to be as a result of the hypothesized price increase (*i.e.*, the estimated "actual loss"). The last step is to compare the estimate of the actual loss with the critical loss. If the actual loss is greater than the critical loss the product market definition must be expanded. Scheffman Report ¶ 112.

154.    In calculating critical loss, Dr. Scheffman used a SSNIP of 5% across all products sold by "premium natural and organic supermarkets. This is the SSNIP used in most contexts under the Merger Guidelines and used by the FTC in supermarket merges. JX 18 at 34-37 (Scheffman Dep.).

155.    Whole Foods has an average gross margin at the store level of approximately ▮▮. A 5% price increase implies a critical loss for Whole Foods of about ▮▮ in volume. Wild Oats stores typically have a gross margin at the store level of about ▮▮▮. A 5% price increase implies a critical loss for Wild Oats of about ▮▮ in volume. Scheffman Report ¶ 115. Dr. Scheffman also calculated critical loss for a 1% SSNIP, in response to Dr. Murphy's report. Critical loss at that price increase would be just over ▮▮. JX 18 at 41-42 (Scheffman Dep.). At closing argument, counsel for the FTC stated: "the critical loss number, which again is mathematics. I don't quibble with it." 8/1 Hearing Tr. at 64.

156.    Critical loss analysis next considers what the actual loss is likely to be if prices increase. Actual loss depends on how many marginal customers are likely to exist and how

likely they are to shift purchases in response to a SSNIP. Scheffman Report ¶ 98. There is no evidence in the record from which to determine cross-elasticity of demand between premium natural and organic supermarkets and other supermarkets and grocery retailers. 7/31 Hearing Tr. at 13-14; JX 18 at 70-71. In merger cases it is often not possible to have a statistical analysis of actual loss. 7/31 Hearing Tr. at 10. Actual loss should not be based on inferences from margins, because such analysis is economically unsound. JX 18 at 70-71. Rather, a conclusion as to what the actual loss should likely be based on weighing all of the evidence, which is the approach Dr. Scheffman used. JX 18 at 91 (Scheffman Dep.).

157.    The evidence supports the conclusion that a substantial portion of Whole Foods and Wild Oats business is at the margin such that in the event of a PNOS price increase, the actual loss would substantially exceed the critical loss. Scheffman Report ¶ 128. This result obtains regardless if the SSNIP is 5% (*id.*) or 1%. JX 18 at 40, 89 (Scheffman Dep.).

158.    First, grocery shopping is a relatively high price sensitive category of retail shopping. Scheffman Report ¶ 204; JX 18 at 96 (Scheffman Dep.). Whole Foods and Wild Oats realize that they have a substantial proportion of price sensitive shoppers. *See* Scheffman Report ¶¶ 144, 154, 156, 164, 204-8.

159.    Second, Whole Foods and Wild Oats customers are shifting purchases between PNOS and other supermarkets, and can further shift purchases costlessly, *i.e.*, without having to change their shopping patterns. Scheffman Report ¶ 122; JX 18 at 99 (Scheffman Dep.) (since they are also regular shoppers at other supermarkets, Whole Foods customers "will buy the raspberries at Giant instead of Whole Foods if their Whole Foods price is too high").

160.    Third, most Whole Foods and Wild Oats shoppers shop frequently at other supermarkets and grocery retailers.  7/31 Hearing Tr. at 77-79; JX 18 at 99 (Scheffman Dep.); Scheffman Report ¶ 123.

161.    Fourth, other supermarkets compete vigorously for the patronage of customers who also shop at Whole Foods and Wild Oats.  Scheffman Report ¶¶ 125, 212-13; JX 18 at 99-100 (Scheffman Dep.).  In particular, other supermarkets have followed the increased interest in health and food, shifting toward emphasizing fresh, "natural" and organic.  Scheffman Report ¶ 215.  Likewise, high selling products at Whole Foods and Wild Oats are now generally available at other supermarkets.  Scheffman Report ¶ 216.  Also, many other chains have been active in creating organic and natural private label lines.  Scheffman Report ¶ 219.

162.    Finally, Whole Foods (and to a lesser degree Wild Oats) regularly and extensively price check other supermarkets and food retailers in order to gauge their pricing, their assortments, and other strategies that these competitors are using to attract Whole Foods shoppers and other customers into their stores.  JX 18 at 105-106 (Scheffman Dep.); Scheffman Report ¶¶ 127, 224-29.  Price-check evidence is a standard factor in FTC market definition analysis of supermarket mergers.  JX 18 at 106 (Scheffman Dep.).

163.    It may be that only certain products are sold at Whole Foods or Wild Oats, or that certain perception of quality to some consumers is only available at those stores.  But critical loss analysis shows that, particularly with a small SSNIP, a relatively small sales loss would make a price increase unprofitable.  The record evidence, including market research studies, show that the actual loss from a SSNIP would exceed the critical loss.  7/31 Hearing Tr. at 25-27.

164.    Dr. Scheffman's critical loss analysis demonstrates that the relevant product market must encompass at least all supermarkets.  Scheffman Report ¶ 120.  Evidence of the

significant amount of sales that are "at the margin" shows that it is not plausible that a 5% increase in prices attempted by the proposed merged entity would be profitable, since the actual loss in sales arising from such a price increase is likely to far exceed the critical loss. Scheffman Report ¶¶ 117, 121. Actual loss would also defeat a 1% price increase. Scheffman Rebuttal Report ¶¶ 104-105. Applying the product market definition framework of the case law and the Merger Guidelines, the relevant product market within which to evaluate the proposed transaction must be at least as broad as the retail sale of food and grocery items in supermarkets. Scheffman Report ¶¶ 128, 235.

2.    Dr. Scheffman's entry analysis confirms that the relevant market includes supermarkets.

165.    Dr. Scheffman's entry analysis demonstrates that when Whole Foods enters in to a new local area, Whole Foods generates substantial sales that are overwhelmingly captured from the same local supermarkets and grocery retailers that the FTC contends are not competitors in the relevant market. Scheffman Report ¶ 60; 7/31 Hearing Tr. at 11.

166.    Evidence that premium natural and organic supermarkets compete directly with other supermarkets is provided by analyzing situations in which Whole Foods has opened a new store in a new local area in which the company had no other stores. Scheffman Report ¶ 60. A study of these store opening events is directly relevant to product market definition because it provides a natural experiment regarding how consumers react to a change in their options. Scheffman Report ¶ 61; 7/31 Hearing Tr. at 21-23.

167.    Whole Foods has opened large stores and those stores have very quickly gained substantial sales. Scheffman Report ¶65. A new Whole Foods store overwhelmingly gains sales that were being made by grocery retailers in that area, because the opening of a Whole Foods store could not significantly change total food consumption the area. In an area in which there are

no other PNOS, all the sales for the new Whole Foods come from other grocery retailers.
Scheffman Report ¶ 62. That is, when Whole Foods opens a new store in an area with no other
PNOS, it does not create new demand for groceries. Rather, consumers divert some of their
grocery purchases from other grocery retailers to Whole Foods. Scheffman Report ¶ 65.

168.    When a Whole Foods store opens in an area served by a Wild Oats store, Wild
Oats stores can be expected to lose sales. This would be true whether or not PNOS are a relevant
product market. Scheffman Report ¶ 62. Combined Whole Foods and Wild Oats revenues after
entry of the Whole Foods store average ███████████████ the revenues of the Wild Oats
store prior to entry. Scheffman Report ¶¶ 75-76. The sales gained by the Whole Foods store are
much larger than any loss in sales experienced by the Wild Oats store(s). Scheffman Report
¶¶ 77-79; 7/31 Hearing Tr. at 23.

169.    Like the opening of a WFM store in an area with no PNOS, when Whole Foods
opens a new store in an area with an existing Wild Oats store, overwhelmingly the sales for the
new WFM store come from grocery retailers other than WO. Scheffman Report ¶ 62. In these
situations, all the consumers in the area could have shopped at Wild Oats for their needs from a
PNOS. Thus, when Whole Foods entered and overwhelmingly picked up sales from non-PNOS
firms, it necessarily had to be competitive with those non-PNOS supermarkets and other grocer
retailers to attract so many sales. JX 18 at 82-83 (Scheffman Dep.).

170.    The evidence of Whole Foods' entry with new stores provides further evidence
that many consumers are "at the margin," in that when Whole Foods opens a new store, whether
in an area with a Wild Oats store or with no competitor in the FTC alleged product market,
Whole Foods picks up the lion's share (or all) of its sales from retailers other than a competitor
in the FTC alleged product market. Scheffman Report ¶ 93.

3.    Dr. Murphy's conclusions on the relevant product market are not persuasive because he does not control for competitor behavior responsive to and independent of Whole Foods entry.

171.    The Merger Guidelines test for product market definition assumes that a hypothetical monopolist is the sole seller and therefore controls all promotions and prices of firms in the putative market. 7/31 Hearing Tr. at 55.

172.    Professor Murphy's analyses of the effect of Whole Foods' entry on Wild Oats net sales, margin and prices do not control for the pricing or promotional strategies of all other supermarkets in response to Whole Foods' entry. 7/31 Hearing Tr. at 55-56; JX 26 at 233-35 (Murphy Dep.).

173.    Instead, Professor Murphy includes the responses of competitors' to Whole Foods' entry, and the effects caused by those competitors, as effects caused by Whole Foods. JX 26 at 233 (Murphy Dep.).

174.    Where multiple firms enter simultaneously, Professor Murphy's regression analysis does not permit one to tell which of the firms is causing how much of the effect on Wild Oats' margins, net sales, and prices. 7/31 Hearing Tr. at 63; JX 26 at 228 (Murphy Dep.).

175.    ████████████ entered at the same time as Whole Foods in ████████████

176.    ████████████ entered at the same time as a Whole Foods in ████████████

177.    ████████████ entered ████████████ at the same time was Whole Foods in ████

████████████ Professor Murphy's estimates of the effect of Whole Foods' entry on Wild Oats margins and prices do not control for the entry of these other firms or permit one to tell which of the firms is causing how much of the effect on Wild Oats.

56

**H.    The FTC's reliance on transfer rates in Project Goldmine for proof of product markets is misplaced.  Project Goldmine denies, rather than supports, the existence of a market composed of only premium natural and organics supermarkets.**

178.    Whole Foods commissioned a ████████████████████ ██████ of the proportion of Wild Oats current sales that might transfer to Whole Foods after the merger.  PX 00553; DX 401 at 15.  The FTC has placed great weight on Project Goldmine's estimates of sales transfers from Wild Oats to Whole Foods because, in its view, it establishes the existence of unique competition between them.  FTC Br. at 19-20; FTC Response Br. at 8.

179.    The estimates of volume shifts average ████████ despite the non-existence of any other premium natural and organic supermarkets in most of the relevant geographic markets alleged by the FTC.  DX 401; PX 553.  In each of these markets, ████████ of the volume, on average, would be transferred to their supermarkets and other food retailers.  This significant competition is difficult to square with FTC's view that Whole Foods would become a monopolist.

180.    Specifically, ████████████████████████████████, the preliminary analysis projected that Whole Foods would capture ████████ of Wild Oats' sales for 19 Wild Oats stores.  ████████

181.    The estimates of volume shifts were, as described by the person who created them, "guesstimates." JX 7 at 41 (Kadish Dep.).  As an economic matter, they are not indicative of market definition or competitive effects, because the transferes were not predicted with a price increase.  JX 18 at 73-74 (Scheffman Dep.); JX 7 at 210 (Kadish Dep.).  See JX 18 at 171-73 (Scheffman Dep.) (transfer projections not remarkable because buyers try to keep customers and because no price increase assumption).

182.    By the FTC's analysis, sales transfers should be lowest where there is a premium natural and organic supermarket besides Whole Foods and Wild Oats.  The estimates show, however, the lowest transfers in ██████████████████████████████████████ ████████████████████████, all stores that would become "monopolies" as alleged by the FTC.  DX 401.

**I.      The FTC has failed to properly define the "premium natural and organic supermarket" product market.**

183.    The FTC has produced no evidence that the "premium natural and organic supermarket" is a term used by anyone in the industry.

184.    Instead, the FTC attempts to define the premium natural and organic supermarket market by ascribing 8-11 attributes to its product market description.  DX 590 (July 15, 2007 Supplemental Discovery Responses); FTC's Brief on its Motion for Preliminary Injunction, at 29-47.  The FTC has offered no evidence that the firms in the alleged product market – Whole Foods, Wild Oats, Earth Fare, and New Seasons – possess these listed attributes.  Interestingly, Wild Oats is not a certified organic foods retailer but Whole Foods is.  Mays Decl. ¶ 29.

185.    The FTC has produced no evidence that other firms lack these attributes.  For example, while Wild Oats is not a USDA certified organic foods retailer, both Hannaford, part of Delhaize ███████████████; Stanton Report ¶ 36) and Bigg's, part of Supervalu, (DX 682) are.

186.    The FTC has produced no credible evidence that Whole Foods' and Wild Oats' customers base their purchasing decisions on the existence of the alleged attributes.

**J.      Dr. Stanton's Qualifications**

187.    Dr. Stanton is Professor of Food Marketing at Saint Joseph's University in Philadelphia, Pennsylvania.  He received his Ph.D. in marketing from Syracuse University.  He

has been in the food industry for over 30 years. His research and consulting has been in both the retail side and the supplier side of food marketing. Stanton Report ¶ 4. Dr. Stanton previously held the first endowed chair in food marketing in the United States, entitled the C.J. McNutt chair in food marketing research, from 1985 to 1995. Stanton Report ¶ 6.

188.    Dr. Stanton teaches a variety of food marketing courses in both the BS and MS programs including Food Marketing Strategy, Target Marketing in the Food Industry, Segmentation and Positioning, and Food Marketing Advertising. His MS courses include elements of both retail food marketing and food service marketing. Stanton Report ¶ 5.

189.    Dr. Stanton has authored or co-authored 57 articles in refereed journals and has published several industry books. Stanton Report Appendix A. Dr. Stanton has also been the editor of the Journal of Food Products Marketing since 1994. Stanton Report Appendix A.

190.    Dr. Stanton has also held executive positions in food companies and is also on the Board of Directors of Herr's, a regional snack food company. Stanton Report ¶ 8.

**K.    Response to Misleading Statements by Michael Bloom Regarding Dr. Stanton During his Closing**

191.    During the closing argument, Mr. Bloom asserted that Dr. Stanton's basis for identifying competitors of Whole Foods and Wild Oats was based on Yahoo searches. At the same time, Mr. Bloom failed to mention to the Court that Dr. Stanton used online searches merely to verify specific competitor store locations in the specific geographic markets alleged by defendants. See JX 19 at 119-20 (Stanton Dep.). Mr. Bloom also failed to mention to the Court that immediately after Dr. Stanton's testimony regarding how he verified competitor specific store locations through online searches, he then provided exhaustive testimony in response to questions from the FTC regarding his knowledge of the store formats and operations of the

following chains: Sunflower, Kroger, Supervalu, Albertson's, Shaw's, Jewel, Safeway, Wal-Mart, Target, Giant Food, Food Lion, Hannaford, Bloom, Whole Foods, Wegmans, Wild Oats, Meijer, HEB, Central Market, Publix, Shop Rite, Harris Teeter, Price Chopper, Giant Eagle, A&P, Food Emporium, Waldbaum's, Pathmark, Trader Joe's, Tesco, Byerly's/Lund's, and Andronico's. See JX 19 (Stanton Dep.) at 123 – 167. Dr. Stanton also provided additional testimony during his deposition regarding Hy-Vee, and Roche Brothers. JX 19 at 74-75.

192. During the closing, Mr. Bloom also failed to mention that Dr. Stanton testified that he had reviewed the deposition testimony from officials from ████ and ████ and he had reviewed information from the Organic Trade Association, Hartman Group, A.C. Nielsen, numerous articles, as well as public information from Whole Foods and Wild Oats. JX 19 (Stanton Dep.) at 67-68, 69, 70, 73, 136.

193. The information and conclusions in Dr. Stanton's report remain uncontested by the Federal Trade Commission.

**L.     The Cross-Sectional Analysis of Whole Foods' Margins in Whole Foods "Markets" vs. Whole Foods-Wild Oats "Markets" Does Not Yield a Meaningful Result**

194. Dr. Murphy studied Whole Foods' store-wide margins in supposed "monopoly" markets vs. competitive "markets" to test whether Whole Foods' margins were higher in "monopoly" markets than in "competitive" markets. Dr. Murphy's test yielded a result that was not statistically significantly different from zero at the five percent level. 7/31 Hearing Tr. at 79-80. Dr. Murphy's study in this regard was testing the same question Dr. Scheffman examined with his price study – was there a difference in price (inferred by Dr. Murphy from margin data) in markets where Whole Foods faced no other PNOS competition than in markets where there

was other PNOS competition. Both experts came up with the same result – neither was able to identify a statistically significant difference in price in the so-called "monopoly markets."

195.    In most scientific work, the level of statistical significance required to obtain a statistically significant result is 5 percent. 7/31 Hearing Tr. at 80. In other words, at the level of confidence recognized by the Federal Judicial Center in its Reference Guide on Multiple Regression as typically required to obtain a statistically significant result, Dr. Murphy found that Whole Foods' margins were no different in "monopoly" markets than in "competitive" markets.

196.    Dr. Murphy also compared the difference in Whole Foods' margins at the department level. Of 9 departments he examined, results in 7 were not statistically significant at the 5 percent level. Dr. Murphy did obtain statistically significant results in two departments, produce and seafood. 7/31 Hearing Tr. at 86-88.

197.    Produce sold at premium and organic supermarkets is not, and is not alleged to be, a separate relevant product market. 7/31 Hearing Tr. at 87.

198.    Seafood sold at a premium natural and organic store is not, and is not alleged to be, a separate relevant product market. 7/31 Hearing Tr. at 87.

199.    It would be misleading to do a product-by-product analysis for market definition because consumers do not choose retailers on a product-by-product basis. Murphy Report ¶97; 7/31 Hearing Tr. at 87-88.

**M.    Exit Events**

200.    Dr. Murphy did not study the effect of any Wild Oats exit events on Whole Foods prices.. 7/31 Hearing Tr. at 35, 42-43, 54, 91-93; JX 26 at 239.

III.   **THE GOVERNMENT HAS FAILED TO PROPERLY DEFINE ANY RELEVANT GEOGRAPHIC MARKETS**

A.   **The FTC's shifting positions (at least six different positions) undermines its credibility about the geographic markets alleged.**

201.   The FTC has taken at least six different positions on the scope of the relevant product markets. First, in the Complaint, it alleged that 25 markets faced harm to direct competition, and that in another 7 potential competition allegedly would be harmed. Complaint ¶¶ 38, 40. The FTC alleged two different definitions: that each market could be as small as approximately five to six miles in radius around each premium natural and organic supermarket, or as large as a metropolitan area. The FTC offered no guidance about which definition applied under which circumstances, although the metropolitan definition was, for most cities, an order of magnitude larger than the radius measure.

202.   In initial responses to interrogatories, the FTC alleged for the first time that the markets were the "overlapping draw areas" of Whole Foods and Wild Oats. It continued to define a draw area as the area within a five-to-six mile radius of the stores but added an alternative measure, the area within a 16-minute drive of one of the party's stores. It continued to mention a larger area, now described as a Metropolitan Statistical Area, as an alternative. DX 550.

203.   In its second supplemental responses to the interrogatories, the FTC introduced two new geographic market concepts. For the first time asserted that it did not have to prove relevant geographic markets at all. It also modified the overlap area description to include "all or part of" the draw area for each of two overlapping stores. It continued to allege a radius of five to six miles or a 16-minute drive as a draw area, and, in the alternative, to allege metropolitan

statistical areas. It alleged 18 direct competition markets and 8 potential competition markets. DX 552.

204.    Finally, in response to an order from the Court on July 12, 2007, requiring more specificity in its geographic market contentions, the FTC alleged draw areas of a six miles and a 16-minute drive around each store, with no variation for overlaps or geographic or demographic circumstances. It alleged 18 direct competition markets, although not the same 18 previously named, and 7 potential competition markets. DX 553.

205.    In its reply brief, the FTC revived its overlap theory. It cited its expert, Dr. Murphy, for the proposition that the competitive effects of the merger will be felt in the areas of "meaningful overlap" FTC Response Br. at 17.

206.    The FTC's positions on geographic market definition have been constantly shifting and frequently inconsistent with one another.

**B.    The FTC has failed to properly define geographic market.**

207.    The FTC did not consider any factors other than distance and driving time in defining its geographic markets. DX 553.

208.    The FTC drew simple circles, reflecting a radius of six miles, around each store of the merging parties to delineate its proposed geographic markets. It also asserts as an alternative market definition the area within a 16-minute drive of each store. DX 553.

209.    The FTC's alternative market definitions are at variance with each other. Because of local variations in traffic and geography, the 16-minute driving distances in each direction from a store are highly unlikely to be equal, and, if plotted on a map, are highly unlikely to produce an even circle at any distance around the store.

63

210.    The FTC offered no evidence about which of its geographic market definitions would apply in any particular market alleged, or what factors would determine the applicability of one definition or the other.

211.    In defining geographic markets in this way, the FTC failed to consider myriad other factors, such as traffic, demographics, locations of other supermarkets, projected population growth, and geography, all factors that would likely limit or expand the store's draw in various directions. Whole Foods considers these factors and more in siting its stores. *E.g.*, DX 171, 183, 514.

212.    The FTC offered no evidence, beyond its 6-mile circles, relating to the draw areas of stores in any of the particular geographic markets it alleged.

1.    Whole Foods measures a new store's potential reach a number of different ways.

213.    Whole Foods considers multiple factors in siting a new store, and selects those most appropriate to the particular site under review. It considers, *e.g.*, ████████████ ████████████████████████████ DX 171 at 8; the ██████████████ ██ DX 183 at 8████████████████████████████ DX 104 at 10 and DX 184 at 11; ████████████████ DX 239, DX 125 at 8; ████████████ DX 183 at 9; ██████ DX 514, DX 177 at 7; and ████████████████ DX 171 at 13-14, 21, DX 187 at 32.

214.    The factors relied upon by Whole Foods vary according to the local market and the specifics of the individual site. DX 171, 183, 514

215.    Even the site survey relied upon by the FTC for its 16-minute drive approach also illustrated a three-mile and a ten-mile radius around the store. Ex. 58 (PX 186); FTC Corrected Br. at 47.

2. Projections of sales of a new store, and where those sales come from, do not conform neatly to a circle.

216. Draw areas are often oddly shaped. *See e.g.*, DX 144 at 14-16; Allshouse Decl. ¶ 14. For example, at a proposed store in ███████, the projected draw area was "wedge-shaped." DX 177 at 5.

a. Local factors matter in determining geographic contours of competition.

217. A█████████████████████████████████████████████████████ " affecting a site's draw. DX 104 at 12.

218. █████████████, on the other hand, can draw in customers from a greater distance. Meyer Decl. ¶ 6.

219. █████████████, on the other hand, can draw in customers from a greater distance. Meyer Decl. ¶ 6.

b. Draw areas vary.

220. Some stores near rural areas draw from a considerable distance. DX 171 at 20-21.

221. Some stores in congested areas draw from a relatively small area. Allshouse Decl. ¶ 14.

222. Natural features, such as a river or lake, affect draw as well. DX 159 at 21.

223. Demographics also affect draw areas, more than █████████████ in one direction as opposed to others. DX 160 at 5.

c. Draw areas reflect current market conditions, not what customers would do in the event of a price increase.

224. Spotting surveys conducted at Whole Foods' █████████ store show that about ███ of customers come from a radius of 10-15 miles. Lannon Decl. ¶ 10.

65

225.    Spotting surveys at Whole Foods' ███████████, store show that ████
customers come from within a ██-minute drive.  Lannon Decl. ¶ 23.  Some of that store's
customers drive in from rural ████ to shop.  *Id.*

226.    Spotting surveys at Whole Foods' ███████████ show that ████ of the
customers are come from an area within a ██-minute drive.  Meyer Decl. ¶ 6.

227.    Whole Foods' spotting surveys reflect current customer draw.  Meyer Decl. ¶ 6;
Lannon Decl. ¶¶ 10, 23.  They do not address what customers would do in the event of a price
increase.

228.    The FTC has failed to establish that Metropolitan Statistical Areas, which are
defined in terms of overall commercial activity around an urban area, accurately delineate
relevant geographic markets for supermarkets.

## IV.    THE MERGER WILL NOT HARM COMPETITION

### A.    The FTC's proposed market definition implies that monopoly pricing already plagues the country.

229.    Whole Foods stores in cities where Wild Oats is not present charge the same
prices, and offer the same ambience, as Whole Foods stores elsewhere where there are Wild Oats
stores.  For example, the prices and ambience of Whole Foods Washington, D.C., stores, where
there are no Wild Oats stores, are the same as the prices and ambience of Whole Foods stores in
Boston, where there are a number of Wild Oats stores.  Gallo Decl. ¶ 29.

230.    Dr. Scheffman's cross-sectional pricing analysis confirms that neither firm
systematically charges higher prices in areas where it does not compete with the other.
Scheffman Report ¶¶ 314, 323-26; Scheffman Rebuttal Report ¶ 60.

231.    The seven markets where the FTC alleges potential competition will be harmed
are in cities where today, only one of the merging parties operates a store.  The FTC has not

shown that any of those markets suffers from monopoly conditions today – significantly higher prices or significantly lower quality – than in markets in which both merging firms compete today.

**B.    There is no evidence that the number of premium natural or organic supermarkets in a particular area affects market pricing.**

232.    The parties' economist experts agree on one fundamental point - there is no statistically significant difference between Whole Foods' prices in "monopoly" markets and in "competitive" markets.

      1.    Dr. Scheffman's cross-sectional pricing analysis and the testimony of supermarket operators confirms that Whole Foods and Wild Oats do not price in response to one another.

233.    Whole Foods and Wild Oats pricing practices do not differ based on the presence or absence of other PNOS in the area. Scheffman Report ¶ 291. Rather, both companies generally price based on relatively broad geographic areas. Scheffman Report ¶ 286. JX 9 at 98 (Megahan Dep.); JX 38 at 71-73 (Smith I.H.); JX 37 at 35-36 (Odak I.H.).

234.    Pricing for most products at Whole Foods is determined at the regional level rather than at the store level. Scheffman Report ¶ 289. JX 1 at 209-10 (Gallo dep.) Whole Foods prices are put into a computer system at the various regional headquarters and downloaded to individual stores. JX 18 at 191 (Scheffman Dep.)

235.    Whole Foods does not have price zones that depend on whether a Whole Foods store is competing with a Wild Oats store. Scheffman Report ¶ 289. Gallo Decl. 1 ¶ 29 ("Whole Foods follows the same general pricing policies or strategies in areas where WO operates as it does in areas where they do not.")

236.    Promotions at Whole Foods are primarily done at the regional and national level. JX 8 at 182 (Lannon Dep.) Regional promotions supplement national promotions. Scheffman

Report ¶ 289.  Promotions that do not require a coupon are reflected in the price charged at the register.  7/31 Hearing at 37.  Whole Foods does very little couponing, which is reflected in the company's profit and loss statements at the store level where the amount of such promotions show up in a line item.  7/31 Hearing at 37-38.

237.    Wild Oats' general approach to pricing at a store is to use  at the store level.  Generally, ██████████ ████████████████████████████████████████████████.  Wild Oats stores are supplied by wholesalers who ████████████ to the Wild Oats stores.  Different wholesalers supply different product categories, and for some products different wholesalers supply different Wild Oats stores.  Wild Oats ███████████████ prices with wholesalers.  These prices may vary for different geographic groupings of stores, even when a wholesaler is supplying all, or nearly all of Wild Oats stores.  Scheffman Report ¶ 290.  Mays Decl. ¶ 25; JX 15 at 147-148; (Mays Dep.) JX 38 at 64-65, 71-77 (Smith I.H.); JX 134 at 180-81 (Martin I.H.).  JX 13 at 73-75 (Davidson Dep.)

238.    Wild Oats promotions are generally determined ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████.  Scheffman Report ¶ 290.  JX 38 at 75 (Smith I.H.)

239.    Dr. Scheffman's cross-sectional pricing analyses study whether prices are higher in areas without PNOS competition than elsewhere and whether prices are affected by the level of PNOS competition.  Scheffman Report ¶ 299.  Since Whole Foods prices at the regional level, Dr. Scheffman's analysis examines price variation within each Whole Foods region.  Scheffman Report ¶ 306.  To determine the degree of variation in prices, Dr. Scheffman's analyses consider

68

all UPCs ("universal product code," which is the unique identifier for each stock keeping unit (SKU) sold and read by the supermarket scanner) sold in the region under consideration.

240.    Dr. Scheffman's pricing analysis compares actual "in the register" prices for June 9, 2007, for all items carried in multiple Whole Foods and Wild Oats stores within a region. Scheffman Report ¶ 298. "In the register" prices are those that are already programmed into the scanner system. *Id.* Whole Foods does not preserve register data due to storage capacity constraints. JX 18 at 189 (Scheffman Dep.); 7/31 Hearing Tr. at 43. This is not uncommon. For example, Dr. Scheffman has twice recently submitted merger analyses in unrelated cases to the FTC in which he conducted the same sort of analysis using only a single day of data. JX 18 at 193-94 (Scheffman Dep.). A "snapshot" of prices, rather than a time series, an appropriate analysis, since the objective was to determine whether prices are merger in monopoly regions. Scheffman Report ¶¶ 297-298.

241.    Dr. Scheffman found that a very small percentage of Whole Foods UPCs are not priced uniformly across stores within each Whole Foods region. Scheffman Report ¶¶ 307-08. Wild Oats has a higher percentage of ████████████████████████████████████████████ ██████. Scheffman Report ¶ 319. This result is not surprising, since ████████████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████ for some products. *Id.* Nevertheless, over ██████ of products at Wild Oats stores are priced the same throughout an operating region for Wild Oats.

242.    Dr. Scheffman's analysis of price variation at the store level examines the extent to which the prices of each Whole Foods and Wild Oats store deviate from the regional average. Scheffman Report ¶ 301. Dr. Scheffman's analysis first determines the number of UPCs sold at a specific store that have prices different from the region price (*i.e.*, the most common price in

the region), then examined whether this fraction of prices that differ from the region price varies systematically with the presence of Wild Oats or other PNOS competition. *Id.* Next, he calculated the percentage of revenues associated with being different (on average) from the region price; this in essence shows the overall revenue gain or loss associated with being different from the regional price. *Id.*

243.    Table 3-111-2 of Dr. Scheffman's report provides Whole Foods information at the store level as to the percentage of UPCs that differ from the regional price and the weighted average difference between the store's price, and the regional price. Scheffman Report ¶ 309. Table 3-III-10 provides similar information for Wild Oats stores. Scheffman Report ¶ 320. Each store in color means is in an area overlap between Whole Foods and Wild Oats. Scheffman Report ¶ 310.

244.    The results of Dr. Scheffman's analyses of actual prices show that there is no systematic pattern in pricing among Whole Foods and Wild Oats stores based on the presence or absence of PNOS competition. Scheffman Report ¶ 288. Whole Foods stores with and without PNOS competition have a low fraction of prices that differ from the regional mean, and the distribution does not differ significantly between overlap and non-overlap stores. Scheffman Report ¶ 312.

245.    Actual prices are consistent with the described practices for the two companies – prices are generally common across broad areas, and any differences are not systematically related on the presence or absence of competition with each other or other PNOS. Scheffman Report ¶¶ 312 and 323. Prices are not lower in areas in which Whole Foods and Wild Oats compete with one another or with other PNOS than in areas where Whole Foods or Wild Oats are PNOS monopolists. Scheffman Report ¶¶ 314 and 325.

246.    The absence of a price differential denies the FTC's theory of competitive effects. Scheffman Report ¶ 288.

> 2.    Whole Foods' inability to raise prices in Ft. Collins, CO after Wild Oats exited substantiates the existence of considerable competition from other sources.

247.    William Paradise, Whole Foods Regional President for the Rocky Mountain Region, which covers Ft. Collins, explained that Wild Oats' prices ███████████████ Whole Foods. For this reason, Wild Oats' prices do not constrain Whole Foods' prices. Paradise Decl. ¶¶ 22, 30, 49, 66.

248.    After Wild Oats closed its Ft. Collins store in December 2006, the Whole Foods store experienced no increase in gross margins. JX 31 at 240 (Paradise I.H.). Whole Foods only gained ██████████ in sales per week after the Wild Oats Ft. Collins store closed, which was much less than Whole Foods expected. JX 31 at 239-240 (Paradise I.H.).

249.    Under the FTC's theory, Whole Foods should have been able to raise prices after the Wild Oats Fort Collins store closed. Whole Foods did not and could not raise prices after Wild Oats' store closed because of competition with King Soopers, Vitamin Cottage, and multiple Safeway stores in Ft. Collins. JX 31 at 240 (Paradise I.H.). In fact, after Wild Oats closed its store, instead of sitting back, Whole Foods implemented customer service improvements, improved in-store signage, and refocused efforts on promoting local products. DX 369; Paradise Decl. ¶ 52.

**C.    Wild Oats is not a unique constraint on Whole Foods. Wild Oats' prices ███ ██████████ Whole Foods' prices.**

250.    Wild Oats prices ████████████████████████. Roger Davidson, Senior Vice-President of Marketing and Merchandising for Wild Oats, explained that

██████████████████████████████████████████████████████████ JX 13 at
56-57, 60-61, 111-12 (Davidson Dep.).

251.   Market research commissioned by Wild Oats revealed that the ████████
██████████████████████████████████████████ since January 2003.
DX 572; *see also* DX 570 (showing that ████████████████████████████████
████████████████).

252.   Wild Oats' documents confirm that its prices ████████████████████
██████ at different points in time.  For example, Wild Oats found that Whole Foods' prices were
████████████████████████ Whole Foods private label products are priced as much as
████████████████ Wild Oats products.  DX 487 (noting that Wild Oats simply does "not
have enough competitive advantages ████████████████████████████████
████).

253.   Wild Oats price checking also demonstrate that Wild Oats ████████████
████████████████.  A September 2006 price check of 400 SKUs revealed that Wild
Oats' pricing was ██████████████████████████████████████████████████
██████.  DX 490.

254.   A Wild Oats November 2006 price check comparing prices for 400 top items at
the Wild Oats' store in Superior, CO to those at Whole Foods' Boulder, CO revealed that Wild
Oats was ████████████████ than Whole Foods.  DX 488.

255.   A Wild Oats January 2007 price analysis of 42 items in the Northeast showed that
Whole Foods prices were ████████████████ Wild Oats' prices.  ████████████████████
████████████████████████."  DX 491.

256.   ████████████████████████████████████████████████
██████████████████████████████████████████████

72

 DX 491.  Wild Oats

estimated that it would need to reduce costs by about ███████ to achieve ████████

with Whole Foods.  DX 580.

257.    Whole Foods' market research confirms this point.  In October 2004, the NMI

Institute reported that, based on both shopping frequency and private label brand usage, "Wild

Oats seems to have little effect on [Whole Foods]." DX 240 at 8.

258.    Whole Foods' price-checking also confirms that Wild Oats ███████████

Whole Foods.  A.C. Gallo, Co-President and Chief Operating Officer, in considering messages

about the merger, explained to all Whole Foods regional presidents that:

> "[W]e could use the merger with WO to tell some of our stories one of
> which could be we have great prices.  The concern in any merger is that
> prices may go up in acquired stores. *In fact, we know that WOs prices* ███
> ███████ *and we will be bringing down quite a few prices*.  We
> could use this opportunity to shout out either on a local, regional or
> national basis our great prices."

DX 58 (emphasis added).

259.    In the North Atlantic, Whole Foods does not even price-check Wild Oats stores

regularly ████████████████████.  David Lannon, Regional President for the

North Atlantic Region for Whole Foods, explained that Whole Foods does not "find it necessary

to price against Wild Oats, because Wild Oats' prices in Portland [ME], as in areas throughout

my region, are ████████████████████" Lannon Decl. ¶ 24; *see also*

DX 502 (noting that "it is not about Wild Oats any more"); Lannon Decl. ¶ 25 (████████

████████████████████████████████████

████████████████████ The North Atlantic stores have

"never targeted a Wild Oats [store]" and no store has "ever requested to do so.") Lannon Decl.

¶ 14.

260.    Wild Oats is also ███████████████ Mid-Atlantic region.  Meyer
Decl. ¶ 13.  Kenneth Meyer, the Mid-Atlantic Regional President for Whole Foods explained
that "our true competition on price and other factors is the multitude of other grocery retailers in
those areas – and not Wild Oats." Meyer Decl. ¶ 13.

261.    Whole Foods' Midwest region no longer systematically price checks Wild Oats
on a monthly basis as it does for ██████ and other supermarkets.  Whole Foods determined
that it was unnecessary to regularly check Wild Oats' prices in the Midwest region because Wild
Oats ██████████████████████████████████████████████████
Bradley Decl. ¶ 13; JX 6 at 74 (Bradley Dep.).

262.    In the Southern Pacific region, Wild Oats has little effect on Whole Foods' prices
because Wild Oats' ████████████████████████████████████
██████████.  Besancon Decl. ¶ 24.  Because historical price checking confirms that ████
████████████████████████████, Whole Foods benchmarks
other supermarkets and ██████ to determine its own prices.  Besancon Decl. ¶ 38.

263.    In the Rocky Mountain region, Wild Oats has minimal impact on Whole Foods
since its ████████████████████████████████████████.
Paradise Decl. ¶ 22.  Wild Oats rarely make capital improvements and are therefore not as strong
a competitor to Whole Foods as other supermarkets and ██████. *Id.*

**D.    Other Supermarkets will continue to constrain Whole Foods post-merger.**

1.    Economic evidence demonstrates that Whole Foods is constrained by other supermarkets.

2.    Other supermarkets have advantages over Whole Foods in size, scope, and distribution, which will continue to exert pressure on Whole Foods.

264.    A number of supermarket competitors have superior warehousing capabilities, distribution systems, size and scale compared to both Whole Foods and Wild Oats, and are therefore able to purchase products (including natural and organic products) in a more efficient and cost-effective manner.  JX 28 at 103 (Mackey I.H.).

265.    For instance, ███████████ regularly sells products directly to some of its larger customers, such as ████████████████████████████████████████ ████████████████ These customers are able to take large volumes directly from the manufacturer without the need to go to purchase through a distributor. ████████████ ████████████████████████████████████████████ ████████████████████████

266.    Retailers with their own warehousing and distribution capabilities, such as Kroger, Safeway, Wal-Mart, Costco, etc., are "very efficient in distributing products" and "tend to take lower margins" than firms that purchase through a third-party distributor. ██████████ ████████████████

267.    Unlike some of its more efficient competitors, Whole Foods purchases through a distributor and its costs tend to be higher: "The anomaly of Whole Foods is a preponderance of the products that I ship to Whole Foods go through a distributor, who also takes a markup on those products.  So to the consumer, the price of my products would tend to be a little higher in a Whole Foods than in a Kroger, Safeway, or a Wal-Mart." ████████████████████

75

3.          **Whole Foods and Wild Oats face more intense competition than at any other time.**

268.     Competition from other supermarkets is more intense than ever, as supermarkets have improved operations and have increased offerings of natural and organic products. DX 1 (June 2006 e-mail from Whole Foods Co-President and Chief Operating Officer containing thoughts on competition, stating that "[t]his is a time of unprecedented competition for us. . . .We are currently getting hit from many different directions in each market."); DX 3 ("After a total slump by the supermarket industry over the past 5 years, we are seeing a comeback by the survivors. Safeway, Giant Eagle, Giant, Stop & Shop, Harris Teeter, Food Lion, Publix are all opening stores lots of new stores and remodeling existing ones on the East Coast. Every time they open a new store or remodel an existing one with better perishables and natural foods we are hit."); Robb Decl. ¶ 6; JX 28 at 32-33, 240, 272 (Mackey I.H.); Gallo Decl ¶ 18; *supra* Section II.D.

**E.     Other food retailers will continue to take sales from Whole Foods and Wild Oats.**

1.     ████████ offers price and non-price competition, including an eclectic product mix and high quality products.

269.     Despite its smaller size, ████████████ competes vigorously with Whole Foods nationwide. *See e.g.,* DX 276 (October 2006 e-mail from Mackey explaining that "[t]his is exactly the 'war' that I have wanted with ████ Take the gloves off in ████ and put up our own comparisons in our stores —making sure to show lots of products that they don't sell that we do."). Entry by ████████ significantly impacts Whole Foods' market share. DX 209 at 6 (noting that ████████ is targeting Whole Foods stores, which is causing Whole Foods to lose market share to ████████ even where Whole Foods is already aggressively pricing); DX 204 at 3. (████ continues to take some market share away from [Whole Foods] . . . . I [John

76

Mackey] expect them to continue to aggressively expand throughout the United States and expect that within 10 years all of our stores will have to compete head to head with them."); DX 738 (noting that Whole Foods has a ██████████ where it encounters ███).

270.    Whole Foods developed a corporate strategy to specifically compete with █████ ████ DX 292 (noting that Whole Foods needs a strategy to "stop or minimize the loss of business that we have been experiencing whenever ████████ opens near our stores"); DX 508 (explaining process for selecting items and providing list of them for Known Value Items list); DX 510 (explaining that price competition with ██████████ ensures competitive prices against competing because ████████ has such low prices).

271.    Whole Foods decided to ██████████████ to retain sales and combat the perception that ████████████. DX 27 (noting that Whole Foods' strategy is to ██████████████████); DX 29 (Private Label "365" band priced to mach or beast ████████ private label products); DX 252 (example of national comp shop against ██████ in December 2005); DX 97 (national comp shop against ████████); DX 251 (compares Whole Foods regular and organic private label products systematically against ██████████; DX 285; DX 419 (the ████████ institutes price-matching against ████████; *see also* DX 251 (National comp shop against ████████ for organic and private label products), DX 262 (e-mail from Gallo explaining that competition with ████████ necessitated a price matching strategy); DX 425 (e-mail discussing need to match ████████ prices in ██████); DX 420 (████████████); DX 405 (e-mail discussing need to match ████████ prices in ██████); DX 407 (analysis of impact of ████████ openings in ████████, and ████████, on nearby Whole Foods); DX 219 (████ region).

77

272.    This competition is manifested, in part, in the way Whole Foods prices its private label products to compete with ████████.  Whole Foods private label faces significant competition from ██████.  DX 27 (because Whole Foods private label acts as the "entry point for crossover shoppers," it faces competition from ████████ and supermarket brands.); DX 275 (Whole Foods private label are priced to counter competition from ████████); DX 431 (pricing private label products against ████████ ensures competitiveness against other competitors); DX 430 (pricing private label to counter ███); DX 29 (describing strategy to ████████████ on private label products); DX 71 (████████); DX 69 (████ ███); DX 433.  Boardman Decl. ¶ 4, 5, 16, 17.

273.    For example, throughout the East Coast, ████████ has engaged Whole Foods by posting signs with direct Whole Foods / ████████ register receipt comparisons.  Whole Foods required all of its stores to post responsive signs targeting ████████ monitor ████████ ████ pricing weekly, and change signs and lower Whole Foods prices if ████████ lowered its prices.  Meyer Decl. ¶¶ 24, 32; JX 10 at 61-63 (Meyer Dep.); DX 75 (describing regional plan to combat ████████); DX 76 (████████████████ and competitive advertising); DX 91 (describing competition with ███ in ████████).

274.    In the ████████, Whole Foods has experienced lower gross margins because prices have been reduced to compete with ████████.  DX 242.

    2.    Tesco, a new class of competitor, will redefine the sale of high-quality perishables.

275.    Imminent entry by Tesco into the United States market under the banner "Fresh & Easy") will challenge all supermarkets in the sale of high quality perishables.  ████████
█████████████████████████████████████████████████████████
███████████████████████████████████████

78

██████████████████████████████████████

██████; DX 39 (discussing threat posed by Tesco); DX 272 (newspaper article reporting

Tesco's entry into U.S.); DX 536 (trade article reporting that the supermarkets are concerned

about Tesco's entry); DX 537 (L.A. Times article reporting Tesco's entry and its positive impact

on competition). Published reports indicate that Tesco's format will be between Trader Joe's and

Whole Foods because it will offer similar products at lower prices in convenient, neighborhood

stores. Besancon Decl. ¶ 25-27; DX 536; DX 537.

276.    High level Whole Foods executives have analyzed the likely effect of Tesco and

concluded that Tesco will invigorate competition (Co-President and Chief Operating Officer

Walter Robb noted that the entry of Tesco may "fundamentally alter the food retailing landscape

in this country."). DX 238; *see also* DX 217 (analyzing a preliminary list of over thirty Tesco

store locations). Although Whole Foods typically has "A" real estate sites, ████████████

████████████████████████████████████. Mays Decl. ¶ 22; DX 489; DX 583.

3.    Mass merchandisers like Costco have focused on selling high-velocity
natural and organic foods, which is attracting Whole Foods consumers.

277.    Costco, a mass merchandiser / club store, has also expanded the roster of natural

and organic products it carries. DX 7 at 1 ("[T]he days of waiting for new vendors and new

products to come to [Whole Foods] first are over. Costco and Safeway are changing that

landscape forever."); DX 372 (Costco is enlarging its organic offering to compete specifically

against Whole Foods). Thus, Whole Foods has been forced to price check Costco. *See e.g.*, *id.*

(Whole Foods comp shop of Costco in the Rocky Mountain region).

278.    For Whole Foods, the "new era of competition" includes mass merchandisers and

Wal-Mart. DX 370 (Whole Foods Regional Presidents are apprised of the contours of the "new

era of competition," which includes Costco, Wal-Mart, and Trader Joe's in addition to

conventional supermarkets); *see also* DX 748 at 3 (noting that "[t]he brands that [Whole Foods] has grown up with and developed over the years are now conventional brands you find integrated in Costco, Wal-Mart, and HEB."); DX 8 at 14 (counting club stores such as BJ's and Costco and mass market stores like Target and Wal-Mart among its competitors); DX 97 (suggesting corporate strategy to compete with Costco).

279.    In focusing on the prices of its competition, Whole Foods has formally added ███ to its list of competitors to comp shop. DX 14 ("It would be terrific education to see the prices of ███████ WFMI██████ Oats███████████. Whole Foods tries to █████ against ███████████ where possible, which is virtually impossible given these competitors' lower cost structure. DX 255 (Mass merchandisers use same vendors for some items but get better prices); DX 268 (difficulty of matching ████ on ██████████ due to █████ lower distribution costs); DX 293 (comp shop against ████ in ██████████ region).



280.    Customers are cross-shopping between Whole Foods and mass merchandisers like Costco and Wal-Mart. Even frequent Whole Foods customers split purchases between Whole Foods and other stores such as Safeway, Costco, and Wal-Mart, and Trader Joe's. DX 15 at 15.

F.    ████████████████████

281.    ████████████████████████



282.     Wild Oats' current management recognizes that ███████████████

283.     Third parties recognize that Wild Oats is far from a powerful influence in the

industry. ████████████████████ (explaining that Wild Oats ████████████

284.     In many areas, Wild Oats is viewed ████████████████████



1.

285.

Wild Oats has had cumulative income net losses of $102 million in the last six years; $53 million of this was incurred in the last three years. These net losses amount to approximately $3.50 per share. Mays Decl. ¶ 5; DX 494 (2006 Wild Oats 10-K).

286.

While organic foods has grown at about 15-20% per year in the last five years, Wild Oats sales have grown significantly lower (between 2.9 and 8.1 growth).

287.   Wild Oats has had a working capital deficit in each of the last five years. DX 494 at 14.

288.

289.   Perry Odak was hired, in part, by Wild Oats to sell the company, but he failed. JX 28 at 66, 83 (Mackey I.H.) ("if you look at that guy's track record, every company he has

82

ever worked for he has sold.  He was brought in to sell Wild Oats.  Obviously they weren't able to do it or else they would have already been sold").



2. ██████████████████████████

290. ████████████████████████████████

███████████████████████████████████

█████████████████████████████

291. ████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████.

292. ███████████████████████████████

███████████████████████████████████

████████████████████████████████

293.    The Wild Oats Board decided not to renew Perry Odak's employment contract in 2006 ████████████████████████████████

██████████████████████.

294. ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████

295. 

3.

296.

297.    Wild Oats closed more stores than it opened during Odak's tenure as CEO, DX

807 (Wild Oats Response to Spec. 2 of FTC Second Request).

298.

299.

300.    Wild Oats hired Cheri Zeeb to serve as the VP of Real Estate (in October 2006) to create a real estate department and strategy for Wild Oats.  JX 17 at 7-8 (Zeeb Dep.).



301.

302.

4.

303.

304.



305. ████████████████████████████████████████

5.    Its new prototype store in Boulder, CO ████████████

306. ████████████████████████████████████████

307. ████████████████████████████████████████

308. ████████████████████████████████████████

309. ████████████████████████████████████████





315.

6.

316.

317.



318.

319.

320.

321.

██████████████████████████████████████████████████████

███████████████████████████████

322.    ███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████

**G.    Whole Foods invests in store improvements and renovations.**

323.    Whole Foods has a history of acquiring struggling stores, improving store operations, increasing sales volume and making them profitable.  For example, in 1996, it purchased Fresh Fields Markets, a company that had lost approximately ████████ during its history and had never earned a profit.  Whole Foods paid approximately ███████, and applied its skills, resources and capital to make the stores successful.  Sud Decl. ¶ 34.

324.    Whole Foods expects to do the same for the Wild Oats stores.  Sud Decl. ¶ 34.  In the past, it acquired Wild Oats stores that had been closed in Framingham, MA and Madison, NJ.  It is reasonable to conclude that Wild Oats closed the stores because they were not financially successful.  Whole Foods applied its skill and capital., and the stores have become successful.  Sud Decl. ¶ 34.

325.    Whole Foods' success in improving stores acquired from weakened companies has also been observed by suppliers.  ████████████████████████████████████████ ██████████████████████████████████████████████████████

90

326.    Suppliers expect that Whole Foods will similarly improve Wild Oats stores, which will enhance competition. ████████████████████████████

327.    ████████████████████████████████████████

328.    Third parties recognize that Whole Foods will increase sales at Wild Oats stores.

91

1.     Whole Foods has a comprehensive program to provide capital to stores.

329.



2.     It invests in store improvements in response to all competitors, including Safeway, Trader Joe's and Ralph's Fresh Fare. There is no evidence that investments depend on the presence of Wild Oats.

330.    Whole Foods spent approximately ▮▮▮▮ remodeling its ▮▮▮▮ store in response to a new ▮▮▮▮▮▮ and is planning an even larger expansion at the ▮▮▮ store. ▮▮▮▮▮

331.    Whole Foods remodeled its ▮▮▮▮▮▮ store in response to competition from ▮▮▮▮▮▮, not Wild Oats. ▮▮▮▮▮



332.    Whole Foods doubled the size of its store in ▮▮▮▮▮ in response to a planned ▮▮▮▮ store that ▮▮▮ is opening. ▮▮▮▮▮

333.    Whole Foods remodeled its ▮▮▮▮▮ store in response to competition from ▮▮▮▮▮▮▮▮

334.    Whole Foods remodeled its stores in ▮▮▮▮ and ▮▮▮ in response to openings by ▮▮▮▮▮▮▮

335.    Whole Foods is planning a major renovation of its store in ████████████ in response to a new ████████ store. ████████████

    3.    The FTC has no basis to conclude that non-price competition will be reduced by the merger.

**H.    The merger will not harm competition in any alleged geographic area.**

    1.    Albuquerque, NM

336.    Whole Foods examined the competitive landscape of Albuquerque, NM in a 2000 site study.  NM.  DX 633 at 5-8, 28-39.  As part of its review, Whole Foods estimated every competitor's share of total area sales, including ████████, which operated █ area supermarkets with about ████████████, which operated █ supermarkets with a ████████ ████████, which operated █ supermarkets with about ████████████which operated ████ █ supermarkets with about ████████Wild Oats, which operated 3 supermarkets with about ████████████, which operated █ supermarket with about ████████████████, which operated █ supermarket with estimated about ████████████████

337.    Today, Whole Foods has one store and Wild Oats has three stores in Albuquerque, NM.  Scheffman Report, Appendix F ¶ 3.  Wild Oats and Whole Foods face substantial competition in Albuquerque from many stores, including Albertsons, Smith's, Raley's, Lowes,  Trader Joe's, Vitamin Cottage, Sunflower Market, Price Rite and Wal-Mart.  Scheffman Report, Appendix F ¶ 6.  Whole Foods also faces competition from John Brooks Supermarket and others.  Robb Decl. ¶ 33.

338.    Whole Foods regularly comp shops ████████████████ ████Wild Oats and others in Albuquerque to ensure prices at its stores remain competitive with the prices charged by other supermarkets.  Paradise Decl. ¶¶ 25-28; JX 11 at 113 (Paradise Dep.)

(describing practice of visiting each competitor); *see also* DX 301 (comp shop chart for ████)

████████████████████████████████████████████████

339.    Raley's stores in Albuquerque carry organic and natural products in numerous departments, including meat, produce, grocery, vitamins and baked goods. Paradise Decl. ¶¶ 25, 27 (noting that Raley's natural foods departments is "like a store within a store"); *see* DX 483 (Raley's website).  Raley's stores carry a large selection of natural and organic products – up to 100 organic produce products or more, depending on the season.  Paradise Decl. ¶ 27; *see* Scheffman Report, Appendix F ¶ 11; DX 483.

340.    Smith's, owned by Kroger, offers a variety of natural and organic products that compete with Whole Foods products, including produce, eggs, dairy, cereal and frozen foods. Paradise Decl. ¶ 28; *see* Scheffman Report, Appendix F ¶ 9.

341.    Wild Oats tracks the competitive activity of many supermarkets and food retailers in Albuquerque.  When Sunflower Market, owned by Mike Gilliland, opened in Albuquerque, ████

████████████████████████████████████████   JX 33

at 151, 191 (Coblentz I.H.).

342.    Whole Foods competes intensely with Trader Joe's in Albuquerque.  Paradise Decl. ¶ 18.  Trader Joe's sells many products similar to Whole Foods, including extensive natural and organic products.  Paradise Decl. ¶ 18.

343.    Whole Foods remodeled the Albuquerque store in response to Trader Joe's opening in March 2006, which required the expenditure of ████████████████████████

████████████████████████████████████████████

████████████████████████.  DX 357; Paradise Decl. ¶ 29; DX 385 (indicating entry by ████████ was the catalyst to Whole Foods' efforts to remodel and reduce prices in

94

Albuquerque); Paradise Decl. ¶¶ 12, 29; JX 31 at 201 (Paradise I.H.) (noting that Whole Foods spent

about ▮▮▮▮ to remodel its Albuquerque store immediately.

344.    In addition, Whole Foods adopted a competitive pricing strategy in anticipation of

the ▮▮▮▮▮ opening in Albuquerque that involved ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ DX 363 ("[W]e will be adopting a competitive ▮▮▮▮▮▮▮▮▮▮ from the ▮▮▮▮

▮▮▮▮ opening"); DX 252 ("Based on the price comparison we would get killed by ▮▮▮▮▮▮ in

[Albuquerque]"); DX 367 (Whole Foods in Albuquerque adopted strategies used against ▮▮▮▮

▮▮▮ after its opening in ▮▮▮▮, which ▮▮▮▮▮ significant volume from Whole Foods); *see*

DX 390 (comp shop against ▮▮▮▮▮).  Whole Foods also completed a ▮▮▮▮▮▮

▮▮▮▮ in anticipation of competing with ▮▮▮▮ in Albuquerque. ▮▮▮▮

345.    ▮▮▮▮▮ entry in Albuquerque caused Whole Foods' sales to ▮▮▮▮▮▮

▮▮▮▮▮ affected nearly all departments at the Whole Foods Albuquerque store.  Although

the FTC tried to differentiate ▮▮▮▮ because it does not carry as much fresh produce, meat or

seafood, the entry of ▮▮▮▮ in Albuquerque caused Whole Foods to ▮▮▮▮▮▮ in

those departments too.  Paradise Decl. ¶ 29; JX 31 at 198-99 (Paradise I.H.).

346.    Whole Foods' competition with ▮▮▮▮ in Albuquerque is not a one-way street.

Recently, ▮▮▮▮ has responded to competition from Whole Foods by increasing its selection

of meat, produce and prepared foods.  Paradise Decl. ¶ 18.

347.    Whole Foods is not, however, similarly constrained by Wild Oats.  Wild Oats prices

in Albuquerque ▮▮▮▮▮▮▮▮▮▮▮▮.  Paradise Decl. ¶ 30.

### 2.    Boston, MA

348.    Whole Foods commissioned a study of a potential site in Dedham, MA, a Boston,

MA suburb in 2005.  The report every competitor for the proposed site, including 

which operated ███████████ with ███████████████ which operated ████

███████ with ████ ████████████████ which operated ████

███████ with ██████████████████ which operated ██████████

with ██████████████████████, which operated ███████████ with ████

███████████, which operated ███████████████ with ████████████

████████, which operated ███████████ with █████████ and ████ Wild Oats,

which operated ███████████ with ████████████ DX 173 at 9; *see also* DX 173 at

8-9, 16, 25, 36, 38-46.

349.    Today, in the greater Boston metro area, there are two Wild Oats stores (in the

suburbs of Saugus and Medford), and there are 16 Whole Foods stores.  Scheffman Rep., App. F. at

6.  Within 6 miles of the Saugus Wild Oats store, there is one Whole Foods store in Swampscott.

Scheffman Report, Appendix F. at 6.  Within 6 miles of the Medford Wild Oats store, there are 7

Whole Foods stores, but the closest one is 2.4 miles away in Fresh Pond.  Scheffman Report,

Appendix F. at 6-7.

350.    Whole Foods' Swampscott and Fresh Pond stores compete for customers with many

supermarkets, including (1) Shaw's/Star Market, operating █ stores near Whole Foods in

Swampscott and █ stores near Whole Foods in Fresh Pond; ███████████ operating █ stores near

Swampscott and █ stores near Fresh Pond; ███████████ operating █ stores near the Medford

Wild Oats and █ stores near Whole Foods stores; ███████████, operating █ stores near

Swampscott and █ stores near Fresh Pond; ███████████, operating █ stores near Swampscott

96

and ▮ stores near Fresh Pond; ▮▮▮▮ operating ▮ stores near the Saugus Wild Oats and ▮

Whole Foods stores including Fresh Pond; and ▮▮▮▮ operating ▮ store near ▮▮▮

▮▮. Scheffman Report, Appendix F. at 10-14; *see also* Gallo Decl. ¶ 37 (including ▮▮ as

competitor in Boston); DX 497 (listing Whole Foods' competitors by market). ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮

    351.   Whole Foods is expanding its ▮▮▮▮ store to better compete with ▮▮▮

▮▮▮ which introduced its private organic label, ▮▮▮▮ specifically to compete with

Whole Foods. Lannon Decl. ¶ 21; DX 270 (describing ▮▮▮▮ media campaign promoting

its private label). Upon learning of ▮▮▮▮ new organic line, Whole Foods promptly added

▮▮▮ organic products to its list of products to comp shop. Lannon Decl. ¶ 21; DX 270

(e-mail from Gallo, Whole Foods' Co-President and Chief Operating Officer, explaining that its

inclusion is "to make sure they are not under pricing us on these items").

    352.   Supermarkets are stepping up efforts to compete for organic food customers.

Scheffman Rep., App. F at 9 (*quoting* April 2006 Boston Herald article that describes actions by

Roche Bros., Shaw's Supermarkets, and Stop & Shop to capture a greater share of the "fast-

growing organics market."). Foodmaster Supermarket also promotes its commitment to natural

and organic products, including high quality pre-packaged and prepared products. Scheffman

Report, Appendix F at 11.

    353.   In particular, Shaw's has strengthened competition by announcing plans to

remodel two stores to more directly compete against Whole Foods. DX 504 (January 2007

Boston Herald article *quoting* Shaw's president, Carl Jablonski, saying that "[i]t sounds like a

Whole Foods, looks like a Whole Foods, but it's a Shaw's"); *see also* DX 688
(progressivegrocer.com article reporting that Shaw's is renovating numerous stores to compete
directly against Whole Foods); Lannon Decl. ¶ 21.

354.    To remain competitive and prevent the loss of sales, Boston-area Whole Foods
stores regularly comp shop competitors.  Whole Foods Fresh Pond store compares its prices to
those ███████████████████████████ in the market.  *See e.g.*, DX 287; DX 289;
DX 450; DX 453; DX 462.  Whole Foods also comp shops supermarkets and other food retailers
in the Boston area, including ████████████████████████.  *See e.g.*, DX 340 (all
competitors); DX 331 (████████); DX 332 (████████); DX 333(████████); DX 335 (████
██); DX 386 ████.

355.    As directed by the North Atlantic Regional President, Whole Foods' stores in
Boston, including those in Swampscott and Fresh Pond, have been comparing the prices of a
"market basket" of products against the same basket of goods from the lowest price competitor.
These exercises usually result in comparisons ████████.  Lannon Decl. ¶ 25; JX 8 at 93-94, 96,
99, 100 (Lannon Dep.): DX 419 at 2; DX 81.

356.    Whole Foods has been forced to take aggressive measures to compete with ████
████, including phasing in lower prices ████████████████.  This aggressive
pricing strategy was endorsed by Whole Foods' Co-President A.C. Gallo, despite his expectation
that strong price-competition with ████████ would ████████████████████
██████████████████████████████████.

357.    ██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████.

98



358.    Whole Foods in Boston does not *see* Wild Oats as a competitive threat, especially in regard to price, as demonstrated by the fact that no Boston Whole Foods store has ever requested the comparison of a market basket of products for Wild Oats.  Lannon Decl. ¶ 25; *see also* Lannon Decl. ¶ 19 ("[O]ther than price checking Wild Oats' stores a bit when it first arrived [in the area], we have paid them little attention.") (Portland, ME).

        3.    Boulder, CO

359.    Whole Foods evaluated the site that eventually became its store in Boulder, CO in 1997.  As part of that analysis, Whole Foods analyzed each potential competitor in the area, including (1) ███████, which operated ███████████ with ██████████; (2) ██████, which operated ██████████ with ██████████; (3) ████████, which operated ██████████ with ██████████; (4) ███████, which operated █ ███████ with ██████████; (5) ██████, which operated ██████████ with ██ ███████, (6) Wild Oats, which operated ██████████ with ██████████, (7) ██████, which operated ██████████ with ██████████, and (8) ████████, which operated ██████████ with ██████████. ████████████████████████ ████████.

360.    The site report also profiled each of these competitors, estimating, among other things, the weekly sales volume, square footage, sales per square foot and product mix.  DX 635 at 73.

361.    One of the stated purposes of the site study is to learn the likely sources of its sales. The site report projected that its greatest source of sales would come from ███████, not Wild Oats. DX 635 at 75 (showing that about ███ of its sales would be taken from ███, while only ███ would come from Wild Oats).

362.    Today, Wild Oats has three stores and Whole Foods has one store in Boulder, Co. Scheffman Report, Appendix F ¶ 46.

363.    Whole Foods and Wild Oats compete with the following stores in Boulder:

364.    In Boulder, Safeway tested its prototype "Lifestyle" supermarket by remodeling its existing supermarket; the remodeled supermarket included more space, a new décor package, new merchandising programs, expanded natural and organic offerings, full bulk sections, and aggressive sales and promotion activities to support the grand reopening. JX 33 at 140 (Coblentz I.H.). The remodel also included high quality fixtures and product cases, larger produce and an improved organic sections, a full service meat counter with organic poultry, Coleman beef, plenty of self service bars, an improved seafood department, a sit-down sushi bar, and a bakery with artisan breads. Paradise Decl. ¶ 21; *see also* DX 48 (remodeled Safeway stocked organic products that Whole Foods did not even carry); DX 357 (gathering intelligence about new Safeway Lifestyle format for Whole Foods' Board of Directors); DX 480 (describing results of Whole Foods visit of Safeway Lifestyle in Boulder).

365.    In addition to the changes in physical appearance, the Safeway Lifestyle remodel in Boulder expanded the range of products included in its private label organic "O" line, which was packaged like Whole Foods private label products. DX 234; DX 357.

366.    The Safeway Lifestyle remodel has significantly impacted Whole Foods business in Boulder, CO. Paradise Decl. ¶ 46. DX 480. JX 31 at 43 (Paradise I.H.); Robb Decl. ¶ 34. In response to the Safeway remodel, Whole Foods implemented a comprehensive action plan, which required ██████████████████████████████████████████████████ ████████████████████████████████ (describing observations of a Safeway Lifestyle tour, which included Co-President and COO Walter Robb); DX 480 (describing potential strategic responses). Whole Foods invested about ████████ to remodel its Boulder store by ████████ ████████████████████████████████████████████.

367.    The Safeway Lifestyle store now has many advantages over the Boulder Whole Foods store, including more square footage and a better parking lot. DX 49 (e-mail from Whole Foods Co-President describing Safeway's competitive advantages as "[a]nother reason we need larger stores to compete."). The Safeway Lifestyles in Boulder also offers certain organic products that Whole Foods does not even carry, including yogurt, salsa, olive oil, oatmeal/hot cereal, and popcorn, making Whole Foods seem less committed to organics than Safeway in Boulder. DX 48.

368.    Despite Whole Foods' best efforts, Safeway's Lifestyle store in Boulder took ████████████████ from Whole Foods' Boulder store when it opened. Robb Decl. ¶ 34. Whole Foods' sales ████████ per week after the Safeway Lifestyle store in Boulder opened. DX 204 at 5; see also Paradise Decl. ¶ 46; JX 11 at 103 (Paradise Dep.); JX 31 at 43, 123

(Paradise I.H.).  Over time, Whole Foods sales recovered somewhat, although not to the level that would have been expected if the Safeway Lifestyle store had not opened.  Paradise Decl. ¶ 47. JX 11 at 179-81 (Paradise Dep).

369. 

370.    Whole Foods continues to compete vigorously with Safeway Lifestyle in Boulder, CO across both price and non-price dimensions.  DX 368 (analyzing each of Safeway's competitive advantages, concluding that Safeway was succeeding, and suggesting a counter strategy); DX 50 (e-mail imploring coordinators in the region to visit the Boulder, CO Safeway, so that Whole Foods can formulate a sensible competitive response); DX 366 (describing Whole Foods' policy ▮▮▮▮▮▮▮▮ Safeway "O" on all private label products); DX 207 at 13 (describing continued competition with Safeway Lifestyle in Boulder); JX 38, DX 480, DX 800 (e-mail describing promotional efforts and messages about differentiation needed to combat Safeway); Paradise Decl. ¶ 10.

371.    Whole Foods regularly comp shops Safeway and Safeway Lifestyle stores in the Boulder area.  DX 478 (January - March 2007 comp shop against Safeway); DX 768 (comp shop of Safeway and ▮▮▮▮▮▮▮▮); DX 228 (compares Whole Foods prices to comparable products listed in Safeway ad).  Whole Foods will regularly change prices based on Safeway comp shops.  DX 211 at 15 ("[Whole Foods store in Boulder] Pearl . . . [has] lowered prices in response to increased competition from Safeway"); DX 250 (e-mail

102

describing list of products Whole Foods must adjust to match Safeway); *see also* DX 266 (listing

Safeway among competitors in Boulder);

372. 

373.    The Whole Foods' store in Boulder does more business than its current parking

lot can accommodate. Whole Foods decided to expand the store to better compete. JX 1 at 264-

65 (Gallo Dep.); *see also* JX 11 at 190 (Paradise Dep.) (describing that remodeling efforts were

primarily aimed at Safeway.).  Today, Whole Foods is continuing its efforts to expand Boulder

store to ▮▮▮▮▮▮▮▮▮▮ in response to competitive events.  Paradise Decl. ¶ 46.

374. 

375.    Whole Foods regularly comp shops ▮▮▮▮▮▮ in Boulder.  JX 31 at 188

(Paradise I.H.); DX 478 (▮▮▮▮▮▮▮▮▮ and Wild Oats); DX 304 (▮▮▮▮▮

▮▮▮▮); DX 768 (▮▮▮▮▮▮▮▮▮).  Whole Foods monitors prices at

▮▮▮▮▮▮ and strategically ▮▮▮▮▮ to retain sales.  DX 266.

103

376.    Wild Oats and Whole Foods also face strong competition from ███████████
██████████████████. Robb Decl. ¶ 34. ███████████ operates over ███████ stores
throughout Colorado and promotes and offers a wide variety of natural and organic products.
Robb Decl. ¶ 34. ████████████████████████████████████████████████████
█████████████.

377.    ████████ is also building a new 100,000 sq. feet flagship store in █████████
██████████████████████ This store is being built specifically to provide roomier
aisles, expanded produce, organic foods, and vitamins.  Robb Decl. ¶ ██.

4.    Cleveland, OH

378.    In 2000, Whole Foods reviewed all potential competitors as part of its evaluation
of the site that became home to its store in Cleveland, OH.  DX 160 at 5-7, 15, 61, 69-75.  At that
time, Wild Oats did not have a supermarket in Cleveland, but was planning to open two stores in
the area.  DX 160 at 5.  The review by Whole Foods included (1) ████, which operated ████
██████████████; (2) █████████, which operated ████████████████ with ████
████; (3) ████████, which operated █████████████ with █████████████; (4) █████,
which operated ████████████ with ████████; (5) ██████████, which operated ████
████████ with ████████████████; and (6) █████, which operated ████████████ with
█████████. DX 160 at 68.

379.    The site study included an analysis of the grocery stores from which Whole Foods
would gain sales.  The study projected that Whole Foods would take the vast majority of its sales
from other supermarkets, including about ████ of its sales to come from █████, ████ from

104



, ___ from _____, and less than ___ from each of the remaining chains. DX 160 at 71.

380.    Prior to opening, Whole Foods visited each of its potential competitors to gather market intelligence and ensure that its product mix was competitive. DX 84, DX 783, DX 784, DX 785 (January 2006 email organizing tour).

381.    The 2000 site selection study accurately predicted the stores with which the Whole Foods that opened in 2007 would compete. Scheffman Report, Appendix F at 20-23.

382.    Since the completion of the 2000 site report, new competitors have emerged to spark additional competition. _____ supermarket focused on high-quality perishables, opened a location _____ of the Whole Foods Cleveland store. Scheffman Report, Appendix F at 20-21. _____ purchased a number of _____ in Cleveland and remodeled them to include "high quality perishables," expanded produce departments, and increased its selection of natural and organic foods overall. Scheffman Report, Appendix F at 23.

383.    Mustard Seed Market and Café, with one of its two Cleveland stores near the Whole Foods' store, advertises itself as "the largest retailer of natural and organic products in Northeast Ohio." Scheffman Report, Appendix F at 21 (*quoting* Mustard Seed's current web-site). Whole Foods also competes with _____ in Cleveland. Scheffman Report, Appendix F at 25; Gallo Decl. ¶ 38. Wild Oats, however, now only operates one store Cleveland. Scheffman Report, Appendix F at 20.

384.    As part of its corporate initiative to systematically monitor its competitors' prices, Whole Foods requires the Cleveland store to collect information about many competitors. In June 2006, Gallo identified _____ as competitors that were expected to impact Whole Foods' 2007 margins in Ohio. DX 61; *see also* DX 497 (list

105

of Whole Foods' competitors by market, including Cleveland); DX 87 (list of Whole Foods'
competitors in Mid-Atlantic region, including Cleveland). Consequently, in August 2006, these
retailers were added to the systematic comp shop for the Cleveland store. DX 85.

385.    Local price checking also demonstrates the constraint these supermarkets and other
retailers impose upon Whole Foods. DX 799 (circulating comp shop and qualitative department
assessments for ███████ and █████, explaining that they will be used to help "exceed the
service levels of our competition").

386.    The number of competitors in Cleveland, OH is expected to grow. ████████████



5.    Denver, CO

387.    In a 2006 site study, Whole Foods systematically examined future competitors in
South Denver, CO, including (1) ███████ which operated ████████████ with ███



388.    Today, in Denver, Whole Foods and Wild Oats compete with ██████████████

████████████████████████████████████████████████████████████████████████

████████ among others. Paradise Decl. ¶¶ 39, 41, 43; Robb Decl. ¶¶ 35, 40; Martin Decl. ¶ 17; *see*

Scheffman Report, Appendix F ¶ 93.

389.    Safeway, including Safeway Lifestyle, is a significant competitive force in Denver

both because of strong management and sheer numbers. *See* JX 33 at 168 (Coblentz I.H.); Robb

Decl. ¶ 35. ████████████████████████████████████████. JX 31 at 157 (Paradise

I.H.); *see also* DX 477 (████████████████████████████ Wild Oats); ██████████████

████████████████████████.

390.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████

391.    ████████████ is also a formidable competitor in metropolitan Denver.  Robb Decl.

¶ 35.  It boasts a wide variety of natural and organic products at competitive prices.  Robb Decl.

¶ 35. ████████████ also been aggressively expanding its offerings of organic, natural and fresh

products. Paradise Decl. ¶ 19.  JX 31 at 161 (Paradise I.H.).  One recent King Sooper advertisement

even claims that "nobody sells more organic produce in Colorado – Nobody." Paradise Decl. ¶ 19;

DX 365.

392.    Price checking by ████████████ of Whole Foods confirms their competitive rivalry.

████████████ regularly comp shops Whole Foods and adjusts its prices accordingly.  DX 359 at 2

(████████████ walking Whole Foods' Denver store and adjusting prices); Paradise Decl. ¶ 19.  In

fact, ████████████ now offers many of the same products sold at Whole Foods.  Paradise Decl. ¶ 19.

393.    Whole Foods regularly comp shops . DX 359; Paradise Decl. ¶ 8.
JX 31 at 157 (Paradise I.H.); DX 299 (                              ); DX 477
(                        Wild Oats); DX 767 (
                  ); DX 51 (price check of               ).

394.    These comp shops enable Whole Foods to monitor the competition and make
appropriate adjustments to retain sales. Paradise Decl. ¶ 9 (noting generally that Whole Foods
compares "various items from all departments to ensure that Whole Foods is competitive with other
supermarkets in all areas of the grocery business."). These comp shops have caused Whole Foods to
reduce prices to prevent sales erosion. DX 358, DX 51 (price reduction               on
specific items); Paradise Decl. ¶ 43.

395.    Whole Foods and Wild Oats also compete with               in metropolitan
Denver. Scheffman Report, Appendix F ¶ 96. 
                        focuses on providing natural and organic products at
reasonable prices. Scheffman Report, Appendix F ¶ 95.

396.                  , another Denver area competitor, is a natural grocer with a focus
on educating customers and offering a full range of organic products including produce, bulk and
grocery items. Paradise Decl. ¶41. *See* Scheffman Report, Appendix F ¶ 95. Whole Foods comp
shops               on a regular basis. DX 299; DX 477; DX767.

6.    Evanston and Hinsdale, IL

397.    Whole Foods currently has ten supermarkets in metropolitan Chicago, including one in nearby Evanston, Illinois and one in Willowbrook, Illinois. Bradley Decl. ¶¶ 14, 15. Wild Oats has one store in Evanston and one in Hinsdale, Illinois, approximately 3.5 miles from the Whole Foods store in Willowbrook. Scheffman Report, Appendix F ¶¶ 111, 124, 125.

398.    The Evanston Whole Foods and Wild Oats stores compete with at least two other supermarket chains ███████████████ as well as other food retailers. Both ███████ ██████ each have ██ supermarkets within ██ miles of both the Whole Foods and Wild Oats stores in Evanston. Bradley Decl. ¶ 14.

399.    The Whole Foods store in Willowbrook and the Wild Oats store in nearby Hinsdale compete against several other grocery retailers including ████████████████████ ████████████. Martin Decl. ¶ 17; Scheffman Report, Appendix F ¶¶111, 124, 125. ███ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███.

400.    ███████████████████████████████████████████ ███ In the Chicago area, ████████ has launched a direct competitive move against Whole Foods by starting ████████ within stores to emulate Whole Foods. ███████████ ███████████████████████████████████████████████ remodeled its stores to improve ambiance, including changing its lighting to create a feel that is more inviting. █████████████████████

401.  ███████████ changed the way it offers produce by imitating Whole Foods'
pit merchandising approach to create better flow.  █████████ has also added organic sections,
artisan bakeries, and in-house bake houses that bake hearth breads.  █████████████
███████████████████████████████████████████
███████████████████

402.  ████████████████████████████
████████████████████████████████████
█████████████████ O Organics products include dairy items, cereals, beverages,
bread, pasta, peanut butter, preserves, applesauce, salad dressing, pasta sauce, olive oil,
snack foods, frozen fruits, vegetables and entrees, canned tomatoes, and canned beans.
Scheffman Report, Appendix E ¶ 64.  There are similarities in both product lines and the
overall look between █████████ O line and Whole Foods' 365 private label line.  Bradley
Decl. ¶ 16; JX 6 at 130-31 (Bradley Dep.).

403.  ████████████████████████████
██████████████████████████████████
██████████████████

404.  Price checking by Whole Foods reflects vibrant competition in metropolitan
Chicago.  Whole Foods routinely price checks ████████████████████████
to remain competitive with these stores in the Chicago area.  ████████████████
████████████████████████████████████████
█████████████

110

7.      Henderson and Las Vegas, NV

405.    In a 2003 site study, Whole Foods examined the competitive landscape of the Henderson, NV (part of the Las Vegas metropolitan area) analyzing ▮ competing stores among ▮ different rivals, including (1) ▮▮▮, which operated ▮▮▮▮ with ▮▮ ; (2) ▮▮, which operated ▮▮▮ with ▮▮ ; (3) ▮, which operated ▮▮ with ▮▮ ; (4) ▮▮, which operated ▮▮▮ with ▮▮ ; (5) ▮▮, which operated ▮▮▮ with ▮▮ ; (6) ▮▮, which operated ▮▮ with ▮▮ ; (7) ▮▮ which operated ▮▮▮ with ▮▮ ; and (8) ▮▮, which operated ▮▮ with ▮▮ . ▮▮▮

406.    Whole Foods also evaluated its Las Vegas metropolitan-area competitors in a 2005 site report. DX 126 at 44-54. Whole Foods examined every competitor for the proposed site, including ▮▮▮▮▮▮▮ ▮▮▮ .

407.    Whole Foods' two stores in the Las Vegas metropolitan area – the Las Vegas store that opened in August 2003 and the Henderson store that opened in April 2006 – are surrounded by competition today. Scheffman Report, Appendix F ¶¶ 155-57, 160-68. Competing within a six-mile radius of Whole Foods' Las Vegas store are ▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮ . Within six miles, Henderson Whole Foods competes with ▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ .

111

████████████████████████████████████████

████████████████████████████████████████

408.    Whole Foods' Las Vegas and Henderson stores are under relentless competitive pressure from area supermarkets that are copying Whole Foods' product offerings and formats. Besancon Decl. ¶¶ 61-62, 68, 70. ███████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████

409. ████████████████████ performed major renovations to its Henderson-area stores, copying Whole Foods' Whole Body aisles and expanding natural and kosher food selections. Besancon ¶ 63; *see* Scheffman Report, Appendix F ¶ 164 (████ improving selections of quality perishable items). Similarly, a ████ approximately █ miles from Whole Foods' Henderson store converted ███████████ and expanded its organic produce selections; in response, Whole Foods upgraded its newly opened Henderson store, adding a sit-down BBQ venue serving beer and wine. Besancon Decl. ¶¶ 61-62.

410. ████████ has also remodeled its Las Vegas stores to "make them look and feel more like [Whole Foods'] Las Vegas store." Besancon Decl. ¶ 68. In response to the expansion of organic and natural foods and floral and wine sections, Whole Foods is making upgrades of its own ██████████████████████████████ Besancon Decl. ¶ 68; *see also* DX 721 at 100 ███████████████████████████████

████████████████████████████████████████

████████████████. Moreover, ████████████ near

Whole Foods' Las Vegas store have converted ███████████, "look[ing] very much like a Whole Foods' store" and carrying similar products. Besancon Decl. ¶ 70.

411.    Whole Foods will soon face another serious competitor with a similar focus on high-quality perishables and prepared foods in Las Vegas: ████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████

████████████████████████████████

████████████████████

412.    Whole Foods regularly conducts "comp shops" or price-checks against Las Vegas competitors, including ████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████

███████████████████. Because Wild Oats is typically ████

████████ Whole Foods and its competitors, Whole Foods comp shops local Wild Oats' stores less than once per quarter. Besancon Decl. ¶ 71; *see also* Besancon Decl. ¶ 64 (["Whole Foods'] prices are rarely adjusted in response to Wild Oats.").

413.    The disparity in sales further supports the absence of competitive rivalry between Whole Foods and Wild Oats in the Las Vegas metropolitan area. While Whole Foods' Las Vegas store averaged approximately ████████████████ Wild Oats' Las Vegas store averaged only about ██████. ████████████████The

113

comparative results are similar in Henderson, where Whole Foods' store averaged approximately

█████ in weekly sales in 2006, while Wild Oats' store averaged only about █████.

Scheffman Report, Appendix F ¶¶ 157, 159.

8.    Kansas City – Overland Park, KS

414.    In preparation for its entry into Overland Park, Whole Foods produced in February

2002 a site study that included a comprehensive examination of the competitive landscape of the

market. Most notably, Whole Foods methodically examined all future competitors in Overland

Park, KS. DX 634 at 4-5, 22, 27-29, 31-32, 56, 68-69. Whole Foods studied and counted for the

impact of every competitor at the proposed site, including ███████ which operated ███



███████ with ███████████ which operated ███████████

with ███████████ which operated ███████ with ███

███████ which operated ███████ with ███████████

which operated ███████ with ███████████ which operated ███

███████ with ███████ and █ Wild Oats, which operated ███████

with ███████

415.    As part of the analysis of competition for the proposed Overland Park store, Whole

Foods incorporated information about potential competitors ███████████ █



███████████████████

███████████████████

███████████████████

███████████ Whole Foods projected that its new

stores would compete directly against ███████████

███████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████

416.    Today, many supermarkets compete against Whole Foods and Wild Oats in the

Kansas City – Overland Park area, including: ███████████████████████████████

████████████████████████████████████. Martin Decl. ¶ 17; Robb Decl. ¶ 39; *see also*

Paradise Decl. ¶ 53; JX 11 at 54-55 (Paradise Dep.); Scheffman Report, Appendix F ¶ 138. Each of

these competitors seems to be constantly expanding the breadth of their natural and organic products.

Robb Decl. ¶ 39.

417.    ███████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████

418.    Whole Foods considers ████████ its most significant competitor in the Overland

Park area; Whole Foods comp shops ████████ stores regularly to monitor prices and its

competitive strategies. Paradise Decl. ¶ 54. JX 31 at 136 (Paradise I.H.); *see* DX 304 (█████

comp shop; January - March 2007); *see* DX 479 (████████ comp shop); *see* DX 292 (████

comp shop). ████████ offers an extensive selection of natural and organic products, including

meat, pork, poultry and produce. Paradise Decl. ████ ████████ stores also feature an array of local

products. DX 363 (forwarding competitive information about ████████ for report to Board of

Directors).

419.    Whole Foods also comp shops ████████████ in the Kansas City – Overland

Park area. JX 31 at 136 (Paradise I.H.).

420.    Whole Foods competes aggressively against ████████████. When the ████████████

██████ ████████████████████████████████████ Whole Foods Overland Park with substantial natural foods, Whole Foods ████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████ ████████████

### 9.    Los Angeles, CA and Pasadena, CA

421.    In three site selection studies, Whole Foods examined competition in the Los Angeles metropolitan area.  In April 2004, Whole Foods evaluated a site in Manhattan Beach, CA, a Los Angeles suburb, reviewing each neighboring competitor, including: ██████ which operated █ ████████ with estimated sales volume totaling approximately ██████████ ███ which operated ██████████████ which operated ██████████ ███ which operated ██████████████ which operated ███ ██████████████ which operated ██████████████ which operated ████████████ operated ██████████████ operated ████████. ██████████ ██████████████████████████████████████████ ████████████████

422.    Later, in December 2004, Whole Foods conducted a similar exercise for Pasadena, CA, a suburb of West Los Angeles.  That analysis also evaluated every local competitor, including ██████████ which operated ██████████ with ████████████ which operated ██████████ with ██████████████ which operated ███ ██████ with ██████████████ which operated ██████████ with ████████ ██████████ which operated ██████████ with ██████████ which operated █



423.    Most recently, its 2006 site study considered a store in Venice, CA, another suburb of Los Angeles, CA. Whole Foods examined every competitor for the proposed site, ███████ which operated ██████████ with ███████████████ which operated ████ ███████ with ███████████ which operated █ store with ███████████ ███████ which operated █████████ with ███████████ which operated ████████ with █████████ and ████████████ which operated ████████████ with ███████████████████████ ████████████.

424.    Today, Whole Foods and Wild Oats have 5 and 3 stores, respectively, in the Los Angeles-Santa Monica-Pasadena, CA area. Scheffman Report, Appendix F ¶¶ 169, 240.

425.    Metropolitan Los Angeles is teeming with competition from many supermarkets and other grocery suppliers. Robb Decl. ¶¶ 42, 44; DX 497. Whole Foods and Wild Oats stores compete with ████████████████████████████████ █████████████████████████████████████ ████████████████████████ all within a six mile radius of one of the stores. Scheffman Report, Appendix F ¶¶ 174, 175, 178, 180, 181, 185, 189, 190, 244, 251, 252, 254, 255. The Santa Monica, Brentwood, Westwood, and West Los Angeles are in such close proximity to each other that many of these competitors compete with all four Whole Foods locations. DX 129 at

19 (mapping each Los Angeles Whole Foods competitor within a three-mile radius).

426.    Competition in metropolitan Los Angeles has evolved as supermarkets have increased their stock of natural and organic foods and remodeled stores to offer Whole-Foods-like ambiance.  For example, Vons, a Safeway brand, carries a full roster of O private label organic Safeway products. Scheffman Report, Appendix E ¶¶ 60, 64.  It has also developed the Natural Market format, a store-within-a-store concept that showcases natural and organic foods. DX 440.

427.    In Pasadena, Vons performed major renovations to expand its organic produce; add natural and organic grocery section; upgrade the bakery; and add an Asian express bar, hot bar, and salad bar fixtures.  Besancon Decl. ¶ 44.  Similarly, in Los Angeles, Vons converted one of its stores into a Vons Pavilion's marketplace, an upscale format which focuses on high-quality produce and prepared foods.  Besancon Decl. ¶ 50; DX 531 (describing high-quality and diverse roster of prepared foods). Vons has also expanded its prepared foods section through the Eaturna delivery program. Scheffman Report, Appendix F ¶¶ 182, 256.

428.    Ralph's, which is part of Kroger's, has converted nine stores – including one located across from Whole Foods in Pasadena – into Fresh Fares, a format that carries the Naturally Preferred line of organic private label products.  Scheffman Report, Appendix F ¶¶ 177, 253; Besancon Decl. ¶ 43.  Fresh Fare stores are visually appealing, featuring dark wood flooring and enhanced lighting, and include a new wet organic produce rack, two aisles of natural and organic foods, coffee stations, Asian express bars, sandwich bars, and cheese fixtures. Besancon Decl. ¶ 43; Scheffman Report, Appendix F ¶¶ 176, 252; *see also* DX 531 (noting efforts by Fresh Fair to use chefs to improve the quality of prepared foods).

429.    Supervalu plans to convert a number of Albertson's stores in Southern California to

Sunflower organic supermarkets. Scheffman Report, Appendix F ¶¶ 185, 245. Additionally, Albertson's, much like Vons, is moving to an organic store within a store format. DX 440. Currently, Albertson's has vastly expanded their organic offerings. ███████████████

██████████████████████████████████████████████████████████

██████████████

430.    To retain sales, Whole Foods must watch the actions of its competitors closely. ███

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████

431.    Whole Foods also regularly performs local Los Angeles-area price checks ████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████    The Los Angeles stores often comp shop local competitors individually. ███████████████████████████████████████████████

████████████████████████    The Whole Foods' Pasadena stores also regularly performs comp shops on a similar roster of competitors. DX 754, 764, 765. Whole Foods █████████████ in response to the comp shops. Boardman Decl. ¶ 49.

432.    Responses by Whole Foods to growing competition are not limited ████████████

██████. Whole Foods has responded and continues to respond to this intense competition by expanding █████████████████████████████████████████████████ and changing the product offerings ███████████████████████████████████

███████████████████████████████████████████████████████.

433.    Wild Oats does not constrain Whole Foods in metropolitan Los Angeles. Michael Besancon, the Southern Pacific Regional President for Whole Foods, which includes metropolitan Los Angeles explained that "[a]s in Pasadena, [Whole Foods] has found that the Wild Oats prices ████████████████████████████████ [Whole Foods] prices . . . ." Besancon Decl. ¶ 51 (also noting that Whole Foods does not view Wild Oats as a "significant" competitor). Wild Oats' stores are old, require remodeling, renovations, and improvements. Whole Foods does not comp shop Wild Oats more than once per quarter and it "rarely" adjusts prices because of Wild Oats. *Id.*

434.    Competition in metropolitan Los Angeles is expected to grow. ████ plans to open multiple stores in the Los Angeles area by the end of 2007. Scheffman Report, Appendix F ¶ 179; DX 538 (describing nine California locations that ████ has selected for their first store openings). ████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████ Whole Foods executives have expressed concern ████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████ (highlighting the methods used by ████ to prepare itself for the West Coast market including building a dummy store inside a Warehouse for test-group shoppers in Santa Monica, CA).

10.   Louisville, KY

435.   In a 2002 site study, Whole Foods systematically examined future competitors in Louisville, KY.  DX 80 at 14, 16, 61-73.  At the time it was conducted, Wild Oats did not have a supermarket in Louisville.  DX 80 at 16 (not listing Wild Oats among current studied competitors).  Whole Foods examined every competitor for the proposed site, including ███████ which operated ████████████ with ████ ████████████████ which operated ██████████ with ██████████ ████████ which operated ████████ with ███████████ which operated █████████ with ████████████ which operated ████ ████████ with ████████████████ which operated ██████████ with ████████ and ████████████ which operated █████████████ ████████████████

436.   ████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████  The site study projected about ████ of its sales to come from ██████████ from ████████ from █████████ and less than ███ from ███████████remaining chains.  DX 80 at 71.

437.   To put the Louisville store in the best position to compete, █████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████

121

438.    In January 2003, a Wild Oats store opened in Louisville.  Scheffman Rep., App. F at 57. 

439.    After opening in February 2004, Whole Foods Louisville faced direct competition from numerous supermarkets and other retailers, [as was projected by its site analysis].  Kenneth Meyer, Regional President for Whole Foods in the Mid-Atlantic, which includes responsibility for Louisville, KY explained that "[w]e know that our [Louisville] customers shop our competitors' stores too and we will lose sales to them if we do not remain competitive.  Meyer Decl. ¶ 16; *see also* Meyer Decl. ¶ 6.  Thus, Whole Foods in Louisville must compete aggressively to retain sales.  Gallo Decl. ¶ 35 ("We compete aggressively on price with each [Louisville] competitor[], and we will continue to do so.").

440.

441.    Analysis of entry by other firms confirms competition between Whole Foods and other food retailers.  Sales at Whole Foods in Louisville dropped by ▮ after ▮ ▮, which caused Whole Foods to adopt a strategy ▮

442.    Thereafter, Whole Foods "rigorously assessed" its store against these competitors.  Meyer Decl. ¶ 14.  It conducted "comp shops" or price-checks against them.  Meyer Decl. ¶ 5 ▮

███████████████████████████

443.    Whole Foods competitors in Louisville also comp shop or price check Whole Foods. Kroger, Costco, and Fresh Market send their personnel to assess Whole Foods regularly. Meyer Decl. ¶ 14 (noting that "any lack of attention to quality or competitive pricing on our [Whole Foods'] part would be immediately known to our competitors, and we [Whole Foods] would lose sales as a result."); JX 10 at 125 (Meyer Dep.).

444.    Competition in Louisville, KY is dynamic as supermarkets and superstores continue to adapt to capture their share of growing natural and organic food demand. Fresh Market advertises "premium-priced" perishables, but at a lower price. Scheffman Rep., App. F at 58; *see also* Meyer Decl. ¶ 11; JX 10 at 111-12 (Meyer Dep.) (noting that Fresh Market recruited three former Whole Foods employees and now its perishable look similar to Whole Foods). Meijers is now selling organic products as well; new Kroger stores in Louisville are equipped with energy conservation to appeal to ecologically conscious consumers. Scheffman Rep., App. F at 59-60.

445.    ████████████████████████████

████████████████████████████

████████████████████████████

██████████████████████████

████████████████████████████

████████████

446.    By contrast, Whole Foods does not regard Wild Oats as a significant competitor, noting that it has "had little occasion to need to compete – or pay much attention at all, for that matter – to the Wild Oats store in Louisville. That store has not adapted to the marketplace and displays insufficient innovation or energy to cause us concern." Meyer Decl.

¶ 12; JX 10 at 108-09 (Meyer Dep.).  Kenneth Meyer described Whole Foods' view of Wild

Oats when he explained that

> Our experience with Wild Oats in Louisville, and most other areas in my
> region where be both operate, is that their ███████████████████
> ███, and that our true competition on price and other factors is the
> multitude of other grocery retailers in those areas – and not Wild Oats.

Meyer Decl. ¶ 13.

447.    Whole Foods has made similar observations in different points in time.

DX 221 (explaining that a tour of nearby Wild Oats revealed that the store "was in really bad

shape," that "they aren't doing much of anything with the rest of their pricing," and that "it

was one of the worst Oats he ███████ had ever seen.").  Whole Foods even eliminated a

program aimed at matching Wild Oats prices because it proved to be unnecessary.  This

program, which was implemented shortly after the Whole Foods store opened, was dropped

quickly "because so very few customers ever brought such lower Wild Oats prices to our

attention." Meyer Decl. ¶ 13.

448.    Sales data confirm the lack of competitive rivalry between Whole Foods and

Wild Oats in Louisville, KY.  Whole Foods' stores averaged ████████ in weekly sales in

2006.  Scheffman Rep., App. F at 57.  By comparison, Wild Oats' weekly sales in 2006

averaged ███████.  Scheffman Rep., App. F. at 57.  Meyer explained that sales at Whole

Foods' Louisville store are sufficiently high that the majority of its sales must be coming

from grocery retailers other than Wild Oats, because otherwise "Wild Oats would have

closed its doors by now." Meyer Decl. ¶ 7; JX 10 at 101-02 (Meyer Dep.).

449.    But competition in Louisville is already intense and is expected to intensify.  Gallo

Decl. 35 (competition in this area [Louisville, KY] is intense."). Kroger plans to open a

Marketplace store – which is like a supercenter – in Louisville, Kentucky that will have "expanded

sections for organic and natural foods, wine and specialty cheeses." Scheffman Rep., App. F at 60

(*quoting* a March 2007 article in The Courier-Journal). ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

    450.  ████████████████████████████████

████████████████████████



████

11.    Omaha, NE

451.    In 2003, Whole Foods analyzed a proposed site for a new store in Omaha, NE. The report analyzed each potential competitor, including  which operated ████████ with ████████ which operated ████████ with ████ ████████ which operated ████████ with ████████ ████████ which operated ████████ with ████████ which operated ████████ with ████████ which operated ████ ████████ with ████████ which operated ████████ with ██ ████████ and ████████ which operated ████████ with ████████. ████████████████

452.    Whole Foods opened only one store in Omaha, NE; Wild Oats also operates one store in the area. Scheffman Report, Appendix F ¶ 221. The Whole Foods and Wild Oats stores in the Omaha area compete with at least seven supermarket chains ████████ ████████████████████████████████████████ ████████ and other retailers offering natural foods including ████████ and several farmer's markets. Bradley Decl. ¶ 18; Martin Decl. ¶ 17; Scheffman Report, Appendix F ¶ 224.

453.    After Whole Foods opened its store in Omaha in September 2005, the nearby ████████ supermarket responded with a major renovation and increased promotion of natural and organic foods. Bradley Decl. ¶ 18; Robb Decl. ¶ 43; *see also* DX 447; Scheffman Report, Appendix F ¶ 235; DX 211 at 12 (████████ is pricing aggressively against [Whole Foods] and has recently undergone a major renovation, adding areas with more of a WFM

feel."). ████ store remodeling, which began in the spring of 2006 and took approximately three to four months to complete, included adding a sit-down sushi bar and an artisan cheese area. Bradley Decl. ¶ 18; JX 6 at 22 (Bradley Dep.).

454.    ████ also responded to the entry of Whole Foods with aggressive pricing. Bradley Decl. ¶ 18; DX 211 at 12; *see also* DX 447. Whole Foods countered ████████ ████████████████████████████████ Whole Foods also began heavily advertising in local newspapers, providing background on the Whole Foods story ████████ ████████████

455.    ████████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████

456.    ████ has created its own in-house brand of natural and organic foods. ████ ████████████████████, carries roughly 2,500 organic and natural items. Scheffman Report, ████████████

457.    ████ is also aggressive on price in Omaha. ████ has run pricing comparisons in their stores in which they display the price of a product sold at Whole Foods below the price of the same product sold at ████ . ████████████████████████

458.    Price checking practices of Whole Foods Omaha confirms competition with

supermarkets.  Whole Foods routinely price checks ████████████████ in the Omaha area to

remain competitive with these stores.  Bradley Decl. ¶ 11; DX 286 ████████ DX 297 ████

████ DX 325 ████████████████ DX 468 ████████████.

    12.    Portland, ME

459.    Whole Foods and Wild Oats both have one store in the Portland, ME area.

Scheffman Report, Appendix F ¶ 307.  Whole Foods and Wild Oats face substantial

competition in Portland, ME from ████████████████████████████

████████████████████████████████████████

████████████████████████ feature locally grown produce and sell a

significant amount of natural and organic foods, providing customers with a number of

choices when it comes to purchasing healthy foods.  Scheffman Report, ████████████

████; Gallo Decl. ¶ 33.

460.    The site report demonstrates that Whole Foods expected supermarkets, and not

Wild Oats, would be its principal rivals.  According to the Whole Foods Portland, ME site

study, Whole Foods expected ████ of its average weekly sales would be captured from Wild

Oats supermarkets other than Wild Oats, ████████████████.  DX 171 at 6, 39;

Lannon Decl. ¶ 23 (noting that Whole Foods expected sales to come from ████████████

████████████████████████.

461.    Today, Portland, ME shoppers have many choices for natural and organic foods.

Gallo Decl. ¶ 33 (observing that ████████████ and others each sell "significant" natural and

organic foods.).  Many of the ████ stores in Portland have a department dedicated to selling their

private label organic product line,  in which customers can find natural meat, grocery, dairy and frozen food. Scheffman Report, ███████████. All of the ██████ stores in Portland have a signature "Wine Market" offering periodic wine tastings. Scheffman Report, ███████████. In addition, two of the Portland ██████ offer their branded ██████████ ████████ prepared foods service. Scheffman Report, ███████████████.

462.    ████████ stores in Portland, in addition to having independent meat and fish counters, also "offer upscale prepared foods, including a line of natural single serve prepared foods called ████████████████ Scheffman Report, █████████████. █████████ recently become a "Certified Organic Grocer" like Whole Foods, a distinction not enjoyed by Wild Oats. Scheffman Report, ██████████; Gallo Decl. ¶ 33.

463.    Despite the presence of Wild Oats in Portland, ME, Whole Foods considers ██████████ its primary competitor in the area. DX 277 (e-mail from Whole Foods North Atlantic Regional President explaining that "[w]e are focusing on ██████which are the true competitors in the market."); Lannon Decl. ¶ 24 (██████████ -- not Wild Oats [is] by far Whole Foods' primary competitor."); *see* Gallo Decl. ¶ 33.

464.    █████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████

465.    The rivalry in Portland between Whole Foods and ██████████underlies the actions ██████████ took in response to Whole Foods entry into Portland, ME. In preparation for the Whole Foods 2007 entry, ████████████████████████████████████ ████████████████████████████████████████████

129



466.    Whole foods observed that ███████ had expanded their organic offerings and doubled the size of their natural foods department. Lannon Decl. ¶ 24. Additionally, Whole Foods identified ███████ as a competitor who is expected to impact Whole Foods' 2007 margins at the Portland store. DX 61.

467.    The competition between Whole Foods and ███████ also plays out in comp shops that each chain performs on the other, and the price adjustments that result. Whole Foods comp shops ███████ regularly. DX 337. ███████████████████████

468.    Wild Oats does not constrain Whole Foods in the Portland, ME area because, on average, Wild Oats prices are ███████████████ Whole Foods. Whole Foods Regional President David Lannon reported to the Whole Foods Leadership Team that, for Portland, ME, WO prices are "about ███████" on average. DX 277 (February 2007 e-mail reporting on Portland, ME Whole Foods store opening); *see also* Lannon Decl. ¶ 24 (Whole Foods does not "find it necessary to price against Wild Oats, because Wild Oats' prices in Portland, as in areas throughout my region, are higher than all other supermarkets in the

130

area."); Gallo Decl. ¶ 33 (noting that "Whole Foods has not spent much time price-checking the Portland, Maine Wild Oats store because I believe, on average, the Whole Foods' prices are ██████████████████████████ Portland Wild Oats store.").

469.    The lack of meaningful competition between Whole Foods and Wild Oats is confirmed by the absence of specific pricing comparisons against Wild Oats. Stores in the North Atlantic region were directed to compare the prices of a "market basket" of items against the same basket purchased from its lowest priced competitor. But the Whole Foods in Portland, ME, like other Whole Foods in that region, has "never targeted a Wild Oats [store]" and has never even requested to do so. Lannon Decl. ¶ 25.

13.    Portland, OR

470.    Prior to opening its downtown Portland, OR store in March 2002, Whole Foods analyzed the Portland competitive environment in a 2000 site study. Megahan Decl. ¶ 9; DX 638 at 8, 38-40, 49-62, 78-79. For the Portland market, Whole Foods examined all ██ competing stores among ████ different rivals, including ██████████ which operated ██ ████████████ with total area sales of █████████████████ which operated ██ ████████████ with total area sales of ██████████████ which operated ████████████ with total area sales of ██████████████ which operated ████████████ with total area sales █████████████████████ which operated ████████████ with total area sales of ████ ████████ which operated ████████████ with total area sales of ██████████████ which operated ████████████ with total area sales of ██████████████ which operated █████████████ with total area sales of ████████████████████████████ ████████████████████████████

131

471.    Whole Foods' Lake Oswego (an area in greater Portland) store opened in Fall 2006. Megahan Decl. ¶ 14.  Again, in a 2004 site study completed prior to the store's opening, Whole Foods analyzed the surrounding competitive eHenvironment and individual competitors,



including ███████ which operated ██████████ with total area sales of ██████████ which operated ██████████ with total area sales of ██████████ which operated █ ███████ with total area sales of ██████████ which operated ██████████ with total area sales of ███████ which operated ██████████ with total area sales of ██ ███████ which operated ██████████ with total area sales of ██████████ which operated ███████ with total area sales of ██████████ which operated ██████████ with total area sales of ██ and █ Wild Oats, which operated ██████████ with total area sales of ██. DX 239 at 35, 37-45; *see also* DX 189 (June 2004 site report for East Portland, OR, analyzing Portland competitors); DX 190 (February 2006 site report for Tanasbourne, OR, analyzing Portland competitors).

472.    Today, Wild Oats Lake Oswego store is not perceived by Whole Foods as a competitive threat.  *See* DX 55 at 3; Megahan Decl. ¶ 24.  This Wild Oats store has had no notable retail concepts and no meaningful effect on Whole Foods' prices in its downtown Portland store.  Megahan Decl. ¶ 25

473.    Whole Foods currently "faces stiff competition" from Portland supermarkets, which are offering a wider range of natural and organic products.  DX 213 at 10; JX 2 at 110 (Robb dep.).  Operating within just six miles from the downtown store are ██████████

132

████████████████████████ In addition, █████ is about eight miles from the downtown store. Megahan Decl. ¶ 7. Similarly, Whole Foods' Lake Oswego store faces intense competition from a number of supermarkets within about six miles: ███████ ███████████████████████████████████ and several individual stores including ████████████████████████.

474.    █████ is a strong competitor with Whole Foods in Portland, OR. The ███████ located near Whole Foods' downtown Portland store has been completely remodeled, and the downtown store's sales for the time coincident with the █████ renovation are down by ████ ████. This decline in sales, attributable to competition from ██████ interrupted an upward trend in the downtown store's sales performance. ██████████████████████.

475.    ████████ has quickly expanded to ████ stores in the Portland area. It has an extensive selection of natural and organic products. Megahan Decl. ¶ 31. Whole Foods considers █████████ to be a tough supermarket competitor. *Id.* at 27-29; DX 55; DX 512.

476.    Whole Foods regards Wild Oats as an especially "weak" competitor in Portland. Robb Decl. ¶ 46; Megahan Decl. ¶ 26. While Portland-area competitors █████████ ████████████████████, were all identified by Whole Foods as "key" competitors in the Pacific Northwest Region, Wild Oats was not so identified. DX 496; Megahan Decl. ¶ 21.

477.    ██████████████████████████████
██████████████████████████████
██████████████████████████
██████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

478.    Whole Foods engages in comp shops against Portland competitors, which include

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

479.    ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Whole Foods' competitors also examine Whole Foods' prices and practices. ██████████████

████████████████████████████████████████

████████████

480.    ███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████ ██████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████

### 14.    St. Louis, MO

481.    Prior to its entry into St. Louis, Whole Foods conducted a comprehensive analysis of the competitors in the market. Whole foods studied every competitor in the market and mapped the proximity of each competitor store to the proposed site. DX 104 at 10, 47, 49-60. Among the competitors reviewed were ███████ which operated █ area supermarkets with ███ of total area sales ██████████ which operated █ area supermarkets with ███ of total area sales ██████████ which operated █ area supermarkets with ███ of total area sales ███████████ which operated █ area supermarkets with ███ of total area sales ██ Whole Foods, which already operated █ area supermarket with ███ of total area sales; and ██ Wild Oats, which operated █ area supermarket with ███ of total area sales. DX 104 at 10.

482.    In analyzing the potential St. Louis site, Whole Foods projected future store volume as a function of market demographics and the competitive context. These projections accounted for all competitors in the market, and included store specific factors ███████████ ████████████████████████████████████ Today, Whole Foods and Wild Oats have one supermarket each in the St. Louis area. The Whole Foods store is commonly referred to in company documents as ████████████████ ██████████████████ The Whole Foods and Wild Oats stores in the St. Louis area compete with at least ███ supermarket chains ███████████████████ ██████████████████ specialty health, natural and gourmet stores ███████████████ ███, and ██ large farmer's market ███████████████████████████ ████████████████████

135

483.　█████████ supermarkets have well-developed images as upscale stores with strong service. ███ stores have been aggressively expanding, remodeling, and relocating. Bradley ¶ 22; DX 104 at 10.

484.　█████████ have created organic and natural sets in their stores within the last eighteen to twenty-four months. ███ stores began heavily promoting these new products beginning in January 2006. Bradley Decl. ¶ 22; *see also* Scheffman Report, Appendix F ¶¶ 323-24.

485.　█████ has recently established a private label organic and all-natural product line called █████ throughout its Midwestern stores. The new line, which is merchandised through specialty displays, includes cereals, milk, pastas, peanut butter, soymilk, coffee and teas. Scheffman Report, Appendix F ¶ 326.

486.　The combination of new, heavily promoted organic lines and aggressive pricing by █████████ has contributed to the ████ store having sales far below plan within the last year. Sales in the meat, seafood and produce departments of the ████ store experienced the biggest negative impact as a result of this competition. DX 224; *see* Bradley Decl. ¶ 23; JX 6 at 80-81 (Bradley Dep.).

487.　█████████ entered the St. Louis, MO area in 2004 and currently has ████ stores. █████████████████ Whole Foods knew its customers would also shop █████ once opened. Whole Foods sought to give such customers less reasons to shop █████ by having a general rule to not be beat on price. DX 403. Nevertheless, █████ entry contributed to sales at the Whole Foods ████ store dropping from double-digit comps (comparative sales for a particular period compared to the prior year) to single-digit comps. Bradley Decl. ¶ 23; JX 6 at 81 (Bradley Dep.); *see also* DX 402 at 2 ("The competitive openings impacted sales █████ and hit hardest █████████

██████████████████████.

488.    Whole Foods routinely price checks ████████████████████ in the St. Louis area to remain competitive with these stores. Bradley Decl. ¶ 11; Robb Decl. ¶ 47; DX 290 ██████████████; DX 294 ████████████████ DX 330 ███████████ DX 464 █████████████████.

### 15.    West Hartford, CT

489.    In August 2002, Whole Foods studied the possibility of opening a store in West Hartford, CT. DX 636. The study examined competition from each of the ███ other competing supermarkets surrounding the West Hartford site, including ████████████ which operated █ area supermarket with ████████████████ which operated █ area supermarket with █████████ ████████████ which operated █ area supermarket with ██████████████ who operated █ area supermarket with ███████████ Wild Oats, who operated █ area supermarket with █████████ ████████████ which operated █ area supermarket with █████████ and █████████ which operated █ area supermarket with ████████████████.

490.    The site survey analyzed many dimensions of competition of surrounding supermarkets and food retailers, ████████████████████████████████████ ████████████████████████ The report projected that Whole Foods would capture ████ of its average weekly sales from non-Wild Oats supermarkets, such as ████████████████ ███████████.

491.    Whole Foods opened its store in West Hartford in October 2005. Scheffman Report, Appendix F ¶ 330. Currently Whole Foods and Wild Oats each have one store in West Hartford. Scheffman Report, Appendix F.

492.    Whole Foods and Wild Oats face significant competition in West Hartford, including

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ These

competitors offer natural and organic products that will continue to compete with Whole Foods.

Gallo Decl. ¶ 34.

493.     ████ offers locally grown produce, organic food and prepared food items.

Scheffman Report, █████████ ████ offers 100 products via it own brand of natural and

organic foods.  Scheffman Report, █████████ ████ offers natural, organic and gourmet

products through its █████████ brand.  Scheffman Report, █████████ Several ████

████ are undergoing renovations to include more natural and organic offerings.  Scheffman Report,

████████

494.     ████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ ██████████

████████████████████████████ ████████████████

████████████████████████████████████████████

████████████████████████████████

495.    Whole Foods' competition within a variety of chain supermarkets is demonstrated

by the comp shops it regularly performs on its competitors, including ████████████

████████████████████████████████████████ (comp shop

with ████████);  ████ (comp shop with ████████████████

██████ (Listing competitors to comp shop in ████████████ (Recommending comp shop
of ████).

496.    In West Hartford, Whole Foods plays close attention to the prices charged by ██████
██████ because ██████████ has the lowest prices in the West Hartford area. Lannon Decl. ¶ 15; *see*
JX 8; DX 510; DX 498. Whole Foods runs market basket comparisons against ██████████ in West
Harford because it is the lowest priced competitor in the area. Lannon Decl. ¶¶ 14-15, 25; JX 8 at
93-94, 96, 99, 100 (Lannon Dep.). Whole Foods projects that ████████████████ will
negatively impact the West Hartford store's 2007 margins. DX 61.

497.    Non-price competition by Whole Foods in West Hartford has also focused on stores
other than Wild Oats. For example, in September 2006, the West Hartford Whole Foods store team
planned a radio advertising campaign ████████████████████████████
██████████ Lannon Decl. ¶ 18 (also noting that it is "not about Wild Oats any more"); DX 502.
Whole Foods also developed a strategy to compete better against ██████████ for customers
looking for Kosher products by identifying items that could be specially tagged as Kosher on the
store shelves. Lannon Decl. ¶ 18; DX 503.

498.    ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████
████████████████████████████████████
██████████████

16.    Fairfield County, CT (potential competition)

499.    Fairfield County, CT (as opposed to the town of Fairfield, CT) is an unevenly shaped area located in the southwestern corner of Connecticut that covers 626 square miles. DX 806. Within Fairfield County, there is one Wild Oats. DX 170 at 30. Whole Foods has two stores under construction in Fairfield County, one in Darien, CT (expected to open spring 2008), and the other in Fairfield, CT, (expected to open late 2008). DX 169; DX 170; Gallo Decl. ¶ 39.

500.    Whole Foods conducted site selection studies for each store. In 2005, the site report for Darien, CT studied each potential competitor. DX 170 at 7-8, 14-16, 42, 44-52. The review included the following supermarkets and other stores:  which operated ▮ area supermarkets with ▮ which operated ▮ area supermarkets with ▮ which operated ▮ area supermarket with ▮ which operated ▮ area supermarkets with ▮ which operated ▮ area supermarkets with ▮ which operated ▮ area supermarkets with ▮ which operated ▮ area supermarkets with ▮ Wild Oats, which operated ▮ area supermarket with ▮ which operated ▮ area supermarkets with ▮ which operated ▮ area supermarket with ▮ which operated ▮ area supermarket with ▮ and ▮ which operated ▮ area supermarket with ▮

501.    Whole Foods requested the analysis of many dimensions of competition for each local food retailer ▮



█████ The site study projected that, in addition to taking sales away from its Greenwich, CT store, most of its sales would come from conventional supermarkets. █████████ (projecting that about █████████ its sales would be taken from █████████████████████ from each of ███ and █████████ and less than ███ from each of the remaining chains.).

502.    Whole Foods projected that it would take only █████ from Wild Oats, about █████ of the amount of sales Whole Foods was willing to cannibalize from its own Greenwich store. DX 170 at 8 (site report estimated that the Greenwich, CT store would lose █████ in sales to a new store in Darien, CT).

503.    Whole Foods continued to monitor its competitors, estimating sales volume from prospective Darien competitors such as █████████████████ DX 787.  Whole Foods has also been qualitatively assessing its competitors and customer base. DX 801; DX 788; DX 789; DX 790.

504.    Likewise, in 2005, Whole Foods conducted a site study for a Fairfield, CT, store location.  Again, Whole Foods undertook a review of existing supermarkets and other retailers against which it would compete.  DX 169 at 7-8, 13-14, 25, 36-46.  The site report included an analysis of: █████████ which operated █ area supermarkets with █████████████ which operated █ area supermarkets with █████████████ which operated █ area supermarket with █████████ which operated █ area supermarkets with █████████ which operated █ area supermarket with █████████████ which operated █ area supermarket with █████████ which operated █ area supermarket with █████ █████████

505.    Once again, Whole Foods conducted significant analysis on every prospective

141

competitor, ███████████████████████████████████████████████████

███████████████ Notably, the site report did not even list Wild Oats as a potential competitor and did not report about the competitive dimensions of its nearby store. DX 169.

### 17. Miami Beach, FL (potential competition)

506. In two site selection studies, reviewed competition metropolitan Miami. In April 2002, Whole Foods evaluated a site in Coral Gables, FL, a Miami suburb, reviewing each neighboring competitor, including: ████████ which operates █ supermarkets in the area with ████ ███████████████████ which operates █ area supermarkets with████████████ ███████████ which operates █ area supermarkets with ████████████████ Wild Oats, which operates █ supermarket with ████████████████████████

507. In January 2004, Whole Foods again examined the Miami competitive market. A systematic study of the location, 8 miles north of Coral Gables, Whole Foods reviewed each neighboring competitor in downtown Miami, FL, including: ███████ which operates █ area supermarkets with ████████████████████ which operates █ area supermarkets with ███████████████████ Wild Oats, which operates █ supermarket with ████████████████ ███████████ which operates █ area supermarket with ██████████████████

508. Whole Foods also considered ████████████████████ as competitors in their mapping activities. DX 116 at 12, 22, 24, 40-48. ████ stores have two location in the downtown Miami area. *Id.*

509. Today, Whole Foods plans to open a store in Miami, FL in late 2009. This store will compete with several established supermarkets, including ██████████████████████

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Wild Oats' current competitors include ▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

18.    Naples, FL (potential competition)

510.    In 2004, Whole Foods evaluated the competitive landscape of Naples, FL to
determine the suitability of a potential store location.  DX 120 at 6-7, 36.  At the time it was
conducted, Wild Oats did not have a supermarket in Naples.  DX 120 at 7, 36 (not listing Wild
Oats among current studied competitors).  Whole Foods examined every competitor for the
proposed site, including ▬▬▬▬ which operated ▬ area supermarkets with ▬▬▬▬▬
▬▬▬▬▬▬ which operated ▬ area supermarkets with ▬▬▬▬▬▬
▬▬▬▬ which operated ▬ area supermarkets with ▬▬▬▬▬▬▬▬ which
operated ▬ area supermarket with ▬▬▬▬▬▬▬▬▬ which operated ▬ area
supermarket with ▬▬▬▬▬▬▬▬▬▬ which operated ▬ area supermarket with
▬▬▬▬▬▬▬▬

511.    Currently, Whole Foods plans to open a store in Naples, Florida in early 2008.  This
store will compete with stores operated by ▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬ Wild Oats' store in Naples competes against
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

512.    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬

513.    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

143



514. ████████████████████████████

████████████████████████████████████

████████████

19.    Nashville, TN (potential competition)

515.    In its 2004 site study, Whole Foods analyzed, systematically, each potential

competitor in Nashville, TN, including ███████ which operated █ area supermarkets with

estimated sales volume totaling approximately ████████████ which operated █ area

supermarkets with estimated sales volume totaling approximately ███████████ which

operated █ area supermarket with estimated sales volume totaling approximately ████████

███ which operated █ area supermarket with estimated sales volume totaling approximately ███

████████ which operated █ area supermarkets with estimated sales volume totaling

approximately ██████████ which operated █ area supermarkets with estimated sales

volume totaling approximately ███████████████████████████

████

516.    Whole Foods currently plans to open its store in Nashville in November 2007.

Allshouse Decl. ¶ 12.  Wild Oats currently has one store in Nashville.  Scheffman Report, Appendix

F ¶ 207.

517.    After Whole Foods opens its Nashville store, Whole Foods and Wild Oats will

compete with ██████████████████████████████

144

█████, among others. JX 4 at 122 (Allshouse Dep.); Allshouse Decl. ¶ 15; Martin Decl. ¶ 17;

DX 144; *see* Gallo Decl. ¶ 36; *see* Scheffman Report, Appendix F ¶ 209. ██████████████

█████ each offer a complete line of natural and organic products and each sells a large volume of

these products. Gallo Decl. ¶ 36; *see* Scheffman Report, Appendix F ¶ 209.

518.    Whole Foods future Nashville store is expected to compete for customers from not

only Wild Oats, but from other supermarkets like ██████████████████████████

███████████████████████████████████████

519.    The Nashville Whole Foods store will compete very closely on price with █████

████████████████ especially with the ██████████████████████

███████████████████████

520.    Whole Foods anticipates being enmeshed in significant non-price competition with

the ██████████ Because this █████ has a large and expanded variety of bulk foods,

Whole Foods plans to expand its bulk section when the Nashville store opens in response.

Allshouse Decl. ¶ 22. In addition, due to the recent remodel of the ████████████, the Whole

Foods Nashville store intends ██████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████

521.    █████ is also a significant competitor in Nashville. Allshouse Decl. ¶ 25

(explaining that █████ has a store near the future Whole Foods location that will offer customers a

comparable experience to Whole Foods). █████ sells a tremendous amount of natural and organic

items under the ███████ label introduced over ████ years ago. Allshouse Decl. ¶ 26; Scheffman
Report, Appendix F ¶ 216. The number of natural or organic products available at ██████ stores is
expanding every day. Allshouse Decl. ¶ 26. ██████████ private label products include chicken,
canned vegetables, dairy products, juices, paper goods and snacks. DX 67 (from ███████ website);
Scheffman Report, ████████████████

     522.    ██████████ is also a strong competitor in Nashville. Allshouse Decl. ¶ 19. ██████
████ offers a wide range of organic produce, including organic private label products through ████
███████ and ████████████ such as: shrimp, burgers, cereal, honey, rice, pasta sauce, pasta, canned
vegetables and canned fruit. Allshouse Decl. ¶ 19; JX 4 at 31 (Allshouse Dep.).

     523.    The Nashville ██████████ also carries a large variety of natural and organic items.
Scheffman Report, Appendix F ¶ 210; Allshouse Decl. ¶ 18. Generally, ██████████ have
excellent rotisserie/prepared foods offerings. Allshouse Decl. ¶ 18. ████████████ have recently
upgraded their perishable foods and seafood programs. Allshouse Decl. ¶ 18. In the produce
department, ██████████ has created a "Whole Foods-type" feel with produce bins and wet racks
that resemble those used at Whole Foods. Allshouse Decl. ¶ 18.

     524.    ██████ has ████ stores in Nashville that compete with Wild Oats and will compete
with Whole Foods. Allshouse Decl. ¶ 21; Scheffman Report, Appendix F ¶ 213. Recently, ████████
opened an ██████████ downtown Nashville that carries a large number of natural and
organic products as well as prepared foods. Allshouse Decl. ¶ 21; ████████████████████
████

20.    Palo Alto, CA (potential competition)

525.    Whole Foods analyzed several sites as part of its aggressive, complex 2005 plan to add █████ stores in Santa Clara Valley, California. This analysis involved a systematic examination of all future competitors in the region. DX 141 at 8-10, 15, 56-59. ███████████████████ ████████████████████████████████ The site selection study reflected a regional approach to the Santa Clara Valley and, therefore, examined competition in the broader region and not by proposed site. Whole Foods examined every competitor in the Santa Clara Valley, including, among others ████████ which operated ██ area supermarkets with ██████████████ ████████ which operated ██ area supermarkets with ██████████████████ which operated ██ area supermarkets with ████████████████████ which operated ████ area supermarkets with ████████████ and (5) ████████which operated ████ area supermarkets with ████████████ There was no Wild Oats stores in the region. DX 141 at 9.

526.    In reviewing competition with future competitors, Whole Foods accumulated a large collection of competitive intelligence on each store competing in the area, ████████████ ████████████████████████████ Whole Foods also estimate the sales volume and competitive impact of the opening of three new stores in the Santa Clara Valley, including a store in Mountain View. DX 141 at 10, 15. Whole Foods estimated its future sales volumes and the volume of sales drawn from each competitor. Whole Foods projected that its new stores would compete directly against ████████████ and would take the majority of its sales from conventional chain grocery stores. Specifically, Whole Foods estimated that ████ of

147

its additional sales would come from ███████ stores and that ████ of its additional sales volume would come from ████████████████

527.    Today, Whole Foods operates one store in Palo Alto, California.  Whole Foods operates several more stores nearby, including Cupertino, CA and Los Altos, CA.  The Palo Alto store was the first Whole Foods store in Northern California, built in 1989.  JX 29 at 11-12 (Robb I.H.).

528.    In metropolitan Palo Alto, CA, Whole Foods competes with stores operated by  Potential entry from Wild Oats would not impact competition in the Palo Alto area.

529.    ███████ is a particularly strong competitor in the region, and has converted ██████ ██████████████████████████████████████████ area stores also stock ████████ private label organic product ████████████████ Whole Foods checks prices against ██████████████████████████████████████████ █████████

21.    Reno, NV (potential competition)

530.    Wild Oats currently operates one store in Reno, Nevada.  Whole Foods plans to open a store in Reno in late 2007.  Robb Decl. ¶ 51.  This store is projected to have an average weekly volume of nearly ████████ during its first year, and an estimated ████ of area sales for the trade area.  DX 125 at 12.

531.    Competition for the sale of retail food in Reno, NV is robust.  In a 2004 location analysis, Whole Foods systematically examined future competitors in the Reno market.  DX 125.  Whole Foods examined every competitor near the proposed site, including ████████ which

148

operated ▉ area supermarkets with a ▉▉▉▉▉▉▉▉▉▉▉▉ which operated ▉ area supermarkets with ▉▉▉▉▉▉▉▉▉▉▉ which operated ▉ area supermarkets with ▉▉ ▉▉▉▉▉▉▉▉▉▉ which operated ▉ area supermarkets with ▉▉▉▉▉▉▉▉▉▉▉▉ which operated ▉ area supermarkets with ▉▉▉▉▉▉▉▉▉▉ which operated ▉ area supermarkets with a ▉▉▉▉▉▉▉▉ which operated ▉ area supermarkets with a ▉▉ ▉▉▉▉▉▉▉▉▉▉ which operated ▉ area supermarket with a ▉▉▉▉▉▉▉ ▉▉▉ which operated ▉ area supermarkets with a ▉▉▉▉▉▉▉▉ Wild Oats, which operated ▉ area supermarket with a ▉▉▉▉▉▉ and ▉▉▉▉▉ which operated ▉ area supermarket with a ▉▉▉▉▉▉▉ As of 2004, Wild Oats had the second smallest of area sales in metropolitan Reno. *Id.*

532.   Wild Oats currently competes with ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Each of these stores now offers a variety of natural and organic products. Robb Decl. ¶ 51.

149

22.    Salt Lake City, UT (potential competition)

533.    In considering a potential site in Salt Lake City, UT, Whole Foods commissioned a site study that reviewed each competitor. DX 184 at 9-10, 16, 28, 40, 42-50. The analysis covered the following supermarkets and other stores: ███████ which operated █ area supermarkets with █████████████████ which operated █ area supermarkets with ██████████ ███████ which operated █ area supermarkets with █████████████████ which operated █ supermarkets with ████████████ which operated █ area supermarket with ████████████ which operated █ area supermarket with ████████████ Wild Oats, which operated █ area supermarkets with ████████████ which operated █ area stores with ████████████ which operated █ store with ███████ ███████

534.    Whole Foods plans to open a store in Salt Lake City, UT █████████████ ████████████ In addition to Wild Oats, Whole Foods will compete with the following ████ supermarkets and food retailers in Salt Lake City ████████████ ████████████ Each of these stores offers a variety of natural and organic products and will provide strong competition to Whole Foods. Robb Decl. ¶ 52. Wild Oats' current competitors in Salt Lake City include ████████████ ███████

**I.     Competitive Effects in Overlap Markets Where the Wild Oats Store May be Closed**

535.     Dr. Murphy has not conducted any direct test of whether Wild Oats imposes unique constraints on Whole Foods that will disappear as a result of the proposed transaction.  Murphy Report ¶ 63; 7/31 Hearing Tr. at 34.

536.     One direct test of whether Wild Oats imposes unique constraints on Whole Foods that will disappear as a result of the transaction is to compare the prices Whole Foods charges in markets in which it is the only "premium natural and organic supermarket" to the prices Whole Foods charges in markets in which two or more "premium natural and organic supermarkets" compete.

537.     Another direct test of whether Wild Oats imposes unique constraints on Whole Foods that will disappear as a result of the proposed transaction is to study the effect of Wild Oats banner entry or banner exit on Whole Foods' prices.  Murphy Report at  ¶ 63.

538.     Dr. Murphy did not conduct either of these two types of direct tests.  Dr. Scheffman conducted the former and found no systemic or systematic difference in prices charged by Whole Foods.

539.     There is no direct evidence of the effect of Wild Oats' banner entry or banner exit on Whole Foods' prices, margins or sales.   Murphy Report at ¶ 63.

540.     Dr. Murphy reached his conclusions without any economic analysis of the effect of Wild Oats banner exit on Whole Foods prices, margins or net sales.  7/31 Hearing Tr. at 35.

541.     Dr. Murphy reached his conclusions without any economic analysis of the effect of Wild Oats banner entry on Whole Foods prices, margins or net sales.  7/31 Hearing Tr. at 28.

151

542.    That is because there have not been any banner entry events by Wild Oats within the 5 mile radius identified by Dr. Murphy.  Murphy Report ¶ 63; JX 26 at 169-70; 7/31 Hearing Tr. at 36-38.

543.    Dr. Murphy excluded from his studies all Wild Oats stores that were smaller than 25,000 square feet. 7/31 Hearing Tr. at 29.  Smaller, older Wild Oats stores are not competitively significant.  7/31 Hearing Tr. at 29.  There were two banner exit events by Wild Oats that explicitly met Dr. Murphy's criteria of a store of at least 25,000 sq. ft. and within 5 miles of Whole Foods. DX 589; 7/31 Tr. at 89-92.

544.    There were two additional banner exit events by Wild Oats that were just under the 25,000 square foot threshold or just over 5 miles away.  DX 589; 7/31 Tr. at 91-94.

545.    Dr. Murphy did not study directly the effect of any Wild Oats' exit event on the prices charged by Whole Foods.  7/31 Hearing Tr. at 89-94.

546.    Dr. Murphy did not study directly the effect of any Wild Oats' exit event on the margins earned by Whole Foods.  7/31 Hearing Tr. at 89-94.

547.    Dr. Murphy did not study directly the effect of any Wild Oats' exit event on the net sales generated by Whole Foods.  7/31 Hearing Tr. at 89-94.

548.    Dr. Murphy chose not to study any Wild Oats exit events even though acknowledging that such events provide a direct test of whether Wild Oats constrains Whole Foods. Murphy Report ¶ 63.

549.    Dr. Murphy did not study directly whether Wild Oats imposes any unique constraint on Whole Foods that will be lost as a result of the transaction. 7/31 Hearing Tr. at 89-94.

550.    Dr. Murphy could have studied the effect of Wild Oats banner exit in Ft. Collins, Colorado on Whole Foods' prices. At his deposition on July 17, Dr. Murphy testified that he had begun such a study, and that he could finish it with one additional day of work. JX 26 at 183.

551.    At the hearing in this matter, Dr. Murphy testified that he did not have sufficient post-exit data to complete his study of the Ft. Collins, Colorado exit by Wild Oats. 7/31 Hearing Tr. at 90.   Although Dr. Murphy claimed that he could not study the effect of the Wild Oats exit in Ft. Collins because he did not have data after the exit, in fact he had price data for Whole Foods' Ft. Collins store encompassing the 5 1/2 months following Wild Oats' exit from Ft. Collins.  DX 589; Murphy Report ¶ 55.

552.    Dr. Murphy's testimony at the hearing conflicts with his deposition testimony, where he observed that, although the amount of data post-exit was relatively limited, one could learn something about the effect of Wild Oats' exit on Whole Foods' prices with just "a few months" of post-exit price data. JX 26 at 171–172.

553.    Dr. Murphy's testimony at the hearing on his reasons for not studying the effect of Wild Oats' Ft. Collins exit is not credible. Dr. Murphy studied other events for which he had less post-event data when he chose to do so. For example, Dr. Murphy studied the effect of Whole Foods' entry on Wild Oats' prices in Portland, ME and Tualatin, OR when he had 6 months or less of post-entry data. Murphy Report, Ex. 5.

554.    Uncontroverted evidence establishes that Whole Foods did not raise prices in Ft. Collins after Wild Oats' exit, and it was constrained from doing so by a King Sooper supermarket in the same parking lot. JX 31 at 239-42; Paradise Decl. ¶ 52; 7/31 Hearing Tr. at 90-91.

**J.    Analyses of the effect of Whole Foods Entry on Wild Oats' Margins, Net Sales and Prices are Neither Reliable nor Relevant**

1.    Margins are not prices

555.    The central concern of the Merger Guidelines is with the impact of competition on prices. Murphy Report at ¶ 54; 7/31 Hearing Tr. at 21. Dr. Murphy's reliance on analyses of margins is not based on sound methodology in economics, accounting, and financial analysis. Scheffman Rebuttal Report ¶ 15  Any effects inferred from margins, however defined and estimated, are relevant only if a valid inference can be made about prices from margins. Reliable inferences about prices cannot be made from margins alone. Scheffman Rebuttal Report ¶ 16.

556.    Dr. Murphy's analyses of margins are based on analyses of (his estimates of) gross margin, which is an estimate of the difference between a supermarket's revenues from sales of goods and the cost of goods sold, expressed as a fraction of revenues. Murphy Report ¶ 50. Gross margin would not include, for example, labor costs and lease costs, which are substantial costs for a supermarket. Scheffman Rebuttal Report ¶ 18.

557.    Dr. Murphy makes inferences from changes in margin without attempting to control for product mix. Scheffman Rebuttal Report ¶ 28. This methodology is invalid because it may a fall in gross margin can be due entirely to changes in product mix. Scheffman Rebuttal Report ¶ 27. That is, because different products have different margins, a mere change in the mix of products sold at a supermarket can result in that store having a decline in margins that has nothing to do with changes in prices. Scheffman Rebuttal Report ¶ 26.

558.    Dr. Murphy's margin analyses also do not account for changes in variable and fixed costs since

559.    his analyses assume that unit costs are constant. Murphy Report ¶ 54. As Dr. Murphy admits, changes in margins can be a misleading indicator of price effects if unit costs in a

supermarket are not constant. Murphy Report ¶ 55; 7/31 Hearing Tr. at 25. Indeed, changes in costs can affect margins without any change in selling prices. Scheffman Report ¶¶ 29, 32.

560.    For example, shrink occurs when a product is lost and does not go out for sale. 7/31 Hearing Tr. at 57; JX 26 at 43. Shrink may be expected to rise after significant competitive entry. 7/31 Hearing Tr. at 57. Wild Oats does not uniformly track partial shrink, which occurs when a product is substantially discounted for sale. Martin Suppl. Dec ¶ 3, 4, 5. Dr. Murphy deducted the impact of known shrink on margins before running his regressions. 7/31 Hearing Tr. at 58. Dr. Murphy was unable to deduct the impact of unknown or partial shrink on margins before running his regressions because Wild Oats did not systematically track the impact of unknown or impartial shrink. 7/31 Hearing Tr. at 59-60. Dr. Murphy's estimate of the change in margin attributable to Whole Foods' competitive entry did not remove from his analysis the margin effect of partial shrink that was due to a decline in quality as opposed to a response to competitive price reduction. 7/31 Hearing Tr. at 63-64. Partial shrink was at least as great as known shrink. Martin Suppl. Declaration ¶. 8. ████████████████████████████████████████ ████████████████████████████████████ It persisted because the store manager was excessively optimistic that business would return to prior levels. *Id.*

561.    Dr. Murphy's estimates of the effect of Whole Foods' entry on Wild Oats' margins and prices overstate the impact on margins as a competitive response to entry and fail to account for the impact on margins due to reductions in the quality of goods sold.

2.    Failure to Control for Competitor Behavior Responsive to and Independent of Whole Foods Entry.

562.    The Merger Guidelines test for product market definition assumes that a hypothetical monopolist is the sole seller and therefore controls all promotions and prices of firms in the putative market. 7/31 Hearing Tr. at 46.

563.    Dr. Murphy did not have data on pricing or promotional strategies from firms other than the parties to the transaction. 7/31 Hearing Tr. 46-48.

564.    Dr. Murphy's analyses of the effect of Whole Foods' entry on Wild Oats net sales, margin and prices do not control for the pricing or promotional strategies of all other supermarkets in response to Whole Foods' entry. 7/31 Hearing Tr. at 51-55, 56-57, 74; JX 26 at 233-235.

565.    Instead, Dr. Murphy includes the responses of competitors' to Whole Foods' entry, and the effects caused by those competitors, as effects caused by Whole Foods. JX 26 at 233.

566.    Where multiple firms enter simultaneously, Dr. Murphy's regression analysis does not permit one to tell which of the firms is causing how much of the effect on Wild Oats' margins, net sales, and prices. 7/31 Hearing Tr. at 52; JX 26 at 228.

567.    New Seasons entered at the same time as Whole Foods in Tualatin, OR. 7/31 Hearing Tr. at 49-54; JX 26 at 229

568.    Trader Joe's entered at the same time as a Whole Foods in Hartford, CT. 7/31 Hearing Tr. at 73.

569.    King Sooper entered Ft. Collins at the same time as Whole Foods in Ft. Collins, CO. 7/31 Hearing Tr. at 71-72.

156

570.    Dr. Murphy's estimates of the effect of Whole Foods' entry on Wild Oats' margins and prices do not control for the entry of these other firms or permit one to tell which of the firms is causing how much of the effect on Wild Oats. 7/31 Hearing Tr. at 71-72, 73-74.

### K.    Analyses of the effect of Whole Foods' Entry on Wild Oats' Margins, Net Sales and Prices is not Particularly Probative of the effect of Wild Oats' Exit on the Prices Whole Foods Charges in the Future

571.    Fundamentally, Dr. Murphy's analyses study the wrong events. He analyzes the effects of Whole Foods' banner entry on Wild Oats when he should be looking at the price effects of Wild Oats exits. 7/31 Hearing Tr. at 23-24, 26; Scheffman Rebuttal Report ¶ 41. The effect of Whole Foods' banner entry on Wild Oats' prices, margins or sales does not directly test whether Wild Oats imposes any constraint on Whole Foods. 7/31 Hearing Tr. at 28-30; Murphy Report ¶ 63.

572.    The effects of the removal of Wild Oats as a competitor could only be directly addressed by examining what happens to Whole Foods prices after a Wild Oats store exits. Scheffman Report ¶ 45. The extent to which Wild Oats adjusts its prices in the face of the events created by the opening of a Whole Foods store in its area is not informative of anything about the potential price effects of the proposed merger. Scheffman Rebuttal Report ¶ 44. It is the effect of the removal of Wild Oats as a competitor that is the concern of antitrust merger analysis. *Id.*

573.    Dr. Murphy instead infers the price effect of a Wild Oats exit by equating that event with a Whole Foods entry in reverse. Murphy Report ¶ 82. That is, Dr. Murphy's "exit" analysis assumes that the effect of a Wild Oats exit would be exactly the same as a Whole Foods entry, albeit in the opposite direction. Dr. Murphy admits, however, that the effects observed using an analysis of this kind may not be exactly symmetric due to the fact that Whole Foods and Wild Oats are not identical competitors. In particular, Dr. Murphy acknowledges that one could expect the effects of

Wild Oats exit to be somewhat smaller owing to the greater size of Whole Foods in most overlap markets. Murphy Report ¶ 82; 7/31 Hearing Tr. at 78. On average, Whole Foods is three times larger than Wild Oats in terms of sales where the two firms compete head-to-head. Murphy Report at ¶ 82 n. 43. Since Whole Foods is larger than Wild Oats in terms of sales, one would expect the effects of Wild Oats' exit on Whole Foods to be smaller than the effect of Whole Foods' entry on Wild Oats. *Id.* Moreover, Wild Oats' prices ███████████ Whole Foods' prices, by as much as ████████████████████

574. The "prices" that Dr. Murphy does rely upon are really not prices at all. Scheffman Rebuttal Report ¶ 41. Dr. Murphy uses as his measure of "price" an estimate of average weekly revenue, which he then adjusted with a myriad of discounts. This adjustment had a material impact on his estimates, making the estimates strongly consistent with the conclusions he draws from his estimates. Scheffman Rebuttal Report ¶ 67.

575. Nonetheless, Dr. Murphy had more than two years of "price" data that was subpoenaed by the FTC for both Wild Oats and Whole Foods but failed to do analyses of these data that would be most useful to the issues in this case. Scheffman Report ¶ 47. Dr. Murphy did not use these data to attempt to analyze prices across stores, namely examining whether PNOS "monopoly" stores have higher prices than PNOS stores that compete with another PNOS. *Id.* Dr. Murphy also failed to use these data to assess what happened in areas in which Whole Foods and Wild Oats competed and where the Wild Oats store was closed, despite there being six such "events" in the period of data. *Id.*

576. Dr. Murphy studied 5 Whole Foods' entry events into Wild Oats "markets." 7/31 Hearing Tr. at 71. But Dr. Murphy's entire pricing analysis that informs his conclusions as to

whether nontransitory prices arising from the merger are likely is based on only two areas (West Hartford, CT and Fort Collins, CO). Murphy Report ¶ 58; Scheffman Rebuttal Report ¶ 56. Although Dr. Murphy examines the effect of Whole Foods entry on five Wild Oats stores (West Hartford, CT; Henderson, NV; Portland, ME; Fort Collins, CO; Tualatin, OR), he acknowledges that only two of these areas offer sufficient post-entry "price" and volume data to discern a time-pattern of effects. Murphy Report ¶ 57; 7/31 Hearing Tr. at 71-72.

577.    Dr. Murphy's study of Ft. Collins, CO is incomplete in that it fails to consider the effects on Whole Foods' prices when Wild Oats exited. Dr. Murphy's study of Ft. Collins, CO also fails to disentangle the effect of King Sooper's simultaneous entry. JX 26 at 250. In any event, Ft. Collins is not alleged to be a market in which the acquisition would have an adverse effect because Wild Oats has already left that market.

578.    Dr. Murphy's analysis of the effect of Whole Foods banner entry on Wild Oats' prices really comes down to his analysis of Hartford, CT. There are only 19 months of post-entry data for Hartford. 7/31 Hearing Tr. at 74. Dr. Murphy's analysis does not account for the fact that partial shrink ███████████████████████████████████████████ ███████████████████████████ 7/31 Hearing Tr. at 75. Dr. Murphy's analysis of Hartford also does not take into account the idiosyncratic price observations for salad bar. 7/31 Hearing Tr. at 76-77. Nor does his analysis take into account that the price impact his regression estimates ██████████████████████████████ with the filtering of the Universal Product Code for salad bar from the data. 7/31 Hearing Tr. at 76-77. Finally, Dr. Murphy's analysis of Hartford does not take into account the simultaneous entry of Trader Joe's in Hartford. 7/31 Hearing Tr. at 73-74.

**L.    Analyses of the effect of Other Competitors' Entry on Whole Foods' Margins, Net Sales and Prices are Not Relevant**

579.    Dr. Murphy's analysis of the effect of other firms' entry on Whole Foods' net sales and margins does not analyze the effect of Wild Oats on Whole Foods because Dr. Murphy chose to exclude any Wild Oats entry or exit events from the data he studied.  7/31 Hearing Tr. at 53-57.

580.    Dr. Murphy's analysis of Whole Foods price response to entry by Earth Fare in certain North Carolina markets is not instructive because i) there are no Wild Oats in any market in which Earth Fare competes; and ii) there is no evidence demonstrating that Earth Fare and Wild Oats are equal or substantially equal competitors.  7/31 Hearing Tr. at 38.

**M.    There is no evidentiary basis for the FTC's "better buyer" claim.**

581.    The FTC urges that the merger be enjoined so that another buyer, not currently operating what it terms "premium natural and organic supermarkets," could buy Wild Oats instead and use it to increase competition against Whole Foods.  FTC Reply Brief at 30-31.

582.    There is no evidence that any such alternative buyer exists.  ███████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████  Whole Foods knows of no other buyer that has come forward – even when the price was lower, *id.*, and the FTC has offered no evidence that there is another buyer.

**N.   Third parties believe this merger will either have no negative impact on competition or will actually *increase* competition among supermarkets.**

583.    No single supplier or other third party has come forward to support the notion that Whole Foods and Wild Oats would have any ability to raise prices after the merger.  The FTC has produced exactly zero such evidence.  Plaintiff Opening Brief; Plaintiff Reply Brief.

584.    To the contrary, grocery suppliers, including natural and organic manufacturers, believe competition is robust today, competition will be robust after the merger, and the merged company will lack market power, the ability to reduce output or otherwise harm consumers.



585.    Contrary to what the FTC has claimed, suppliers support the "elimination of Wild Oats" by Whole Foods.

586.

587.



588.

589.

590.



591.

592.

**O.      Statements of John Mackey, by themselves, cannot demonstrate likely competitive harm. The statements of CEO John Mackey describe his feelings, his predictions, or his efforts to influence public opinion, not objective market facts.**

593.     Whole Foods' CEO John Mackey, like any competitive businessman, does not much care for his competitors. JX 28 at 53-54 (Mackey I.H.) ("We don't like Wild Oats. They are a competitor. We don't like Trader Joe's. We don't like Wegman's. We don't like HEB. We don't like Wal-Mart. We don't like Tesco. We don't like any of these guys. They are our competitors."). Mackey has used similar tough talk in describing other competitors, writing, for example, that "This is exactly the 'war' that I have wanted with ███. Take the gloves off in ███ and put up our own comparisons in our stores . . . ." DX 276.

594.     He also explained that tough talk is part of the culture at Whole Foods, "Business people like to [use] the war metaphors and all this macho type of descriptive language." JX 28 at 76.

595.     Some of John Mackey's predictions have proved incorrect. JX 28 (Mackey I.H.) ("As you can see, some of my other earlier prognostications did not come true.").

596.     Some of John Mackey's other comments reflect an effort to put "on a brave face" and spin the facts in Whole Foods' favor. JX 28 at 251 (Mackey I.H.).

> 1.      The statements of Mackey are not all one-sided, as the FTC suggests. The record is replete with evidence that Mackey was preparing the company for battle in the new competitive environment.

597.     Although Whole Foods presents itself to the world as supermarket selling natural and organic foods, CEO John Mackey recognizes that it is, in reality, just another supermarket. Whole Foods' public statements often tout it as the "[w]orld's Leading Natural and Organic Foods Supermarket," but that is because "we find that's a better point to lead with than [we are] the world's 28th largest food/drug retailer." JX 28 at 31 (Mackey I.H.).

164

598.    The FTC does not and cannot cite Mackey for any statement that Whole Foods' customers only shop at so-called premium natural and organic supermarkets. This is because Mackey believes, and has stated, that the majority of Whole Foods' customers cross-shop: "In the case of Whole Foods, the great majority of our customers don't shop exclusively at Whole Foods, they shop at Safeway, they shop at Trader Joe's, and they shop at Wal-Mart. They shop around." JX 28 at 37; *see also* DX 554 at 7 (Whole Foods' marginal customers shop other supermarkets).

599.    Mackey points out that the same products that Whole Foods sells are available at other supermarkets, including Safeway and Kroger. "[Once w]e had products. You couldn't get those at Safeway or Kroger or Wal-Mart of Albertson's or Wegman's or HEB or Trader Joe's or anywhere else. . . . Today, unfortunately, regretfully, you can find these products everywhere, partly because we've been so successful." JX 28 at 32-33 (Mackey I.H.).

600.    Mackey recognizes that other supermarkets are copying Whole Foods in a variety of ways in order to attract Whole Foods' customers. JX 28 at 272 (Mackey I.H.). ("Originally our products were differentiators. But that has been systematically undermined by competition. . . . We also differentiate on the basis of our store ambiance. . . . Now we are seeing supermarkets copy us in that regard. . . . We differentiate by putting the customers first. And supermarkets . . . have woken up. They do seem to care more about their customers.").

601.    Mackey sees other supermarkets as "aggressively going after us." JX 28 at 240 (Mackey I.H.). Mackey explained that while Whole Foods "flew under the radar," Whole Foods business grew and became "a threat to the mainstream supermarket industry, and they started to pay attention to us;" stating, on multiple occasions, that "we [have] never face[d] more competition than we are facing today. It is a highly competitive market, and it is becoming more

165

competitive." JX 28 at 41 (Mackey I.H.); *see also* DX 554 at 8 (explaining that conventional supermarkets are investing significant capital in remodeling stores and copying whole Foods; Mackey later states that "[w]e're no longer differentiated on the basis of products.").

602.    Mackey expressed similar views in Whole Foods Second Quarter, 2007 Fiscal Year analyst conference call, noting that "[w]e've seen Safeway come out with your Lifestyle stores and Wal-Mart's selling organic and Trader Joe's is opening up more competitive markets and strong regionals like Wegmans and HEB. I mean Whole Foods faces more competition everywhere in [the] United States than we've ever faced before."

603.    But Mackey also described, objectively, the impact of increased competition to Whole Foods' bottom line. In recent reports to the Board of Directors, Mackey described the ██████████████ impact of competition on Whole Foods. For example, in September 2006, Mackey remarked that:



DX 204.

604.    Mackey also explained that it would be necessary to improve the ████████████ ████████ to succeed in the new competitive environment. Mackey explained ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ DX 204.

166

605.    In an October 2006 e-mail to the executive team describing how additional corporate savings could be used, he wrote: "I predict that there aren't any 'extra profit dollars.' They are all going to be spent being more price competitive with Trader Joe's, Wegmans, Safeway, Wal-Mart, etc." DX 11.

606.    In February 2007, he described competition from specific conventional supermarkets by highlighting the situation in ███████████████ and ███ remain the two most powerful conventional supermarket chains we compete against. We have increased the competition recently in ███████████ area with the opening of our new Fair Lakes store that is going head to head with a very successful ████████ store." DX 212.

2.    Mackey did not project a price increase post-merger.

607.    Whole Foods plans to lower prices at Wild Oats stores, not raise them. JX 28 at 186-87 (Mackey I.H.) ("When we take over those Wild Oats stores and we transform them, their sales per square foot are going to go way up, their prices are going to go down in the stores that remain ██████████████████████████").

3.    Mackey did project improvement of Wild Oats stores.

608.    Whole Foods' CEO, John Mackey, believes that Whole Foods can make Wild Oats stores' successful, "unlock [their] value," and more than double the sales per square foot within a couple of years. JX 28 at 66, 249 (Mackey I.H.).

609.    Whole Foods has a successful track record of acquiring supermarkets that are losing money and transforming them into success stories. JX 28 at 197-98 (Mackey I.H.). Bread & Circus, Fresh Fields, and Nature's Heartland all were losing money when Whole Foods acquired them, and those stores are now profitable. The Mrs. Gooch's stores were marginally profitable but are far more so under Whole Foods' management.

167

610.    Far from focusing the company's competitive energy against only Wild Oats, Mackey has helped direct high-level corporate officials in thinking about the new competitive environment against supermarkets. DX 204; DX 14 (e-mail from Mackey responding to suggestion that management should consider systematically comparing the prices of competitors such as ██████████████████, and others, "I do think a discussion of how the WFM leadership addresses the issue of competitive pricing is important.").

611.    Whole Foods Co-Presidents A.C. Gallo and Walter Robb, who have responsibility for the day-to-day operations of the company, encounter strong competition from other supermarkets daily, Gallo Decl. ¶¶ 16-21; Robb Decl. ¶¶ 22-27, and routinely visit other supermarkets in order to assess that competition. This is apparent in every-day, ground-level documents. *See e.g.*, DX 1, DX 3, DX 5, DX 7, DX 18, DX 19, DX 20; *see generally supra* Section II.C.

    4.    Even crediting the FTC's views, the competitive effects of the merger can be effectively assessed only on the basis of evidence of market dynamics, not on the basis of hopes expressed by corporate officials.

612.    For example, in analyzing the effects of the merger, Dr. Scheffman relied on marketplace data. See, *e.g.*, Scheffman Report ¶¶ 289-337 (analysis of pricing).

**P.    Whole Foods has not made final decisions on the closing of Wild Oats' stores because it has not had access to store-level financial data.**

613.    Whole Foods is considering the possibility of closing a number (not yet determined) of the Wild Oats stores that it acquires – either due to the proximity to existing Whole Foods stores or other factors (*e.g.*, size or design of the store, demographics of the area). Sud Decl. ¶ 47.

614.    Whole Foods still does not have the store-level financial records it needs to assess whether to keep, close, or relocate a particular Wild Oats store. Gallo Decl. ¶ 10. Gene Kadish,

who prepared the estimates said they were not the product of a comprehensive analysis. Rather, he testified that they were "Ouija board, dart board' and "estimated guessestimates" because "there wasn't enough time to do a complete analysis." JX 7 at 197-99 (Kadish Dep.).

615.     Nearly half of the stores listed for possible immediate closing in the Project Goldmine projection are less than 25,000 square feet. PX 553, DX 807. According to Dr. Murphy, stores this small are not of competitive significance. JX 26 at 78 (Murphy Deposition) (These small stores cannot influence competition because there is so much additional competition from other supermarkets in their respective markets.).

616.     Industry participants agree that closing some Wild Oats stores is necessary and efficient. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

617. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

618.     Store closings would have not have an impact on suppliers of natural and organic foods. ███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████

619.    Still, Whole Foods has not made final decisions on which Wild Oats stores will

be closed.  Sud Decl. ¶ 47; Gallo Decl. ¶ 10; Robb Decl. ¶ 12.  Whole Foods is considering

several alternatives to closing the stores, ████████████████████████████

███████████████████████████████████████████████

████████████, Sud Decl. ¶ 47; Gallo Decl. ¶ 10; Robb Decl. ¶ 12; JX 11 at 229-231,

237 (Paradise Dep.); JX 31 at 229-236 (Paradise I.H.).

**Q.    The purchase price does not reflect a premium to eliminate Wild Oats as a competitor.**

620.    Whole Foods' offer for Wild Oats did not include any premium for the

elimination of a competitor and it did not contemplate higher prices post-merger.  Sud Decl.

¶ 50; DX 401 at 15-20 (Presentation to Whole Foods Board of Directors about the acquisition).

Whole Foods created a financial model to evaluate the transaction.  The model included the cost

savings and efficiencies that Whole Foods expected to obtain based on its experience from prior

acquisitions.  It included anticipated cost savings for reducing Wild Oats' general and

administrative expenses and the estimated proceeds from selling the Sun Harvest and Henry's

stores.  Most importantly, it included the expected improvement to the sales of former Wild Oats

stores from Whole Foods' investment of its skill and resources in former Wild Oats stores.  Sud

Decl. ¶ 50; JX 3 at 27-28 (Sud Dep.).  Wild Oats' sales per square food of store space is

approximately half that of Whole Foods (Mays Decl. ¶ 21), and the opportunity to improve

financial performance of the Wild Oats stores to the level of Whole Foods stores is an important

reason that the transaction is valuable to Whole Foods.  Sud Decl. ¶ 33-34; JX 3 at 54 (Sud Dep.)

("The reason why this acquisition works is because based on our history, we feel strongly that

we can strongly enhance those stores, improve their ability to compete in the marketplace with other supermarkets, improve their sales, improve their profitability.").

621.    The final purchase price of $18.50 per share was within the values calculated by the model. *Id.* Whole Foods' investment advisors reviewed the transaction, and they opined that the price was fair and reasonable from a financial point of view. DX 401.

622.    The financial model did not include any anticompetitive premium. It assumed that Whole Foods did not raise prices. Sud Decl. ¶¶ 50, 51.

623.    The FTC's claims that the purchase price reflects a premium to eliminate Wild Oats as a competitor is inconsistent with its claims that Wild Oats was somehow turning itself around. 8/1 Tr. at 71 (suggesting that $760 million purchase price only makes sense if Whole Foods intended to preclude entry); cf. 8/1 Tr. at 76 ("Would you pay $760 million for a flailing firm? I would not. There's a turn-around story here.").

624.    By contrast, the defendants' views have been consistent, that the purchase price reflected no premium and ███████████████████████. Sud Decl. ¶50 (Based on cost savings from reduced cost of goods and reduced general and administrative expenses together with projections for increased sales, Whole Foods and its bankers agreed that the purchase price was "fair and reasonable."); JX 3 at 27-28 (Sud Dep.); compare generally Section IV.F.

**R.    The FTC's alleged non-price competitive effect is nonsensical: if the merged firm permits quality to decline, it will no longer be differentiated in any way from conventional supermarkets.**

625.    Whole Foods competes with other supermarkets by improving its stores, its products, its services and its customer experiences. JX 28 at 36-37 (Mackey I.H.). Its original store was approximately 10,000 square feet, but today its average store is 35,600 square feet, and

171

its stores in development average 54,500 square feet. Sud Decl. ¶ 18. It has evolved to attract a broader customer base by using the expanded space to offer more products, greater variety within product categories and prepared food venues. Sud Decl. ¶¶ 17, 20, 28. It has engaged in those strategies to compete with other supermarkets across the country, and not just in the few markets where it competes with Wild Oats. Sud Decl. ¶ 17-30.

626.    Whole Foods has a budget of ▮▮▮▮▮▮ per year for store improvements, which is intended to help Whole Foods stores stay competitive. Gallo Decl. ¶ 31. It intends to continue to invest in its stores so it can continue to enhance its ability to compete with other supermarkets.

627.    The FTC's contention that the acquisition would lead Whole Foods to reduce its efforts to improve its stores and services does not make any sense. It would be contrary to Whole Foods' strategy over the last 15 to 20 years to invest in improved quality in markets where it competes only with other supermarkets where it competes only with other supermarkets, and it is contrary to the budget Whole Foods has established for future investments. Moreover, even if Whole Foods were to suddenly abandon its past practices, it would become even less differentiated from other supermarkets and would face even more intense competition from other supermarkets.

**S.    The testimony of Perry Odak is unreliable and biased.**

1.    Odak's testimony reveals his lack of experience and knowledge of the supermarket industry.

628.    Odak testified that perishables accounted for over 60% of Wild Oats' revenues during his time at the company, when in fact, the actual percentage of Wild Oats' total sales attributable to perishable items is approximately ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮

629.    Odak does not know how many products were carried in Wild Oats stores, as he testified that the typical Wild Oats stores have 44,000 SKUs of 9products, when in fact, they typically carry between ████████████████████████████████████████████ ████████████

630.    ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

631.    ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████

2.    This lack of experience and knowledge led to Wild Oats' decision not to renew his contract.

632.    ████████████████████████████████████
████████████████████████████████████████
████████████████████████████

633.    ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████

173

3.    Odak is embittered toward Wild Oats and its current managements, which has made him a biased witness.

634.



635.

636.

637.    Odak was an extraordinarily hostile witness to Wild Oats at his June 29, 2007 deposition. JX 16 at 8-9, 140-42, 150, 179-82, 204-07, 333.

## V.    SUPERMARKET REPOSITIONING AND ENTRY WILL CONTINUE TO EXERT ADDITIONAL COMPETITIVE PRESSURE ON THE COMBINED FIRM

### A.    Repositioning by supermarket and other retailers is ongoing.

638.    Retailers have been repositioning their formats, services and product selection in order to respond to the growing consumer demand, to differentiate themselves from their competition (especially low-price operators such as Wal-Mart) and to better compete against supermarkets such as Whole Foods that have already been focusing on these products.  Stanton

Report ¶¶ 21, 29-34; Scheffman Report, Appendix E ¶¶ 3-8; *see also* JX 28 at 33 (Whole Foods

CEO Mackey explaining that "Our success has created more competition, it has bred more

imitation, has caused all these supermarkets to try to want to steal Whole Foods' mojo."); 103 (".

. .Whole Foods no longer has this product differentiation to itself. . .") (Mackey I.H.).

639.    Conventional food wholesalers are beginning to carry more packaged natural and

organic products, making them more accessible to other supermarkets.  JX 28 at 103 (Mackey

I.H.); Stanton Report ¶¶ 31-34.

640.    Repositioning by supermarkets and other retailers – which has taken the form of,

for example, store remodeling, improved décor, expanded natural and organic products – have

cut into Whole Foods' performance.  JX 28 at 49, 122 (Mackey I.H.) ("customers continue to

erode to our competitors and our same-store sales are on a downward trek as our ability to

differentiate ourselves, as fast as we ware trying to differentiate ourselves, it is increasing."); *see*

*also* JX 28 at 122-23 ("Whole Foods has to differentiate itself from its competitors.  Our basis of

differentiation is eroding.  Our products are migrating to the mass en masse.").

641.    Specifically, Whole Foods' comps (year-over-year sales comparisons) are

flattening and now resemble those of many other supermarket chains.  DX at 77 (Mackey I.H.).

642.    This trend will likely continue as large, better capitalized supermarkets leverage

their scale to obtain high-quality natural and organic foods at lower costs than Whole Foods.

JX 28 at 103 (Mackey I.H.).

      1.    Delhaize America

643.    Delhaize operates over 1,500 supermarkets under the Hannaford Bros., Bloom, Food Lion, Kash n' Karry, Harvey's, Bottom Dollar and Sweetbay banners.  Stanton Report ¶ 35.



648. 

649.

650.

651. 

652.

653.

654.

655. 

a.

656.

657.

658.



659.    Hannaford has achieved organic retailer certification from an independent third-party certifier (QAI).  Scheffman Report, Appendix E ¶ 25.

660.

661.

662.



663.

664.



b.

665.

666.

667.

████████████████████████████████████████

████████████████████████████████

668.    Delhaize has been repositioning its Kash n' Karry stores into the Sweetbay

format, which places a high emphasis on fresh food, services and quality. Scheffman Report,

Appendix E ¶ 30-31. ████████████████████

████████████████████████████████████████

█████████████████

669.    █████████████████████████████████

████████████████████████████████████████

██████████████████

670.    ██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████

671.    Bloom has launched a consumer lifestyle publication, which includes both food

and other topics such as home-decorating, entertaining, health and wellness, travel and

customized regional content. Stanton Report ¶ 37.

672.    ██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████

2.     Safeway

673.     Safeway is one of the largest supermarket chains in the United States.  DX 592 at 4; Stanton Report ¶ 39; Scheffman Report Appendix E ¶ 60.  Safeway operates over 1,500 supermarkets in 21 states and the District of Columbia.  DX 592 at 5-6; Scheffman Report Appendix E ¶ 60.

674.     Safeway operates supermarkets under the Safeway (Western and Mid-Atlantic states), Vons (Southern California), Pavilion, (Southern California), Dominick's (Chicago area), Genuardi's (Philadelphia area), Randall's (Texas), Tom Thumb (Texas), and Carr (Alaska) store banners.  DX 592 at 5; Stanton Report ¶ 41; Scheffman Report Appendix E ¶ 60.

675.     As of December 31, 2006, Safeway had remodeled 751 of its stores into a newly developed "Lifestyle" format.  DX 592 at 20.  ███████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████  In total, Safeway has spent several billion dollars repositioning its stores into the Lifestyle format.  Stanton Report ¶ 40.  ██████████ ████████████████████████████████████████████████████████████████ ████████████████████

676.     ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████

677.     ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████



678.    The Lifestyle store format "showcases [Safeway's] commitment to quality,

particularly in the perishables departments.  The Lifestyle store has an earth-toned décor package,

subdued lighting, customer flooring, unique display fixtures and other special features that impart

a warm ambience that [Safeway] believes significantly enhances the shopping experience."

DX 592 at 20.  *See also* Scheffman Report Appendix E ¶ 60.

679.



680.

*See also* Scheffman Report Appendix E ¶ 63 (citing a Bear Stearns Dec. 2006

report noting that Safeway is "not only responding to shifting consumer demand, but helping to drive demand"); Stanton Report ¶ 39 (Lifestyle format also offers consumers an "experiential factor").

681.    In addition to the physical improvements to each store, Safeway now offers consumers higher quality produce and organic products.



682.    As part of the evolution of the Lifestyle format, Safeway also launched its private label "O" organics line of USDA-certified organic food and beverage products in December 2005. DX 592 at 11; DX 593 at 6. Safeway now carries about 200 "O" brand organic SKUs. DX 592 at 11 (nearly 200 "O" brand organic SKUs); Stanton Report ¶ 39 (about 200 "O" brand SKUs with the introduction of the line of "O" baby food products in 2007); Scheffman Report Appendix E ¶¶ 61, 64 (more than 150 "O" brand organic SKUs).



683.    Within its first year – 2006 – Safeway's "O" organic sales total about $162 million. Stanton Report ¶ 39 (citing to Safeway CEO Steve Burd)



684.    In addition to launching the "O" organic brand products, Safeway recently introduced its "Eating Right" brand of products for health conscious consumers. DX 592 at 11.

"Eating Right products combine great taste with nutritional efficacy and feature a unique nutritional icon system to help consumers identify product attributes that they seek." DX 592 at 11.

685. 

686.

   Dr. Stanton observed that the Lifestyle "strategy is aimed at helping the company compete with the likes of Whole Foods, and is winning over customers with organic foods, high-quality meats and produce, and extensive bakery and deli offerings." Stanton Report ¶ 40.

687.   The effect of the repositioning by Safeway has been evident to industry observers. A January 2007 HSBC Global Research report stated that "Whole Foods has already reduced prices on known-value items, like organic milk and bananas; but it is hard to see how gross-margins won't be pressured once the soccer moms stop shopping at Whole Foods so often now that the same or equivalent products are available at Safeway." *See* Scheffman Report Appendix E ¶ 63 (*quoting* the HSBC Global Research report).

688.



689.

690.

691.

3.    Publix

692.    Publix operates a supermarket chain in the southeastern United States.  The company's primary focus has been on providing an upscale "experience," high quality and excellent customer service.  Stanton Report ¶ 56.

693.    Publix has added a large selection of organic and natural foods, including an entire line of private label organic foods called GreenWise.  Scheffman Report, Appendix E ¶¶ 56-57.  The GreenWise products include shelf-stable food products, dairy, poultry, snacks, juices and even an environmentally-friendly line of paper products.  Stanton Report ¶ 56.

694.    ███████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████
██████████

695.    ███████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████████
██████████

696.    ████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████



697.

698.

699.   Publix has now created a separate supermarket format, also called GreenWise, that will have a heavier focus on natural and organic products in addition to the other supermarket categories.  Stanton Report ¶ 57.  Scheffman Report, Appendix E ¶¶ 58-59.  The first GreenWise store is set to open in September 2007 and will provide an array of natural and organic foods, earth-friendly products, freshly prepared cuisine, and high-quality produce, dairy, frozen food, vitamins, grocery items and nutrition products.  Stanton Report ¶ 57.

4.      Kroger

700.    Kroger operates over 2,400 supermarkets and multi-department stores across the United States, and its banners include Kroger, Smith's, Fred Meyer, Dillon's, Ralphs, and King Soopers.  Stanton Report ¶ 53; Scheffman Report, Appendix E ¶ 44.

701.    Kroger sells a wide variety of natural and organic products, including shelf-stable groceries, produce, poultry, dairy, and beverages.  It introduced its own line of private label natural and organic products under the "Naturally Preferred" label, which includes over 275 items in a variety of categories.  Stanton Report ¶¶ 53-54.  Kroger also offers a premium private label food line known as "Private Selection," which is designed to meet or beat national or regional gourmet and upscale brands.  *Id.*

702.    Many of the Kroger stores (approximately 1,600) feature dedicated natural and organic departments, such as the "Nature's Marketplace" section within Kroger-bannered stores.  Stanton Report ¶ 54.

703.    ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████

704.    ████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████



705.

706.

707.    Kroger is consistently remodeling and upgrading its stores, including 158 store remodels in 2006 alone.  Kroger's other banners are also upgrading their formats.  Stanton Report ¶ 54.  For instance, the Ralph's "Fresh Fare" concept emphasizes fresh products, selection and service. Scheffman Report, Appendix E ¶ 54.  King Soopers is planning to build a 99,000 square foot store (the largest in the chain) near Boulder, CO next year which will emphasize an improved shopping experience, expanded produce, and organic foods. Stanton Report ¶ 54.

5.    SuperValu

708.    SuperValu is one of the largest grocery distributors and supermarket operators in the nation.  It operates supermarkets under the Albertson's, Shaw's, Star, Jewel-Osco, Cub, Acme and other banners, and distributes grocery products to over 2,000 independent

supermarkets across the country. Stanton Report ¶¶ 47-48; Scheffman report, Appendix E ¶ 76.

709.    SuperValu, like many other supermarket companies, has recognized the importance of meeting the growing consumer demand for freshness, nutrition and organic products. Stanton Report ¶ 47.

710.    SuperValu has recently established an aggressive remodeling campaign in order to expand its presence in natural, organic and premium foods. The company is spending approximately $1 billion to remodel and construct new stores in order to customize and enhance the customer shopping experience. Stanton Report ¶ 49; Scheffman report, Appendix E ¶ 78.

711.    The remodeling and new store campaign, called "Premium Fresh & Healthy," places a strong emphasis on: the "Wild Harvest" concept, which is a store-within-a-store focused on natural and organic products; expanded perishables, including produce, meat, seafood, bakery and deli; "Shop the World," which is an international food destination department; and expanded health and beauty care products to support a healthy lifestyle. Stanton Report ¶ 49.

712.    SuperValu has established two different lines of private label organic products — "Nature's Best" and "Wild Harvest." The Nature's Best brand is available to all of SuperValu's corporately-owned supermarkets and to the approximately 2,200 independent supermarkets to which SuperValu is the primary grocery distributor. There are currently over 500 different products under the Nature's Best label. Stanton Report ¶ 48.

713.    The Wild Harvest product line (and also the name of a store-within-a-store concept) originated in the Shaw's division but is being rolled out to most of SuperValu's other banners as well.  The product lines include offerings through the grocery, dairy, frozen foods, poultry and health and beauty aid sections of the stores.  Stanton Report ¶¶ 48-50.  The store-within-a-store concept focuses on offering a wide-assortment of natural and organic products within a dedication portion of the store.  In addition to the private label natural and organic lines and store-within-a-store concepts, these Shaw's and Star stores currently offer well over 100 varieties of organic produce.  *Id.*

714.    In addition to the "Premium Fresh and Healthy" remodeling and new store campaign, SuperValu has created a completely new format called "Sunflower Market," which is a value-priced natural and organic retail outlet offering between 8,000 and 12,000 SKUs of natural and organic products.  SuperValu has announced plans to open 50 Sunflower markets over the next five years.  Stanton Report ¶ 51; Scheffman report, Appendix E ¶ 96.

6.    Wegmans

715.    Wegmans operates supermarkets in New York, New Jersey, Pennsylvania, Maryland and Virginia.  Scheffman report, Appendix E ¶ 119.  It has become recognized within the industry as one of the best supermarkets in the country in terms of produce, fresh product offerings and prepared foods.  Stanton Report ¶¶ 43-45.

716.    Wegmans has introduced its own line of private label organic products and offers a store-within-a-store format called "Nature's Marketplace" selling a large assortment of natural and organic foods, supplements, herbal remedies, non-food items, and foods for special dietary needs.  Stanton Report ¶ 45; Scheffman report, Appendix E ¶ 112.

194

717.    Wegmans is a very difficult competitor for Whole Foods today because it executes perishables as well or better than Whole Foods does.  JX 28 at 47 (Mackey I.H.).

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████

718.    For example, by opening two new stores within ███████████ of Whole Foods' ████████████ Whole Foods ascribed a ███████████████████ to Wegmans.  Wegmans also directly engages in price competition with Whole Foods by comparing its prices to Whole Foods' prices on shelf tags and advertisements.  DX 72; DX 74.  ████████████ ████████████████████████████████████████████

████████████████████████████

719.    Wegmans is a very difficult competitor for Whole Foods today because it does perishables as well or better than Whole Foods does.  JX 28 at 47 (Mackey I.H.)

7.    Giant Eagle

720.    Giant Eagle is a 220-store supermarket chain operating primarily in Pennsylvania and Ohio that offers many fresh, organic and natural products to its customers.  It has introduced a line of private label natural and organic products under its "Nature's Basket" label and store-within-a-store concept, which includes a wide variety of products from grocery, dairy, frozen, bakery, deli and health and beauty aids.  The stores

also carry a wide variety of organic fruits and vegetables, as well as natural meats and poultry.
Stanton Report ¶ 59.

721.    Giant Eagle also focuses on providing a wide selection of premium products and
services at its stores, including some newer stores that feature benefits like an in-house
chocolatier and an international cheese shop with over 400 cheeses from around the world.
Stanton Report ¶ 59.

722.    Giant Eagle has also opened two "Market District" stores that carry an extended
selection of natural, organic and gourmet products.  Stanton Report ¶ 6.

            8.    Wal-Mart.

723.    Wal-Mart has expanded its selection of high quality organic and natural foods
DX 6 at 3 (noting that many of the products that were once unique to Whole Foods are now
being sold through low-price retailers like Wal-Mart ███████████████████████
(Whole Foods Co-President directs company-wide attention to Wal-Mart as they expand
selection of organics); DX 705 (Wal-Mart sale of organic foods ███████████████
██████████████████).

724.    Wal-Mart's focus on natural and organic foods has amplified ███████████
████████████████████████████████████████████████████████
████████████████████████████

> Wal-Mart is working with organic suppliers to identify the top 100 selling
> OG [organic] items which they want to private label and sell at their Wal
> Mart and Sams location at very aggressive pricing.  They are trying to turn
> the 'commodity' natural and organic items into real commodities just like
> they did with conventional groceries.  [Whole Foods] need[s] to be prepared
> ████████████████████████████████ continue to differentiate
> ourselves.

███████████████████████ ("Wal-Mart is rolling this OG program out nationwide ████

███████████████████████████████████ (Wal-Mart

announced its intention to become a "premier retailer of fresh foods" in its October 2005

conference with market analysts.).

725.    In an effort to steal sales from Whole Foods, Wal-Mart has been pushing Whole-

Foods-like values, such as ethical sourcing of product, environmentally friendly growing

methods and sustainable energy sources.  Meyer Decl. ¶ 27; JX 10 at 86 (Meyer Dep.).

**726.**    ████████ efforts are materially affecting Whole Foods sales.  DX 16 at 8

(noting that "[m]arket blurring" has led to increased competitive pressure from multiple

directions, including other food retailers like ████████ and ██████████ (noting that

"if ██████ continues to roll these formats out [  ] I will *see* my [region's] margins erode.");

DX 384 (Whole Foods works on national plan to compete with, among others, ████████);

DX 739 (explaining that ████████ new experimental ████████████ was

obviously aimed directly at both Whole Foods and Central Market and has impacted [Whole

Foods] about ████"); DX 396; DX 65 (describing ████████ impact in ████████); ████

(██ of Whole Foods shoppers who do not purchase nutritional supplements at Whole Foods are

purchasing them from ████████████).

727.    Whole Foods has been forced to find other ways to differentiate itself to retain

consumers that now also consider ████████ as a source of these goods.  DX 15 (noting that even

frequent Whole Foods shoppers split their purchases at other retailers like ████████████

████); DX 421 (Mackey challenges Whole Foods to adapt to growing competition from large,

capitalized retailers like ███████ and mass merchandisers, ███████ more important to

protect our market share than it is to protect our gross margins."); DX 360.

　　　　　9.　　Target (SuperTarget).

728.　　Whole Foods also shares a number of customers with Target, which has expanded

its natural and organic products in response to growing demand. Market research confirms that a

significant number of Whole Foods customers also shop other retailers like ████████.

DX 2 at 20 (noting that retained Whole Foods customers – defined as those that made at least

one shopping trip to Whole Foods in 2005 and 2006 – spent a greater share of their shopping

dollars at ███████ in 2006 compared to 2005).

729.　　Whole Foods price checks Target, among other large food retailers. DX 415;

DX 327 (directive from Co-President and Chief Operating Officer, Walter Robb, to include

██████████ on the roster of competitors for which national comp shopping is

to be conducted); DX 410.

　　　　　10.　　Other supermarkets

730.　　There are a number of other examples of regional and national chains that have

been repositioning their formats to increase their focus on freshness, quality, service, and natural

and organic product offerings. As Dr. Stanton stated, "most supermarket retailers have

introduced and/or expanded their natural and organic product offerings throughout the store –

including produce, meats, dairy, beverages, shelf-stable food, and health and beauty aids.

Virtually every major chain has developed a line of organic private label products." Stanton

Report ¶¶ 33, 66.

731.    There are a number of other examples of regional and national chains that have been repositioning their formats to increase their focus on freshness, quality, service, and natural and organic product offerings. As Dr. Stanton stated, "most supermarket retailers have introduced and/or expanded their natural and organic product offerings throughout the store – including produce, meats, dairy, beverages, shelf-stable food, and health and beauty aids. . Virtually every major chain has developed a line of organic private label products." Stanton Report ¶¶ 33, 66.

732.    Counted among the chains increasing their offerings include, for instance, regional chains such as ███████ and ████████ as well as national retailers such as ████████. Stanton Report ¶¶ 62-64 ███████); DX 804 (████████ "recently repositioned itself as a destination for health and wellness in the ████████); DX 689 (█████ introduced its private label natural and organic line, known as ████████ in September 2006).

733.    ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████

734.    Even small, independent retailers are repositioning in response to consumer demand. ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



735.    This type of extended organic produce selection is becoming commonplace at many supermarkets across the country.  DX 803; ▮▮▮▮▮▮▮▮▮▮▮

**B.    The trends in supermarket and retail repositioning will continue**

736.    Supermarket repositioning will continue and will intensify in the erosion of Whole Foods' and Wild Oats' points of differentiation.  The growth in demand for natural and organic products is continuing, and all supermarkets will continue to respond to that strong consumer growth.  Stanton Report ¶¶ 3, 33, 66-83.

737.    It is easy for supermarkets to reposition their formats or merely add or expand to their product offerings of organic foods, private label organics, natural products, high-quality perishables, etc.  The necessary distribution channels and supply chains are already developed, and most of the food suppliers and manufacturers are continuing to introduce and develop natural and organic product lines.  Stanton Report ¶¶ 77, 82-83.

738.    

739.    As natural and organic products continue to grow in popularity, they will earn more shelf space and visibility in supermarkets.  The result is that chains like Whole Foods will be continuously facing more and more competition from virtually every supermarket and grocery store in its areas.  Stanton Report ¶ 76.

740.    Supermarket chains do not need to reformat or reposition all of the stores within their chain in order to react to changing consumer demand for natural and organic products. They can focus their strategy on localized areas (or on new formats) to offer targeted or specific differentiation in response to localized competition or consumer demand.  Stanton Report ¶¶ 78, 83.

## VI.    THE TRANSACTION WILL MAKE WHOLE FOODS A MORE EFFICIENT SUPERMARKET, WHICH WILL LOWER ITS COSTS AND ENABLE IT TO OFFER LOWER PRICES AND ENHANCED SERVICE

### A.    Whole Foods has improved the prices, quality, and performance of the stores it has purchased previously

741.    Whole Foods has grown, in part, through acquisitions.  In each acquisition  it has made, it has invested in the operations of acquired stores and has improved their performance. Gallo Decl. ¶ 12; Robb Decl. ¶ 11.

742.    Whole Foods' general approach in acquiring another company's grocery store operations is to use the acquisition to learn more ways to:  (1) operate more efficiently; (2) improve merchandising techniques and product selection; (3) operate in new communities; (4) utilize ideas from new team members.  Gallo Decl. ¶ 12.

743.    Walter Robb, Co-President and Chief Operating Officer of Whole Foods, explained that Whole Foods would likely improve service and output of Wild Oats stores, just as it had in prior transactions:

> I have been directly involved in a number of prior transactions in which Whole Foods has achieved savings similar to the savings that would be achieved through the proposed transaction with Wild Oats . . . .  In each of these transactions, Whole Foods took over a number of stores, invested in them, and improved their performance.  In each of the above transactions, Whole Foods was able to substantially increase sales volumes, and provide better value and service to the customers.

Robb Decl. ¶ 11; *see also* Gallo Decl. ¶ 12; Sud Decl. ¶ 34.

202

744. Whole Foods' success in transforming previously underperforming stores into productive ones has not gone unnoticed in the industry.



1.  Wellspring Grocery.

745. Whole Foods purchased Wellspring Grocery ("Wellspring") in 1991. After purchasing Wellspring, which had store locations in Durham and Chapel Hill, North Carolina, Whole Foods invested in improvements to the perishable operations at each store. Gallo Decl. ¶ 11.

2.  Bread & Circus.

746. In 1992, Whole Foods purchased Bread & Circus, which operated a chain of stores in the northeastern United States. DX 797. Prior to the acquisition, Bread & Circus was not profitable. JX 28 at 23 (Mackey I.H.).

747. After acquiring Bread & Circus, Whole Foods' leadership recognized that the perishable operations at Bread & Circus were better executed and had higher sales than Whole

Foods' perishable departments. Gallo Decl. ¶ 11; JX 1 at 49-51 (Gallo Dep.); *see also* Robb

Decl. ¶ 11.

748.    Whole Foods implemented a series of changes to improve its performance in

perishables in all of its stores, using the knowledge gained from Bread & Circus's operations.

Gallo Decl. ¶ 11; JX 1 at 49-53 (Gallo Dep.). Whole Foods also adopted the product coordinator

structure that Bread & Circus had in its stores, a structure Whole Foods continues to use. Robb

Decl. ¶ 11; JX 1 at 51-53 (Gallo Dep.)

3.    Mrs. Gooch's.

749.    In 1993, Whole Foods acquired Mrs. Gooch's, a chain of stores located in

southern California. DX 797. After taking over the operations of the Mrs. Gooch's stores,

Whole Foods invested in the stores and improved their performance. Robb Decl. ¶11. Whole

Foods was able to increase sales volumes at these stores and provide better value and services to

customers. *Id.*

4.    Fresh Fields.

750.    Whole Foods purchased Fresh Fields in 1996. Fresh Fields operated twenty-two

stores in the Washington DC, Baltimore, MD, Philadelphia, PA, Chicago, IL, and New

York/New Jersey/Connecticut areas. DX 797. Fresh Fields, in each of its years of operations

before being acquired, never made a profit and had lost approximately $35 million. Sud Decl.

¶ 34; Lannon Decl. ¶ 9; JX 28 at 23, 189 (Mackey I.H.). After acquiring Fresh Fields, Whole

Foods remodeled a number of Fresh Fields' stores and improved the quality of products and

services at each of those stores without raising prices. Sud Decl. ¶ 34; Gallo Decl. ¶ 13; JX 1 at

77-78 (Gallo Dep.).

5.    Bread of Life.

751.    In 1997, Whole Foods purchased Bread of Life, a chain of stores located in Florida. DX 797. Whole Foods took over these stores, invested in them, and improved their performance. Robb Decl ¶ 11. Whole Foods was able to substantially increase sales volumes at these stores and provide better value and service to customers. *Id.*

6.    Nature's Heartland.

752.    In 1998, Whole Foods purchased Nature's Heartland, a chain of stores located in Massachusetts. Gallo Decl. ¶ 14. Whole Foods took over the stores, invested in them, and trained store team members. *Id.* Whole Foods was able to increase sales volumes dramatically at these stores, and, as a result, the stores became profitable. *Id.*

7.    Food for Thought.

753.    In 2000, Whole Foods purchase Food for Thought, a chain of stores located in northern California. DX 797. Whole Foods took over these stores, invested in them, and improved their performance. Robb Decl ¶ 11. Whole Foods was able to substantially increase sales volumes at these stores and provide better value and service to customers. *Id.*

8.    Harry's.

754.    In 2001, Whole Foods acquired Harry's, which operated three stores in the Atlanta, Georgia area. Allshouse Decl. ¶ 11. Whole Foods invested over ▬▬▬▬ in the stores, and increased sales volumes dramatically at the stores from 2002 through 2004. Whole Foods also was able to improve the quality of the food and the in-stock conditions at the Harry's stores. *Id.*; Meyer Decl. ¶¶ 37-38 (Whole Foods invested significant money, improved the quality of the acquired stores, added staff to improve customer service, passed savings from increased efficiencies on to customers).

**B.    Whole Foods has in the past transformed underperforming Wild Oats stores into productive supermarkets**

755.    In 2002, Whole Foods subleased a failed Wild Oats store in Madison, New Jersey that, based on its previous price checking, had charged higher prices than Whole Foods' nearby store in Milburn, New Jersey.  Lannon Decl. ¶ 6.  After investing about ███████, hiring staff, and integrating the store into the Whole Foods system, it was reopened with improved quality and service at prices lower than those charged by the former Wild Oats store.  Lannon Decl. ¶¶ 5-7 (prices were matched to the Whole Foods store in nearby Milburn, NJ, which had found the Wild Oats store to have higher prices); Sud Decl. ¶ 34.

756.    Whole Foods also subleased a former Wild Oats store in Framingham, Massachusetts, undertook major renovations, and converted it into a profitable store.  Lannon Decl. ¶ 8; Sud Decl. ¶ 34.

**C.    Wild Oats ████████████████ current and future competitive position must be discounted.**

1.    ████████████████████████████████████



757.    ███████████████████████████████████████

████████████████████████████████████████████████

Wild Oats received financing of $115 million in 2004 ████████████████████████

████████████████████████████████████

758.    ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ ██████████

████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

759.    ████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

760.    Wild Oats received financing of $115 million in 2004███████████████████

███████████████████████████████████████████████████████

█████████

761.    ██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

762.    ████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

2.    ████████████████████████████████████████
       ████████████████████████████

763.    Roger Davidson, who became the Senior Vice President of Marketing and

Merchandising at Wild Oats in October 2006, determined that█████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

764. ███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████

765. ███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

766. ███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

767. ███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

768. ███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

769. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

█████████

770. ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████

**D.    Whole Foods will improve the performance of Wild Oats stores.**

771.    While Whole Foods has been developing larger stores, Wild Oats has not,

investing little in the development of their stores.  Sud Decl. ¶¶ 31, 33, 61.  Wild Oats

management has not made the necessary investment in its stores to enable them to compete

effectively in the marketplace.  *Id.* ¶ 33.  Whole Foods planned to improve the physical

infrastructure of Wild Oats stores with planned investments of ████████████ at the time of

the acquisition's announcement in order to improve their performance.  *Id.*

772.    Wild Oats is hindered by excessive corporate costs.  Whole Foods expects to be

able to reduce these costs by about █████, which will make these stores more efficient and more

competitive.  Sud Decl. ¶ 57; *see also* JX 31 at 247 (Foster I.H.) (Whole Foods expects to

eliminate significant general and administrative costs and improve the profitability of Wild Oats

stores by applying managerial expertise resulting in a better consumer experience).

773.    ██████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████

**E.    The acquisition will enable Whole Foods to lower prices and expand output.**

774.    Whole Foods' competitors are for the most part larger, better capitalized and have more resources, particularly with respect to real estate and sheer number of stores, than does Whole Foods.  In addition, these competing supermarkets, due to the fact that they have a vastly greater number of stores and deal in much higher volume, have better purchasing power than Whole Foods and are able to obtain a lower cost for goods from their suppliers.  The transaction will allow Whole Foods to expand in order to compete more effectively with its larger, better capitalized competitors.  JX 3 at 34, 151-153 (Sud Dep.).

775.    Whole Foods expects to lower prices in acquired Wild Oats stores.  A.C. Gallo, Co-President and Chief Operating Officer, explained one message to be advertised after the merger's announcement:

> [W]e could use the merger with WO to tell some of our stories one of which could be we have great prices.  The concern in any merger is that prices may go up in acquired stores.  In fact, we know that ██████████████ ████████ we will be bringing down quite a few prices.

DX 58; DX 274; Meyer Decl. ¶ 39 (explaining that he understood that Whole Foods planned to lower prices at acquired Wild Oats stores).

776.    The acquisition will enable Whole Foods to generate significant efficiencies, including purchasing efficiencies gained through expanded distribution, the elimination of general administrative costs, and improved intellectual capital.  DX 401 (Project Goldmine presentation to the Board of Directors).  Paradise Decl. ¶ 64.  It will allow several Whole Foods regions to expand their regional staff, particularly in smaller regions where it has operated without a full complement of coordinators, thus making Whole Foods more efficient.  Paradise Decl. ¶ 61.  The acquisition will also create cost efficiencies by spreading Whole Foods' general and administrative costs over

more stores. Paradise Decl. ¶ 62. The acquisition will also enhance Whole Foods' ability to reach

more customers. It will add many new stores in areas where Whole Foods does not currently have

stores. Sud Decl. ¶ 36. For example, the acquisition will significantly increase the number of

stores in the Rocky Mountain region. Paradise Decl. ¶ 59. It will also make Whole Foods stores

more convenient to many current customers who will have a new store closer to them. Paradise

Decl. ¶ 63. *See also* JX 41 at 247, 257 (the acquisition would enable Whole Foods to expand is

footprint by adding stores in its Florida, Rocky Mountains, and Pacific Northwest regions where it

does not currently have many stores, which will reduce costs and improve operational efficiency.);

Sud Decl. ¶ 37.

777.    The acquisition will also lead to purchasing efficiencies. With more stores, Whole

Foods will be able to obtain greater volume discounts from its suppliers. Paradise Decl. ¶ 65; Sud

Decl. ¶ 38. The lower purchasing costs in turn will allow Whole Foods to become more price

competitive. Sud Decl. ¶ 38.

778.    The acquisition will also allow Whole Foods to obtain cost efficiencies. Whole

Foods is decentralized and therefore has relatively low general and administrative overhead

expenses. In contrast, Wild Oats has more significant corporate overhead, which Whole Foods

expects to eliminate, thus reducing those overhead costs by ███. Sud Decl. ¶ 137.

779.    Whole Foods plans to invest in a number of Wild Oats' stores and improve the

quality of the stores and the products and services that they offer. Robb Decl. ¶ 15; Gallo Decl.

¶ 9; Paradise Decl. ¶ 57; Sud Decl. ¶ 32.

211

**F.** **The acquisition will allow Whole Foods to compete better with larger supermarkets**

780.  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

781.  Whole Foods may not close all the smaller Wild Oats stores.  It is considering

alternative formats for ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  JX 41 at 98 (Foster I.H.); JX 11 at 229-231,

237 (Paradise Dep.); JX 31 at 229-236 (Paradise I.H.).  These formats are being considered to

████████████████████████████████████████████████████

████████████  JX 41 at 102 (Foster I.H.).

## VII.  THE BALANCE OF THE EQUITIES FAVORS DENIAL OF THE PRELIMINARY INJUNCTION

782.  Under the merger agreement, either party may terminate the agreement after

August 31, 2007.  Sud Decl. ¶ 45.  If the transaction has not closed by that date, one or both of

the parties may terminate the merger agreement.  Sud Decl. ¶ 45.  Therefore, if the tender offer is

not consummated on or before August 31, 2007, there is a very real risk that that transaction will

not occur at all.  Wild Oats' obligation to sell to Whole Foods will expire on August 31, 2007.

DX 811.  Whole Foods' financing commitments also expire on that date, as does Whole Foods'

agreement to sell to a third party the Sun Harvest and Harry's stores currently owned by Wild

Oats.  Therefore, the merger is unlikely to occur, no matter what the legal merits, if it is not

consummated on or before August 31, 2007.

212

783.    ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

784.    The proposed merger will enhance Whole Foods' ability to compete against its much larger supermarket rivals, so entry of a preliminary injunction would substantially burden its private interests.

785.    There is no other prospective buyer for Wild Oats, so entry of a preliminary injunction would substantially burden its private interests.

786.    The public interest in competition and effective enforcement of the antitrust laws weighs in favor of denial of the preliminary injunction, since the merger promises to have procompetitive effects and entry of the injunction would likely prevent it from being consummated.

## VIII.    CONCLUSIONS OF LAW

**A.    The FTC has not proven a "likelihood of ultimate success" on the merits that the effect of the proposed merger "may be substantially to lessen competition." 15 U.S.C. §§ 18, 53(b).**

787.    Section 13(b) of the FTC, which empowers the FTC to seek to enjoin a violation of Section 7 of the Clayton Act, requires "a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, [the issuance of a preliminary injunction] would be in the public interest." 15 U.S.C. § 53 (b)(2). To obtain an injunction **under**

213

Section 13(b) of the FTC Act, the FTC must make "a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest." 15 U.S.C. §53(b).

788.    To meet its burden under Section 13(b) the FTC first must demonstrate at least a "reasonable probability" of success on the merits at a full hearing. *FTC v. Arch Coal, Inc.* 329 F. Supp. 109, 116 (D.D.C. 2004).

789.    The FTC's burden is "not insubstantial," as explained by Judge Bates in *Arch Coal*:

> Given the stakes, the FTC's burden is not insubstantial, and "[a] showing of a fair or tenable chance of success on the merits will not suffice for injunctive relief." *Tenet Health Care*, 186 F.3d at 1051; *see Fruehauf Corp. v. FTC*, 603 F.2d 345, 351 (2d Cir.1979) ("mere possibility" will not justify preliminary injunction). Because the public interest in effective enforcement of the antitrust laws is of primary importance, a showing of likely success on the merits will presumptively warrant an injunction. *See Heinz*, 246 F.3d at 726; *University Health*, 938 F.2d at 1225; *Staples*, 970 F.Supp. at 1091. Conversely, absent a likelihood of success on the merits, equities alone will not justify an injunction. *See FTC v. PPG Indus., Inc.*, 798 F.2d 1500, 1508 (D.C.Cir.1986).

*FTC v. Arch Coal*, 329 F.Supp.2d at 116.

790.    The D.C. Circuit elaborated on this standard on *FTC v. H. J. Heinz Co.*, 246 F.3d 708, 714-15 (D.C. Cir. 2001) where it explained that the requisite likelihood of success necessitated at least "questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals." But however the Section 13(b) standard is explained, the FTC must demonstrate a likelihood of success on the merits, *i.e.*, that the effect of the Whole Foods/Wild Oats merger, under Section 7 of the Clayton Act "may be substantially to lessen competition or tend to create a monopoly" in properly defined relevant geographic and product markets. *United States v. Philadelphia National Bank*, 374 U.S. 321

214

(1963); *FTC v. H.J. Heinz Co.*, 246 F.3d 708 (D.C. Cir. 2001); *United States v. Baker-Hughes Inc.*, 908 F.2d 981, 982-83 (D.C. Cir. 1990).

791.    The Clayton Act deals in "probabilities, not ephemeral possibilities," so the FTC must establish that a lessening of competition is "sufficiently probable and imminent" that injunctive relief is warranted. *United States v. Marine Bancorporation*, 418 U.S. 602, 622-23 (1974), *quoting Brown Shoe Co. v. United States*, 370 U.S. 294, 323 (1962); *FTC v. Arch Coal*, 329 F. Supp. 2d at 115.

792.    The FTC has not proven that it is likely to prevail on the merits of an administrative proceeding and subsequent appeal to the Court of Appeals. Considering the voluminous factual record taken as a whole, the FTC has not "raise[d] questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair ground for thorough investigation, study, deliberation, and determination by the FTC in the first instance and ultimately by the Court of Appeals." *FTC v. Heinz*, 246 F.3d at 714-15.

793.    The failure of proof is not for a lack of trying. The parties produced millions of pages of documents and tens of millions of data points during its investigation and in this litigation. The FTC had months to develop facts sufficient to meets its burden under Section 13(b) but it could not do so.

           **1.    The FTC is not likely to prove that the relevant product market is premium natural and organic supermarkets.**

794.    Proof of the relevant product and geographic markets is a "necessary predicate of any claim under § 7 of the Clayton Act. *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 593 (1957); *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1072 (D.D.C. 1997).

795.    The relevant product market is determined according to the "reasonable interchangeability of use" or cross-elasticity of demand between the products sold by the merging

parties and their "substitutes." *Brown Shoe v. U.S.*, 370 U.S. at 325; *U.S. v. Baker-Hughes*, 908 F.2d at 223.

796.    In other words, definition of the relevant product market looks to where customers are likely to turn in the event of a price increase or decline in quality in the goods sold by the merging firms. *Brown Shoe v. U.S.*, 370 U.S. at 325; *U.S. v. Baker-Hughes*, 908 F.2d at 223.

797.    For the reasons set forth herein, taken both individually and collectively, the FTC has failed to prove a likelihood of establishing a relevant product market.

### a.    The FTC failed to allege or prove what products are at issue.

12.    The FTC has failed to prove a likelihood of success in establishing a relevant product market because the product market alleged in its complaint -- "premium natural and organic supermarkets" -- is not a collection of products but rather a collection of firms.  While some case law recognizes so-called cluster markets, each of those cases defined the relevant product market with respect to products.  See, e.g., *FTC v. Staples, Inc.*, 970 F.Supp. 1066, 1078 D.C. 1997) ("the sale of consumable office supplies through office supply superstores").

### b.    Unique rivalry or closeness between the merging firms is not a factor un establishing product market definition.

13.  The FTC has failed to prove a likelihood of success in establishing its alleged relevant product market because its analysis erroneously assumes that uniqueness or closeness between the merging firms is relevant to market definition.

14.  The FTC incorrectly cites Section 2.21 of their own Horizontal Merger Guidelines, for the proposition that uniqueness or closeness is relevant.  But Section 2.21 is part of competitive effect analysis which, according to the Guidelines, presumes an appropriately defined market.

15. Even if the FTC had established unique rivalry or closeness between the merging firms, which they have not, the failure to follow their own Guidelines and the circularity of their reliance on uniqueness, make it unlikely that the FTC will establish their alleged relevant product market.

### b. In pursuing this case, the FTC has ignored its past enforcement practices and its Horizontal Merger Guidelines.

#### (1) The alleged product market is inconsistent with FTC precedent.

798. Review of the FTC's prior supermarket merger enforcement matters reveals that in all 18 of such matters since the 1992 FTC Horizontal Merger Guidelines were adopted, until this merger, the FTC concluded that the relevant product market was at least as broad as the retail sale of food and grocery items in supermarkets. Its failure to use that market definition here, without any explanation for its sudden departure from long-standing policy, makes it less likely to prevail at a full hearing on the merits. *Cf. United States v. Long Island Jewish Medical Center*, 983 F. Supp. 121, 138 (E.D.N.Y. 1997); *United States v. Central State Bank*, 817 F.2d 22, 23 (6th Cir. 1987); *FTC v. Foster*, Memorandum Op. ¶ 181, No. CIV-07-352 JB/ACT (D.N.M. May 29, 2007). ("*Western Refining*").

#### (2) The alleged product market is inconsistent with the FTC's Horizontal Merger Guidelines.

799. The FTC's Horizontal Merger Guidelines require analysis of where customers would turn for goods in the event of an increase in price or a decline in quality that reflects a lessening of competition. Horizontal Merger Guidelines § 1.0 (rev. 1997).

800. The Guidelines call for an examination of how consumers would respond to a small but significant and non-transitory increase in price ("SSNIP") by a hypothetical monopolist seller of the

217

products of the merging firms narrowly defined. Guidelines § 1.11. The FTC did not perform this

SSNIP test nor did it analyze how customers respond to changes in prices.

      801.    The failure to follow their own Guidelines makes it unlikely that the FTC will be

able to establish a relevant product market as required by Section 7.

            **c.**      **The alleged product market seems to have been constructed for this case alone, because it does not reflect the reality of everyday competition.**

      802.    The relevant product market alleged in the FTC's complaint is nothing more than

an attempt to describe, in a highly subjective fashion, some of the attributes of Whole Foods as

Wild Oats stores. This is not a proper basis for defining a relevant product market. *United States*

*v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1121 (N.D. Cal 2004) ("Judicial experience cautions

against the use of qualitative factors to define narrow markets"). There is a significant risk of *ad*

*hoc* decisionmaking when courts focus on store attributes rather than consumer behavior. William

Blumenthal & David Cohen, *Channels of Distribution as Merger "Markets": Interpreting* Staples

*and* Cardinal, Antitrust Rep., Nov. 1998, at 13.

      803.    The FTC's product market definition does not accurately reflect where customers

shop today, and the FTC fails to demonstrate whether customers would have alternatives to turn to

in the event of a price increase or decline in quality, which is the determinative question for

product market. *Brown Shoe v. U.S.*, 370 U.S. at 325; *U.S. v. Baker-Hughes*, 908 F.2d at 223.

      804.    The fact that the large majority of Whole Foods and Wild Oats customers today

shop frequently at other supermarkets for the same products that they buy at Whole Foods and

Wild Oats, and that other supermarkets now sell many and an increasing variety of natural and

organic products, demonstrates that the relevant product market for evaluating this merger

includes, at a minimum, all supermarkets. If, after the merger, Whole Foods raised its prices or

permitted its quality to decline, customers would easily shift their purchases of natural and organic products from Whole Foods to other supermarkets.

805.    The strong evidence of price-checking among Whole Foods, Wild Oats, and other supermarkets further demonstrates active and vigorous competition among them, proving that they are in the same relevant product market. *See FTC v. Heinz*, 246 F.2d at 708, 718.

806.    The evidence that Whole Foods considers the locations of all other local supermarkets when assessing where to locate a new store further proves that Whole Foods operates in the same product market as other supermarkets. FTC v. Staples, 970 F. Supp. at 1079.

807.    Much of the FTC's argument about product market focuses on vague attributes that Whole Foods claims to have, such as offering a "third place," where customers can relax outside of work or home.  Aside from the fact that many other entities claim to offer such a haven, including coffee shops and cafes, attributes as vague as this cannot be the basis of market definition. *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1159 (N.D. Cal. 2004.

808.    The FTC's product market definition also fails because it has not shown how to apply the characteristics it attributes to premium natural and organic supermarkets.  First, the attributes include vague terms such as "focus on perishables," without providing any way to measure what "focus" is or how much "focus" is necessary.  Second, the FTC says that stores "generally" have the attributes, but that no every store will have every attribute. The FTC says that they attributes may be mixed in different ways to be a premium natural and organic supermarket, yet it provides no objective way to determine what mixtures are sufficient.

809.    Further, the FTC has not established which Whole Foods and Wild Oats stores have the attributes.  The failure is particularly acute because of the variation among Wild Oats stores.

810.    Similarly, the FTC has failed to establish that other grocery stores in the alleged geographic markets do no have the attributes and therefore are not within the alleged product market. It discusses various supermarket chains in general terms, but it has not submitted evidence applying the alleged attributes of premium natural and organic supermarkets to any other the other stores.

811.    The FTC also has not proven that Earth Fare and New Seasons have the attributes, even though the FTC asserts that they are the only two other premium natural and organic supermarkets. That failure is important because Dr. Murphy has analyzed price effects from the entry of Earth Fare stores in North Carolina, asserting that the study shows that Whole Foods responds to premium natural and organic supermarkets but not other grocery stores. However, because the FTC has not shown that Earth Fare actually has the attributes, Dr. Murphy's study says nothing about the product market definition or the competitive effects of this matter.

812.    Some of the FTC's evidence tends to show that some customers prefer to shop at Whole Foods or Wild Oats rather than at other supermarkets. Preferences are not sufficient to establish relevant product markets, since, without more, they do not inform the inquiry into whether sufficient customers would switch in the event of a price increase or quality decline so that the price increase or quality decline would be unprofitable. *FTC v. Arch Coal*, 329 F. Supp. 2d at 122; *United States v. SunGard Data Sys.*, 172 F. Supp. 2d 172, 191-92 (2001); *United States v. Gillette Co.*, 828 F. Supp. 78, 83 (D.D.C. 1993.

813.    The fundamental error in the FTC's reasoning and the focus of its proof on product market is that it addresses whether Whole Foods has *any* customers who are so dedicated to that store's  product array and other qualities that they would not switch *any* of their purchases to

220

another supermarket if Whole Foods began to compete less vigorously. The question for antitrust analysis is, instead, whether *enough* customers would switch *enough* of their purchases that a post-merger price increase or quality decline would be unprofitable for Whole Foods. The defendants' evidence persuasively answered this question in the affirmative: customer willingness to switch some or all of their purchases to other food retailers would likely render unprofitable any post-merger effort by Whole Foods to increase prices or reduce quality.

814.    Critical loss accurately captures the FTC's *Guidelines* test for defining relevant markets when evaluating whether to challenge a merger. *Tenet Healthcare v. FTC*, 186 F.3d 1045, 1053 (8th Cir. 1999); Department of Justice/Federal Trade Commission Horizontal Merger Guidelines 57 Fed. Reg. 41552 § 1.21 (1992). The Commission, in fact, frequently applies this test. *See, e.g,* Statement of the FTC Concerning Royal Caribbean Cruises, Ltd./P&L Princess Cruises plc and Carnival Corp./P&L Princess Cruises plc, File No 021 0041, text at n.9 (October 4, 2002), available at http://www.ftc.gov/os/2002/10/cruisestatement.htm. Critical loss analyses are also often relied upon by courts ion merger cases. *See, e.g, Tenet Health Care v. FTC*, 186 F.3d at 1050, 1053; *FTC v. Arch Coal*, 329 F. Supp. 2d at 122-23.

815.    The evidence does not support a finding of a separate market for "premium natural and organic supermarkets."

> **d.    The FTC has no support for its eleventh hour assertion that there could be markets comprised of individual departments at premium and natural organic supermarkets.**

816.    During its closing argument, the FTC asserted that Whole Foods and Wild Oats "can and do price discriminate" in the produce, seafood and meat categories, citing to an analysis conducted by Dr. Murphy in support of this assertion. 8/1 Hearing Tr. at 23 – 33, 48. Neither the facts of this case, the case law, the *Horizontal Merger Guidelines*, nor even Dr. Murphy's own

testimony support the existence of price discrimination markets (or even the parties' ability to price discriminate in the first place).

817.    The *Horizontal Merger Guidelines* define "price discrimination" product markets as those in which a hypothetical monopolist could *identify* and *price differently* to targeted buyers who would not defeat the price increase by substituting to other products in response to a SSNIP. Stated another way, price discrimination requires "charging different buyers different prices for the *same* product." *Horizontal Merger Guidelines* § 1.12 (rev. 1997) (emphasis added). The case law definition is identical to that used in the Merger Guidelines. *FTC v. Owens-Illinois, Inc.*, 681 F. Supp. 27, 48 (D.D.C. 1988) (price discrimination defined as the ability to "raise prices to those purchasers who will not readily switch to alternative [products], but *not* raise prices to elastic end users." (emphasis added).

818.    Although the FTC alleged in its closing argument that Whole Foods and Wild Oats "can and do price discriminate" (referring either to the produce, seafood and meat departments or to some sub-group of products within those departments), it in fact has *no* evidence that price discrimination happens or is even possible.

819.    Whole Foods, like all supermarkets, posts the price of each product in its stores for all to see. The prices do not change for particular customers or groups of customers, nor is there any mechanism that would make such a pricing structure possible. As is demonstrated in the record, Whole Foods does not even use "loyalty" or "frequent shopper" cards to monitor and track which customers are purchasing which products. Sud Decl. ¶ 13. It has no ability to "charge different buyers different prices for the same product," as the Guidelines and case law require. *Horizontal Merger Guidelines* § 1.12 (rev 1997).

820.    The FTC's expert economist, Dr. Murphy, explicitly rejected the notion that there

were separate product markets for individual items within categories like produce and seafood. In his expert report, Dr. Murphy states "consumers do not typically choose retailers of the goods in question on a product-by-product basis; rather, they typically purchase an array of products from a single source. I therefore approach market definition by considering the collection of products provided by each of the individual retailers at issue and consider substitution by consumers across these collections." Murphy Report ¶ 97. At trial, he explained that his margin analysis was not meant to suggest that produce or seafood sold through Whole Foods or Wild Oats was a "separate relevant product market," and explained that "I didn't think we'd want to define separate markets product-by-product." 7/31 Hearing Tr. at 87 – 88.

821.    That the FTC has refined its definition of the relevant product market on a number of occasions during the short duration of this litigation – and again during closing arguments – is further evidence that the FTC is unlikely to establish a relevant product market. It may not matter what the product market is called, as the FTC argued in closing (citing "Romeo & Juliet" but not *legal* precedent), but it does matter for purposes of a preliminary injunction whether the FTC has a consistent methodology for defining a relevant product market and the factual support for applying that methodology. Here they have neither.

822.    These shifting product market definition attempts undermine the FTC's likelihood of success in establishing a product market. In *United States v. Oracle Corp.*, the court noted that the government had shifted its product market definition on several occasions during the course of the trial, ultimately settling on a definition (as in this case) comprised of ten fairly vague product "characteristics." The *Oracle* court found such shifting and vague characteristics insufficient for

223

the government to meet its burden of proving a relevant product market. *United States v. Oracle Corp.* at 1159.

### 2. The FTC is not likely to prove its relevant geographic markets injunction.

823. "The government has the burden of proving the relevant geographic market." *FTC v. Tenet Health Corp.*, 186 F.3d 1045, 1052 (8th Cir. 1999).

824. The FTC is unlikely to prove that the relevant geographic markets are the arbitrary areas alleged in their complaints or discussed in their briefs. As with their product market allegations, the FTC's approach to geographic market allegations fails to conform to the case law and their own *Horizontal Merger Guidelines*. Moreover, the FTC's shifting position on the relevant geographic markets further undermines their likelihood of success.

825. The relevant geographic markets must be established with careful attention to the nature and circumstances of the particular market in question. *United States v. Connecticut National Bank*, 418 U.S. 656 (1974).

826. Metropolitan areas, drawn to reflect overall commercial activity in an area, cannot be used to define geographic markets for individual products or services without a particularized showing that they are appropriate for that individual product or service. *U.S. v. Connecticut National Bank*, 418 U.S. 656. The FTC has made no effort to make such a particularized showing of the relevance of metropolitan areas to market definition in a supermarket merger, and its reliance on metropolitan areas is therefore inadequate as a matter of law.

827. The FTC's reliance on a single factor used by Whole Foods to determine a store's draw area – circles showing a six-mile radius around each store, reflects only one of many factors Whole Foods uses in estimating the area from which it draws its customers. Moreover, Whole Foods uses different criteria for this assessment, depending on the nature and circumstances of the

224

relevant market. The FTC's reliance on this single factor, without any evidence of its applicability to the individual market in question, is legally insufficient to prove the contours of the relevant geographic markets. *U.S. v. Connecticut National Bank*, 418 U.S. 656.

828.    Draw areas do not establish relevant geographic markets, since they show where customers shop today, not where they might shop in the event of a price increase or quality decline. *FTC v. Freeman Hospital*, 69 F.3d 260, 263 (8th Cir. 1995).

829.    The FTC's Horizontal Merger Guidelines require analysis of where customers would turn for goods in the event of an increase in price or a decline in quality that reflects a lessening of competition. Horizontal Merger Guidelines § 1.0 (rev. 1997).

830.    The Guidelines call for an examination of how consumers would respond to a small but significant and non-transitory increase in price ("SSNIP") by a hypothetical monopolist seller at the locations of the merging firms. Guidelines § 1.21. The FTC did not perform this SSNIP test nor did it analyze how customers respond to changes in prices.

831.    The failure to follow their own Guidelines makes it unlikely that the FTC will be able to establish a relevant geographic market as required by Section 7.

832.    The fact that the FTC has changed its position on the relevant geographic market so frequently suggests a lack of attention to or lack of confidence in its definition, and decreases even further the likelihood that it would prevail at a full hearing on the merits.

833.    The FTC failed to offer the individualized proof of local conditions and market circumstances that is legally required to establish the relevant geographic markets. *FTC v. Staples*, 970 F. Supp. at 1073; *FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34, 45 (D.D.C. 2002).

834.    The weight of all of the evidence is that relevant geographic markets vary with each store location, and the consequence is that each relevant geographic market must be separately proved on the basis of the facts and circumstances of that particular locale. *See U.S. v. Connecticut National Bank*, 418 U.S. 656.

835.    The FTC's inability to offer evidence to prove the relevant geographic market is, without more, sufficient grounds for denying the preliminary injunction. *FTC v. Cardinal Health, Inc.*, 12 F. Supp. 2d 34, 49 (D.D.C. 1998).

3.    The FTC's inability to prove that the merger is likely substantially to *lessen* competition.

836.    After the relevant markets have been delineated, the Court must examine whether the proposed merger will have anticompetitive effects within those markets. On this issue, as with product and geographic market, the FTC maintains the burden of proof. *U.S. v. Baker Hughes*, 908 F.2d 981.

837.    Highly relevant to the effects analysis is evidence from past marketplace events that inform whether prices are likely to rise, or quality suffer, if the merger is consummated. See, *e.g.*, *FTC v. Heinz*, 246 F.3d at 718.

838.    Importantly, the documents of both companies and the testimony of their supermarket operators repeatedly demonstrate, in city after city, that Wild Oats' prices ███████ ███ Whole Foods' prices. Wild Oats does not operate as a competitive constraint on Whole Foods today, so its disappearance from the marketplace would not reduce the competitive pricing pressure on Whole Foods. See, *e.g.*, *FTC v. Heinz*, 246 F.3d at 718; *FTC v. Staples*, 970 F. Supp. at 1087-88.

839.   Wild Oats is neither a maverick firm under the Merger Guidelines, nor the type of low-priced, aggressive competitor that Chief Judge Hogan found Office Depot to be in *FTC v. Staples*, 970 F. Supp. at 1083.

840.   Post-merger, Whole Foods will continue to face direct competition from the full range of other supermarkets and food retailers, as it does today, and it is these stores that constrain its pricing and influence to offer high levels of quality in products, service, and general customer experience.   Under the Clayton Act, that is the end of the inquiry.  15 U.S.C § 18.

841.   Dr. Scheffman's cross-sectional pricing analysis is further evidence that Wild Oats does not constrain Whole Foods' pricing today.  Dr. Scheffman's pricing analysis is completely consistent with the testimony of defendants' operators, with market research conducted in the ordinary course of business, and with the overwhelming weight of documenting evidence.  Dr. Murphy's cross sectional analysis of margins confirms Dr. Scheffman's in that he finds no statistically significant evidence of a constraining effect on Whole Foods by Wild Oats.  Therefore, application of the *Staples* comparative pricing test, although repeatedly urged by the FTC here, actually proves that the merger is not likely to lessen competition.  *FTC v. Staples*, 970 F. Supp. 1066.

842.   ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████  This is further evidence that the merger is not likely to lessen competition.  *United States v. General Dynamics Corp.*, 415 U.S. 486 (1974); *FTC v. Arch Coal*, 329 F. Supp. 2d at 153.

843.   Relevant to evaluation of Wild Oats' competitive vigor are its financial condition and performance, *United States v. International Harvester Co.*, 564 F.2d 769, 775-65 (7th Cir. 1977); *FTC v. Arch Coal*, 329 F. Supp. 2d at 154-55; the ████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████ All of these factors

indicate that Wild Oats exerts little competitive influence on the marketplace today, and that its

influence would likely decline in the future if the merger does not take place.

844.    Firms already in the relevant markets or in adjacent markets are likely to respond if

Whole Foods raises its prices or degrades its quality, since such a move by Whole Foods would

create a competitive opportunity for another firm to enter and serve former Whole Foods customers.

Repositioning is a common response of other firms to a weakening of the competitive vigor of a

newly merged firm.  Here, where repositioning by other supermarkets is already ongoing, it likely

would accelerate post-merger if Whole Foods creates a competitive opportunity by relaxing its

competitive efforts.

845.    Under the FTC's theory of the case, Wild Oats and Whole Foods would each enjoy a

series of local monopolies around the country, in the cities where neither the other, nor any third

premium natural and organic supermarket, competes against them.  The FTC's failure to prove that

prices are different in these "monopoly" cities is fatal to its case.  *See U.S. v. Long Island Jewish

Medical Center*, 983 F. Supp. at 138.

846.    Also relevant to evaluation of the merger under the Clayton Act is the fact that

Whole Foods is likely to improve the efficiency of its operations by integrating the assets of Wild

Oats into its supermarket network.

> 4.    The FTC's two potential competition claims are, respectively, legally
>        insupportable and unproved.
>
>        a.    The Clayton Act does not prohibit a merger because it fails to
>              enhance competition

847.    The FTC contends that, if Whole Foods does not purchase Wild Oats, another supermarket chain could purchase Wild Oats and use it as a "springboard" into what it terms the market for "premium natural and organic supermarkets." There is no precedent for a merger challenge under the Clayton Act based on a claim that another buyer would be more procompetitive than the actual buyer. Nor does the language of the Clayton Act authorize such a claim: it prohibits only transactions that may tend "substantially to *lessen* competition." 15 U.S.C. § 18 (emphasis added).

848.    The argument that another buyer would be more procompetitive is also ███████

████████████████████████████████████

        b.     As to the geographic markets in which it alleges harm to potential competition, the FTC fails to establish the initial element of a potential competition claim.

849.    The initial element of a claim that a merger will lessen potential competition is that the relevant markets are already, prior to the merger, highly concentrated and uncompetitive. *U.S. v. Marine Bancorporation*, 418 U.S. at 625.

850.    The FTC's "potential competition" allegations, which were completely ignored during the two-day preliminary injunction hearing, fail for the same reasons that the FTC's allegations regarding the 18 overlap areas fail. Namely, the FTC cannot prove the existence of a relevant product or geographic markets in which potential competition would be harmed.

851.    Even if one assumes that the FTC could prove the existence of its alleged product and geographic markets, these claims must fail. Because it failed to prove that prices are higher or quality is lower in the so-called "monopoly" markets today, it has not shown that the elimination of Whole Foods as a potential future entrant into those monopoly markets would harm competition. This, the FTC failed to establish the initial element of its claim that the

merger will lessen potential competition in seven cities – that the relevant markets do not behave competitively today.

> 5.    Attention to purported intent evidence, including the statements of John Mackey, cannot distract from analysis of relevant marketplace conduct (*i.e.*, everyday competition), which the Court has determined is the relevant inquiry.

>> a.    The statements of John Mackey have been misinterpreted and misused.

852.    The colorful, combative language used by John Mackey, like comments of many CEOs, does not reflect market realities as reliably as business documents showing how a company actually conducts its business. *See* P. Areeda & H. Hovenkamp Antitrust Law § 1506 (2d d3d. 2003); G. Manne & W. Williamson, *Hot Docs and Cold Economics*, 47 Ariz. L. Rev. 609, 646 (2005).

853.    For this reason, the Supreme Court in the *Twombly* case dismissed statements made by the CEO of one of the defendants that the plaintiff had relied upon as evidence of anticompetitive effects. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1973 n.13 (2007). Appellate courts as well have dismissed remarks such as these as well, as not reliably probative of actual market effects. *See A. A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1402 (7th Cir. 1989); *Morgan v. Ponder*, 893 F.2d 1355, 1359 (8th Cir. 1989).

>> b.    The testimony of Perry Odak is unreliable and biased.

854.    Given Mr. Odak's bleak record as CEO of Wild Oats, his testimony about the characteristics of the competition faced by Wild Oats was not persuasive.

855.    Mr. Odak also appears somewhat embittered towards Wild Oats, from his disagreements with the board of directors, and his testimony is unpersuasive for this reason as well.

**B.    The public interest and the balance of the equities do not favor issuance of an injunction.**

856.    Section 13(b) of the FTC Act authorizes entry of a preliminary injunction only upon a showing that the FTC is likely to prevail in a full hearing on the merits, and that the balance of the equities warrants entry of the injunction. 15 U.S.C. § 53(b).

857.    The FTC has the burden of proving that entry of a preliminary injunction is in the public interest. *See FTC v. Exxon Corp.*, 636 F.2d 1336, 1343 (D.C.Cir. 1980).

858.    A preliminary injunction is a drastic remedy, so the FTC's burden on this issue is "properly a heavy one." *FTC v. Occidental Petroleum Corp.*, 1986-1 Trade Cas. (CCH) ¶ 67,071 at 62,516 (D.D.C. 1986).

859.    In deciding whether entry of a preliminary injunction is in the public interest, the Court must weigh the equities, both public and private. *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1082 (D.C. Cir. 1981); *FTC v. Great Lakes Chemical Corp.*, 528 F. Supp. 84, 98 (N.D. Ill. 1981).

860.    As a practical matter, Whole Foods is unlikely to be able to acquire Wild Oats if a preliminary injunction is entered, the private equities also weigh in favor of not entering the injunction. *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C.Cir. 1981); *FTC v. Swedish Match*, 131 F. Supp. 2d . 151, 172 (D.D.C. 2000); *see also FTC v. Nat'l Tea*, 603 F.2d 694, 697 (8th Cir. 1979). Entry of a preliminary injunction would likely doom the transaction. See *FTC v. Occidental Petroleum*, 1986-1 Trade Cas. CCH) ¶ 67,071 at 62,516 (D.D.C. 1986).

861.    Entry of an injunction would likely deny Whole Foods and consumers the efficiencies likely to be achieved as a result of the merger.

862.    Entry of an injunction would likely deny Wild Oats the sale it seeks, ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

863.    Because as a practical matter, Whole Foods is unlikely to be able to acquire Wild Oats us a preliminary injunction is entered, and given the merger is likely to enhance competition by making Whole Foods a stronger competitor against its much larger rivals, the public equities also weigh in favor of not entering the injunction. *FTC v. Weyerhaeuser*, 665 F.2d at 1087; *see also FTC v. Elders Grain, Inc.*, 868 F.2d 901, 904 (7th Cir. 1989).

## IX.   CONCLUSION

The FTC's motion for a preliminary injunction is denied.

Respectfully submitted,

_____

Paul T. Denis (DC Bar No. 437040)
Paul H. Friedman (DC Bar No. 290635)
Jeffrey W. Brennan (DC Bar No. 447438)
James A. Fishkin (DC Bar No. 478958)
Michael Farber (DC Bar No. 449215)
Rebecca Dick (DC Bar No. 463197)
Gorav Jindal (DC Bar No. 471059)

DECHERT LLP
1775 I Street, N.W.
Washington, DC  20006
Telephone: (202) 261-3430
Facsimile: (202) 261-3333

*Of Counsel:*

Roberta Lang
Vice-President of Legal Affairs
  and General Counsel
Whole Foods Market, Inc.
550 Bowie Street
Austin, TX  78703

Alden L. Atkins (DC Bar No. 393922)
Neil W. Imus (DC Bar No. 394544)
John D. Taurman (DC Bar No. 133942)

VINSON & ELKINS L.L.P.
The Willard Office Building
1455 Pennsylvania Avenue, N.W., Suite 600
Washington, DC  20004-1008
Telephone (202) 639-6500
Facsimile (202) 639-6604

*Attorneys for Whole Foods Market, Inc.*

Clifford H. Aronson (DC Bar No. 335182)
Thomas Pak (Pro Hac Vice)
Matthew P. Hendrickson (Pro Hac Vice)

SKADDEN, ARPS, SLATE, MEAGHER
       & FLOM LLP
Four Times Square
New York, NY  10036
Telephone: (212) 735-3000
caronson@skadden.com

Gary A. MacDonald (DC Bar No. 418378)

SKADDEN, ARPS, SLATE, MEAGHER
      & Flom LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7000
gmacdona@skadden.com

Terrence J. Wallock (Pro Hac Vice)
2224 Pacific Dr.
Corona Del Mar, CA 92625
(949) 375-0683

*Attorneys for Defendant Wild Oats Markets, Inc.*